# EXHIBIT B



## STATE OF NEW YORK
## OFFICE OF THE ATTORNEY GENERAL

ELIOT SPITZER
Attorney General

RICHARD RIFKIN
Deputy Attorney General
State Counsel Division

JAMES B. HENLY
Assistant Attorney General in Charge
Litigation Bureau

*Writer's Direct Dial*
*(212) 416-8965*

June 20, 2005

**Via Hand Delivery**

Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

         Re:   **Eddie Wise v. Raymond W. Kelly, et al.**
               S.D.N.Y. Case No. 05 CV 5442 (SAS)

Dear Judge Scheindlin:

      This Office, and Michael Colodner, Esq., Counsel for the Office Of Court Administration, represent Judge Judith Kaye, Chief Judge of the New York State Court of Appeals and Justice Jonathan Lippman, Chief Administrative Judge of the New York State Unified Court System (hereafter "State Judiciary Defendants") in the above-referenced action. In addition, this Office represents defendant Chauncey G. Parker, Commissioner of the New York State Division of Criminal Justice Services (collectively, with Judges Kaye and Lipmann, the "State Defendants").

      We write in opposition to plaintiff's request for entry of the proposed restraining order that plaintiff presented to us last week, following the parties' appearance before Your Honor on June 10, 2005. A copy of the transcript of the June 10, 2005 proceedings (hereafter "Transcript") is annexed hereto as Exhibit A. A copy of plaintiff's proposed order is annexed hereto as Exhibit B.

Hon. Shira A. Scheindlin	Page 2
June 20, 2005

That proposed order would require the State Judiciary Defendants to advise all relevant courts of the State that New York Penal Law 240.35(1) is "void and unenforceable." It would also award, in the form of a preliminary injunction upon which the Court is yet to have held a hearing or had briefing, the ultimate relief that plaintiff seeks against the State Defendants, viz., an order that these defendants "take all appropriate ameliorative measures to ensure that no one is arrested, summonsed, prosecuted, or subjected to warrants or violations of conditional discharges for violations" of the provision.

The relief plaintiff requests against the State Defendants is contrary to governing law and should not be further entertained by the Court. State defendants ask that the Court decline to enter that proposed order, or any such order against the State Defendants, for a number of fundamental reasons:

- unlike the City defendants, the State Defendants lack any adversarial relationship to plaintiff, and hence the Court is not presented with a case or controversy, as to them, under Article III, which it may adjudicate;

- principles of comity, federalism and equity preclude the Court from enjoining state court officials and require abstention by this Court;

- 42 U.S.C. § 1983 bars this Court from issuing an injunction against judicial officers, and, beyond that, under section 1983, judicial officers are improper parties to an action, such as this, which seeks to prevent enforcement of a state law, with respect to which judicial officers have an adjudicative role;

- the Court is, in any event, prohibited from dictating to the State defendants how an alleged constitutional violation should be prospectively remedied; and

- aside from all the foregoing fundamental impediments, plaintiff has failed in his burden to satisfy the legal standards governing issuance of the extraordinary temporary relief sought against the State defendants.

Before addressing these legal grounds for denial of the temporary restraining order in some detail, we briefly set forth the relevant factual background and prior proceedings.

Hon. Shira A. Scheindlin                                          Page 3
June 20, 2005

**Factual and Procedural Background of the Case**

On or about June 9, 2005, plaintiff Wise commenced this putative class action accompanied by plaintiff's "Motion for a Temporary and Preliminary Order". Plaintiff gave notice to this Office of his intent to seek temporary relief but could not get a judge on June 9, 2005. The following day, on June 10, 2005, this Court heard plaintiff on the application for temporary relief. The Court did not execute the order to show cause, with the result that no hearing date or briefing schedule was set on the preliminary injunction request as against the State Defendants. The Court did indicate orally its intention to order temporary relief, and advised plaintiff to submit a proposed order to the Court. Transcript at pp. 9, 27.

We have now received a proposed order from the plaintiff's counsel, annexed hereto as Exhibit B. That proposed order fails in substance to correspond with the Court's direction at the June 10 conference, and, indeed, seeks to have the Court order against the State Defendants the ultimate relief plaintiff seeks in this action.

The claims against police and prosecutors. The action brought by plaintiff principally targets the City of New York, the NYPD and its commissioner, various police officers, and the District Attorney of Bronx County, alleging that Mr. Wise and others have been harmed by these officials' enforcement of a statute, New York Penal Law § 240.35(1) (hereafter "the Statute") held to be unconstitutional in Loper v. the New York City Police Department, 802 F.Supp. 1029 (S.D.N.Y. 1992) (Sweet, J.). In Loper, the district court certified a class and granted to that class an injunction against the New York City Police Department barring the enforcement of the Statute. The decision was affirmed by the Second Circuit. Loper v. the New York City Police Department, 999 F.2d 699 (1993).

Plaintiff alleges that notwithstanding the 1992 Loper injunction, NYPD officers in recent years have been making arrests under the Statute, and the Bronx District Attorney's Office has prosecuted such arrested individuals for violating the Statute. Brinckerhoff Declaration ("Brinck. Decl.") at ¶¶ 6, 7. The papers are silent on what applications, if any, have been made by plaintiff, or other class members, or by Loper class counsel or the present plaintiff's counsel, to enforce the 1992 injunction granted by this Court in Loper, which, by its terms, was issued to prevent the NYPD from making arrests under the Statute. This Court may

take judicial notice that the docket sheet in Loper discloses no enforcement proceedings having been undertaken in the ensuing thirteen years.

The claim against the State Defendants. In addition to suing the NYPD, and the Bronx DA, for failing to stop bringing criminal proceedings under the Statute, plaintiff Wise in the instant action takes the additional, novel step of naming the Chief Judge and Chief Administrative Judge of the state judicial system as defendants, as well as the head of the State Division of Criminal Justice, none of whom has any role in the decision by NYPD police to arrest, or the Bronx District Attorney to prosecute, violations of the Statute.

The factual or legal grounds that would afford temporary relief against the State Judiciary Defendants are not articulated in plaintiff's moving papers. In the "Merits" section, for example, plaintiff's brief speaks in broad general terms that unspecified "defendants" have "willfully continued to enforce the Statute" p.6, and that "defendants violated the law" on multiple occasions, p.7, but in no instance does the application identify what the three State defendants, persons legally distinct from the NYPD and the prosecutors, have done in violation of federal constitutional law. The declarations accompanying plaintiff's request for emergency relief similarly adduce no facts regarding the three State Defendants that suggest any one of them has violated Mr. Wise's constitutional rights.

Plaintiff avers that he has been repeatedly arrested by NYPD officers in the Bronx for violating the Statute; that the Bronx District Attorney's Office has prosecuted him in the Criminal Court of the City of New York, County of the Bronx for such violations; and that he pled guilty to some of these alleged violations of the Statute, resulting in his being criminally sanctioned by judges sitting in the Criminal Court of the City on New York, in the County of Bronx, for such violations, most recently apparently in or around March 2004. (See Brink. Decl. Exhibit C). Judges of the Criminal Court of the City of New York are thus charged, apparently, with tolerating constitutional error, for hearing and disposing of these wrongfully commenced charges, see, e.g., Pl. Memo of Law at 2 ("judges have continued to convict and sentence individuals under the Statute"), but that conduct – hearing cases, entering convictions, sentencing plaintiff - is plainly judicial in nature and those judges are not sued.

The application against the State Judiciary Defendants, it appears, is predicated upon the proposition that Judges Kaye and Lippman are responsible for preventing such criminal charges commenced by the District Attorney from being heard by the individual judges in the criminal courts, when such charges are founded upon a law held to be unconstitutional. The notion, it seems, is that Judges Kaye and Lippman, as administrative judges, have the power to stop state court judges in the criminal courts from hearing (plaintiff's prefer the less judicial-sounding term "process[ing]") the charges when they are filed under the Statute. Plaintiff's application presents no factual support or legal authority for that novel proposition.

Such charges, of course, can only result from prior decisions by police to arrest for violations of the Statute and of the DA to commence prosecutions for violations of the Statute. At the June 10 appearance on plaintiff's application for a temporary restraining order, this Court was advised by counsel for the NYPD and Bronx DA that: (i) NYPD the previous evening had issued a directive notifying all commands in all roll calls to cease arresting and charging under the Statute; (ii) the Office of the Bronx DA had notified all of its ADAs not to bring prosecutions under the Statute and to dismiss any pending charges brought under the Statute and the other district attorney's office in New York City would do the same; and (iii) NYPD and the Bronx DA would enter into a stipulation, to be so-ordered so that violations of it would be enforceable by this Court, providing that such arrests and prosecutions under the Statute would cease. Transcript at pp.3-6 and 8.

Nevertheless, the plaintiff sought a temporary injunction against the State Judiciary Defendants, as well, and the Court, at the June 10 appearance, indicated it would oblige by directing Judges Kaye and Lippman to notify state court judges that prosecutions for violations of the Statute "should not be heard by the courts because the statute is unconstitutional." See Transcript at p. 9. Counsel for the State defendants declined to consent to this extraordinary injunctive relief directed at the state court's top judicial officers, so the Court directed plaintiff to prepare an order for the same setting forth specifically the language of the notice to be sent by the State Defendants.

The plaintiff has now proffered a proposed order, apparently pursuant to the Court's June 10, 2005 direction,

Hon. Shira A. Scheindlin                                                  Page 6
June 20, 2005

although the content of the proposed order bears little correspondence to that direction. For all the reasons stated herein, State Defendants oppose entry of such an order.

### I. This Court Lacks Jurisdiction to Enter Such an Order Because There is No Justiciable Case or Controversy between the State Defendants and the Plaintiff.

Pursuant to Article III of the United States Constitution, federal courts may not assert jurisdiction over a claim unless there is an actual, justiciable "case or controversy" between the parties. O'Shea v. Littleton, 414 U.S. 488, 493 (1974); Miller v. Silbermann, 951 F. Supp. 485, 489 (S.D.N.Y. 1997). Article III prohibits federal courts from adjudicating claims when the parties lack the required adverse legal interests. Additionally, where a plaintiff purports to represent a broader class, he or she must still individually satisfy this requirement for Article III standing. Miller, 951 F.Supp. at 490.

A party challenging the enforcement of a state statute may not properly do so by suing a state court judge, because no justiciable case or controversy exists between that party and the state judiciary. Rather than being an adversary to the plaintiff in such an instance, the court system is the impartial arbiter of the underlying dispute. See Mendez v. Heller, 530 F.2d 457 (2d Cir. 1976) (in case challenging constitutionality of state statute, presiding judge and court clerk did not have legal interest sufficiently adverse to appellant to create a justiciable controversy). See also Rhodes v. Laurino, 601 F.2d 1239, 1241 (2d Cir. 1979); In re Justices of Supreme Court, 695 F.2d 17, 22 (1st Cir. 1982)(noting that judges are not proper parties to attacks on the constitutionality of a statute, since their role in such instances is to decide the law "as arbiters without a personal or institutional stake on either side of the constitutional controversy.").

Plaintiff here has failed to demonstrate that any of the three State defendants has assumed a position adversarial to him. He complains that cases have been prosecuted against him in Bronx Criminal Court under the Statute, and that those cases should not have been prosecuted against him by the Bronx DA. But the State Judiciary defendants do not control what cases prosecutors choose to commence. In each of our judicial systems, state and federal, judges hear and decide the cases presented to them by the parties. The prosecutorial selection of the cases that are commenced is beyond judicial control, except through the exercise of judicial

Hon. Shira A. Scheindlin									Page 7
June 20, 2005

power to dismiss the matter (or, in a proper case on a proper application, to enjoin particular actors responsible for initiating a case from bringing such a case in the future).

The notion that an Article III controversy exists between Mr. Wise and the State Judiciary defendants is therefore untenable. The State Judiciary defendants have no more of an adversarial relationship with plaintiff, for purposes of Article III, than would exist between plaintiff and the Chief Justice of the United States Supreme Court, were plaintiff complaining of an alleged failing on the Chief Justice's part to prevent a federal prosecutor from bringing charges against a plaintiff under a federal statute that had been held unconstitutional by some federal court. Since the State Judiciary Defendants sit as potential adjudicators of cases, and not as opponents to plaintiff's position, there is no justiciable case or controversy against these State defendants sufficient to confer Article III standing.

II. **Principles of Comity, Federalism and Equity Preclude the Court from Enjoining State Court Officials As Requested by Plaintiff**.

Even assuming Article III jurisdiction existed, this Court should not order any relief against the State Judiciary defendants, and should abstain from hearing the case against them, because issuing an order of relief against the State Judiciary Defendants would offend fundamental principles of comity, federalism and equity. Those principles are never stronger than when the orders contemplated would directly interfere with the power of state judicial officials with respect to the operation of the state judicial system.

In recognition of "the dignity of states as co-equal sovereigns in our federal system," federal courts must generally refrain from enjoining or otherwise interfering in state court proceedings. Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003). See also Bedrosian v. Mintz, 518 F.2d 396, 399 (2d Cir. 1975). This understanding that the state courts constitute a competent, parallel adjudicatory system underlies the federal abstention doctrine set out in Younger v. Harris, 401 U.S. 37 (1971) and O'Shea v. Littleton, 414 U.S. 488, 499 (1974)("need for a proper balance in the concurrent operation of federal and state courts counsels restraint" against the issuance of injunctions against state court proceedings). See also Diamond D Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002).

Hon. Shira A. Scheindlin　　　　　　　　　　　　　　　　　　　　　　　Page 8
June 20, 2005

      In deference to these federalism principles, courts in this Circuit have declined to interfere with the internal administration of New York courts. In <u>Miller v. Silbermann</u>, 951 F. Supp. 485 (S.D.N.Y. 1997), for instance, the district court, invoking "comity abstention," refused to enjoin certain contested practices of the New York City Civil Court. <u>Miller</u>, 951 F. Supp. at 491-492. Even in the absence of a specific ongoing state proceeding, the district court found abstention warranted "where the equitable relief sought would inappropriately require the federal court to supervise institutions central to the state's sovereignty." <u>Miller</u>, 951 F. Supp. at 491-492. There, as here, the state defendant involved was a state court official, rendering "the equitable restraint considerations ... 'nearly absolute.'" <u>Miller</u>, 951 F. Supp. at 492 (citing <u>Parker v. Turner</u>, 626 F.2d 1 (6th Cir. 1980)). <u>See also</u> <u>Bedrosian</u>, 518 F.2d at 399.

      As the Supreme Court recognized in <u>O'Shea v. Littleton</u>, 414 U.S. 488 (1974), "principles of equity, comity and federalism" preclude federal intervention in state proceedings where a litigant seeks "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state ... trials". <u>O'Shea</u>, 414 U.S. at 499-500. As the Supreme Court observed, enforcement of such injunctions would require periodic "interruption of state proceedings to adjudicate assertions of noncompliance," creating "nothing less than an ongoing federal audit of state ... proceedings which would indirectly accomplish the kind of interference that <u>Younger v. Harris</u> ... sought to prevent." <u>O'Shea</u>, 414 U.S. at 500.

      Contrary to the teaching of <u>O'Shea</u>, plaintiff here asks the federal court to intrude upon the functioning of the state courts in a manner highly offensive to principles of comity and federalism. Under the plaintiff's proposed order, the State Judiciary Defendants would be forced to communicate with state court judges and otherwise monitor the state court system in a manner dictated by the federal courts. In particular, the injunctive relief interjects the federal court prospectively into the adjudicative process in state trial courts by requiring the State Judiciary Defendants to distribute a notice to state court judges, the content of which is directed by the federal court, and which apparently would purport to prohibit state court justices from "hearing" certain cases (and/or direct them to find a particular statute unconstitutional, and dismiss such cases, if "heard"). Were the plaintiff to believe the order entered against them was not adhered to, the State Judiciary Defendants presumably could be subject to further proceedings against them in federal court to enforce the order.

Hon. Shira A. Scheindlin                                              Page 9
June 20, 2005

      New York State, as a sovereign, has a parallel judicial system, which, under accepted jurisprudential principles, is entitled to the presumption that it is capable of addressing properly presented complaints (or defenses) alleging violations of federal constitutional rights. The operation of the state court system, and the jurisdiction of the state courts to hear and decide cases arising under its state penal law, are state interests of utmost importance, upon which this Court should not intrude by issuing directions to the Chief Judge and Chief Administrative Judge of the state court system. This Court already has the voluntary stipulation of the offending City police department and the relevant District Attorneys (which, by consent, are to be so-ordered and enforceable in this Court), to the effect that they will cease further prosecutions under the Statute. To enjoin, in addition, the State Judiciary Defendants for having, under plaintiff's theory, failed to prevent the City police and prosecutors from bringing cases under the Statute, would turn fundamental principles of comity, federalism, and equity on their head. The Court should decline to order any relief against the State Judiciary Defendants and abstain from hearing the case against these defendants.

III. **The State Judicial Defendants are not Proper Parties to Claims Asserted under 42 U.S.C. § 1983. Moreover, Section 1983 Bars Ordering Equitable Relief Against the State Judicial Defendants**.

      Although plaintiff purports to sue Judges Kaye and Lippman in their administrative capacities, see Complaint at ¶¶ 21 and 22, the allegations and the relief sought address not their administrative, but rather, their judicial functions. It is clear that through this suit against the State Judiciary Defendants, plaintiff is actually attempting to have them direct or influence state court justices not to hear (or if hearing, then how to decide) cases brought to enforce the Statute. The claims against the State Judiciary Defendants are based upon allegations that state court judges are hearing, and entering convictions in, and engaging in sentencing in, cases arising from an unconstitutional law. This plainly concerns basic judicial functions of courts - the hearing and deciding of cases – not to the administrative duties of Judges Kaye and Lippman in overseeing, for example, the physical and financial operations of the courts. See, e.g., 22 NYCRR § 80.1 et seq.

      Indeed, in their administrative capacity, Chief Judge Kaye and Chief Administrative Judge Lippman lack the power to establish what cases may be heard in state court and how those

cases should be decided. See Mendez v. Heller, 530 F.2d 457, 460 (in contrast to the "traditionally administrative task of fee collection," a "court's investigation of its jurisdiction is eminently a judicial function.") New York state law bars Judges Lippman and Kaye administratively from instructing other state court judges that they must make a particular determination in a particular case. Balogh v. H.R.B. Caterers, Inc., 88 A.D.2d 136, 143, 452 N.Y.S.2d 220, 225-26 (1st Dep't 1982)(administrative judges do not have the "power to supersede, overrule, control or aid a Trial Judge in carrying out his adjudicative responsibilities."). The administrative authority of the Chief Judge of the Court of Appeals and the Chief Administrative Judge of the Unified Court System is set out in the New York State Constitution, art. VI, § 28, Judiciary Law §§ 210-12, and 22 NYCRR § 80.1 et seq. None of these provisions provides the Chief Judge or the Chief Administrative Judge with the power to direct other state court judges to decide matters before them in a particular way or determine whether those judges have jurisdiction over a particular matter. "Delegation of administrative powers to a Judge is limited and does not increase the judicial power or authority of such Administrative Judge as to give him authority to overrule decisions made by other Judges in cases properly assigned to them, or to make the decisions for such other Judges." Lang v. Pataki, 176 Misc. 2d 676, 691-692, 676 N.Y.S.2d 903, 914-15 (N.Y. Co. Sup. Ct. 1998), aff'd, 271 A.D.2d 375 (1999). Administrative judges, to the extent that they function as administrators, are non-judicial officers and cannot usurp the adjudicative functions of the state trial courts. Id.

As Judges Kaye and Lippman are not authorized to assume state trial courts' adjudicative functions or influence trial courts in making their judicial determinations, they cannot legally, as administrators, direct state courts to dismiss claims before them, direct them *not* to hear particular cases presented to them, or, for that matter, direct them to find that Penal Law § 240.35(1) is unconstitutional. Accordingly, the relief plaintiff seeks to impose upon Judges Kaye and Lippman cannot be effectuated by them in their administrative capacity. See Part IV., A, infra.

In truth, plaintiff seeks an order treading directly upon the judicial function, and, as plaintiff certainly must know, § 1983 prohibits such an order. "[Section] 1983 does not provide relief against judges acting purely in their adjudicative capacity." In re Justices of Supreme Court, 695 F.2d at 22. Much as a "state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute," Warden v. Pataki, 35 F.Supp. 2d 354, 359

(S.D.N.Y., 1999), aff'd, 201 F.3d 430 (2d Cir. 1999), an "action taken by a state court judge solely in his/her adjudicatory role does not constitute state action" for purposes of provision of relief under § 1983. Nollet v. Justices of Trial Court of Commonwealth of Massachusetts, 83 F.Supp.2d 204, 211 (D.Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000); Gras v. Stevens, 415 F.Supp. 1148, 1151-52 (S.D.N.Y. 1976).[1]

Moreover, the injunctive relief sought against the State Judiciary Defendants is barred by section 1983. Section 1983 provides that *"in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."* 42 U.S.C. section 1983 (emphasis added). Under § 1983, even if the judges were properly subject to suit here, issuance of the injunctive relief sought against them on this application would be in violation of the statute. An injunction against a judicial officer is prohibited by § 1983 absent a showing that a prior declaratory judgment has been entered against the judicial officer in question and the judicial officer has violated that declaration. See, e.g., Tesmer v. Granholm, 333 F.3d 683, 703-704 (6th Cir. 2003) (disapproving of injunction issued against judicial officers who were not previously party to lower court's declaratory decree: "Failure of a judge unnamed in a declaratory decree to abide by such declaration does not allow a district court to throw caution to the wind and summarily bind all judges"), rev'd on other grounds, 125 S.Ct. 564 (2004).

Plaintiff does not plead that the State Judiciary Defendants have violated any declaratory decree to which they were a party and cannot so plead, for the obvious reason that the State Judiciary defendants have not been parties to any suit in which plaintiff sought federal judicial relief, heretofore. Although the complaint commencing *this* action seeks a declaratory judgment against the defendants, apparently including the State Judiciary Defendants, issue has yet to be joined, and no such judgment has

---

[1] In Gras, the court held that in naming a state official in a § 1983 suit to enjoin enforcement of an allegedly unconstitutional law or act, a general duty to uphold the law is insufficient - the officer must have some particularized connection with enforcement of the unconstitutional law or he or she is not properly named. Id. Here, the District Attorney defendant has that particularized enforcement role, whereas the judicial branch's officers have an adjudicative one that makes them improper parties in suits under § 1983 challenging the enforcement of state law. See also Brandon E. ex rel. Listenbee v. Reynolds, 201 F.3d 194, 199 (3d Cir. 2000); Bauer v. Texas, 341 F.3d 352, 361 (5th Cir., 2003).

Hon. Shira A. Scheindlin                                                      Page 12
June 20, 2005

been entered. Accordingly, by Section 1983's own terms, plaintiff is not entitled to obtain any temporary injunctive relief against Judges Kaye and Lippman.

### IV. Plaintiff Has Failed to Satisfy the Legal Standards for Obtaining Temporary Emergency Relief Against the State Defendants

A temporary restraining order or preliminary injunction may be properly issued against a state governmental official acting under lawful statutory or regulatory authority only upon a showing that, absent entry of the emergency relief sought against the governmental official, the plaintiff will suffer irreparable harm, and the plaintiff is likely to succeed on the merits of his claim. See, e.g., Molloy v. Metro. Transp. Auth., 94 F.3d 808, 811 (2d Cir. 1996). Plaintiff has not come close to satisfying that legal standard, nor the lesser one of demonstrating a "fair ground for litigation," as against the State Defendants.

#### A. Plaintiff Has Not Demonstrated Even a Fair Ground for Litigation that the State Defendants Violated Any Constitutional Right of His.

Mr. Wise's legal theory against the State Judiciary Defendants seems to be that these judicial officers have a free-floating duty, under some unnamed Constitutional provision, to prevent the New York City police and the District Attorneys from prosecuting him for violation of a statute that has been held unconstitutional by a federal court. The argument suffers from profound legal defects.

First, plaintiff's request for relief against the State Judiciary defendants directing them to notify state court judges that the Statute is "null and void" assumes the veracity of a false legal proposition: that the holding in Loper v. NYC Police Dep't is binding upon the state courts. Loper v. N.Y.C. Police Dep't is persuasive authority, but as a decision of a federal court other than the United States Supreme Court, it does not constitute binding authority in New York State courts.

New York State courts are not obligated to follow the constitutional analysis rendered by a federal district or circuit court. People v. Kin Kan, 78 N.Y.2d 54, 60, 571 N.Y.S.2d 436, 439 (1991). See also New York R.T. Corp. v. City of New York, 275 N.Y. 258, 265 (1937), aff'd, 303 U.S. 573 (1938); U.S. ex rel. Lawrence v. Woods, 432 F.2d 1072 (1970), cert. den'd, 402 U.S. 983 (1971). While state courts may find a lower federal court's determination

Hon. Shira A. Scheindlin                                            Page 13
June 20, 2005

of constitutionality persuasive, they are free to independently determine constitutionality and are bound only by their own decisions and the pronouncements of the United States Supreme Court. See Kin Kan, 571 N.Y.S.2d at 439; People ex rel Ray v. Martin, 294 N.Y. 61, 73 (1945). The Supreme Court has also repeatedly affirmed the presumptive competence of the state courts to adjudicate independently federal claims. See Nevada v. Hicks, 533 U.S. 353, 366-67 (2001); Tafflin v. Levitt, 493 U.S. 455, 458 (1990); Lockhart v. Fretwell, 506 U.S. 364, 376 (1993)(Thomas, J., concurring).

Plaintiff here bases his complaint against the State defendants upon the presumption that New York state courts are bound by the Southern District and Second Circuit determinations of the Statute's constitutionality in Loper. Plaintiff claims that because of the determination by the court in Loper that the Statute was unconstitutional, it was wrongful for State Judiciary Defendants to fail to stop Criminal Court judges in the Bronx from hearing prosecutions under the Statute and cease the recording of such proceedings, notwithstanding the fact that the Loper decision is not binding on the state courts. See Complaint at ¶¶ 106-112, 153-156.

Because the state courts are not bound by Loper and are, in fact, free to independently determine the constitutionality of the Statute, plaintiff is not entitled to relief as against the State defendants directing them to notify that the Statute is "null and void" and is certainly not entitled to expedited relief requiring the State defendants to independently and proactively "enforce" Loper. See Exhibit B, plaintiff's proposed order, at ¶ 1.[2]

Second, assuming, arguendo, that state criminal court judges were bound by Loper, and were failing to abide it, that would not provide occasion for an order from this Court directed specifically to Chief Judge Kaye and Chief Administrative Judge Lippman holding them liable for such failures. As explained above, the administrative judges of the state court system do not have the power in their administrative capacity to prohibit, or influence, the deciding of cases filed by prosecutors alleging violations of the penal law, and hence could not have any legal duty to perform an act they lack the power to undertake. Plaintiff has made no legal or factual showing demonstrating that

---

[2] Loper resulted in the entry of an injunction against the NYPD. No state entity was a party in the Loper case or the subject of any injunctive relief therein.

Hon. Shira A. Scheindlin                                          Page 14
June 20, 2005

the State Judiciary Defendants have, in their administrative capacity, such power to curtail the hearing of cases by the criminal courts. Accordingly, the temporary relief should not be ordered.

If the constitutional problem presented is that one or more state criminal court judges have failed to dismiss a prosecution of the Statute presented to him or her, ignorant of, or in defiance of Loper,[3] the manner by which such ascribed error would be subject to correction within the state's judicial system (much as in the federal judicial system) would be by appeal (or, in appropriate circumstances, mandamus or habeas petition) properly presented to a higher court having judicial supervisory authority over the lower court judge. That is the established means by which judicial error is overcome. No allegation is made that such judicial error has come before the State Judiciary Defendants in a proper case and gone uncorrected. Moreover, the Chief Judge could hear such an appeal only if it were to reach the State Court of Appeals (and, were federal constitutional error to go uncorrected there, the remedy would be to seek relief from the United States Supreme Court, not this Court).

In sum, no order from this federal court can transform the appellate structure of the state judicial system by vesting in the Chief Judge some form of free-floating judicial power that can be exercised directly at the level of the state criminal court judges, to prevent them from hearing prosecutions under the Statute. Plaintiff, whose brief is silent upon all these matters, has not demonstrated fair grounds for litigation of such a novel claim against the State Judiciary defendants.

---

[3]     On the application for temporary relief, no factual instance is pleaded or presented of a state court conviction being entered in the Criminal Court in question over any objection of Mr. Wise or any other defendant founded on the proposition that the prosecution was proceeding upon an unconstitutional statute. (See Brinck. Decl. Exhibit C, which documents that plaintiff's convictions in each instance followed a plea of guilty.) In the single instance adverted to in plaintiff's moving papers in which Loper was cited to a state judge, the argument apparently resulted in the charge under the Statute being dismissed against the defendant on the consent of the parties. Bowers Declaration, para. 12. And in two separate instances of prosecution under the Statute described in the complaint in which Loper was invoked, the state court judge issued a decision dismissing the charge, over the objection of the DA. See Complaint, ¶¶ 62-63, 69.

Hon. Shira A. Scheindlin                                           Page 15
June 20, 2005

### B. Plaintiff Has Not Demonstrated He Will Suffer Imminent Irreparable Harm if Temporary Relief is Not Ordered Against the State Defendants.

In this case, plaintiff seeks to have extraordinary relief granted against the Chief Judge and Chief Administrative Judge of the New York state courts, directing and controlling their relationship with state court judges, before there has been any showing of any type of unconstitutional conduct on the part of the State defendants, and absent the showing of any real exigent circumstances on the part of the plaintiff that cannot be remedied by: (a) enforcement of the Loper injunction or (b) enforcement of the newly-minted agreements of the NYPD and District Attorneys, expressed on June 10, 2005; or (c) failing that, appropriate representation by his lawyers, urging dismissal of the case from state court, in the unlikely event state court proceedings were to be commenced against Mr. Wise in violation of the foregoing.

Loper was decided by the Second Circuit in 1993. Although plaintiff complains that the injunction against the NYPD has been ineffective, plaintiff has made no showing of any attempt to enforce the injunction against the NYPD prior to this action.

Moreover, at the June 10, 2005 argument, the City defendants, admitting that the injunction had not been complied with, represented that the NYPD had immediately taken new steps to notify all officers that they were no longer to enforce the Statute, that the District Attorneys would take similar steps to prevent assistant district attorneys from commencing prosecutions under the Statute, and that these police and prosecutorial defendants would agree to be subject to a court-ordered agreement to cease such arrests and prosecutions, which would enforceable before this Court. See Transcript at pp. 3-4, 18. In light of these remedial measures to prevent further arrests or summonses or prosecutions under the Statute, there was no showing made that an order against the State Judiciary or defendant Parker[4] was necessary to prevent a further imminent violation of Mr. Wise's constitutional rights by the NYPD or District Attorneys.

Because plaintiff has failed to establish that the requested injunctive relief against the State Defendants is necessary to prevent irreparable harm, the Court should decline to

---

[4] No case at all is made by plaintiffs for emergency injunctive relief against defendant Parker. No irreparable harm has been cited that will imminently arise if defendant Parker is not subject to an immediate injunction.

Hon. Shira A. Scheindlin　　　　　　　　　　　　　　　　　　　　　　　Page 16
June 20, 2005

enter any order granting relief against the State defendants.

## V. The Federal Court is Prohibited From Dictating to the State Defendants How an Alleged Constitutional Violation Should Be Prospectively Remedied.

Finally, even if it can somehow be said that the State defendants violated plaintiff's constitutional rights, and plaintiff will suffer irreparable harm thereby, the relief plaintiff would have imposed by the Court is inappropriate. The federal courts have "no supervisory authority over the state courts and have no power to establish rules of practice for the state courts." Wallace v. Kern, 499 F.2d 1345, 1351 (2d Cir. 1974), cert. den'd, 414 U.S. 1135 (1974). Even if granted, in crafting equitable relief against any state entity, federal courts may remedy past and/or imminent violations of constitutional rights but may not prescribe specifically the actions of a state entity to remedy future violations except as a last resort. See, e.g., Knox v. Salinas, 193 F.3d 123 (2d Cir. 1999)(Injunction vacated when not based upon specific supportive findings and where it impermissibly dictates manner of prospective remediation to state). This is particularly true where the equitable relief at issue involves interfering with the state's judicial system. The considerations of federalism particularly require restraint where "interference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference ... can readily be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principals." Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975)(quotations omitted).

Hon. Shira A. Scheindlin                                      Page 17
June 20, 2005

### Conclusion

For the foregoing reasons, State defendants respectfully request that this Court decline to grant plaintiff emergency or preliminary equitable relief against the State defendants and/or allow full briefing and argument before issuing further written orders thereon.

Very truly yours,

Monica Connell
*Assistant Attorney General*
Michael Colodner, Counsel
*Office of Court Administration*

MC/
cc:  Katherine Rosenfeld
     Matthew D. Brinckerhoff
     Emery Celli Brinckerhoff & Abady LLP
     Attorneys for the Plaintiff
     545 Madison Avenue
     New York, New York 10022

     Rachel Seligman, Assistant Corporation Counsel
     Office of Michael A. Cardozo
     Corporation Counsel for the City of New York
     Attorneys for the City Defendants
     100 Church Street
     New York, New York 10007