# EXHIBIT D

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
ILANN M. MAAZEL
ERIC HECKER
SARAH NETBURN
MARIANN MEIER WANG
KRISTIN COLLINS
KATHERINE ROSENFELD
O. ANDREW F. WILSON

# EMERY CELLI BRINCKERHOFF & ABADY LLP

ATTORNEYS AT LAW
545 MADISON AVENUE
NEW YORK, NEW YORK 10022

TELEPHONE
(212) 763-5000
TELECOPIER
(212) 763-5001
E-MAIL
mail@ecbalaw.com

June 24, 2005

**By hand**

Hon. Shira A. Scheindlin
U.S. District Court for the Southern
District of New York
500 Pearl Street
New York, NY 10007

Re:   Eddie Wise v. Raymond W. Kelly, et al., 05 Civ. 5442 (SAS)

Dear Judge Scheindlin,

Plaintiff Eddie Wise and the putative class submit this letter in response to the Court's Order that plaintiff show cause why defendants Chief Judge Judith Kaye, Chief Administrative Judge Jonathan Lippman ("the Court Administrator") and New York State Division of Criminal Justice Services ("DCJS") Commissioner Chauncey G. Parker should not be dismissed from this case for (1) lack of a justiciable controversy between those defendants and plaintiff, and (2) as improper parties under 42 U.S.C. § 1983.[1] For the reasons set forth below, plaintiff respectfully submits that defendants Kaye, Lippman and Parker are proper defendants in this action, and that discovery should proceed against them.

I.   **Background**

The facts of the instant case are unique. More than a decade ago, the United States Court of Appeals for the Second Circuit declared unconstitutional, on First Amendment grounds, New York Penal Law § 240.35(1) ("the Statute"), which provided that a person is guilty of "loitering" when he "loiters, remains or wanders about in a public place for the purpose of begging," and affirmed U.S.D.J. Robert W. Sweet's 1992 injunction permanently barring the NYPD's future enforcement of P.L. § 240.35(1). See Loper v. New York City Police

---

[1] In their June 20, 2005 letter to the Court, defendants make a number of arguments regarding why they claim they are entitled to dismissal. As the Court directed, plaintiff limits his response herein to two issues (whether a justiciable controversy exists, and whether defendants are proper parties under 42 U.S.C. § 1983), although we vigorously dispute every ground on which the defendants seek dismissal.

Department, 999 F.2d 699 (2d Cir. 1993). Moreover, Loper clearly established a constitutional right to beg peacefully in public areas.

Notwithstanding the clear command of Loper, in the years following 1992, the New York City Police Department ("NYPD") and the various New York City District Attorneys' Offices, most notably in the Bronx, continued to arrest, summons, and prosecute individuals such as plaintiff Eddie Wise for violations of the Statute. *Preliminary court data shows that in 2003-2004 alone, at least 140 people were arrested and charged under the Statute.* Regrettably, personnel under the supervision of Parker and the Court Administrators played a not insignificant role in the enforcement of this void statute, thereby contributing to the violation of plaintiff's constitutional right to beg peacefully.

On June 8, 2005, plaintiff served counsel for all defendants with the Complaint and Order to Show Cause, and provided notice of plaintiff's intention to request injunctive relief. On June 9, 2005, plaintiff filed the instant Complaint. On June 10, 2005, the parties were heard by this Court with respect to plaintiff's request for injunctive relief. On that date, with respect to the Court Administrators, the Court directed that a one-page notice be disseminated within the state court system "so everybody is alerted and watching for this. . . just notifying everybody that there has been some failure of communication all along." (6/10/05 Hearing Transcript at 9.)

Following the hearing, plaintiff and the City Defendants (Raymond Kelly, the City of New York and District Attorney Johnson) negotiated a Stipulation and Order that has now been submitted to the Court for review and approval. In sum, the City Defendants will cease enforcement of the Statute, seek to dismiss charges pending under the Statute, release anyone in custody solely for a violation of the Statute, and seek to vacate any warrants relating solely to the Statute. See Stipulation and Order dated June 22, 2005. The NYPD has now directed its members not to enforce the Statute in light of the Second Circuit's ruling in Loper. See id. at Ex. A (stating that "Penal Law 240.35(1) has been unconstitutional"). District Attorney Johnson will similarly instruct all attorneys in his office that the statute is "void." Id. at Ex. B. Finally, Corporation Counsel Cardozo has also so instructed all District Attorneys. See id. at Ex. C.

On June 13, 2005, plaintiff forwarded to counsel for the Court Administrators and Parker a proposed Order that: (1) directed defendants to cease enforcement of the Statute; and (2) ordered that immediate notices be sent to the Administrative Judges and Chief Clerks of the Supreme Court Criminal Divisions and Criminal Courts in the State of New York and DCJS. A copy of this proposed Order was previously submitted to the Court. At this point, defendants refused to negotiate any of the Order's terms, stating that they intended to move the Court to reconsider its direction that *any* notice be sent out. On June 20, 2005, defendants submitted a seventeen-page letter to the Court arguing that the Court lacked authority to grant injunctive relief against them.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Scheindlin
Page 3
June 24, 2005

    In light of the admissions of their co-defendants that the Statute is unconstitutional, "void," and unenforceable, the Court Administrator Defendants and Parker's recalcitrant position thus far in this litigation is difficult to fathom. First of all, *defendant Parker is not a judge*; he is the Commissioner of a state agency, and thus none of defendants' arguments apply to him. Second, and contrary to the passionate litany of arguments about unwarranted federal court intervention into state judicial procedures, this case is not about telling state court judges what to do or how to rule in pending criminal cases. Plaintiff's causes of action, and plaintiff's claims for relief, solely implicate the administrative functions of defendants Kaye, Lippman and Parker, who are all sued in their official capacity for prospective injunctive relief and as necessary parties. Although the Court would never know it from the defendants' letter, defendants Kaye and Lippman share primary responsibility for the administrative arm of the New York State court system. Accordingly, these defendants' failings with respect to their administrative duties contributed to the violation of plaintiff's rights, and he is entitled to a remedy against them.

### A. Motion to Dismiss Standard

    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted only if "it appears beyond doubt that the [nonmovants] can prove no set of facts in support of [their] claims which would entitle [them] to relief." Weixel v. Board of Educ. of New York, 287 F.3d 138, 145 (2d Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The task of the court in ruling on a motion to dismiss is "merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quotation omitted). When deciding a motion to dismiss, courts must accept all factual allegations as true, and draw all reasonable inferences in the nonmovants' favor. See Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)).

### II. Allegations Against State Defendants Kaye, Lippman and Parker

    Plaintiff's Complaint, the allegations of which must be accepted as true at this stage in the proceedings, alleges a pattern of conduct by the Court Administrators and Parker that contributed in concrete ways to the violation of Mr. Wise's constitutional right to beg peacefully on the streets of New York, and chilled his ability to engage in this protected conduct.

### A.  Duties of State Defendants

As set forth in the Complaint, under New York State law, the state defendants have a number of constitutional and statutory duties that establish their shared responsibility for the constitutional violations alleged in this case.

Defendants Kaye and Lippman, as the Chief Judge of the State of New York and the Chief Administrator ("Court Administrators") of the New York Courts, are charged with the administration and operation of the Unified Court System and the Office of Court Administration ("OCA") (the administrative arm of the courts) pursuant to Article VI, §§ 28 & 30 of the New York State Constitution and §§ 210, 211, and 212 of the New York State Judiciary Law.

Defendant Kaye is responsible for establishing and enforcing the administrative policies of the Unified Court System, including the Supreme Court of the State of New York and the New York City Criminal Court, and for the courts' compliance with law.[2] N.Y.S. Const. Art. VI, § 28; N.Y. Jud. L. §§ 210 & 211; Compl. ¶ 21. Defendant Lippman is responsible, on behalf of the Chief Judge, for supervising the administration and operation of the Unified Court System. N.Y.S. Const. Art. VI, §§ 28 & 30; N.Y. Jud. L. § 212; Compl. ¶ 22. Together, the Court Administrators are responsible for a wide range of administrative duties, including establishing rules and orders regulating practice and procedure in the courts; personnel practices and decisions affecting nonjudicial personnel; establishing administrative methods and systems of the Unified Court System; educating and training judicial and non-judicial personnel; promulgating rules of conduct for judges and justices; and the form, content, maintenance, and disposition of court records. See N.Y. Jud. Law §§ 211 & 212; 22 N.Y.C.R.R. § 80.1.

Defendant Parker is the Director of Criminal Justice and Commissioner of DCJS. As such, defendant Parker is the chief executive officer of and in sole charge of the administration of the division, with full rulemaking authority. N.Y. Exec. L. § 836. Defendant Parker is responsible for maintaining the state's criminal history fingerprint files, collecting and analyzing statewide crime data, and providing training and legal guidance to law enforcement and prosecutors in the state. N.Y. Exec. L., Art. 35; Compl. ¶ 24. The Commissioner maintains, through electronic data processing, a central data facility that includes information such as criminal record, fingerprints, and photographs. He receives, processes, and files fingerprints, photographs, and other descriptive data for the purpose of establishing identity and previous criminal record. N.Y. Exec. Law § 837. The Commissioner sets standards for the taking of fingerprints and the submission of available information concerning any arrested person or defendant and the facts and circumstances of crime charged. N.Y. Crim. Proc. Law § 160.10 et

---

[2] Defendant Kaye is the Chief Judge of the State of New York, Chief Judicial Officer of the Unified Court System, and Chair of the Administrative Board of the New York Courts. Defendant Lippman is the Chief Administrator and Chief Administrative Judge of the Unified Court System of the State of New York.

seq. Significantly, the Commissioner of DCJS is the proper party in any action to correct a criminal history maintained in DCJS files. See Rodriguez v. Johnson, 4 A.D.3d 216, 772 N.Y.S.2d 264 (1st Dept. 2004).

### B. Challenged Actions by Court Administrator Defendants and Parker

At all relevant times, the Court Administrators were responsible for the management and administration of the Unified Court System and OCA, including decisions regarding supervision, training, and discipline of judges, justices, court clerks and other court employees employed therein, and the maintenance and dissemination of court records. Defendant Parker had analogous authority over DCJS.

As a result of the formal and informal procedures and practices of the Court Administrators, Parker, and their respective employees, citizens arrested and charged with P.L. § 240.35(1) have been and continue to be denied their constitutional rights. This denial is the result of the combined effect of a number of rules and practices. For the Court Administrators, these failures include, but are not limited to, the maintenance and public dissemination of court records related to the prosecution of violations of this unconstitutional statute; the collection of bail, fines, and surcharges based on charges of violations of the Statute; and the failure to train judicial and nonjudicial personnel regarding the status of the law concerning the Statute. Compl. ¶ 108. For Parker, these failures include, but are not limited to, the acceptance and processing of fingerprint inquiries for arrests and summonses charging individuals with violations of P.L. § 240.35(1); the maintenance and dissemination of records related to the prosecution of violations of this void statute; and the failure to train DCJS, law enforcement, and prosecutorial personnel not to enforce this void statute. Compl. ¶ 109.

Plaintiff alleges that the Court Administrators and Parker receive regular reports that for years documented, and continue to document, the unconstitutional arrests, summonses, prosecutions, convictions, fines, surcharges, and warrants complained of here. Compl. ¶ 110; see also N.Y. Exec. L. §§ 837 & 837-b. Accordingly, the Court Administrators and Parker knew or should have known that these actions were unconstitutional, caused the deprivation of citizens' constitutional rights, and had a substantial chilling effect on First Amendment activity. As state officials, at all relevant times the state defendants had a constitutional and legal duty to uphold the Constitution of the United States and acknowledge the supremacy of federal courts on matters of federal constitutional law. U.S. Const. Art. VI.

The Court Administrators' and Parker's failure to establish and enforce procedures for court and DCJS employees to ensure that they do not participate in the violation of citizen's established constitutional right to beg peacefully has, moreover, been a substantial factor in the enforcement of the Statute and a proximate cause of the constitutional violations alleged in the Complaint.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Scheindlin
Page 6
June 24, 2005

### III. The Court Administrator Defendants and Parker Are Necessary Parties

The Court need not reach any of the arguments set forth below, with respect to the existence of justiciable controversy or defendants' status as proper parties under 42 U.S.C. § 1983, because plaintiff also names the Court Administrators and Parker as necessary parties under Fed. R. Civ. P. 19(a)(1). See Complaint ¶¶ 21, 22, 24 (defendants Kaye, Lippman and Parker sued as indispensable parties whose "presence is necessary to provide full and complete relief to plaintiffs for the City defendants' violation of plaintiffs' rights").[3] The Federal Rules of Civil Procedure provide that: "[a] person...shall be joined as a party in the action if . . in the person's absence complete relief cannot be accorded among those already parties . . ." Fed. R. Civ. P. 19(a). Accordingly, these defendants should not be dismissed because they are necessary parties, and in their absence, plaintiffs may be deprived of complete relief.

The fundamental consideration in assessing whether the defendant are necessary parties under Rule 19(a)(1) is whether, in the person's absence, the court would be obliged to grant partial or hollow, rather than complete relief to the parties before the court. See Fair Housing Devel. Fund Corp. v. Burke, 55 F.R.D. 414, 418 (E.D.N.Y.1973). In this case, plaintiff seeks ultimate relief that may only accorded by the Court Administrators and Parker, including: a system for tracking all arrests or charges for P.L. § 240.35(1) in a contemporaneous manner so that any arrest or charge can be immediately terminated; reprogramming of databases including the OCA Criminal Records Information Management System ("CRIMS") and summonses databases, and the DCJS fingerprint inquiry and criminal history databases, to reject P.L. § 240.35(1) as a valid charge and generate an error report; changes to OCA and DCJS policies and procedures regarding the Statute; destruction of all mug shots (or other photographs), fingerprints, and all paper and electronic data or files referencing a P.L. § 240.35(1) arrest, charge, prosecution or conviction; expungement of convictions and/or warrants contained in any criminal records concerning violations of the Statute; and vacature and expungement of all outstanding warrants concerning violations of P.L. § 240.35(1).

The Court Administrators and Parker's presence is plainly necessary to obtain this relief.[4] See e.g., Westchester Disabled On the Move, Inc. v. County of Westchester, 346 F.Supp.2d 473 (S.D.N.Y. 2004) (local municipalities were necessary parties in action brought by advocacy groups for disabled against county elections officials alleging that polling places within county did not comply with ADA or state law). In their absence, plaintiff would be relegated to partial or hollow relief. Ultimately, it is the Court Administrators and Parker who are authorized

---

[3] These paragraphs in the complaint intend to invoke Rule 19(a)(1) and to that extent should read "necessary" parties, and not "indispensable" parties. This typo will be corrected upon any amendment of the complaint.

[4] Indeed, the absence of the Court Administrators and Parker, plaintiffs are left in a Catch-22 position whereby the City Defendants may argue that plaintiffs have failed to join necessary parties to obtain the relief sought.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Scheindlin
Page 7
June 24, 2005

by law, for example, to take steps to remove these void convictions from the publicly available databases.

In Kraebel v. New York City Dept. of Housing Preservation and Development, landlords challenged lengthy delays in processing their applications for cash reimbursements under a joint state and city housing program benefitting low-income senior citizens. 1994 WL 132239 (April 14, 1994 S.D.N.Y.). The court found that the Commissioner of DHCR was a necessary party under Rule 19(a)(1), in whose absence complete relief could not be accorded among the present parties. Specifically, if the DHCR Commissioner was not a party, the injunctive relief issued by the Court would not fully remedy the unconstitutional procedures challenged by the plaintiffs. This is very similar to the instant case, wherein, absent the Court Administrators and Parker, the unconstitutional practices will remain only half-remedied because, to take only one example, publicly available databases and fingerprint registries will continue to document the unconstitutional charges.[5]

While Rule 19 is more typically used defensively, as a mechanism through which to seek a dismissal for failure to join a necessary party, the Rule on its face permits plaintiff to name an entity as a defendant as a "necessary party" for relief from the outset. At this juncture, the Court Administrators and Parker are necessary parties for complete relief to plaintiff, and accordingly, they should not be dismissed from the case.

### IV.    A Justiciable Case or Controversy Exists between Plaintiff and these Defendants

Defendants argue that plaintiff Eddie Wise lacks standing pursuant to Article III against them because "[p]laintiff cannot fairly allege that any State defendant has taken an adversarial position to him." (AAG Letter at 6.) In fact, a justiciable case or controversy exists between plaintiff and each of these defendants. Plaintiff can establish: (1) that he has suffered a personal injury or has demonstrated a threat of injury, i.e. an "injury in fact"; (2) the injury is traceable to the challenged action; and (3) the injury is likely to be redressed by the relief sought. Northeastern Fla. Chapter of the Associated Gen. Contractors v. Jacksonville, 508 U.S. 656, 663-664 (1983).

Plaintiff Eddie Wise alleges that between 2002 and 2005, he was convicted more than seventeen times for violating a void criminal statute. On each of the seventeen occasions that he was arrested and convicted under the Statute, the State defendants *acting in their administrative functions*, took adversarial actions against him, including:

---

[5]That it may be necessary to enjoin a state judge, albeit in this case only with respect to their administrative functions, in order to ensure full relief to the parties in a lawsuit is explicitly recognized in a case relied upon by the defendants. In Re Justices of Supreme Court, 695 F.2d 17, 22 (1st Cir. 1982) ("[i]n still other suits, it is arguably necessary to enjoin a judge to ensure full relief to the parties.")

- Defendants processed fingerprint inquiries for Mr. Wise on a void and unconstitutional charge that the NYPD was enjoined from enforcing.
- Defendants actively maintain and disseminate publicly available court files and computer databases that report that plaintiff has multiple convictions under this void statute, and these records continue to be available and are maintained by defendants.
- Defendants failed to train their employees, including judges, clerks and DCJS personnel, that the Statute was either void, or under these defendants' preferred formulation, called persuasively into question by an injunction and ruling from the Second Circuit. Plaintiff's multiple convictions are in part traceable to the fact that clerks, judges and court personnel quite literally did not know what the law was, or what were their obligations when faced with a charge under this Statute.
- Defendants collected fines and fees from plaintiff stemming from his sanctions for violations of the Statute.

Accordingly, plaintiff sufficiently alleges that his injury is traceable to the challenged actions by these defendants.

Defendants rely primarily upon a subset of the Article III "case or controversy" requirement, that parties to an action must have adverse legal interests. (AAG Letter at 6-7.) Critical to this inquiry, however, as demonstrated by each of the cases defendants rely upon, is whether the defendant is a state judge acting in his or her judicial capacity. As neutral arbiters, judges sued in this capacity may lack the personal or institutional stake necessary to establish adversity *when asked to rule upon a plaintiff's claim that a given statute is unconstitutional.* See, e.g., Brandon E. v. Reynolds, 201 F.3d 194, 199 (3d Cir. 2000). Defendants, however, fundamentally misunderstand the nature of plaintiff's complaint. First, plaintiff does not seek to challenge the constitutionality of any statute. Indeed, the Second Circuit long ago declared the law in question, P.L. § 240.35(1), unconstitutional, void, and unenforceable. See Loper. Instead, plaintiff seeks to halt the continued violation of his clearly established right to beg peacefully that results from defendants' lawless and repeated enforcement of the void Statute. More important, see infra at Section V, Mr. Wise's claims do not concern the Court Administrators in their adjudicative capacities, but rather complains of the injuries flowing from their administrative actions.

All of the cases relied upon by defendants are therefore readily distinguishable, but their reliance on Miller v. Silbermann is particularly misplaced. 951 F. Supp. 485, 489 (S.D.N.Y. 1997). In that case, the court held that although the landlords' class action complaint "refers to overall patterns of illegal and unconstitutional conduct on the part of most of the judges, clerks, and administrators of the Housing Court . . . *nowhere does the amended complaint assert how any individual plaintiff has been personally injured.*" Id. Accordingly, the court found that plaintiffs' allegations of injury were too speculative. Rather than the somewhat

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Scheindlin
Page 9
June 24, 2005

tortured analysis proffered by defendants, the Miller court correctly analyzed plaintiffs' allegations against the judicial administrative defendants as part of the line of cases dealing with "systematic misconduct by local officials." Id. at 490. In any event, contrary to Miller, plaintiff's pleading is replete with specific allegations regarding how these defendants' actions and inactions contributed to plaintiff's actual injuries, as well as of a widespread practice involving hundreds of incidents.

The other case that defendants rely heavily upon, O'Shea v. Littleton, 414 U.S. 488, 493 (1974) only undercuts their own arguments. In O'Shea, the Supreme Court declared nonjusticiable a suit contending that defendants, a magistrate and judge, racially discriminated against people in setting bail and imposing sentences. The Court observed that "[n]one of the named plaintiffs is identified as himself having suffered any injury in the manner specified." Id. at 495. O'Shea has no application here, where named plaintiff Eddie Wise was injured on at least seventeen occasions that are identified by date, in precisely the matter complained of.

Similarly, the facts in Mendez v. Heller are in every important respect polar opposite to the facts in this case. 530 F.2d 457 (2d Cir. 1976). In Mendez, *the plaintiff had not yet made an attempt to secure a divorce when she brought suit* against various state officials seeking to challenge the New York durational residency requirements for divorce actions. Given the hypothetical nature of her complaint that "if she sued for divorce, her complaint would be rejected pro forma," the court, correctly, was "unwilling, nor are we constitutionally able, to speculate that this would be the response of the State courts." Id. at 459. In stark contrast, this Court is not being asked to speculate as to the response of the Court Administrators and Parker to the constitutionally invalid charges brought against plaintiff. On at least seventeen occasions, the Court Administrator Defendants and Parker and their employees acted against plaintiff based on these charges against him. Thus the case is readily distinguishable. See also Rhodes v. Laurino, 601 F.2d 1239 (2d Cir. 1979) (finding case is not yet ripe because only law assistant, and not Surrogate's Court itself, had made adverse determination, and directing appellant to re-file his petition in Surrogate's Court).

The final case relied upon by defendants, In Re Justices of Supreme Court, 695 F.2d 17, 22 (1st Cir. 1982), actually supports plaintiff's contention that a live and justiciable controversy exists between him and these defendants. The First Circuit found that the justices of the Puerto Rican Supreme Court possessed no "adverse legal interests" because the justices' "only function" concerning the challenged statutes was "*to act as neutral adjudicators rather than as administrators, enforcers and advocates.*" Id. at 21. Here, defendants did act as administrators and enforcers with respect to the challenged unconstitutional Statute. *These allegations must be taken as true at the stage of a motion to dismiss.* Thus, under the First Circuit's analysis, plaintiff's case against these defendants must proceed.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Scheindlin
Page 10
June 24, 2005

### V. Plaintiff States a Claim Against these Defendants Under 42 U.S.C. 1983

Defendants wrongly contend that the claims enumerated above should be dismissed against the Court Administrators because the allegations and "relief sought" only address defendants' judicial functions. (AAG Letter at 9.) In reality, the Complaint explicitly names the Court Administrators in their administrative capacity, alleges liability for their administrative policies and practices, and seeks relief narrowly tailored to those non-judicial functions. Notably, defendants do not assert this argument on behalf of Parker, and therefore concede that the Complaint states a claim against Parker under 42 U.S.C. § 1983.

#### A. Judicial Immunity is Unavailable

In asserting that plaintiff fails to state a § 1983 claim, the Court Administrators attempt to invoke judicial immunity. Judicial immunity, when applicable, bars claims for damages, see Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999), and claims for injunctive relief "unless a declaratory decree was violated or declaratory relief was unavailable, see id.; 42 U.S.C. § 1983 (amended in 1996). It does not bar claims for declaratory relief. See Pulliam v. Allen, 466 U.S. 522 (1984). The proponent of a claim to absolute, or judicial, immunity bears the burden of showing that the immunity is justified for the function in question. See Antoine v. Byers & Anderson, 508 U.S. 429, 432 (1993); Forrester v. White, 484 U.S. 219, 224 (1988).

The touchstone of judicial immunity is whether the alleged actions were taken in the defendants' "judicial capacity." See Antoine, 508 U.S. at 436-37 (holding that the "touchstone for the doctrine's applicability has been performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights") (citations omitted). It is well established that a judge is not immune from liability for non-judicial or administrative actions. See, e.g., Mireless v. Waco, 502 U.S. 9, 11 (1991). Whether an act by a judge is a judicial one relates to the nature and function of the act itself. See Stump v. Sparkman, 435 U.S. 349, 362 (1978). Care must be taken to distinguish between "truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges." Forrester, 484 U.S. at 227. Judicial immunity does not obtain if the action in question is not judicial in nature, "as when the judge performs an administrative, legislative, or executive act." Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2005). The "paradigmatic" judicial act is the "resolution of a dispute between parties who have invoked the jurisdiction of the court." Id. (quoting Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994)). By contrast, "any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one." Id.

The Supreme Court has squarely held that "administrative decisions, even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Scheindlin
Page 11
June 24, 2005

acts." Forrester v. White, 484 U.S. at 228.[6] In Forrester, the Supreme Court found that a judge's administrative acts, including those involved in "supervising court employees and overseeing the efficient operation of a court," are not themselves judicial or adjudicative. Id. These kinds of acts – supervision of employees, and oversight of the functioning of the courts – are precisely the conduct that plaintiff challenges in this case. See also Collins v. Lippman, 2005 WL 1367295 04-CV-3215 (E.D.N.Y. June 8, 2005) ("Lippman is sued for actions taken as 'Chief Administrative Judge for the New York City Office of Court Administration.' . . . This appears to be an administrative function and, therefore, beyond the scope of judicial immunity")

In this case, plaintiff sues the Court Administrators, in their official capacities as administrators, for prospective declaratory and injunctive relief only. Plaintiff does not challenge any adjudicative acts by defendants, nor acts taken in their judicial capacity. Plaintiff instead challenges the non-judicial, administrative policies and practices of the Court Administrators. Plaintiff alleges that as the head administrators of the Unified Court System and OCA, defendants knew or should have known that their employees were participating in the enforcement of P.L. 240.35(1), making and maintaining records of this enforcement, publicly disseminating these records, and collecting fees from the enforcement. Despite this knowledge, the Court Administrators failed to train, supervise, or discipline their employees concerning their obligation not to violate citizens' right to beg peacefully. The obligation not to infringe upon citizens' constitutional right to beg peacefully was clearly established by the Second Circuit in 1993, yet these defendants took no action. These actions and administrative failures amounted to a deliberate indifference to plaintiff's rights, and contributed proximately to plaintiff's constitutional injuries, including a chilling of his protected First Amendment activities.

In no way does plaintiff attempt to state a claim for the adjudicative acts of individual judges.[7] Numerous cases have characterized actions similar to those above as non-judicial. See, e.g., Antoine, 508 U.S. at 436 (maintenance of court records by stenographer); Forrester, 484 U.S. at 228 (supervision of court employees); Mendez v. Heller, 530 F.2d 457, 460 (2d Cir. 1976) (collection of fees); Collins v. Lippman, 2005 WL 1367295 at *3, 04-CV-3215 (E.D.N.Y. June 8, 2005) (maintenance of court records).

Under New York law, the Chief Administrator can be either a judge or non-judicial officer. The statutory powers and duties are the same regardless – the only difference is

---

[6] "In applying absolute immunity for judges . . . the focus is on the function performed, rather than the title possessed. For example, judges have absolute immunity for their judicial functions, but not when they act in an administrative or executive capacity." See Erwin Chermerinsky, Federal Jurisdiction § 8.6 at p. 464.

[7] The complaint alleges numerous instances of such conduct only as evidence of the underlying pattern of violations of Mr. Wise's rights that underscores the administrative failures, such as the failure to train.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Scheindlin
Page 12
June 24, 2005

the title.[8] See N.Y. Jud. L. § 210(3). Accordingly, the fact that Lippman, the Chief Administrator, happens to be a judge, cannot transform the administrative functions that he performs as Chief Administrator into judicial acts. As the Supreme Court has warned, such a conclusion "would lift form over substance." Forrester, 484 U.S. at 230.

The Court Administrators also argue that the relief plaintiff seeks cannot be effectuated in their administrative capacity. (AAG Letter at 10.) Obviously, the Court Administrators cannot make decisions for judges adjudicating individual cases, direct certain adjudicative outcomes, or overrule individual decisions. That is not what plaintiff seeks. Instead, plaintiff asks that the Court Administrators, as chiefs of their agency, at a minimum inform and train their employees on the status of constitutional law concerning the right to beg peacefully. They should also establish record-keeping procedures that track infringements of this right so that relevant actors can take appropriate action.

### B. The Court Administrators and Parker's Duty To Intervene

The Court Administrators and Parker contend that they had no duty to protect Mr. Wise's clearly established constitutional right to beg peacefully on public streets. In sharp contrast, the City Defendants have now essentially conceded that on multiple occasions since 2002, they wrongfully arrested plaintiff Wise in violation of the federal court's injunction, and repeatedly prosecuted him for violations of a void statute. Plaintiff submits that a cause of action under 42 U.S.C. § 1983 properly lies against the Court Administrators and Parker for their failure to act, and their participation in and acquiescence to these constitutional violations. At a bare minimum, discovery must be conducted to determine their knowledge of these practices prior to dismissal of the complaint against them.

Courts have found that a state actor's failure to intercede and/or refusal to intervene in an ongoing course of unconstitutional conduct may constitute sufficient participation in the unconstitutional conduct to support a finding of liability. See e.g. Gagnon v. Ball, 696 F.2d 17, 21 (2d Cir. 1982) (false arrest). For example, in Gagnon, the non-arresting officer was liable for the false arrest that he stood by and permitted to occur, even where the defendant did not actually himself effectuate the arrest. See id. Similarly, a law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers. See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) (excessive force). In short, government officials may be held liable under Section 1983 for a failure to do what is required as well as overt activity which is unlawful and harmful. Doe v. New York City Department of Social Services, 649 F.2d 134, 141 (2d Cir. 1981); Duchesne v. Sugarman, 566 F.2d 817, 832 (2d Cir. 1977) ("where conduct of the supervisory authority is

---

[8] The Chief Administrator is appointed by the Chief Judge pursuant to Article VI, § 28 of the New York State Constitution and N.Y. Jud. Law § 210(3). If held by a judge, the position is known as the Chief Administrative Judge. Id.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Scheindlin
Page 13
June 24, 2005

directly related to the denial of a constitutional right, it is not to be distinguished, as a matter of causation, upon whether it was action or inaction."); Comer v. Cisneros, 37 F.2d 817, 832 (2d Cir. 1977) (observing that if commissioner of New York's Division of Housing and Community Renewal "did have authority to intervene, and he knew about the discriminatory practices in the tenant selection process, then he could liable under 42 U.S.C. 1983.")

In this case, plaintiff alleges that the Court Administrators and Parker failed to intercede as OCA and DCJS employees, for example, processed fingerprint inquiries for hundreds of people wrongfully arrested under this void Statute, and actively maintain arrest, charge, conviction, sentence, bail, fine and surcharge records, in court files and computer data, although they had knowledge that such arrests suffered from constitutional infirmities. For all of these reasons, these defendants are proper parties to this suit brought pursuant to 42 U.S.C. § 1983 for vindication of plaintiff's constitutional rights.

## VI. Conclusion

Defendants suggest that state judges are not bound by the Second Circuit's decision in Loper v. NYPD, et al., 999 F.2d 699 (2d Cir. 1993) and that state judges may independently determine the constitutionality of P.L. § 240.35(1). Essentially, the state defendants claim that it would be constitutionally legitimate for a state judge to incarcerate a citizen for peacefully begging, thirteen years after that practice was definitively rejected by the Court of Appeals.[9] Of course, because none of the defendants are sued in any judicial capacity, this legal argument is irrelevant to the matters pending before the Court. Here, the Court Administrators, acting in their non-judicial functions, occupy the same status as any other state official. The constitutionality of the conduct of all state actors is defined by clearly established federal law. In this case, that law is defined by Loper. The state defendants do not contest this rule as to Parker, a state official charged with administrating DCJS. It is no different with the Court Administrators Kaye and Lippman acting in their administrative capacities. For example, defendants Kaye and Lippman could not argue that when terminating a court employee, a judge acting in his or her administrative capacity could "independently determine" to ignore the clearly established law of the Second Circuit.

For the foregoing reasons, plaintiff Eddie Wise respectfully submits that defendants Kaye, Lippman and Parker should not be dismissed from this case. The Court Administrators and Parker are necessary parties to this action, in whose absence complete relief may not be accorded to plaintiff. In addition, a live and justiciable controversy exists between these defendants and plaintiff, and each of them is a proper party to suit under 42 U.S.C. § 1983.

---

[9] Notably, the Bronx District Attorney, the only state official in Bronx County empowered to bring criminal prosecutions, has stipulated that the statute is void, unconstitutional, and unenforceable.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Scheindlin
Page 14
June 24, 2005

                    Very truly yours,

                    EMERY CELLI BRINCKERHOFF
                    & ABADY LLP

                    By: _/s/ Katherine Rosenfeld_

                    Katherine Rosenfeld (KR 8525)
                    Matthew D. Brinckerhoff (MB 3552)

                    THE BRONX DEFENDERS
                    J. McGregor Smyth, Jr. (JS 9995)

                    *Attorneys for Plaintiff Eddie Wise*

cc:    Rachel A. Seligman, Assistant Corporation Counsel (by hand)
        Monica Connell, Assistant Attorney General (by hand)