# EXHIBIT
# E

## EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
ILANN M. MAAZEL
ERIC HECKER
SARAH NETBURN
MARIANN MEIER WANG
KRISTIN COLLINS
KATHERINE ROSENFELD
O. ANDREW F. WILSON

ATTORNEYS AT LAW
545 MADISON AVENUE
NEW YORK, NEW YORK 10022

TELEPHONE
(212) 763-5000
TELECOPIER
(212) 763-5001
E-MAIL
mail@ecbalaw.com

June 24, 2005

*By hand*

Hon. Shira A. Scheindlin
U.S. District Court for the Southern
District of New York
500 Pearl Street
New York, NY 10007

    Re:    Eddie Wise v. Raymond W. Kelly, et al., 05 Civ. 5442 (SAS)

Dear Judge Scheindlin,

    Plaintiff submits this letter in response to defendants Kaye, Lippman and Parker's opposition to plaintiff's request that the Court order these defendants to disseminate an informational Notice to their employees regarding the status of New York Penal Law § 240.35(1) ("the Statute"). Despite defendants' 17-page digression into various federalism and abstention doctrines, the issue before this Court is discrete and straightforward: may this Court order these state officials to issue an informational notice to appropriate personnel within their respective agencies? Plaintiff submits that the answer to this question is unequivocally yes.

    The police and prosecutors have now been compelled to withdraw and retract prosecutions and warrants under the unconstitutional Statute. There is no legitimate reason to withhold systematic and clear notice from the court employees who on a daily basis will be called upon to process these requests and are directly impacted by them. Such notice will aid the orderly conduct of this process. In fact, rather than oppose a notice, these defendants ought to be promulgating procedures for their own employees with respect to how to proceed with charges under the Statute in light of this case.

    Plaintiff's uncontroversial request that the defendants send out an informational notice to their employees requires these defendants to take a common sense and extremely modest step to prevent the further violation of plaintiff's clearly established constitutional right to peacefully beg. It does not, by any stretch of the imagination, interject the federal court into the adjudicative process of the state courts, or constitute monitoring of the state courts by the federal court. Indeed, it is almost beyond belief that the defendants would not voluntarily undertake such a basic act as disseminating an informational notice, much less vigorously oppose

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Sheindlin
Page 2
June 24, 2005

such a request, in light of the record of widespread constitutional violations that has now come to light.

In any event, none of defendants' arguments about interference with the state judiciary by virtue of this proposed Notice have any merit. The defendants are sued as administrators. See Section V of Plaintiff's Letter to Court Opposing Dismissal of Court Administrators and Parker. This Court indisputably has authority to order appropriate prospective injunctive against state officials such as the defendants, as well as to take steps to enforce the prior federal court injunction issued in 1992. If anything, defendants' recalcitrant refusal to take action only confirms the pressing necessity for the requested relief. In addition, defendants' letter ignores defendant Parker and thus concedes the propriety of the relief as against him.

## *Because Defendants Kaye, Lippman and Parker Are Named As Administrators, Most of Defendant's Arguments Regarding Deference to State Judicial Authority Are Irrelevant*

Plaintiff requests that the State Defendants take the uncontroversial step of distributing an informational notice to their employees explaining that the Second Circuit held the Statute unconstitutional in 1992, and that the NYPD and prosecutors have now been directed to withdraw pending prosecutions and warrants. Notwithstanding defendants' hyperbolic letter, this relief could not be farther from requiring defendants to instruct a criminal court judge how to rule in a given case.

Indeed, while ignoring the allegations against defendant Parker, the State Defendants' letter appears to fundamentally mis-comprehend the allegations against defendants Kaye and Lippman ("the Court Administrator Defendants"). The Court Administrator Defendants are named in their official capacities for prospective relief only, and as necessary parties, whose presence is necessary to provide full and complete relief to plaintiffs for the City defendants' violation of plaintiffs' rights.[1]  In short, defendant are named as administrators of state agencies. Accordingly, plaintiff challenges a number of defendant's plainly administrative, non-judicial acts – the failure to train or discipline court employees; the acceptance and processing of fingerprinting inquiries for individuals charged with violations of the Statute, the maintenance and dissemination of databases and records; the collection of fees – that contributed to the violation of plaintiff's federal constitutional rights.

_____

[1]Notably, the State Defendants never address the fact that they are also named as necessary parties.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Sheindlin
Page 3
June 24, 2005

## *This Court Has Full Authority To Order The Defendants To Issue An Informational Notice*

At this juncture, plaintiff seeks extremely limited and wholly prospective injunctive relief against the Court Administrator Defendants – the dissemination of an informational notice – to prevent a continuing violation of federal law. In response, defendants take the extraordinary position that this Court lacks authority to enter *any order* directing them to do anything.[2] (See AAG Letter at 2.) This is flat out wrong. A state official acting in his official capacity may be sued in a federal forum to enjoin conduct that violates the federal Constitution. Dube v. State University of New York, 900 F.2d 587, 595 (2d Cir. 1990). This federal court of course has complete authority to order a state official, including a judge acting in his or her *administrative capacity*, to take certain actions, including to send notices within its own agency, in order to prevent the violation of federal constitutional rights.

It is simply beyond cavil that a federal court may order prospective injunctive relief against a state official. See U.S. v. City of Yonkers, 880 F. Supp. 212 (S.D.N.Y. 1989); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 fn.10 (1989); Milliken v. Bradley, 433 U.S. 267 (1977); Ex parte Young, 209 U.S. 123 (1908) (state officials who threaten to enforce an unconstitutional state statute may be enjoined by a federal court of equity).[3] Indeed, the Supreme Court itself has sanctioned a federal court's order to state officials to send out notices. See e.g. Quern v. Jordan, 440 U.S. 332 (1979) (affirming order of district court directing state officials to send explanatory notices to members of the plaintiff class regarding eligibility for benefits).

In a case closely on point, a district court granted a preliminary injunction ordering state judges to advise litigants appearing in court of their right to counsel in civil contempt proceedings in child support matters. See Lake v. Speziale, 580 F. Supp. 1318 (D.

---

[2]Although the defendants sometimes couch their objections to the requested relief as related to the specific terms of plaintiff's proposed Order, this argument is misleading. On June 13, 2005, plaintiff forwarded defendants a proposed Order in an attempt to negotiate terms acceptable to all parties. In response, defendants informed plaintiff that they opposed the entry of any order and thus negotiation would be futile. Thus, defendants' position is more accurately that any order is objectionable, not simply that certain word choices in the proposed Order are offensive to them.

[3]In addition to enjoining the head of OCA in his or her official capacity, a federal court may also enjoin OCA itself. See e.g. E.E.O.C. v. State of N.Y., N.Y.S Office of Court Administration, et al., 1989 WL 161523 (Dec. 26, 1989 S.D.N.Y.) (rev'd on unrelated grounds by 907 F.2d 316 (2d Cir. 1990) (court permanently enjoined defendants including New York State Office of Court Administration "from enforcing any provision of the New York State Constitution and laws" that would operate to disqualify state appellate judge from being considered for discretionary reappointment as a certificated retired justice).

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Sheindlin
Page 4
June 24, 2005

Conn. 1984). The Lake court properly distinguished its own injunction, requiring state court judges to initially inform an alleged contemnor of his or her right to counsel, from an injunction that would "require ongoing federal supervision of how the state judges acted." Id. at 1330. As the court pointed out, an injunction requiring that certain information be disseminated "would not effect *the conduct* of the state . . . proceedings," id. (emphasis in original), and posed none of the hazards that abstention doctrines exist to remedy. The court's central conclusion is powerfully applicable to the instant dispute:

> The proposed injunction leaves intact the authority of the Connecticut State Courts to punish persons for contempt. This important state interest relating to the administration of the state's judicial system is thus protected even if the injunction is to be granted. The change envisioned by the proposed injunction is only that the judge advise the alleged contemnor of the rights to counsel noted above and appoint counsel if an indigent alleged contemnor desires. This does not in any way impinge on the state's interest to conduct such contempt proceedings. What plaintiff attacks in this suit is the narrow admitted policy of the Superior Court Judges which is ancillary to the contempt proceeding itself

Id. at 1331-32.

Of course, a federal court ordering a state court judge to communicate particular information to a litigant over whom case he or she is presiding is far more intrusive than requiring an administrative official to send out an informational notice to court employees, who include clerks, data-entry employees and judges.

Similarly, in this case, plaintiff's proposed injunction requiring that a notice be disseminated has no effect on the conduct of any state proceeding. The only change under the injunction is a requirement that the Court Administrators and Parker advise their employees, in neutral terms, about the status of the Statute. Accordingly, this Court may provide the limited relief requested herein against the Court Administrator Defendants, who are in this case are sued in their official capacity, as chief administrators of the court system, and against Parker, who is simply the administrative head of a state agency, for injunctive relief. Annexed hereto at Exhibit A is a copy of the proposed Notice that plaintiff submits should be immediately disseminated by defendants.

### *Plaintiff Easily Meets the Standard for Temporary Injunctive Relief and A Notice Is Required to Prevent Further Violations of Plaintiff's Constitutional Rights*

Plaintiff can both establish imminent irreparable harm sufficient to justify preliminary injunctive relief, as well as a likelihood of success on the merits on his claims.

Case 1:05-cv-05442-SAS-THK Document 26-6 Filed 08/19/05 Page 6 of 12

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Sheindlin
Page 5
June 24, 2005

A.          **Irreparable Harm**

          The deprivation of plaintiff's right to beg peacefully constitutes the quintessential
irreparable harm. See Pl's Memo. Of Law In Support of Preliminary Relief dated June 8, 2005 at
pp. 4-7. The threat of future criminal proceedings impermissibly chills his exercise of this right,
and no amount of financial compensation can make him whole. Defendants do not contest this
aspect of plaintiff's claim. Defendants' argument is essentially that because the City Defendants
are now required to cease enforcement of the Statute, the problem is resolved and no order
against these defendants is now necessary. This argument must be rejected for a number of
reasons.

          First, in light of their record of illegal enforcement in violation of a federal court
order, not even the City Defendants seriously contested that any Stipulation entered into between
the parties regarding future enforcement would be court-ordered and carry the power of the
court's enforcement to back it up. Although the City Defendants must now cease enforcement of
the Statute, in light of the fact that they were similarly enjoined for the last thirteen years but
continued to make hundreds of arrests under it, plaintiff and the Court are entitled to treat these
representations with some skepticism. In light of defendants' past course of conduct, it is
certainly fair to say that plaintiff may face the threat of re-arrest or prosecution under the Statute
even despite the defendants' representations to the contrary. Thus, plaintiff requires that this
court order appropriate relief against all responsible parties in order to prevent the irreparable
harm to his First Amendment right to peacefully beg that has occurred to plaintiff over seventeen
times in the past three years.

          Contrary to the defendants' formulation, injunctive relief against these defendants
is perhaps more necessary given that the City Defendants' are now required to begin the process
of dismissing, expunging and vacating these unconstitutional charges. Without notice from the
Court Administrator Defendants, there is an unfortunately a serious possibility that this process
will be marred by further internal mis-steps and lack of information. In light of the proceedings
to be commenced to correct the wrongful enforcement proceedings under the Statute, there is
every reason in the world to inform court employees, including clerks and judges, about the
status of the Statute, and about what is scheduled to occur. If only in an exercise of its
jurisdiction to ensure that its own Order against the City Defendants is properly carried out, the
Court should order that a Notice be sent to court employees.

          In addition, plaintiff's initial submissions to the Court established that as recently
as April 11, 2005, a citizen Frank Scott was arrested for violating this Statute. When he was
presented for arraignment, the following colloquy took place:

          MS. HAMBLIN:        People recommend two days community service on a plea to the
                              docket:

W:\1393\1\KRR0429.WPD

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Sheindlin
Page 6
June 24, 2005

MR. BOWERS:     Your Honor, I ask you to dismiss this charge. My client is charged
with an unconstitutional count. Specifically, 240.35 sub-one
second circuit in Loper versus New York City Police Department,
999, it was a second circuit 1993 decision that found 240.35 sub-
one to be an unconstitutional charge. This is the third time that I
have seen someone charged with this in the last six months, second
time in a month. It is simply an unconstitutional charge.

THE COURT:     Counsel, at one o'clock in the morning at arraignments I'm not
going to go now, go the library, read the case, hear arguments, no.
I've read the case, but that was years ago.

I'm not going to adjudicate it now. You can come back and you
can make a motion. I don't know what the New York courts have
said about it. He is released on his recognizance.

(Bowers Declaration, Exhibit B at 2:5 - 2:23.)

Defendants' letter suggests that counsel's citation of Loper resulted in the charge
at issue above being dismissed. (See AAG Letter at 14.) While the charge was ultimately
dismissed, this dismissal only occurred months after the colloquy above. Mr. Scott was required
to return to court to defend himself on this unconstitutional charge, and had he failed to appear
for court, a warrant for his arrest based on the Statute would have issued. Thus, it is misleading
to suggest that the mere invocation of Loper resolved the situation described above. Mr. Scott's
arrest represents only one out of potentially hundreds or thousands under the Statute.

Therefore, this interchange establishes why plaintiff requires the requested relief:
a notice distributed to all judicial employees. In Mr. Scott's case, the state court explicitly
indicated that it was unable to make a ruling on the public defender's claims because of a lack of
up-to-date information about Loper's status. A notice disseminated to all judicial employees
could easily remedy this. Otherwise, other defendants who may be charged with the Statute, or,
in the most likely scenario, who may soon appear in courts or clerk's offices in connection with a
proceeding to dismiss or expunge such a charge, may still face judicial employees who remain
unaware of Loper case and its current status.

## B.    Likelihood of Success on The Merits and Fair Ground for Litigation

As set forth in plaintiff's original Memorandum of Law dated June 8, 2005 at pp. 7-8 and
plaintiff's Letter to Court Opposing Dismissal of Court Administrators and Parker, plaintiff has
established both a likelihood of success on the merits of his claim and, at the very least, a fair
ground for litigation.

In short, the Court Administrator and Parker played a role in the unconstitutional enforcement of the Statute against plaintiff. "It is well-settled that a state official may properly be made a party to a suit seeking to enjoin the enforcement of an allegedly unconstitutional act if that official plays some role in the enforcement of the act." Schulz v. Williams, 44 F.3d 48, 61 n. 13 (2d Cir.1994) (quotation marks and citation omitted); see also Ex parte Young, 209 U.S. 123, 157 (1908).

## *None of Defendants' Arguments About Federalism Have Any Merit*

Brandishing the doctrine of federalism, defendants' papers imply that an Order directing an informational notice impermissibly interferes in state court proceedings. Of course, nothing could be farther from the truth. Defendants' invocation of the Younger abstention doctrine is half-hearted at best. (See Letter to AAG at 7.) Younger simply has no bearing on this case. Younger generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question *ongoing* state proceedings. See Younger v. Harris, 401 U.S. 37, 43-44 (1971); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982); Doe v. Connecticut, 75 F.3d 81, 85 (2d Cir.1996). At this juncture, however, the request to send out an informational Notice does not involve or call into question an ongoing state proceedings. *Cf.* Bedrosian v. Mintz, 518 F.2d 396 (2d Cir. 1975) (injunction would disrupt the state criminal proceedings).[4]

Defendants' arguments about why this court should abstain from issuing an order to send out a notice rely heavily on Miller v. Silbermann, 951 F. Supp. 485, 489 (S.D.N.Y. 1997). In Miller, the plaintiff landlord class sought an injunction against state Housing Court officials, including judges, aimed at "controlling or preventing the occurrence of specific events that might take place" in the course of future trials, including by the appointment of a special master to assist the federal court in monitoring defendants' ongoing compliance with any orders issued to remedy the current injustices; and a permanent injunction requiring the Housing Court to conform its actions to federal and state law. In this case, plaintiff currently seeks an order directing that a single discrete act be performed that has no bearing on the manner on which any judge conducts trials, current or future – the dissemination of an informational notice. In Miller,

---

[4]In any event, despite the policy in favor of abstention, a federal court may nevertheless intervene in a state proceeding upon a showing of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." Id. at 54. In this case, both the bad faith and extraordinary circumstances doctrine would defeat any claim to abstention. Diamond D Const. Corp. v. McGowan, 282 F.3d 191 (2d Cir. 2002) (to invoke bad faith exception, federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive); Cullen v. Fliegner, 18 F.3d 96, 104 (2d Cir.1994) ("when the state proceeding is brought with no legitimate purpose this state interest in correcting its own mistakes dissipates, and along with it, the compelling need for federal deference.")

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Sheindlin
Page 8
June 24, 2005

the Court correctly identified the requested relief as intrusive because it would "undoubtedly necessitate the interruption of Housing Court proceedings by this Court in order to evaluate any allegations of non-compliance by defendants." In this case, by contrast, under no possible scenario could the one-time dissemination of an informational notice necessitate the interruption of any state court proceedings. Unlike situations such as Miller where a district court's ongoing surveillance of a state court's procedures was found to be intrusive and unmanageable, the requested informational notice works no such wrong.[5]

An order to a state administrator to send out an informational notice is in no way equivalent to establishing rules of practice for the state courts. The modest nature of the relief sought here, and the unique procedural posture of the case involving a thirteen-year period of violations of the federal court's injunction and judgment, distinguish this case from every case relied upon by the defendants. In particular, in Wallace v. Kern, 499 F.2d 1345 (2d Cir. 1974), the Second Circuit reversed Judge Weinstein's preliminary injunction requiring that felony defendants confined at the Brooklyn House of Detention be released on their own recognizance if not brought to trial within 45 days of their demand after six-month pretrial incarceration. In reversing the injunction, the Second Circuit held that Sixth Amendment does not require the state to bring a criminal defendant to trial within any specific time period. Thus, the flaw in the district court's approach was primarily legal and substantive. But, in any event, a wholesale release of all felony defendants from custody in the Brooklyn jails is obviously quite a different matter than directing court administrators to disseminate a one-page notice to court employees. Similarly, Knox v. Salinas, 193 F.3d 123 (2d Cir. 1999), is inapposite because it concerned a permanent injunction entered by the district court.

Defendants cannot articulate how sending out a one-page informational notice to court employees, in light of the unique facts of this case, including admissions by the NYPD and New York City District Attorneys that the statute is both unconstitutional and unenforceable, will prevent the State from effectuating its own substantive policies. Cf. Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975).

---

[5]The Court Administrator Defendants also object to being ordered to distribute a notice, "the content of which is directed by a federal judge." (AAG Ltr at 8.) This argument rings particularly hollow because defendants were given several opportunities to decide what the notice should say, first by the Court on June 10, 2005, and then by plaintiffs, on June 13, 2005, and for more than a week thereafter until plaintiff finally forwarded his own proposed Notice to the Court. The defendants had multiple opportunities to craft their own notice and declined to take them. It is perfectly equitable for the Court to now determine its content.

W:\1393\1\KRR0429.WPD

EMERY CELLI BRINCKERHOFF & ABADY LLP
Letter to Hon. Shira A. Sheindlin
Page 9
June 24, 2005

### *Conclusion*

By directing that an informational notice be sent out to court employees, this Court simply ensures that a common-sense remedy is in place. It does not "establish rules of practice for State Courts," "interfere with the state's judicial system," or any other such hyperbole. No one is dictating to the state judges how to rule when any motions and proceedings related to the Statute are brought before them. All plaintiff seeks is an informational Notice that is sent to all court and DCJS employees informing them of Loper and the agreements now entered into by other criminal justice actors regarding enforcement. Such a notice is now particularly required in order to prevent further violation of the rights of citizens who may soon appear in the courts and clerks' offices seeking relief from their unconstitutional convictions. For all of the foregoing reasons, plaintiff respectfully requests that the Court order the defendants to issue an informational Notice to their employees, such as the one proposed herein.

Very truly yours,

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: _____

Katherine Rosenfeld (KR 8525)
Matthew D. Brinckerhoff (MB 3552)

THE BRONX DEFENDERS
J. McGregor Smyth, Jr. (JS 9995)

*Attorneys for Plaintiff Eddie Wise*

cc:     Rachel A. Seligman, Assistant Corporation Counsel (by hand)
        Monica Connell, Assistant Attorney General (by hand)

W:\1393\1\KRR0429.WPD

OCA LETTERHEAD

To:     Supreme Court Criminal Terms and Divisions and Criminal Courts in the City of New York

From:  Chief Judith Kaye, Chief Administrative Judge Lippman

Date:   June 24, 2005

Re:     New York Penal Law § 240.35(1)

Please be advised as follows:

1.   We have recently become aware that arrests and prosecutions were made under this Statute although the NYPD was permanently enjoined from its enforcement.

2.   This Statute was declared unconstitutional by the United States Court of Appeals for the Second Circuit in Loper v. Brown, 999 F.2d 699 (2d Cir. 1993). At the time the statute was declared unconstitutional, the New York City Police Department was permanently enjoined from its enforcement.

3.   The New York City Police Department disseminated notice on June 10, 2005 to all its members that the NYPD are not to enforce the Statute.

4.   All District Attorneys in the City of New York were advised on June 16, 2005 that no new prosecutions were to be initiated any under this Statute; that any pending prosecutions should be dismissed; and that steps were to be taken to vacate any warrants related to the Statute. All District Attorneys were also required take steps to make their staff aware that the statute is unconstitutional and that enforcement of it is prohibited pursuant to a federal court order.

5.   Any questions concerning the Statute should be directed to:

OCA LETTERHEAD

To:     Supreme Court Criminal Terms and Divisions and Criminal Courts in the City of New York

From:   Chief Judith Kaye, Chief Administrative Judge Lippman

Date:   June 24, 2005

Re:     New York Penal Law § 240.35(1)

---

Please be advised as follows:

1.      We have recently become aware that arrests and prosecutions were made under this Statute although the NYPD was permanently enjoined from its enforcement.

2.      This Statute was declared unconstitutional by the United States Court of Appeals for the Second Circuit in Loper v. Brown, 999 F.2d 699 (2d Cir. 1993). At the time the statute was declared unconstitutional, the New York City Police Department was permanently enjoined from its enforcement.

3.      The New York City Police Department disseminated notice on June 10, 2005 to all its members that the NYPD are not to enforce the Statute.

4.      All District Attorneys in the City of New York were advised on June 16, 2005 that no new prosecutions were to be initiated any under this Statute; that any pending prosecutions should be dismissed; and that steps were to be taken to vacate any warrants related to the Statute. All District Attorneys were also required take steps to make their staff aware that the statute is unconstitutional and that enforcement of it is prohibited pursuant to a federal court order.

5.      Any questions concerning the Statute should be directed to: