UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

MICHAEL BROWN,                          :
                                        :
                    Plaintiff,          :      **MEMORANDUM OPINION**
                                        :         **AND ORDER**
         - against -                    :
                                        :      05 Civ. 5442 (SAS)
RAYMOND KELLY, et al.,                  :
                                        :
                    Defendants.         :
-------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

By letter dated April 6, 2007, plaintiff moves for a protective order,

pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, prohibiting further

discovery of the medical/psychiatric/disability records of putative class

representatives, in the above-captioned putative class action, on the ground that

such discovery serves no legitimate purpose and is being demanded solely to

annoy, embarrass and oppress the putative class representatives. Defendants filed

a response by letter dated April 10, 2007, and plaintiff responded by letter dated

April 12, 2007. Based on these submissions and my review of the citations

contained in these letters, plaintiff's motion is GRANTED.

The named and putative class plaintiffs seek to represent a class made

up of "all persons who have been or will be arrested, charged, or prosecuted for a

-1-

violation of P.L. § 240.35(1) in the State of New York from October 7, 1992 onward . . . ." [1]  This statute, which criminalized loitering in a public place for the purpose of begging, was declared unconstitutional in 1992.[2]  Despite this, there is no dispute that the New York City Police Department has continued to arrest people engaging in peaceful begging, and that these arrests continue to result in charges being brought by local prosecuting authorities.

The parties are now engaged in discovery with respect to the question of class certification.  Defendants demand that putative class representatives' medical records and other records reflecting any other disabilities (drug treatment records, social security records, etc.) be produced for two purposes. *First*, defendants assert that putative representatives' past histories of psychiatric illness and/or treatment (and drug use, if any) are relevant to the question of whether they are adequate to act in the capacity of class representatives. *Second*, defendants claim that plaintiff has put their psychiatric condition in issue by seeking damages for emotional distress.

Plaintiff, in turn, resists the demand for releases and records on both

---

[1]     *See* Memorandum of Law in Support of Plaintiff's Motion to Amend the Complaint and for Class Certification (filed Feb. 1, 2007), at 2.

[2]     *See Loper v. New York City Police Dep't,* 999 F.2d 699 (2d Cir. 1993).

-2-

grounds.  With respect to adequacy, plaintiff notes that the putative class

necessarily consists of "poor and homeless New Yorkers, who often rely on

panhandling for subsistence [and] will therefore include many mentally ill

individuals."[3]  Indeed, plaintiff cites a report from the Coalition for the Homeless,

which states that "as many as 75% of the homeless suffer from severe and

persistent mental illness."[4]  Plaintiff also notes that the putative class is not suing

for either the intentional or negligent infliction of emotional distress, but rather

seeks damages for the limited emotional distress caused by their unlawful arrests.

They do not allege that these arrests have caused them permanent or continuing

harm.  They have agreed not to call an expert at trial to testify to any emotional

injuries resulting from the arrests.  They describe their requested damages as

"garden-variety" claims for emotional distress.[5]

        Plaintiff is right in both of his arguments and accordingly, plaintiff's

motion for a protective order is granted.  While it is true that Rule 23(a)(4)

requires that "[t]he representative parties will fairly and adequately represent the

---

[3]        April 6, 2007 Letter from Katherine Rosenfeld, counsel to plaintiff, to
Rachel Seligman, counsel to defendants ("4/6/07 Rosenfeld Letter"), at 3.

[4]        Coalition for the Homeless, *State of the Homeless Report 2004*, at 22,
*available at* www.coalitionforthehomeless.org.

[5]        4/6/07 Rosenfeld Letter, at 5.

interests of the class," this rule cannot be rigidly applied.[6] As one court has noted,

"[i]f the courts prevent persons with questionable moral characters from acting as

class representatives, [classes of] prisoners, mental patients, juvenile offenders, or

others capable of socially deviant behavior could never . . . be certified. This is an

unacceptable result."[7] As this Court also noted in a previous decision, an inflexible

application of the adequacy requirement "runs counter to a principal objective of

the class action mechanism – to facilitate recovery for those least able to pursue an

---

[6]     Fed. R. Civ. P. 23(a)(4).

[7]     *Jane B. by Martin v. New York City Dep't of Soc. Servs.*, 117 F.R.D.
64, 71 (S.D.N.Y. 1987). *Accord Sparks v. Seltzer*, No. 05 Civ. 1061, 2005 WL
3116635 (E.D.N.Y. Nov. 22, 2005) (finding psychiatric patient at mental hospital
adequate to represent a class of patients challenging the constitutionality of
visitation practices); *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D.
194, 199 (E.D.N.Y. 2005) (finding mentally disabled residents of adult home
adequate as class representatives in disability discrimination suit); *Noble v. 93
Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004) (finding that representative
plaintiffs who had difficulty speaking or reading English, and who therefore might
have difficulty supervising class counsel, were nonetheless adequate to represent a
class of low-income kitchen workers); *Ingles v. City of New York*, No. 01 Civ.
8279, 2003 WL 402565 (S.D.N.Y. Feb. 20, 2003) (finding mentally ill inmate
adequate to represent a class of abused inmates); *Daniels v. City of New York*, 198
F.R.D. 409, 418 (S.D.N.Y. 2001) (rejecting attempt to disqualify putative class
representative based on his alleged "lack of mental  competence"); *Hirschfeld v.
Stone*, 193 F.R.D. 175 (S.D.N.Y. 2000) (finding incapacitated criminal defendants
confined to state psychiatric hospital adequate class representatives); *Monaco v.
Stone*, 187 F.R.D. 50 (E.D.N.Y. 1999) (approving class representative who was
involuntarily confined to state psychiatric hospital).

individual action."[8]  As a result, given the makeup of this putative class –

primarily homeless people panhandling for subsistence – the fact that individuals

have suffered from mental illness and/or drug addiction is not relevant to their

adequacy to act as class representatives.  Defendants have had the opportunity to

question each putative class representative with respect to their understanding of

this action, as well as their mental illnesses and current or prior drug use.  Poring

over their medical records is not going to add anything to the picture, which is

already quite clear.  Defendants have enough ammunition to attack adequacy on

these grounds, an attack that, given the case law cited below, is unlikely to

persuade the Court that these individuals cannot adequately represent the putative

class.[9]

Putative class representatives have not waived their patient-

psychotherapist privilege by bringing this action.  As noted earlier, they are not

seeking damages for permanent or long-lasting emotional distress arising from

these unlawful arrests.  Indeed, many, if not all of them, have conceded that they

---

[8]     *Noble*, 224 F.R.D. at 344.

[9]     Representation is adequate if there is no conflict of interest between
the named plaintiffs and the other class members and if named plaintiffs' attorneys
are qualified, experienced and capable.  *See Baffa v. Donaldson, Lufkin & Jenrette
Secs. Corp.,*, 222 F.3d 52, 60 (2d Cir. 2000).

have long suffered from psychiatric conditions (*e.g.* schizophrenia) unrelated to

these arrests.  They are only seeking emotional damages for the immediate distress

caused by an unlawful arrest.  Several courts have held that where a plaintiff seeks

damages for "garden-variety" emotional distress, the plaintiff has not put his

medical history in issue, nor has he waived his physician-patient privilege.[10]

Defendants cite many cases for the proposition that where a plaintiff seeks

damages for emotional distress he places his medical condition in issue and thus

waives his privilege with respect to his medical records evidencing treatment for

any mental condition or illness.[11]  While this is generally the rule, the cases relied

on by defendants are distinguishable.  In those cases, plaintiffs either voluntarily

waived their privilege, were suing defendants for either the intentional or

---

[10]     *See, e.g.*, *Greenberg v. Smolka*, No. 03 Civ. 8572, 2006 WL 1116521,
at *8 (S.D.N.Y. Apr. 27, 2006) (holding that "the fact that plaintiff is in treatment
for a condition unrelated to the distress that was triggered by the misconduct does
not, by itself, provide a basis for suggesting either that the treatment is in issue as
a result of the plaintiff's claim or that access to treatment records is in any sense
necessary or even significant for evaluating such a claim"); *Jessamy v. Ehren*, 153
F. Supp. 2d 398, 401 (S.D.N.Y. 2001) ("[M]any courts distinguish between
psychiatric injuries, such as PTSD, and 'garden variety' claims of emotional
distress."); *Ruhlmann v. Ulster County Dep't of Soc. Servs.*, 194 F.R.D. 445, 450
(N.D.N.Y. 2000) (holding that "a party does not put his or her emotional condition
in issue by merely seeking incidental, 'garden variety,' emotional distress
damages").

[11]     *See* April 10, 2007 Letter from Seligman to the Court, at 3-5.

-6-

negligent infliction of emotional distress, or were alleging that defendants'

misconduct caused them to seek treatment for an ongoing or permanent

mental/emotional condition.[12]  None of those circumstances are present here.  As a

result, this case is more akin to those cases in which courts have held that for a

garden variety claim of emotional distress resulting from the incident itself and

causing no long-term or lasting effect, there is no need to examine plaintiff's full

medical history or require a waiver of all physician-patient or psychotherapist-

patient confidentiality.  As the court noted in *Ruhlman v. Ulster County*

*Department of Social Services,* "the [psychotherapist-patient] privilege promotes

the important private interest in successful psychiatric treatment . . . . [and] serves

---

[12]      *See, e.g., Karl v. Asarco, Inc.,* 166 F.3d 1200 (2d Cir. 1998)
(affirming district court's finding that plaintiff waived his patient-psychotherapist
privilege by asserting a cause of action for intentional and negligent infliction of
emotional distress); *James v. Federal Reserve Bank,* No. 01 Civ. 1106, 2006 WL
1229109, at *1 (E.D.N.Y. May 8, 2006) (holding that plaintiff who alleged that
defendants *caused* physical and emotional injuries that had lasted twenty years,
and who wished to introduce evidence in court concerning her mental injuries, had
placed her mental health at issue and had to release her medical records); *Cuoco v.
U.S. Bureau of Prisons,* No. 98 Civ. 9009, 2003 WL 1618530, at *3 (S.D.N.Y.
Mar. 27, 2003) (finding that plaintiff, who asserted "more than a mere 'garden
variety' claim of emotional distress," had waived her privilege, and holding that
"where the emotional harm alleged is at the heart of the litigation, plaintiff waives
her privilege"); *McKenna v. Cruz,* No. 98 Civ. 1853, 1998 WL 809533 (S.D.N.Y.
Nov. 19, 1998) (holding that plaintiff who seeks recovery for "serious and
possible permanent emotional injuries [and] grievous mental and emotional
distress" waives his patient-therapist privilege).

the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem."[13]  This could not be more true here.  For the good of all residents of this City, these particular individuals should not be discouraged from obtaining the medical care and benefits they so badly need.  And they certainly should not be discouraged from doing so as a result of their participation in a lawsuit necessitated by the City's abject failure to abide by the terms of a 1993 decision of the United States Court of Appeals for the Second Circuit.

Plaintiff's motion for a protective order is GRANTED.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 16, 2007

---

[13]      194 F.R.D. at 451 (citations omitted).

-8-

## - Appearances -

*For Plaintiff:*

Katherine Rosenfeld, Esq.
Emery Celli Brinckerhoff & Abady, LLP
75 Rockefeller Plaza
New York, New York 10019
(212) 763-5000

*For Defendants:*

Rachel Seligman
Assistant Corporation Counsel
100 Church Street
New York, New York 10007
(212) 788-0784