UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

MICHAEL BROWN, on Behalf of Himself and
Others Similarly Situated,

                                                05 CV 5442 (SAS)(THK)

                              Plaintiffs,

              -against-

RAYMOND KELLY, ET AL.,

                              Defendants.

------------------------------------------------------------------- x


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 2

POINT I

        THE PLAINTIFF CLASS DEFINITIONS ARE
        OVERBROAD ................................................................................................ 3

POINT II

        PLAINTIFF DOES NOT SATISFY RULE 23(a) ...................................... 8

        A.   Plaintiff Fails To Satisfy the "Commonality" or
             "Typicality" Requirements of Rules 23(a)(2)
             and (3) ...................................................................................... 9

        B.   Plaintiff Fails to Show that the Class
             Representatives and Class Counsel are
             Adequate To Represent the Interests of Absent
             Class Members under Rule 23(a)(4) ...................................... 12

             1.   The Named Plaintiffs are Inadequate Class
                 Representatives. ............................................................. 12

             Reliability, Competency & Credibility .............................. 13

             Unfamiliarity with this Lawsuit ........................................ 15

             Lack of Viable Claims Render Class
             Representatives Inadequate ............................................. 15

             Conflict of Interest ........................................................... 17

             2.   The Bronx Defenders are Inadequate Class
                 Representatives. ............................................................. 17

POINT III

        PLAINTIFF FAILS TO MEET THE RULE
        23(B)(2) REQUIREMENTS  FOR CLASS
        CERTIFICATION ...................................................................................... 19

POINT IV

**Page**

PLAINTIFF FAILS TO MEET THE RULE 23(B)(3) REQUIREMENTS ................................................................. 22

POINT V

A 23(B)(2) DEFENDANT CLASS IS NOT APPROPRIATE .................................................................................... 25

A.   Rule 23(B)(2) Is Inappropriate To Certify A Defendant Class ........................................................................... 25

B.   Rule 23(A) Is Not Met Due To The Significantly Different Defenses ..................................................... 27

C.   The Differences in Defenses Render The Putative Class Representatives Inadequate Representatives ............................................................................ 31

D.   Plaintiffs Fail To Meet The Numerousity Requirement and Their Definition Is Overbroad ............................ 31

E.   Court Lacks Jurisdiction Over The Proposed Class Defendants .......................................................... 33

F.   Unmanageable Defendant Class ....................................... 34

POINT VI

PLAINTIFF'S MOTION TO AMEND THE COMPLAINT SHOULD BE DENIED ................................................. 35

CONCLUSION ............................................................................................ 35

# TABLE OF AUTHORITIES

**Cases**

**Pages**

Albright v. Oliver
    510 U.S. 266, 274, 114 S.Ct. 807 (1994)...................................................................... 8

Allee v. Medrano,
    416 U.S. 802, 94 S.Ct. 219 (1974).......................................................................... 20

Baffa v. Donaldson, Lufkin & Jenrette Secs.,
    222 F.3d 52 (2d Cir. 2000) .................................................................................... 11

Beck v. Status Game Corp.,
    1995 U.S. Dist. LEXIS 9978 (S.D.N.Y. July 14, 1995) ................................... 12,13

Broadrick v. Okla.,
    413 U.S. 601 (1973)............................................................................................... 6

County of Sacramento v. Lewis,
    523 U.S. 833, 848, 118 S. Ct. 1708 (1998)............................................................ 7

Crowley v. Courville,
    76 F.3d 47 (2d Cir. 1996).................................................................................. 6, 16

Cullen v. Margiotta,
    811 F.2d 698 (2d Cir. 1987) ................................................................................ 10

Curley v. Village of Suffern,
    268 F.3d 65 (2d Cir. 2001) ................................................................................... 6

Daniel Miller, et al. v. County of Nassau, et al.,
    467 F. Supp. 2d 308 (E.D.N.Y. 2006) .................................................................. 7

Daniels v. City of New York, Daniels,
    198 F.R.D. 409 (S.D.N.Y. 2001). ....................................................................... 21

Darvin v. International Harvester,
    610 F. Supp. 255 (S.D.N.Y. 1985) ..................................................................... 12

Devenpeck v. Alford,
    543 U.S. 146, 125 S. Ct. 588 (2004)..................................................... 4,10, 23, 24

Diffenderfer v. Central Baptist Church of Miami,
    404 U.S. 412, 92 S.Ct. 574 (1972)...................................................................... 21

**Cases**

**Pages**

Du Chateau v. Metro-North Commuter R.R. Co.,
253 A.D.2d 128, 688 N.Y.S.2d 12 (1st Dep't 1999) ................................................. 5

Eagleston v. Guide,
41 F.2d 865 (1994) ................................................................................................ 10

Ebije v. City of New York,
1996 U.S. Dist. LEXIS 5078, (S.D.N.Y. Apr. 22, 1996) ......................................... 12

Forman v. Data Transfer,
164 F.R.D. 400 (E.D. Pa. 1995) ............................................................................... 3

Fulton v. Robinson,
289 F.3d 196 (2d Cir. 2002) ..................................................................................... 5

Galvan v. Levine,
490 F.2d 1255 (2d Cir. 1973) ........................................................................... 21, 27

General Telephone Co. v. Falcon,
457 U.S. 147, 156, 102 S.Ct. 2364 (1982) ................................................................ 9

Granato v. City of New York,
1999 U.S. Dist. LEXIS 18550, 15-18 (E.D.N.Y. 1999) ........................................... 5

Garrett v. Port Auth.,
2006 U.S. Dist. LEXIS 55548, 20-25 (S.D.N.Y. 2006) ............................................ 5

Greenspan v. Brassler,
78 F.R.D. 130 (S.D.N.Y. 1978) .............................................................................. 13

Haitian Ctrs. Council v. McNary,
969 F.2d 1326 (2d Cir. 1992) ............................................................................. 3,33

Heck v. Humphrey,
78 F.R.D. 130 (S.D.N.Y. 1978) ............................................................................... 4

Henson v. East Lincoln Township,
814 F.2d 410 (7th Cir. 1987),
cert. granted, 484 U.S. 923, 108 S.Ct. 283 (1987)
motion to defer further proceedings granted,
484 U.s. 1057,108 S.Ct. 1009 (1988) .......................................................... 25, 26, 30

In re Fine Paper Antitrust Litigation,
617 F.2d 22, 26-28 & n. 6 (3rd Cir. 1980) ............................................................. 17

**Cases**                                                                                                **Pages**

In re Lloyds American Trust Fund Litigation,
   1998 U.S. Dist. LEXIS 1199 (S.D.N.Y. Feb. 4, 1998)............................................................ 13

In Re Nassau County,
   461 F.3d 219 .................................................................................................................... 23

In Re: IPO Securities Litigation v. Merrill Lynch & Co., Inc. ("IPO"),
   471 F.3d 24 (2d Cir. 2006)......................................................................... 2,3, 7, 22, 24

Jaegly v. Couch,
   439 F.3d 149 (2d Cir. 2006)............................................................................................. 4

Jaghory v. New York State Dep't of Educ.,
   131 F.3d 326 (2d Cir. 1997)............................................................................................. 8

Kaplan v. Pomerantz,
   132 F.R.D. 504 (N.D. Ill. 1990)...................................................................................... 17

Kingsepp v. Wesleyan University,
   142 F.R.D. 597, 602-603 & n.3 (S.D.N.Y. 1992)........................................................... 17

Kline v. Wolf,
   702 F.2d 400 (2d Cir. 1983)........................................................................................... 13

Koenig v. Benson,
   117 F.R.D. 330 (E.D.N.Y. 1987)..................................................................................... 13

Levine v. Bora,
   79 F.R.D. 95 (S.D.N.Y. 1978) ........................................................................................ 13

Lockhart v. Fretwell,
   506 U.S. 364 (1993)........................................................................................................ 28

Loper,
   802 F. Supp. at 1035 ............................................................................................... passim

Luyando v. Bowen,
   124 F.R.D. 52 (S.D.N.Y. 1989) ...................................................................................... 26

Marcera v. Chinland,
   595 F.2d 1231 (2d Cir. 1979)
   vacated on other grounds, 442 U.S. 915 (1979) ....................... 25, 26, 29, 30, 31, 32

Marisol A. v. Giuliani,
   126 F.3d 372 (2d Cir. 1997) ............................................................................................. 9

**Cases**

**Pages**

McDaniel v. County of Schenectady,
  2005 U.S. Dist. LEXIS 14852, (N.D.N.Y. 2005) .................................................... 12

McNulty v. Chinlund,
  62 A.D.2d 682, 06 N.Y.S.2d 558 (3rd Dept. 1978) ................................................ 30

Monaco v. Stone,
  187 F.R.D. 50 (E.D.N.Y. 1999) ............................................................................. 31

Monell v. New York City Dept. of Soc. Service,
  436 U.S. 658 (1978) ............................................................................. 2,8,10,25,34

Moore v. PaineWebber, Inc.,
  306 F.3d 1247 (2d Cir. 2002) ................................................................................. 9

Munk v. Goldome Nat'l Corp.,
  697 F. Supp. 784 (S.D.N.Y. 1988) ........................................................................ 19

Murphy v. Lynn,
  53 F.3d 547, 548 (2d Cir. 1995) ............................................................................ 11

Natale, et al. Town of Ridgefield,
  170 F.3d 258 (2d Cir. 1999) ................................................................................... 7

New York R.T. Corp. v. City of New York,
  275 N.Y. 258 (1937),
  aff'd, 303 U.S. 573 (1938) ..................................................................................... 28

People v. Barton,
  8 N.Y.3d 70, 828 N.Y.S.2d 260 (2006) ................................................................ 28

Paxman v.Campbell
  612 F.2d 848 (4th Cir. 1980),
  cert. denied, 449 U.S. 1129, 101 S.Ct. 951 (1987) ............................................... 26

People v. Kin Kan,
  78 N.Y.2d 54, 571 N.Y.S.2d 436 (1991) .......................................................... 28, 29

Pinaud v. County of Suffolk,
  52 F.3d 1139 (2d Cir. 1995) ................................................................................... 10

Reid v. City of New York,
  736 F. Supp. 21, (E.D.N.Y. 1990) ......................................................................... 19

Rios v. Marshall,
  100 F.R.D. 395 (S.D.N.Y. 1983) ....................................................................... 27, 29

<u>**Cases**</u>

<u>**Pages**</u>

<u>Robidoux v. Celani</u>,
987 F.2d 931 (2d Cir. 1993) ................................................................ 9

<u>Rochin v. California</u>,
342 U.S. 165 1952) ............................................................................ 7

<u>Sale v. Haitian Ctrs. Counsel</u>,
509 U.S. 918 (1993) .......................................................................... 3

<u>Sanneman v. Chrysler Corp. n/k/a DaimlerChrysler Corp.</u>,
191 F.R.D. 441 (E.D. Pa. 2000) ........................................................ 3

<u>Saucier v. Katz</u>,
533 U.S. 194 S. Ct. 2151 (2001) ...................................................... 11

<u>Savino v. Computer Credit</u>,
164 F.3d 81 (2d Cir. 1998) ............................................................... 12

<u>Shain v. Ellsion</u>,
356 F.3d 211 (2d Cir. 2004) ....................................................... 20, 21

<u>Silverman v. Barry</u>,
845 F.2d 1072 (D.C. Cir. 1998) ........................................................ 7

<u>Singleton v. City of New York</u>,
632 F.2d 185 (2d Cir. 1980),
<u>cert.</u> denied, 450 U.S. 920 (1981 ................................................... 10

<u>Thompson v.Board of Educ.</u>,
709 F.2d 1200 (6th Cir. 1983) ....................................................... 26

<u>Tilley v. TJX Cos.</u>,
345 F.3d 34 (1st Cir. 2003) ........................................................... 26

<u>U.S. ex rel. Lawrence v. Woods</u>,
432 F.2d 1072 (7th Cir. 1970),
<u>cert.</u> denied, 402 U.S. 983 (1971) .............................................. 28, 29

<u>United States v. Locasio</u>,
6 F.3d 924, 933 (2d Cir. 1993) ........................................................ 19

<u>United States v. White</u>,
2003 U.S. Dist. LEXIS 2896 (S.D.N.Y. 2003) .................................. 7

**Cases**

**Pages**

Vippolis v. Village of Haverstraw,
  768 F.2d 40, 44 (2d Cir. 1985),
  cert. denied, 480 U.S. 916 (1987) ................................................................. 8

Wallace v. Kato,
  __ U.S. __, 127 S. Ct. 1092 (2007) ............................................................. 11

Wantanabe Realty Corp. v. City of New York,
  315 F. Supp. 2d 375 (S.D.N.Y. 2003) ......................................................... 7

Weisman v. Darneille,
  78 F.R.D. 671 (S.D.N.Y. 1978) ................................................................... 13

Whitson v. Heilig-Meyers Furniture,
  1995 U.S. Dist. LEXIS 4312 (D. Ala. 1995) ............................................... 33

Wolff v. McDonnell,
  41 U.S. 539 (1974) ......................................................................................... 7

Wrighten v. Metropolitan Hospitals, Inc.,
  726 F.2d 1346 (2d Cir. 1984) ..................................................................... 17

Zahra v. Town of Southold,
  48 F.3d 674, 683-84 (2d Cir. 1995) ............................................................. 6

**Statutes**

22 NYCRR 1200, 21 (a) ................................................................................ 18

22 NYCRR 1200, 21 (b) ................................................................................ 19

Fed.R.Civ.P. 23 ................................................................................................ 2

Fed.R.Civ.P. 23(a)(1) ............................................................................... 31, 32

Fed.R.Civ.P. 23(a)(2) ..................................................................................... 9

Fed.R.Civ.P. 23(a)(3) .................................................................................. 9,27

Fed.R.Civ.P. 23(a)(4) ............................................................................... 12, 31

Fed.R.Civ.P. 23(b)(2) ............................................................................. passim

Fed.R.Civ.P. 23(b)(3) ......................................................................... 1, 8, 14

Fed.R.Civ.P. 23(g)(c)(ii) ............................................................................... 18

Penal Law §240.20(5) ..................................................................................... 4

Penal Law §240.35(1) ............................................................................ passim

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

MICHAEL BROWN, on Behalf of Himself and Others
Similarly Situated,

Plaintiffs,

05 CV 5442 (SAS)(THK)

-against-

RAYMOND KELLY, ET AL.,

Defendants.

------------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### PRELIMINARY STATEMENT

Defendants by their attorney Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in opposition to plaintiff's motion for certification of plaintiff classes under Fed.R.Civ.P. 23(b)(2)[1] and 23(b)(3)[2] and of a defendant class under Fed.R.Civ.P. 23(b)(2)[3] and to plaintiff's motion to file a Second Amended Complaint.[4]

---

[1] Plaintiff defines a Rule 23(b)(3) Plaintiff Class against defendants as:
    All persons who have been or will be arrested, charged, or prosecuted for a violation of P.L. § 240.35(1), by employees, agents, or representatives of the City of New York, from Oct. 7, 1992 onward, pursuant to Fed.R.Civ.P. 23(b)(3).

[2] Plaintiff defines a Rule 23(b)(2) Plaintiff Class against a Rule 23(b)(2) Defendant Class as:
    All persons who have been or will be arrested, charged, or prosecuted for a violation of P.L. § 240.35(1) in the State of New York from October 7, 1992 onward, pursuant to Fed.R.Civ. P. 23(b)(2).

[3] Plaintiff defines the Rule 23(b)(2) Defendant Class as:
    All political sub-divisions and all law enforcement/prosecutorial policy-making officials in the State of New York with authority to arrest, charge or prosecute a person with a violation under New York Penal law, pursuant to Fed.R.Civ. P. 23(b)(2).

[4] Plaintiff has notified defendants that they are withdrawing Edgar Turner as a proposed class representative. Also, plaintiff has expressed an intention to amend the complaint again to add Llewelyn Rudy as a proposed class representative. Although they have not done so, defendants have deposed him and address his testimony herein, without waiving any rights to supplement this opposition should additional facts or allegations be made.

The putative plaintiff classes consist of individuals against whom New York Penal Law §240.35(1):  Loitering for the Purpose of Begging  ("240.35(1)" or "the Statute"),[5] which was deemed unconstitutional under the First Amendment, has been enforced by way of arrest or summons in New York City and New York State.  The putative defendant class consists of all political subdivisions and persons with the power to enforce the Statute in New York State. Plaintiff argues that common liability issues among class members include whether defendants' alleged behavior violated plaintiff's First, Fourth and Fourteenth Amendment rights and Equal Protection and Due Process rights; and whether liability against the City of New York is appropriate under <u>Monell v. New York City Dept. of Soc. Service</u>, 436 U.S. 658 (1978), under either a custom, pattern and practice or supervisory policy-maker theory of liability.  Pltf. Mem. at 16.[6]

## ARGUMENT

To certify a class, plaintiff must meet *definitively* each prerequisite under Fed.R.Civ.P. 23.  <u>In Re: IPO Securites Litigation v. Merrill Lynch & Co., Inc. ("IPO")</u>, 471 F.3d 24, 26 (2d Cir. 2006).  "Some showing" by plaintiff will not suffice to satisfy each requirement. <u>Id</u>.   Contrary to plaintiff's suggestion, the court is not to assume that the allegations of the complaint are true to determine class certification.  Pltf. Mem. at 5.  Rather, "[a] district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit."  <u>IPO</u>, 471 F.3d at 42.  To determine if

---

[5] NYPL §240.35(1), which still appears in the penal law, provides:  A person is guilty of loitering when he "loiters, remains or wanders about in a public place for the purpose of begging."
[6] For a recitation of the factual background, defendants respectfully direct the Court to the accompanying Declaration of Rachel Seligman, dated April 23, 2007 and submitted in support of their opposition to plaintiff's motion for class certification.

plaintiff has met the Rule 23 requirements, the court can weigh conflicting evidence even if such evidence overlaps with merits issues. Id. at 41, 42.

## POINT I

## THE PLAINTIFF CLASS DEFINITIONS ARE OVERBROAD

That the class be ascertainable is an implicit requirement of Rule 23. IPO, 471 F.3d at 45. Thus, a court must determine, as a threshold matter, whether a class definition is workable. See 7A Wright, Miller & Kane, Federal Practice and Procedure § 1760 at 115-132 (1986). A court should not certify an overbroad class. See Haitian Ctrs. Council v. McNary, 969 F.2d 1326, 1337-38 (2d Cir. 1992), vacated as moot sub nom., Sale v. Haitian Ctrs. Counsel, 509 U.S. 918 (1993). The description of the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Wright, Miller & Kane, Federal Practice and Procedure § 1760 at 121.

Courts reject class definitions that "require addressing the central issue of liability in a case" to determine membership since the membership inquiry "essentially require[s] a mini-hearing on the merits of each [plaintiff's] case." Forman v. Data Transfer, 164 F.R.D. 400, 403 (E.D. Pa. 1995). The need to hold mini-hearings defeats the economic-savings that is a principle justification for the use of a class action. See Sanneman v. Chrysler Corp. n/k/a DaimlerChrysler Corp., 191 F.R.D. 441, 446 & 454-57 (E.D. Pa. 2000).

The plaintiff classes are both basically defined as all those who have been or will be subject to enforcement of the Statute since October 1992 either in New York State (the (b)(2) class) or New York City (the (b)(3) class). This definition is overbroad. It erroneously assumes that merely being charged with §240.35(1) establishes liability and therefore adequately identifies individuals who have claims. This is not the case.

For example, plaintiff alleges a class claim under the Fourth Amendment, termed variously by plaintiff as false imprisonment, malicious prosecution and lack of probable cause. Pltf. Mem. at 6. However, probable cause to arrest or prosecute is not deemed lacking because a class member was charged with an unconstitutional statute; in fact, a Fourth Amendment violation is not determined by the actual charge made against the class member. Rather, as clearly explained by the Second Circuit in Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006), it is determined by the existence of probable cause for *any crime* at the time of the arrest:

> Following [Devenpeck v. Alford, 543 U.S. 146, 125 S. Ct. 588 (2004)], we conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge.  [Emphasis in original.]

Thus, even if an individual was charged with §240.35(1), if the facts and circumstances surrounding his arrest or summons established probable cause for any other offense with which he was charged or for an offense with which he was never charged but could have been, there is no Fourth Amendment violation.[7]  In fact, in those cases in which plaintiff was charged with another offense – the vast majority of arrests – probable cause is established, since plaintiffs, individually or as class representatives, do not contest the existence of probable cause for those other offenses.[8] The fact-finder must engage in mini-trials of each putative class member's allegations to determine the existence of probable cause for each summons and arrest;

---

[7] To illustrate the individualized analysis that must be employed, defendants attach a copy of a summons (OCA000013) that was issued for §240.35(1). Declaration of Rachel A. Seligman ("Seligman Decl." Exh. D. Although the individual was charged with a violation of §240.35(1), the narrative section of the summons establishes probable cause for Disorderly Conduct, §240.20(5), which prohibits obstructing pedestrian or vehicular traffic. The summons defeats any Fourth Amendment claim. Should plaintiff may contest the facts in the narrative in an effort to defeat probable cause under Devenpeck, however, this would only further complicate and prolong the individualized inquiry into each putative class member's claims.

[8] For example, any plaintiff that pled guilty cannot assert a malicious prosecution claim. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

those individuals who fall within plaintiff's current definition for whom probable cause did exist must be excluded from the class.   Additionally, for the malicious prosecution claims, each claim must be analyzed to determine if a favorable determination indicative of innocence resulted. Fulton v. Robinson, 289 F.3d 196 (2d Cir. 2002); Garrett v. Port Auth., 2006 U.S. Dist. LEXIS 55548, 20-25 (S.D.N.Y. 2006).

Plaintiff's definition is overbroad in the context of the Fourth Amendment claims in another respect.  It amalgamates individuals who received summonses with those who were arrested and prosecuted, as if such events are the same for determining liability under the Fourth Amendment.  They are not.  For instance, a summons cannot be the basis for a false arrest or malicious prosecution claim.  Garrett, 2006 U.S. Dist. LEXIS 55548, 20-25 (without an arrest warrant or arraignment or the initiation of other proceedings, "a court appearance pursuant to the summons alone cannot give rise to a malicious prosecution claim."); Granato v. City of New York, 1999 U.S. Dist. LEXIS 18550, 15-18 (E.D.N.Y. 1999) ("By itself, certainly, the issuance of a summons does not sustain an action for false arrest, because the issuance of a summons is functionally distinct from an arrest."); Du Chateau v. Metro-North Commuter R.R. Co., 253 A.D.2d 128, 688 N.Y.S.2d 12, 16 (1st Dep't 1999) (holding that a false arrest claim was "fatally defective because of [plaintiff's] inability to show that he was confined" where "any detention was incidental to the issuance of a summons").

Similarly, plaintiff alleges that the putative class suffered First Amendment violations simply by being summonsed or arrested for a statute that criminalized protected speech.  However, standing to assert a First Amendment claim requires that the plaintiff be engaged in protected speech at the time of the arrest or summons-issuance. Loper, 802 F. Supp.

at 1035.[9] Plaintiff fails to show that all putative class representatives were engaged in begging speech activities protected under Loper, and therefore the class definition encompasses individuals who do not have claims. [10]   (Wells, "walking around neighborhood," (Pltf. Mem. at 8); Anderson, "standing" outside a check cashing store at 544 Fordham Road in the Bronx, (Pltf. Mem. at 9); Grant (standing on corner speaking with friends (Pltf. Mem. at 7); Michael Louis Brown (parking cars and carrying groceries in exchange for tips (Seligman Decl. Exh. M, Brown Dep. at 126-27, 129-30).[11]

Plaintiff also alleges that defendants have enforced the Statute in a discriminatory and race-based manner by singling out African-American and Latino New Yorkers in violation of Equal Protection (arrests:  70% African American; 17% Latino; summonses:  75% African American; 14% Latino based on 48% of the total number of summonses).  Pltf. Mem. at 6.  To establish Equal Protection liability, each plaintiff would have to show: (i) the person, compared with others similarly situated, was selectively treated; and (ii) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person.  See e.g., Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996); Zahra v. Town of Southold, 48 F.3d 674, 683-84 (2d Cir. 1995).  The Class in the instant case must therefore demonstrate that the NYPD's

---

[9] See Broadrick v. Okla., 413 U.S. 601, 611 (1973) (narrow standing exception that plaintiff not engaged in protected activity may prosecute First Amendment claim on behalf of others applies only when a statute is challenged for overbreath).

[10] Even if plaintiff's claim is a retaliatory First Amendment claim, the alleged class members would still have to prove that (1) they had an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by the exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right. Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)). Most of the class representatives do not testify that they were engaged in First Amendment activity; in the absence of such activity, they cannot claim that defendants acted in response to their exercise of First Amendment activity. As for Llewelyn Rudy who may have been engaged in First Amendment activity, he testified that his First Amendment rights had not been chilled because he returned to begging soon after receiving a summons. Exh. L,. at 169-70, 199.

[11] Michael Brown adjourned his deposition because of his health-related reasons.  On consent, defendants will supplement their opposition to this motion after the deposition is completed.

policy of arresting and issuing summonses for 240.35(1) "had a discriminatory effect and that it was motivated by a discriminatory purpose." Daniel Miller, et al. v. County of Nassau, et al., 467 F. Supp. 2d 308, 320 (E.D.N.Y. 2006); United States v. White, 2003 U.S. Dist. LEXIS 2896 *5-6 (S.D.N.Y. 2003). Plaintiffs will have to make this showing in light of statistics that the homeless population in New York City is approximately 71% African American and 11% Latino.[12]   Like findings of intent, finding motivation necessarily requires individualized determinations to ascertain class membership. See IPO, 471 F.3d at 44-45.

Further, plaintiff generally claims that defendants' conduct violates Due Process. This claim, however, requires a showing that the conduct "shocks the conscience." Rochin v. California, 342 U.S. 165, 172 (1952); Wantanabe Realty Corp. v. City of New York, 315 F. Supp. 2d 375 (S.D.N.Y. 2003) (explaining that substantive due process is "limited to 'conduct "that shocks the conscience" and violates the "decencies of civilized conduct"'") (quoting Wolff v. McDonnell, 41 U.S. 539, 558 (1974). In order to rise to the level of conscience-shocking, "the conduct must be "intended to injure in some way unjustifiable by any government interest." County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S. Ct. 1708, 1718 (1998). In addition, "only a substantial infringement of state law prompted by personal or group animus, or a *deliberate* flouting of the law that trammels significant personal or property rights, qualifies for relief under §1983." Natale, et al. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999); Silverman v. Barry, 845 F.2d 1072, 1080 (D.C. Cir. 1998). Findings that defendants intended to subject the absent class members to a "deliberate flouting of the law" necessarily require individualized determinations to determine class membership. See IPO, 471 F.3d at 44-45.[13]

---

[12]*Homeless Outreach Population Survey Results,*  New York City Department of Homeless Services (March 27, 2003) (http://www.nyc.gov/html/dhs/downloads/pdf/hopsresults.pdf ).
[13]Plaintiff fails to articulate a Due Process class claim that is distinct from the other constitutional claims. Where a particular Amendment "provides an explicit textual source of constitutional protection" against a

Under plaintiff's <u>Monell</u> claim, the individualized determinations further increase, as plaintiff must prove that any proven policy or practice or failure to supervise by the City must have been the proximate cause of plaintiff's alleged injury. <u>Vippolis v. Village of Haverstraw</u>, 768 F.2d 40, 44 (2d Cir. 1985), <u>cert.</u> <u>denied</u>, 480 U.S. 916 (1987).

Finally, the 23(b)(3) damages class is overbroad as it dates back to October 7, 1992, because it encompasses individuals whose claims have expired under the applicable statute of limitations. This case was commenced in June 2005. Generally, the statute of limitations for §1983 claims is three years. <u>Jaghory v. New York State Dep't of Educ.</u>, 131 F.3d 326, 331-32 (2d Cir. 1997). Thus, individuals who were charged before June 2002 fall outside the statute of limitations but within the class definition. The definition is too broad.

Plaintiff's assertion that ascertainability of the class is easily within the power of defendants because the charge information is in defendants' or OCA's database suffers from the same failing as its definition. Pltf. Mem. at 26. It is not that simple for all of the reasons described above. Thus, from this large pool of people that fall within plaintiff's definition, only a mere subset may have any cognizable claims, and plaintiff's definition leaves it up to the fact-finder to determine who is a class member by conducting mini-trials on liability as to each putative class member. This is not the purpose behind certifying a class.

## POINT II
## <u>PLAINTIFF DOES NOT SATISFY RULE 23(A)</u>

Plaintiff identifies the common link between and among the alleged class members as the fact that they were all charged with §240.35(1) after it was deemed

---

particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." <u>Albright v. Oliver</u>, 510 U.S. 266, 274, 114 S. Ct. 807 (1994) (citations omitted).

unconstitutional.  This "common" experience does not amount to a common question of fact or law, because plaintiff's claims by their very nature require much more individualized analysis.

Plaintiff bears the burden of proving each criteria of Rule 23(a), which effectively "limits the class claims to those fairly encompassed by the named plaintiff's claims."  General Telephone Co. v. Falcon, 457 U.S. 147, 156, 102 S. Ct. 2364 (1982); see also Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).  A court must undertake a "rigorous analysis" to determine whether the moving party has met its burden. Id. at 161.  The Rule 23(a) requirements tend to merge with each other and serve as guideposts to determining whether a class action would be economical. General Tel., 457 U.S. at 158 n.13.

## A.   Plaintiff Fails To Satisfy the "Commonality" or "Typicality" Requirements of Rules 23(a)(2) and (3)

While commonality and typicality are two separate requirements, they "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." Marisol A. v. Giuliani, 126 F.3d 372, 373 (2d Cir. 1997). Specifically, commonality is satisfied when plaintiffs' claims share a common question of law or fact.  Id.  Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).  "If a court must make a highly fact-specific or individualized determination in order to establish a defendant's liability to each class member, typicality will not be met." 5 Moore, Moore's Federal Practice, § 23.24[4] at 23-96 (1999).

As discussed supra Point I, the substantive law underlying plaintiff's claims requires individualized, highly fact-specific analysis to establish liability for each individual claim.  That all class members were charged with §240.35(1) does not make their claims common or typical.  Their claims must each be analyzed individually to determine, e.g., whether

probable cause existed for each charge under Devenpeck, whether there was a detention, whether plaintiff was subject to legal process, whether favorable terminations indicative of innocence resulted in any prosecutions, whether each plaintiff was engaged in protected speech activity, whether the charge was motivated by unjustified intent, and whether a municipal pattern, practice or custom caused plaintiff's injury.

Additionally, defendants will raise distinct unique defenses to each plaintiff's damages claims. For example, plaintiff's claims are not typical in that defendants may have statute of limitations defenses that differ among the plaintiffs. Some class members charged pre-June 2002 may argue that the statute of limitations for the class Monell claim did not begin to run until plaintiffs actually knew or should have known of the class claim, see Pinaud v. County of Suffolk, 52 F.3d 1139 (2d Cir. 1995).[14] In each instance, that time would be measured from the time that an individual plaintiff knew or should have known a pattern, practice or custom of continued enforcement existed after the 1992 Loper decision. For each plaintiff, this time may be different. Proof of each plaintiff's knowledge would thus be subject to individualized and highly fact sensitive inquiry by the fact-finder.[15]

Similarly, the statute of limitations for each class member's false arrest and malicious prosecution damages claims would have to be measured on an individual basis (false

---

[14] Defendants in no way endorse that the statute of limitations for the Monell claim did not begin to run until after June 2002 for any plaintiff who was charged prior to June 2002. There should be no delayed accrual of the three year statute of limitations for the class Monell claim that would render timely claims that predate June 2002. See Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980), cert. denied, 450 U.S. 920 (1981); Cullen v. Margiotta, 811 F.2d 698, 725 (2d Cir. 1987); Eagleston v. Guido, 41 F.2d 865, 871 (1994). "The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." Singleton, 632 F.2d at 192. Here, since as early as October of 1992, the absent class members knew, or at least should have known, about the Court's decision in Loper. The story received significant coverage in the local New York City newspapers immediately after Loper. Seligman Decl., Exh. E. Defendants' activities were not concealed in any way, unlike in Pinaud, where defendants' alleged wrongful activity was not immediately apparent and did not surface for years after it took place.

[15] Plaintiff's Equal Protection is time-barred, as they have only asserted it on the pending motion to amend the complaint and it does not relate back to the filing of the original complaint.

arrest claim begins to run when the false imprisonment ends and the person is arraigned (<u>Wallace v. Kato</u>, __ U.S. __, 127 S. Ct. 1092 (2007)); malicious prosecution claim begins to run when the criminal proceedings against the plaintiff ended in a favorable termination (<u>Murphy v. Lynn</u>, 53 F.3d 547, 548 (2d Cir. 1995)).

Another example of a unique defense that may be raised is qualified immunity, which would require individualized findings of whether defendants conduct was reasonable in each case in light of the established law at the time. <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 202-03, 121 S. Ct. 2151 (2001) ("Where reasonably competent officials could disagree as to whether the conduct at issue would violate clearly established rights, the immunity defense is available.")

**B.**   **Plaintiff Fails to Show that the Class Representatives and Class Counsel are Adequate To Represent the Interests of Absent Class Members under Rule 23(a)(4)**

Plaintiffs have failed to show that they and their counsel "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The named plaintiffs all suffer serious credibility and character flaws. Their counsel, namely the Bronx Defenders are similarly inadequate.

**1.**   **The Named Plaintiffs are Inadequate Class Representatives.**

Plaintiffs have failed to satisfy their burden of demonstrating that they are adequate class representatives under Rule 23(a)(4), by showing that they are free of conflicts of interest, have incentives to pursue viable claims in their own right, and have retained counsel with the experience, expertise, and resources to uphold rights of absent class members who are unable to speak for themselves. See, e.g., Baffa v. Donaldson, Lufkin & Jenrette Secs., 222 F.3d 52, 58 (2d Cir. 2000); see also Ebije v. City of New York, 1996 U.S. Dist. LEXIS 5078, *2-3 (S.D.N.Y. Apr. 22, 1996).

The courts long have recognized that adequacy of representation requires an inquiry into certain basic personal characteristics and abilities of a plaintiff, such as honesty and understanding of the suit. See, e.g., Baffa, 222 F.3d at 61-62 (lack of knowledge regarding claims and basic facts; lack of understanding of claims may lead to concerns regarding atypicality of claims and defenses); Savino v. Computer Credit, 164 F.3d 81, 87 (2d Cir. 1998) (credibility in issue where plaintiff gave different accounts concerning the basis of the lawsuit); McDaniel v. County of Schenectady, 2005 U.S. Dist. LEXIS 14852, *8-9 (N.D.N.Y. 2005) (reliability); Beck, 1995 U.S. Dist. LEXIS 9978, at *12-21 (lack of familiarity with suit and knowledge of underlying facts); Darvin v. International Harvester, 610 F. Supp. 255, 257

(S.D.N.Y. 1985) (same); Greenspan v. Brassler, 78 F.R.D. 130, 134 (S.D.N.Y. 1978) (same).[16] The credibility of class representatives is critical because, in that role, they have fiduciary obligations to others members of the class. See, e.g., Kline v. Wolf, 702 F.2d 400, 403 (2d Cir. 1983); Koenig v. Benson, 117 F.R.D. 330, 333-34 (E.D.N.Y. 1987); Weisman v. Darneille, 78 F.R.D. 671, 673 (S.D.N.Y. 1978). In fact, credibility problems have justified denying proposed representatives that role. See, e.g., Kline, 702 F.2d at 403.

Adequacy requires a level of competence and familiarity with the facts related to the case sufficient to provide reasonably informed decision-making protective of the interests of the absentee class members. See, e.g., In re Lloyds American Trust Fund Litigation, 1998 U.S. Dist. LEXIS 1199, *33 (S.D.N.Y. Feb. 4, 1998) (plaintiff not certified as a class representative where she showed a lack of familiarity with facts related to the case); Greenspan v. Brassler, 78 F.R.D. 130, 131 (S.D.N.Y. 1978) (plaintiff held unsuitable when he evidenced an "alarming unfamiliarity with the suit."). Competence is demanded from named class plaintiffs to prevent the case from becoming simply a production of plaintiffs' lawyers; a class is entitled to "an adequate representative, one who will check the otherwise unfettered discretion of counsel in prosecuting the suit." Weisman v. Darneille, supra, 78 F.R.D. at 671. See Beck v. Status Game Corp., 1995 U.S. Dist. LEXIS 9978, *16-*21 (S.D.N.Y. July 14, 1995) (plaintiffs lacked familiarity with suit, control over attorneys, and appreciation of role as class representatives); 7A Wright, Miller & Kane, supra, § 1766 at 310-11.

## Reliability, Competency & Credibility

As shown below, there are serious questions as to whether the proposed class representatives are competent, reliable and credible. Below are some examples that show that

---

[16] See also Weisman v. Darneille, 78 F.R.D. 669, 670-71 (S.D.N.Y. 19) (plaintiff convicted of fraud and failed to meet with his counsel in ten months between filing of action and his deposition); Levine v. Berg, 79 F.R.D. 95, 98 (S.D.N.Y. 1978) (plaintiff demonstrated lack of personal knowledge about facts underlying her complaint and unwillingness to learn).

they cannot be relied upon to be present to meet their own obligations, let alone to meet their obligations and fiduciary duties to absent class members.

- Rudy and Wells are unreliable because it appears that they have missed scheduled court appearances. Wells admits that he has missed "a lot" of court appearances because he forgot about them. (Exh. J, 152, 4-18, Exh. K, 268, 8-22).   It also appears that Wells' driver's license was previously suspended because he had unpaid tickets, including speeding tickets, that he neither paid nor appeared to defend against. (Exh. K, 25; 15-25). Although Wells contested the apparent suspension, he never went back to finish it up. As a result, his driver's license was revoked. (Exh. K, 26; 8-23).
- Both also admit that warrants have been issued for their arrests after missing court appearances, unrelated to their arrests for §240.35(1). (Exh. J, 150-151, 19-16; Exh. K, 268, 8-22)
- When asked about whether he has any upcoming plans to leave New York City, Wells admitted that that he would leave New York City next week or even tomorrow if he could. (Exh. K, 43-44, 24-6).
- 

**Redacted**

**Redacted**

---

17

**Redacted**

**Redacted**

Redacted

### Unfamiliarity with this Lawsuit

Additionally, all of the proposed class representatives have all displayed an almost shocking unfamiliarity with this lawsuit. For example, plaintiffs were not familiar with claims in the complaint,[19] role and responsibilities of a class representatives,[20] the current status of the case,[21] when the case was filed,[22] what court his case is pending in,[23] the name of the judge presiding over the case,[24] the names of class counsel and other class representatives,[25] whether they have a fee arrangement with counsel,[26] who is responsible for the costs associated with this lawsuit,[27] and what they will receive if this lawsuit is successful.[28]   These examples are indicative of an unwillingness and lack of desire to participate in this lawsuit but also a lack of responsibility towards the absent class members.

### Lack of Viable Claims Render Class Representatives Inadequate

---

[19] See Exh. N, pg. 67-68, lns., 16-5; pg. 68, lns 2-5; Exh, K, pg. 21, lns., 8-12.
[20] See Exh. L, pg. 51, lns., 6-14; Exh. N, pg. 31, lns, 5-20.
[21] See Exh.K, pg. 97, lns., 18-20; Exh. M, pg., 68, lns., 9-19; Exh. N., pg. 34, lns., 5-9.
[22] See Exh. M, pg., 68, lns., 9-19
[23] See Exh. L, pg. 136, lns., 7-9; Exh, K, pg. 97-98, lns., 25- 1; Exh. M., pg., 68, lns., 9-19; Exh. N, pg. 34, lns., 13-14.
[24] See Exh. K, pg. 97, lns., 21-23; Exh. M, pg., 68, lns., 9-19; Exh. N, pg. 34, lns 10-12.
[25] See Exh. L, pg., 135, lns., 19-25; Exh. K, pg., 91, lns., 17-22; pg., 98, lns., 2-9;
[26] See Exh. K, pg. 99-100, lns., 24-2.
[27] See Exh. L,  pg. 35, lns., 4-6.
[28] See Exh. L, pg. 35, lns., 1-3; Exh. M, pg. 70, lns., 16-23.

All of the putative class representatives were charged in New York City by the NYPD.  None of them allege any claims against any other political subdivision or officials anywhere else in New York State.  None of them allege that they were subjected to enforcement of the Statute, or continued enforcement of the Statute, anywhere else pursuant to any other municipality's pattern, practice or custom or deliberate indifference.  Thus, these putative class representatives do not have a live case or controversy with any non-NYPD defendant and lack standing to prosecute any (b)(2) defendant class claim against them.

None of the putative class representatives can represent the class on the Equal Protection claim, since none have presented any evidence to support that defendants discriminately and disproportionately arrested and issued summonses to African Americans and Latinos "based upon an impermissible consideration, with malicious intent, or with the bad faith intent to injure them."  Crowley, supra.  Statistically, the breakdown of arrests and summonses by race/ethnicity is similar to the demographics of the homeless in New York City.  See supra at n. 12.  Moreover, plaintiff's data is incomplete as it only accounts for  48% of all summonses issued from 1999 to 2006.  Further, plaintiff has offered no evidence that any of the putative class representatives are Latino or that Llwellyn Rudy is African American. Thus, none of the proposed class representatives are adequate representatives for the Equal Protection claim.

With respect to plaintiff's First Amendment claim, plaintiff alleges that "defendants' enforcement of the Statute inhibited and chilled plaintiffs' free speech and associational activities." Pltf. Mem. at 6.  Notwithstanding, of the proposed class representatives, only plaintiff Llewellyn Rudy admits that he was panhandling.  Pltf. Mem. at 7-9.  None of the other plaintiffs admit to panhandling, and thus, they cannot represent a class that was allegedly exercising First Amendment rights when they were arrested or summonsed.

Finally, as discussed supra, because Michael Louis Brown, Keith Anderson, and Bobby Wells were arrested and charged with multiple offenses, they cannot allege that they suffered a Fourth Amendment violation.  See Pltf. Mem. at 8-9.  Since plaintiffs do not contest that probable cause existed for the other non-panhandling charge, they did not suffer any violation of their Fourth Amendment rights.  Additionally, as discussed supra, since Rudy and Grant were only issued a *summons* for 240.35(1), he cannot establish that his Fourth Amendment rights were violated.

**Conflict of Interest**

Defendants, and hence plaintiffs, are not similarly situated.  For example, the Loper injunction bound only NYPD so other enforcing bodies may contest that they are subject to the injunction; the highest state court has not opined on the constitutionality of the Statute, so enforcing bodies outside of NYPD may not be deemed to be enforcing an unconstitutional statute; the various political subdivisions and bodies that enforce the Statute have their own unique patterns, practices and customs and supervisory schemes.  All of the class representatives only have claims against the New York City defendants; NYPD is the only enforcing body subject to the Loper injunction and, unlike other enforcing bodies, will not contest the fact that it has been enjoined.  However, the claims of absent class members who hail from other places in the state will give rise to challenges about whether and how Loper applies to the defendants who enforced the Statute against them.   There is clearly a conflict then between the class representatives and the absent class members.

2.       **The Bronx Defenders are Inadequate Class  Representatives.**

Adequacy of counsel requires that counsel be competent and void of ethical infirmities, including conflicts of interest.  7A Wright Miller & Kane, § 1769.1, at 374-395. See, e.g., Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346 (2d Cir. 1984); In re Fine Paper

Antitrust Litigation, 617 F.2d 22, 26-28 & n. 6 (3rd Cir. 1980); Kingsepp v. Wesleyan University, 142 F.R.D. 597, 602-603 & n.3 (S.D.N.Y. 1992); Kaplan v. Pomerantz, 132 F.R.D. 504 (N.D. Ill. 1990).   In addition, the Federal Rule of Civil Procedure 23(g)(1)(C)(ii) states that in appointing class counsel, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

Here, the Bronx Defenders cannot adequately represent the absent class members. The Bronx Defenders has represented both Eddie Wise and Michael Brown in cases where they were charged with §240.35(1) since as early as 1997.   Transcript from January 8, 2007 conference, pg 17-20 lns 14-4;  Exh. F.  In those cases, plaintiff Brown and Wise pled guilty to §240.35(1), presumably with the aid of counsel.  In addition, the Bronx Defenders stated that it represents approximately 20% of all indigent litigants in Bronx County since 1997.  See Exh. F, pg. 18-19, lns 22-19.  Defendants are entitled to discover whether the Bronx Defenders had notice that the statute was unconstitutional and unenforceable and how those circumstances affected their representation of plaintiff class members.  The Bronx Defenders' actions since 1992 in raising or not raising Loper as a defense for class members in the underlying criminal proceedings is relevant to 1) whether the City's efforts to train and notify its officers defeats a claim of deliberate indifference and 2) the Bronx Defenders may have contributed or caused any damages plaintiff may prove. The Bronx Defenders may be called upon to defend their actions and become a fact witness on significant issues, requiring testimony prejudicial to their clients, which they are ethically bound not to do.  See 22 NYCRR 1200.21(b) (DR 5-102:  disciplinary rule prohibiting lawyers from acting as witnesses).

Furthermore, McGregor Smyth, Esq., of the Bronx Defenders has made himself either a purported expert, or a fact witness, in this case by submitting declarations in support of

plaintiff's motions for class certification and contempt. In both declarations, Mr. Smyth has undertaken a comprehensive analysis and tabulation of all of the electronic data produced thus far in this case. In fact, these declarations are the *only* evidence submitted by plaintiff to support their statistical analysis. As such, and to the extent that Mr. Smyth is acting in the capacity of an expert, the ethical rules prohibit his involvement as both an advocate and witness.    See 22 NYCRR §1200.21(a) (DR 5-102(a)); see also Reid v. City of New York, 736 F. Supp. 21, *26 (E.D.N.Y. 1990). "Where the question [of testimony versus representation] arises doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." Ethical Consideration 5-10, N.Y. Jud. Law App. (McKinney 1992); see Munk v. Goldome Nat'l Corp., 697 F. Supp. 784, 787 (S.D.N.Y. 1988). At a minimum, the submission of two declarations by Mr. Smyth demonstrates that he was intricately involved in the analysis of all the electronic data for plaintiff. Thus, he is a fact witness and will or ought to be subject to cross-examination on these issues at a trial. See United States v. Locasio, 6 F.3d 924, 933 (2d Cir. 1993).[29]

## POINT III

### PLAINTIFF FAILS TO MEET THE RULE 23(B)(2) REQUIREMENTS FOR CLASS CERTIFICATION

Plaintiff seeks to certify a plaintiff class seeking prospective injunctive relief of all those charged with the Statute in New York State. To do so, plaintiff must show that defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriated final injunctive relief or corresponding declaratory relief with respect to he class as a whole." Fed.R.Civ.P. 23(b)(2). Thus, plaintiff claims that "by arresting and charging all members of the class under the same void and unconstitutional Statute that seeks to criminalize

---

[29]Should the Court decline to find that the Bronx Defenders and McGregor Smyth, Esq., are inadequate class counsel, defendants reserve the right to move for their disqualification.

protected First Amendment activities, defendants have acted on grounds generally applicable, such that equitable relief for the entire class is appropriate." Pltf. Mem. at 21.

The class representatives' testimony belies this very premise. Plaintiffs Wells, Anderson, Grant, and Michael Louis Brown do not allege (nor did they testify) that they were engaged in any First Amendment activity that their arrest violated. See Plt. Mem. 7-9; MLB Dep, pg. 129-30 lns. 21-2 ; 126-127, lns. 23-23. If four out of five of plaintiff's proposed class representatives do not allege that they were arrested because they were engaged in protected First Amendment activity, then plaintiff cannot have made the requisite showing that the ground upon which defendants are alleged to have acted–unconstitutional criminalization of First Amendment activities – applies to all class members.

Additionally, the putative class representatives lack standing to seek injunctive relief on two grounds. First, to establish constitutional standing for injunctive relief, the plaintiff must prove "*both* a likelihood of future harm *and* the existence of an official policy or its equivalent." Shain v. Ellsion, 356 F.3d 211, 216 (2d Cir. 2004) (emphasis in original). Here, no plaintiff or class member has standing to seek injunctive relief to cease arrests or prosecutions for §240.35(1), because there is no likelihood that arrests or prosecutions under the Statute can occur again. All of the District Attorney's offices have modified their computer programs so that commencing a prosecution for §240.35(1) is not an option, and, in fact, no prosecution under the Statute has occurred since February 2006, more than a year ago. Seligman Decl., Exh. G. Although the state legislature has not yet repealed the Statute, in New York City arrest processing and prosecutions for the Statute are no longer possible, so there is no likelihood of future harm from these acts. See Allee v. Medrano, 416 U.S. 802, 827-28, 94 S.Ct. 219 (1974) (dissenting opinion) (no standing for injunctive relief where statute has been repealed);

Diffenderfer v. Central Baptist Church of Miami, 404 U.S. 412, 414-15, 92 S.Ct. 574 (1972) (same). To the extent that plaintiff seeks a (b)(2) class enjoining arrest processing and prosecutions in New York City for the Statute, certification must be denied for lack of standing.

Second, to the extent that plaintiff seeks a (b)(2) class enjoining summons issuance for §240.35(1) violations, five of the six class representatives do not even allege that they engaged in panhandling, so there is no basis to find that they are likely to engage in the same conduct that provided the basis for their §240.35(1) charge. In fact, just as the plaintiff in Shain was "no more likely to be subject to misdemeanor arrest and detainment than any other citizen," 356 F.3d at 215, these putative plaintiffs are no more likely than any other citizen to be subject to charges under the Statute.

Finally, under Galvan v. Levine, 490 F.2d 1255 (2d Cir. 1973), (b)(2) certification of a plaintiff class, at least against New York City, is unnecessary because the relief sought will necessarily benefit all those similarly situated should it be awarded.[30] "What matters is whether class members will automatically benefit without any additional action on their part. Thus, the more important inquiry is the level of commitment expressed by the defendants." Daniels, 198 F.R.D. at 421. By virtue of Loper, and the June 2005 and December 2006 Stipulations (Exh. C) and Orders in this case, as well as the numerous steps that New York City has undertaken to halt continued enforcement of the Statute (see the pending motion in opposition to contempt), New York City's commitment to providing the relief across the board within its confines is expressed,

---

[30]Considerations that militate against class certification under Galvan include: (1) an affirmative statement from the government defendant that it will apply any relief across the board; (2) withdrawal of the challenged action or non-enforcement of the challenged statute; (3) whether the relief sought is merely a declaration that a statute or policy is unconstitutional rather than more complex, affirmative relief; and (4) whether plaintiffs' claims are likely to become moot. Daniels v. City of New York, Daniels, 198 F.R.D. 409, 421 (S.D.N.Y. 2001) (Scheindlin, J.) (noting that the difference between prohibitory and affirmative relief is somewhat illusory).

memorialized, so ordered and subject to the contempt power of the court. Plaintiff cannot hope to achieve more via a (b)(2) class.

Relatedly, since plaintiff has already achieved the equitable relief that it seeks against New York City, plaintiff should be precluded from further prosecuting injunctive claims against New York City. Plaintiff's remedy is to invoke the contempt power of the Court to challenge any alleged continued enforcement of the Statute by New York City, which it is in the process of doing now. Certification of a (b)(2) class is wholly unnecessary given the posture of this case.

### POINT IV

### PLAINTIFF FAILS TO MEET THE RULE 23(B)(3) REQUIREMENTS

Plaintiff must establish that common questions of fact or law predominate over individual questions. IPO, 471 F.3d at 42. Plaintiff offers two broad questions as the predominating common issues: (1) were the class members subjected to enforcement of the Statute during the class period and (2) was this enforcement illegal. Pltf. Mem. at 22. For reasons discussed supra, these issues are not at all common but heavily fact-specific and variable among class members.

Plaintiff attempts to establish predominance by grouping together all summonses for §240.35(1) – 3,602 assuming *arguendo* that plaintiff's number is correct -- with all arrests where §240.35(1) was the only charge --591, assuming *arguendo* that plaintiff's number is correct -- for a total of 4,211 single charges, compared to 2,884 charges where the Statute was one of multiple charges. On this simple calculus, plaintiff argues that single charge cases predominate.

Plaintiff's theory is flawed. First, that only a single charge was made at a given event and that it was made for §240.35(1) does not establish a lack of probable cause.

- 22 -

Devenpeck instructs that there is no Fourth Amendment violation if probable cause existed for any criminal activity regardless of whether or not it was charged. Thus, even if a majority of the cases are for single charges, there is no common liability issue that predominates since even the single charge cases must be analyzed on a case by case basis for probable cause. See n. 11.

Second, because plaintiff counts each summons as a single charge, he has wrongly inflated the number of single charges. Although each summons is limited to a single charge, an officer can issue multiple summons for additional offenses. Seligman Decl., Exh. D. Thus, at any one event, multiple summonses can issue. Plaintiffs do not account for this circumstance in any way and instead treat each summons as a single charge event. While defendants' analysis of the OCA data is still preliminary, it reveals that for all of the summonses issued for the period of August 1999-December 2006, multiple summonses issued at approximately 1,306 separate charge events. Seligman Decl. ¶10(b). Subtracting 1,306 from plaintiff's total of 4,211 single charge events, yields 2,905 single charge events and adding 1,306 to plaintiff's multiple charge events yields 4,190 multiple charge events. With the numbers adjusted, there are more than 1,200 more multiple charge events, making them predominate over single charge events. Thus, even if there were a distinction under Devenpeck between the individualized determinations to be made on multiple versus single charge events, plaintiff's argument still fails since the single charge events do not predominate. Under either calculus, the undisputed mass of 2,884 multiple charge events raises sufficient individualized liability issues to defeat predominance. See In Re Nassau County, 461 F.3d 219, 230 (predominance of common liability issue found where there were a "de minimis" number plaintiffs for whom individualized reasonable suspicion inquiries would need to be made to determine liability for strip search under a blanket strip search policy).

Plaintiff argues that even if those arrested and summoned for multiple charges are separated from those charged solely with a §240.35(1) violation, and the Fourth Amendment claim does not predominate, the remaining First Amendment, Equal Protection and Due Process claims do predominate. As for the First Amendment class claim, at the time of their arrest most class representatives admit that they were not begging. As for the Equal Protection class claim, plaintiff has not offered a single representative of African American race or Hispanic ethnicity who was engaged in begging and was charged solely with a §240.35(1) violation. Finally, plaintiff's due process claim requires a finding that defendants' acts "shock the conscience" and were deliberately unjustified – an all-intensive factual inquiry for each incident not amenable to class treatment.

Finally, contrary to plaintiff's assertion, determination of class membership is not simple. Pltf. Mem. 23. In fact, it will require individualized inquiry into the facts and circumstances of the existence of probable cause for each detention. Plaintiff claims that because the records of those charged under §240.35(1) are in defendants' possession there is undisputed, class-wide evidence of the constitutional violations at issue in this case. Plaintiff wrongly suggests that determining class membership just requires a computer search of §240.35(1) charges. For example, without examining and investigating the details of each incident, there is nothing about determining whether any single individual charged with a violation of §240.35(1) suffered a First Amendment violation (was the individual engaged in protected First Amendment activity at the time?), or a Fourth Amendment violation (was there probable cause to detain the individual under Devenpeck?). Just as in IPO, 471 F.3d at 45, numerous individualized determinations of class membership support the conclusions that individual issues will permeate the litigation.

Under Monell, the individualized liability issues further increase and predominate as proof of proximate cause is necessary to prove a recoverable injury. For example, defendants have the right to put forth defenses to defeat causation. Defendants also have the right to explore through witnesses whether defense counsel in the underlying prosecutions or non-City officials within the judiciary are the cause of any or all of any given plaintiff's damages.[31] Each plaintiff's journey through the arrest and/or prosecutorial process will have to be examined to ascertain the extent of and liable parties for any damages. These highly individualized determinations will predominate. Class treatment of the putative class members' claims will not serve the interests of efficiency given the individualized issues that must be determined to ascertain class membership, liability and damages.

## POINT V

## A 23(B)(2) DEFENDANT CLASS IS NOT APPROPRIATE

**A.    Rule 23(B)(2) Is Inappropriate To Certify A Defendant Class**

Plaintiffs rely upon Marcera v. Chinland, 595 F.2d 1231 (2d Cir. 1979), vacated on other grounds, 442 U.S. 915 (1979), for the proposition that Rule 23(b)(2) is appropriate for a defendant class. Since Marcera was decided, other Circuit Courts have routinely rejected Rule 23(b)(2) defendant classes based on the reasoning in Henson v. East Lincoln Township.[32] Henson held that while Rule 23(a) certainly contemplates the possibility of defendant classes, the

---

[31] This possibility is yet another reason why the Bronx Defenders, who have admitted to defending many of the plaintiffs herein, are inadequate as class counsel; they may be brought in as third parties and found liable for some portion of plaintiff's damages if they represented the plaintiff's and did not raise or inform their clients of the unconstitutionality of §240.35(1) in the criminal proceedings.

[32] Henson v. East Lincoln Township, 814 F.2d 410 (7th Cir. 1987), cert. granted, 484 U.S. 923, 108 S. Ct. 283 (1987), motion to defer further proceedings granted, 484 U.S. 1057, 108 S. Ct. 1009 (1988).

language of Rule 23(b)(2) precludes the possibility of that section applying to a defendant class. 814 F.2d at 413.[33]

The plain language of Rule 23(b)(2) makes clear that it applies only when a plaintiff class seeks injunctive or declaratory relief from individual defendants. While plaintiff claims that a "host" of authorities support a Rule 23(b)(2) defendant class, defendants submit that some do not stand for that position at all. Moreover, the law review article plaintiff cites is inapplicable to defendant classes. "The judicial misreading of Rule 23(b)(2) is troubling. Courts that have certified defendant classes as plaintiff class counterparts have ignored the requirements of Rule 23(b)(2)." "Defendant Class Actions and Federal Civil Rights Litigation," 33 UCLA L. Rev. 283, 316-317. "Only a few courts have read the requirements of the rule more circumspectly, limiting certification because Rule 23(b)(2) is inapplicable to defendant classes." Id.

Here, certifying a (b)(2) defendant class is also inappropriate and unnecessary because New York City, as both a class member and class representative, is in a position wholly apart from other defendant class members. As discussed supra Point II, New York City is bound by the June 2005 and December 2006 Stipulations and Orders in this case; these orders provide

---

[33] As Judge Wood noted in Luyando v. Bowen, 124 F.R.D. 52, 59 (S.D.N.Y. 1989), "Some courts have argued persuasively that the language of Rule 23(b)(2) suggests that the drafters contemplated that only a plaintiff class, not a defendant class, would be certified pursuant to this sub-section. In particular, the Court notes the well-reasoned opinion of Judge Posner in Henson v. East Lincoln Township." Other Circuits which have discussed defendant classes since Marcera agree with the conclusions drawn in Henson. Paxman v. Campbell, 612 F.2d 848, 854 (4th Cir. 1980), cert. denied, 449 U.S. 1129, 101 S. Ct. 951 (1987), denied certification of a 23(b)(2), holding: "[a]s is clear from the language of the Rule, it is applicable to situations in which a class of plaintiffs seeks injunctive relief against a single defendant the Party opposing the class who has acted on grounds generally applicable to the plaintiff class." The court then warned that "[t]o proceed under 23(b)(2) against a class of defendants would transform plaintiffs into "the party opposing the class," and create the anomalous situation in which plaintiffs' own actions or inactions could make injunctive relief against the defendants appropriate." Id. See also Thompson v. Board of Educ., 709 F.2d 1200, 1204 (6th Cir. 1983)("...the language in this rule contemplates certification of a plaintiff class against a single defendant, not the certification of a defendant class."); Tilley v. TJX Cos., 345 F.3d 34, 39 (1st Cir. 2003) ("In cases involving garden-variety defendant classes, there will be no single act or refusal to act on the part of the plaintiff (the party opposing the class) that makes injunctive or declaratory relief appropriate.").

plaintiff with mechanisms to achieve the relief he seeks against New York City.  Under Galvan v. Levine, 490 F.2d 1255 (2d Cir. 1973), see supra, there is no need to certify a plaintiff or defendant class to obtain relief from New York City. Relatedly, no other defendant class members are bound by the orders, and New York City does not have authority to force their compliance with these orders or any others that may issue in this case should a (b)(2) class be certified, thereby making certification pointless.

**B.**  **Rule 23(A) Is Not Met Due To The Significantly Different Defenses**

Courts "require a showing that the named defendants, by pursuing their own interests vigorously, will necessarily raise defenses common to the class." Rios v. Marshall, 100 F.R.D. 395, 412 (S.D.N.Y. 1983) (quotation omitted); Fed.R.Civ.P. 23(a)(3). This offers a level of protection to the absentee defendants ensuring that their voices will be heard and that they will not be found liable in a suit in which they had an unraised and valid defense.

As explained supra, Point II, under Loper and the June 2005 and December 2006 Stipulations and Orders of this Court, the putative defendant class representatives are enjoined from charging and prosecuting for §240.35(1), and cannot and will not argue that they are *not* prohibited from enforcing §240.35(1).  The other political subdivisions and all other law enforcement prosecutorial policy making officials in the State of New York are not enjoined from enforcing the Statute.  They were not parties in Loper; they were not on notice of the injunction; not subject to the injunction; and not subject to the June 2005 and December 2006 Orders of this Court.  Therefore, they have defenses which the City defendants do not share and are not able to assert or raise on their behalf.

For example, just as the non-City co-defendants (collectively "State Defendants") argued in support of dismissing the complaint as against them on or about August 19, 2005 in

this action,[34]  (see Seligman Decl., Exh. H), absent class defendants should be able to raise as a defense the fact that they were not parties in Loper; were not enjoined from enforcing the Statute; or otherwise bound by the decision in Loper declaring §240.35.(1) unconstitutional and enjoining the NYPD and its Commissioner from enforcement of the Statute.

The proposed absent class defendants should also be able to assert as a defense that the federal court determination in Loper finding §240.35(1) unconstitutional, while persuasive, is not binding on them.  As the New York Court of Appeals noted in People v. Kin Kan, 78 N.Y.2d 54, 60, 571 N.Y.S.2d 436, 439 (1991) "…[T]he interpretation of a Federal constitutional question by the lower Federal courts may serve as useful and persuasive authority for our Court while not binding us."  See also People v. Barton, 8 N.Y.3d 70, 828 N.Y.S.2d 260 (2006); New York R.T. Corp. v. City of New York, 275 N.Y. 258, 265 (1937), aff'd, 303 U.S. 573 (1938).  As Justice Thomas noted:

> The Supremacy Clause demands that state law yield to federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation. In our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located….Lockhart v. Fretwell, 506 U.S. 364, 376 (1993) (Thomas, J., concurring).

The strength of this defense is exemplified in U.S. ex rel. Lawrence v. Woods, 432 F.2d 1072 (7th Cir. 1970), cert. denied, 402 U.S. 983 (1971), which while not controlling is highly persuasive, especially given the similarities in facts.  There, petitioner Lawrence was found guilty of a section of Chicago's municipal code.  While his appeal to the Supreme Court of Illinois was pending, the District Court for the Northern District of Illinois declared the section that Lawrence was convicted of unconstitutional.  The Supreme Court of Illinois then affirmed

---

[34] The complaint was dismissed as against the state defendants pursuant to a stipulation dated January 17, 2006. See Seligman Decl., Exhs. A.

petitioner's conviction, and he filed a habeas petition arguing that the Supreme Court of Illinois was bound by the federal district court's ruling that the section was unconstitutional.  The Seventh Circuit affirmed the district court's denial of petitioner's writ: "Until the Supreme Court of the United States has spoken, state courts are not precluded from exercising their own judgment upon questions of federal law." 432 F.2d at 1075 (quotations omitted).

While New York State Courts may find Loper to be persuasive, they are under no obligation to follow its holding. They are able to make their own determination as to the constitutionality of §240.35(1). Following the analysis in Lawerence, and more importantly pursuant to the law of the State of New York under Kin Kan, the absentee defendants are not bound by the decision in Loper.  Unless and until a court with appropriate jurisdiction enjoins them, the New York State Court of Appeals declares §240.35 unconstitutional or the Supreme Court of the United State declares it unconstitutional, the proposed absentee defendants are free to enforce the statute and as such, plaintiffs have no viable claims against them.  They are also free to raise this defense, which the City defendants do not share.  The absent class defendants should not be expected to rely on an uninterested class representative that is situated differently to protect their interests.  See Rios v. Marshall, 100 F.R.D. 395, 412-13 (S.D.N.Y. 1983) (defendant class denied in antitrust suit alleging conspiracy, where nothing prevented the named defendants from conceding that unnamed defendants were part of the conspiracy, that the named defendants were not a part of it or from acknowledging the existence of a conspiracy but denying participation).

Marcera, however, is distinguishable.  In Marcera, the New York State Corrections Commission promulgated regulations requiring jails to allow inmate contact visits. Marcera, at 1235.  Fifty-one sheriffs then brought a state court proceeding and secured an

injunction against enforcement of the Commission's rules. 595 F.2d at 1234. In support of the injunction, the 51 Sheriffs argued that the Commission's rules should be enjoined from enforcement based on cost and security concerns.  Subsequent to the state court injunction, Marcera commenced a class action seeking among other things a 23(b)(2) defendant class, which included 42 identified Sheriffs in the State of New York, to enforce the Commission's rules permitting inmate contact visits. See Id.

To the extent that the 51 Sheriffs sought to enjoin enforcement of the regulations in the state court proceeding, there was evidence of concerted action among the absentee class defendants and the representatives. See Henson, 814 F.2d at 413.  The defendants in Marcera shared a common interest and were working together to prevent enforcement of the rule in question. Here, there is no evidence, nor do plaintiffs claim, that the law enforcement and prosecutorial agencies which embody the proposed class defendants ever cooperated or even discussed among each other the enforcement of §240.35(1).  In fact,  there is no evidence that over 85% of these proposed defendants even enforced the statute in question.

In addition, there was no need for the Court in Marcera to speculate about the different defenses of the Sheriffs, because 51 of the Sheriffs joined in bringing a state court proceeding to enjoin enforcement of the State Correction Commission's contact visitation regulations and the principal grounds they asserted were cost and security. See McNulty v. Chinlund, 62 A.D.2d 682; 406 N.Y.S.2d 558 (3rd Dept. 1978). Clearly, the principal defenses raised by the proposed class representative in Marcera were variations of the same theme and common to the defendant class on the whole, which is not the case here. See Marcera, 595 F.2d at 1238-1239; see also  McNulty, 406 N.Y.S. 2d at 561. Finally, the members of the defendant class in Marcera (42 Sheriffs in the State of New York) were specifically identified, which is not

the case here.  The sheriffs not only had notice of this matter, but they affirmatively placed this legal issue before the courts by filing for an injunction.  With respect to the issue of typicality of defenses, the present matter and <u>Marcera</u> could not be more distinct.  In the present matter, it is plain that substantial and significant differences in defenses exist, necessitating a denial of plaintiffs' motion.

**C.    The Differences in Defenses Render The Putative Class Representatives Inadequate Representatives**

In determining if representatives are adequate, much like typicality, the Courts look to see if by protecting his own interests, a representative will also end up protecting the class.  <u>See</u> <u>Marcera</u>, 595 F.2d at 1239.  Fed.R.Civ.P. 23(a)(4); <u>see also</u> <u>Monaco v. Stone</u>, 187 F.R.D. 50 (E.D.N.Y. 1999).  Fairness and the due process rights are a paramount concern.  City defendants are inadequate representatives in that they are the only parties or proposed parties that are currently enjoined from enforcing §240.35(1).  This position prevents the City defendants from raising viable defenses available to the absentee class members.  This is not a case where, as in <u>Marcera</u>, "there is little reason to fear unfairness to absentees."  <u>Id</u>.  The same points preclude a finding that named defendants' counsel could be an adequate legal representative of the proposed absent class members.

**D.    Plaintiffs Fail To Meet The Numerosity Requirement and Their Definition Is Overbroad**

The numerosity requirement requires  a finding that "the class is so numerous that joinder of all members is impracticable".  Fed.R.Civ.P. 23(a)(1).  The burden of proof rests with the plaintiffs.  Plaintiffs' claim that enforcement of the Statute is a statewide problem and thus seek to certify a statewide class.

There are 62 counties in the New York State, five of which are the named defendants and proposed class representatives, and, according to plaintiff, 553 law enforcement

agencies in New York state.  Of these 62 counties, plaintiff makes allegations regarding nine of them, the five New York City counties and four non-City Counties.  As to the remaining 53 counties, which comprise approximately 85% of the counties in New York State, and the unidentified 553 law enforcement agencies, plaintiff neither alleges, nor provides data or information as to whether anyone in these counties or law enforcement agencies was ever charged with §240.35(1).  Plaintiff fails to show that the vast majority of the defendant class has any claims whatsoever.

  With limited information concerning enforcement of the Statute in four non-City counties out of 62, plaintiff asks this Court to make the strained leap in logic that enforcement is a statewide problem and requires statewide relief.  Plaintiff imputes wrongdoing, without factual basis, on the 53 counties about which they have no information.  This is especially offensive to notions of due process when each county, town and village enforcement and prosecutorial agencies are separate, distinct and independent of each other, and were not parties to or on notice of Loper.  Plaintiff's reliance upon Marcera again is misplaced.  Although the court in Marcera found that the 42 sheriffs who denied "contact visits" to pretrial detainees was a sufficient number to satisfy Fed.R.Civ.P. 23(a)(1), the class was limited to only the sheriffs whose counties did not permit "contact visits" and who were not the subject of separate pending litigation in the issue.  In other words, the defendant class in Marcera consisted of entities which were against enforcement of a regulation requiring inmate contact visits.  The defendant class did not consist of members which allowed contact visits.  There was absolutely no question that the absent class members in Marcera made clear that they would not permit contact visits and that the plaintiffs in Marcera alleged that the right to contact visits was constitutionally protected.  Such is not the case here.  Plaintiff makes no showing to support the conclusion that 53 non-City counties

enforced the Statute.   To the extent plaintiffs claim that four non-city counties enforced the Statute unconstitutionally, plaintiff fails to meet the burden of showing the class is so numerous that joinder of all members is impracticable.

The Second Circuit has cautioned against certifying an overbroad class as violative of due process:

> [A]n over-broad framing of the class may be so unfair to the absent members as to approach, if not amount to, deprivation of due process. . . . Some of the difficulty may be sifted out by findings of the trial court at or during the trial that the plaintiff adequately represents the class. But this issue itself may be determined in the absence of 99.9% of those affected, who have had no notice or service of process or right to be heard and who may feel that the plaintiff in the particular case (or his counsel, or both) is the last person they want representing them."

Haitian Ctrs. Council, supra, 969 F.2d 1326, 1337 (2d Cir. 1992) (quotations omitted).   The manner in which the defendant class is  defined is so over-broad and  unfair that it amounts to a deprivation of due process, especially given the heightened sensitivity to due process concerns in a defendant class context.

E.      **Court Lacks Jurisdiction Over The Proposed Class Defendants**

Many of the proposed class defendants have no contacts at all with the forum district, let alone minimum contacts.  Many of them are hundreds of miles from the forum district. As such, this Court lacks jurisdiction over the vast majority of the defendants.  Further, the due process rights of the absentee class defendants would be violated by subjecting them to the Court's jurisdiction.  This Court would not have jurisdiction over the great majority of these proposed absentee defendants if they were named in a lawsuit.  Seeking certification of a defendant class does not excuse plaintiffs from meeting the jurisdictional requirements.  "... [B]ecause, unlike the situation with a plaintiff class, the forum court must have personal jurisdiction over each member of a defendant class." Whitson v. Heilig-Meyers Furniture, 1995

U.S. Dist. LEXIS 4312 (D. Ala. 1995). These due process concerns cannot be assuaged by the certification of a defendant class. Certification of a defendant class in this case means that the proposed absent defendants, some from the farthest parts of the State, will be bound by an order of a court that has no jurisdiction over them.

**F.**     **Unmanageable Defendant Class**

To find against a municipality, plaintiffs must  show that the municipality engaged in a pattern and practice which gave rise to constitutional violations. Monell, 436 U.S. 658 (1978). Litigation of the Monell claims with a defendant class raises complexities which render the class unmanageable. Litigation of the Monell claims would require inquiry into practices and procedures of the law enforcement and prosecutorial agencies for every county, city, town and village regarding enforcement of §240.35(1). Then, of course, every one of these agencies must be afforded an opportunity to present its own defense. Moreover, the sheer number of hearings required would make a potential defendant class unwieldy and unmanageable, stripping away any benefits of a class action. The counties alone would require 57 of these individualized hearings to say nothing of the cities, towns and villages.

The unmanageability would increase exponentially should this Court certify the proposed defendant class and then issue binding orders against them. There are 553 law enforcement agencies within the State. No party here appears to know how many prosecutorial agencies are in the State. There could be at a minimum over 600 members of the defendant class. Given the size and diversity of New York State, these over 600 agencies are radically different. The burden on the proposed defendant class representatives, their counsel and taxpayers in ensuring that each one of over 600 agencies across the state are adequately represented and compliant with the various Orders of the Court would be unmanageable. Certifying a defendant class here would create many logistical problems in terms of

manageability that it would greatly outweigh any possible benefits to be had by creating a defendant class.

## POINT VI

## PLAINTIFF'S MOTION TO AMEND THE COMPLAINT SHOULD BE DENIED

For all the reasons set forth herein, defendants object to plaintiff's request to file the Second Amended Complaint to add the proposed class representatives as plaintiffs in this action and to add defendant class allegations and Equal Protection Claims. As discussed supra, the proposed class representatives are inadequate and fail to state claims either on their own behalf or on behalf of absent class members. As for the Equal Protection claim, it would be futile to permit amendment because it is barred by the statute of limitations. Thus, plaintiff's request should be denied in its entirety.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny Plaintiff's motions for class certification and to amend the complaint in their entirety.

Dated:      New York, New York
            April 23, 2007

                          MICHAEL A. CARDOZO
                          Corporation Counsel of the
                          City of New York
                          *Attorney for Defendants*
                          100 Church Street
                          New York, New York 10007
                          (212) 788-0784

                          By: _____
                              Rachel Seligman (RS-6674)