UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

MICHAEL BROWN, on Behalf of Himself
and Others Similarly Situated,                                    05 Civ. 5442 (SAS)

                          Plaintiff,

          -against -

RAYMOND W. KELLY, Commissioner of the
New York City Police Department (NYPD); *et al.*,

                          Defendants.

-----------------------------------------------------------------x


## REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION


Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019

The Bronx Defenders
860 Courtlandt Avenue
Bronx, New York 10451

## TABLE OF CONTENTS

PAGE NO(s):

TABLE OF AUTHORITIES ...................................................... i-iii

ARGUMENT ................................................................... 1

I.    A NEW YORK CITY 23(B)(2) INJUNCTIVE CLASS
SHOULD BE CERTIFIED ................................................. 1

    A.    The Rule 23(a) Pre-Requisites Are All Satisfied .......................... 1

            1.    The Putative Class Representatives Are Adequate ................... 2

            2.    The Bronx Defenders Are Adequate Class Counsel ................ 5

    B.    Plaintiff Satisfies Rule 23(b)(2) ..................................... 6

II.    THE COURT SHOULD CERTIFY BILATERAL NEW YORK STATE B(2)
PLAINTIFF AND DEFENDANT CLASSES ................................. 8

III.    THE COURT SHOULD CERTIFY A CONCURRENT (B)(3) CLASS ............ 10

CONCLUSION ............................................................... 15

## TABLE OF AUTHORITIES

CASES:                                                                  PAGE NO(s):

*Baby Neal for and by Kanter v. Casey,*
  43 F.3d 48 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Burley v. City of New York,*
  No. 03 Civ. 735 (WHP), 2005 WL 668789 (S.D.N.Y. March 23, 2005) . . . . . . . . . . . . . 4

*Brown v. Kelly,*
  No. 05 Civ. 5442, 2007 WL 1138877 (S.D.N.Y. April 16, 2007 . . . . . . . . . . . . . . . . . . . 3

*Bynum v. Dist. of Columbia,*
  214 F.R.D. 27 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of Chicago v. Morales,*
  527 U.S. 41 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Clinton v. City of New York,*
  No. 98 Civ. 3810, 1999 WL 105026 (S.D.N.Y. March 2, 1999) . . . . . . . . . . . . . . . . . . . 14

*Coco v. Village of Belle Terre,*
  233 F.R.D. 109, 114 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*Covington v. City of New York,*
  No. 94 Civ. 4234, 1998 WL 226183 (S.D.N.Y. May 4, 1998) . . . . . . . . . . . . . . . . 14-15

*Daniels v. City of New York,*
  198 F.R.D. 409 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*DeAllaume v. Perales,*
  110 F.R.D. 290 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Folsom v. Blum,*
  87 F.R.D. 443, 445 (S.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Galvan v. Levine,*
  490 F.2d 1255 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gov't of India v. Cook Indus., Inc.,*
  569 F.2d 737 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
  No. MDL 1358 SAS, 2007 WL 25474 (S.D.N.Y. Jan. 3, 2007) . . . . . . . . . . . . . . . . . . . . 4

*In re Nassau County Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

*In re NTL Sec. Litig.*,
  No. 02 Civ. 3013, 2006 WL 33013 (S.D.N.Y. Feb. 14, 2006) . . . . . . . . . . . . . . . . . . . . . 2

*In Re Visa Check/Mastermoney Antitrust Litigation*,
  280 F.3d 124 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 15

*Jane B. by Martin v. New York City Dep't of Social Services*,
  117 F.R.D. 64 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

*Latino Officers Assoc. Of New York v. City of New York*,
  209 F.R.D. 79 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Loper v. New York City Police Department*,
  135 F.R.D. 81 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Luyando v. Brown*,
  124 F.R.D. 52 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Marcera v. Chinlund*,
  595 F.2d 1231 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Marisol A. v. Guiliani*,
  126 F.3d 372 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Monaco v. Stone*,
  187 F.R.D. 50 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Murphy v. Lynn*,
  118 F.3d 938, 946 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Natale, et al. v. Town of Ridgefield*,
  170 F.3d 258, 263 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Noble v. 93 University Place Corp.*,
  224 F.R.D. 330 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Paretti v. Cavalier Label Co.,*
    722 F. Supp. 985 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pinaud v. County of Suffolk,*
    52 F.3d 1139 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Port Authority Police Benevolent Assoc. v. Port Authority of New York and New Jersey,*
    698 F.2d 150  (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Posr v. Court Officer Shield # 207,*
    180 F.3d 409, 417 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*O'Connor v. Pierson,*
    426 F.3d 187 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Savitsky v. Mazella,*
    No. 98 Civ. 9051, 2004 WL 2454120 (S.D.N.Y. Nov. 1, 2004) . . . . . . . . . . . . . . . . . . . 6

*Wilder v. Bernstein,*
    499 F. Supp. 980, 992 (S.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATUTES

New York Penal Law § 240.35(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

### ARGUMENT

## I.    A NEW YORK CITY 23(B)(2) INJUNCTIVE CLASS SHOULD BE CERTIFIED

The salient facts are uncontested. For 15 years now, and as recently as April, defendants have enforced an unconstitutional statute (N.Y. Penal Law § 240.35(1)) criminalizing "loitering for the purpose of begging." There are precious few signs that anything has changed. Even now, with a contempt motion *sub judice*, defendants continue to enforce the Statute. Thousands have been victimized by this misconduct. Thus, the proposed plaintiff class consists all persons who have been or will be arrested, charged, or prosecuted for violating the Statute.

As they must, defendants have conceded liability and consented to certain limited injunctive orders. *See* Pl.'s Moving Br. at 23-34. These steps, however, do not remove those issues from the calculus of common issues suitable for class treatment. *See In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006). Moreover, here, given the remarkable history of non-compliance, dozens of common questions concerning the nature and scope of *additional* injunctive measures remain to be determined. Unless a class is certified under Rule 23(b)(2), thousands of plaintiffs will be denied the ameliorative injunctive relief required to prevent defendants from continuing to flout the law.

### A.    The Rule 23(a) Pre-Requisites Are All Satisfied

Defendants appropriately concede numerosity (at least when it comes to the New York City class).[1] While not conceded, defendants cannot meaningfully contest commonality. Defendants charged plaintiffs and the thousands they seek to represent with violating the same unconstitutional Statute, and thus the "injuries complained of by the named plaintiffs allegedly

---

[1] Notwithstanding this Court's express admonition in a conference on November 29, 2006, defendants appear to contest numerosity for the state-wide plaintiff class. *See* Defs' Br. at 31. This makes no sense. The OCA database shows that 673 were charged with violating the Statute outside of New York City. While there are undoubtedly more (the OCA database is not complete), 673 readily meets the numerosity requirement.

result from the same unconstitutional practice or policy that allegedly injured or will injure the proposed class members." *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001). The commonality requirement "[is] satisfied if the class shares even one common question of law or fact." *In re NTL Sec. Litig.*, 02 Civ. 3013, 2006 WL 33013, at *6 (S.D.N.Y. Feb. 14, 2006) (internal quotations and citations omitted). Here, there are literally dozens of common issues.

Similarly, while some non-material differences in the details of individual arrests may exist, typicality is also easily satisfied. "There is no requirement that the factual basis for the claims of all members of a purported class be identical." *Wilder v. Bernstein*, 499 F. Supp. 980, 992 (S.D.N.Y. 1980). Defendants contend that commonality and typicality are not met "because the substantive law underlying plaintiff's claims requires individualized, highly fact-specific analysis to establish liability for each individual claim." Defs.' Br. at 9. This ignores the governing law for a Rule 23 (b)(2) injunctive class: "[t]he absence of a claim for money damages eliminates the need for individualized assessments of liability and harm." *Daniels*, 198 F.R.D. at 415. The issue in a (b)(2) injunctive class is *defendants' conduct*. Because plaintiffs challenge a common course of illegal conduct against them, "there is therefore no need for individualized determinations regarding the propriety of injunctive relief." *Baby Neal ex rel. v. Casey*, 43 F.3d 48, 52 (3rd Cir. 1994); *see also Marisol A. v. Giuliani*, 136 F.3d 372 (2d Cir. 1997).

Defendants' argument that the class definition is overbroad or uncertain must be rejected. Every single member of the plaintiff class is identified in the Office of Court Administration databases and can thus be readily identified. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure 2d* § 1760 (1986), *see also Daniels*, 198 F.R.D. at 417. It really is that simple. Def.'s Br. at 8 ("It is not that simple").

### 1.    The Putative Class Representatives Are Adequate

In contesting the Rule 23(a) pre-requisites, defendants focus on adequacy under

-2-

23(a)(4). Defendants argue that the proposed class representatives have various flaws. *See*

Defs.' Br. at 13-14. If defendants are permitted to disqualify a class representative by virtue of a

history of chemical dependence or missed court appearances, however, there will be no one left

who is "adequate" to represent this particular class of persons charged with "loitering for the

purpose of begging." *See e.g. Noble v. 93 University Place Corp.*, 224 F.R.D. 330 (S.D.N.Y.

2004). "Such inflexibility runs counter to a principal objective of the class action mechanism –

to facilitate recovery for those least able to pursue an individual action." *Id.* at 344. In this case,

as in *Noble*, defendants' rigid interpretation of the adequacy requirement would prevent recovery

for those least able to pursue an individual action: poor, homeless, mentally ill or previously

chemically dependent New Yorkers. *See Jane B. by Martin v. New York City Dep't of Soc.*

*Servs.*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987).[2] As set forth below, the proposed putative class

representatives are sufficiently familiar with this case and their role in it:

- Keith Anderson Dep., Ex. E at 10-11, 50 ("my role is to help people as I help myself"); 52 (wants to be a class representative "[b]ecause what happened to me I don't want it to happen to anybody else."); 53; 64, 66, 68 ("it is against the law to lock people up for pan handling, that was what the whole fight was all about.").

- Llewellyn Rudy Dep., Ex. F at 128 ("I understand that I have to be reliable, that it's up to me to see that this does not happen to anyone else and that the law is properly followed by the NYPD and to set an example . . ."); 130 ("Pursuing it as a class action is to ensure that the NYPD stopping bothering me, but to stop enforcing a law that does not exist, it's unconstitutional, but yet they don't seem to get it."); 132-134; 135 ("there's a contempt order to be issued by Shira Scheindlin . . .."); 212 ("I don't want anybody in my situation to ever have to be harassed . . . for something that's a peaceful, lawful activity.").

- Michael Louis Brown Deposition, Ex. G at 7; 51; 61; 63-64 ("I'm representing it for those that can't be here today . . . Somebody got to be here for them, stand up just like if I couldn't be here, I think somebody else would be here for me."); 65 ("I just really want the police to stop arresting us for panhandling because I don't see it as no crime."); 67-68.

---

[2]Defendants' argument that plaintiffs who are recovered addicts are inadequate is not just legally flawed and contrary to the law of the case, *see Brown v. Kelly*, No. 05 Civ. 5442, 2007 WL 1138877, at *2 (S.D.N.Y. April 16, 2007), it is also offensive given that the plaintiffs with substance abuse histories testified that they have made admirable recoveries.

-3-

- Bobby Wells Deposition, Ex. H at 20; 78; 90-91 ("My role in this lawsuit is, to me, to represent myself and everybody else that is involved that this happened to if they do not come forth, I will continue."); 93; 97.

- Xavier Grant Deposition, Ex. I at 30; 33, 34 ("I have the right to, I guess, do whatever I want as long as you are not breaking the law or anything else."); 80.

Defendants also contest adequacy on the ground that not all plaintiffs may ultimately prevail on every constitutional claim they assert, and thus allegedly may have conflicts with other class members. This argument should be rejected. Adequacy of representation "assures that the named plaintiffs' claims are not antagonistic to the class." *Baby Neal*, 43 F.3d at 55. Here, plaintiffs and absent class members were all charged with violating the same unconstitutional Statute. Thus, they share a close nexus of operative facts for their basic injunctive claims, and "their motive to pursue their claims will be similar to those of the absent class members." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, MDL 1358 SAS, 2007 WL 25474 at *6 (S.D.N.Y. Jan. 3, 2007). The fact that some named plaintiffs could theoretically prevail on four constitutional claims, while absent class members might prevail on just three, does not cause antagonism at all. *Every* time defendants have or will charge someone under the Statute they violate the law. Defendants do not, indeed cannot, argue otherwise. "Defendants' conclusory assertions raise a hypothetical, rather than an actual, conflict." *Burley v. City of New York*, No. 03 Civ. 735, 2005 WL 668789, at *4 (S.D.N.Y. March 23, 2005); *In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 145 (2d Cir. 2001).

Indeed, many of defendants' arguments *support* certification. For example, defendants argue that because plaintiffs Rudy and Grant were issued a summons, rather than charged at arraignment, they cannot establish a Fourth Amendment violation. Defs.' Br. at 16. Setting aside the fact that defendants are wrong, *see infra* at Section III, the legal question of whether issuing a summons charging an unconstitutional statute violates the Fourth Amendment is a common question for many thousands of class members who were so charged. Defendants

-4-

also claim that only plaintiff Llewellyn Rudy was panhandling at the time of his arrest, and thus

the other putative representatives cannot "represent a class that was allegedly exercising First

Amendment rights when they were arrested or summonsed." Defs.' Br. at 16. Defendants are

wrong on the facts. Three of the six putative class representatives were panhandling at the time

of their arrest or summons: Llewellyn Rudy, Michael Brown, Proposed Compl. ¶ 60, and

Michael Louis Brown, *id.* ¶ 74, and Ex. G at 133. Defendants are wrong on the law too. As

explained above, any divergence in the number of viable constitutional claims is irrelevant. Even

assuming for the sake of argument that *only* Mr. Rudy could prevail on a First Amendment

claim, all the proposed representatives still share other common constitutional claims with the

putative class, *e.g.*, Due Process and Fourth Amendment claims, and thus they remain adequate

representatives. There is no fundamental conflict. *See In re Visa*, 280 F.2d at 145.

### 2.   The Bronx Defenders Are Adequate Class Counsel

Defendants argue that The Bronx Defenders is inadequate as class counsel

because it has an alleged conflict of interest with class members who it defended in criminal

cases. Defendants' newfound concern for those whose rights they violated is as ironic as it is

disingenuous. The Bronx Defenders uncovered defendants' illegal conduct. If the Bronx

Defenders were motivated by anything other than a desire to vindicate the putative class's rights,

including its former clients, they would not have brought and tenaciously pursued this action.

In the ten years since its founding, and excluding dismissed-plaintiff Eddie Wise,

The Bronx Defenders has represented only 40 clients who were charged with the Statute at

arraignments in 49 cases. Smyth Reply Decl. ¶ 30. Clients were convicted of the Statute in 17 of

those cases. *Id.* Out of a putative class numbering in the thousands, this number is de *minimis*.

Moreover, the actions of a defense attorney are irrelevant to the liability of the City of New York

("the City"). Defendants cannot offer any legal theory that shifts liability for an illegal arrest and

prosecution to defense counsel. Defendants alone are responsible for their own misconduct.

Defendants also contend that The Bronx Defenders is inadequate because McGregor Smyth filed a declaration in support of this motion that summarized factual data provided to all parties by the OCA and the City itself. This is frivolous. Defendants' counsel too has submitted a factual declaration summarizing the same OCA data. *See e.g.* Declaration of Rachel A. Seligman, Esq. dated April 23, 2006 at ¶¶ 9-10. Application of the "advocate-witness" rule requires a "high standard of proof" on the part of the party seeking to disqualify an opposing party's counsel, and the City has no basis for it here. *Savitsky v. Mazella*, No. 98 Civ. 9051, 2004 WL 2454120, at *6 (S.D.N.Y. Nov. 1, 2004) (citing *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)). Disqualification is an option only when an attorney's testimony is required, thus raising the specter of jury confusion. *Paretti v. Cavalier Label Co.*, 722 F. Supp. 985, 986 (S.D.N.Y. 1989). The Smyth Declaration merely presents a compilation of OCA and NYPD data contained in Microsoft Excel spreadsheets. Review of this data did not require any expertise beyond basic familiarity with Microsoft Office products and the ability to count. The declaration was made solely to avoid burdening the Court with voluminous underlying data. If this case were ever tried to a jury, these facts would be established at trial by other means. The Bronx Defenders and Emery Celli Brinckerhoff & Abady should be appointed class counsel pursuant to Rule 23(g).

## B.     Plaintiff Satisfies Rule 23(b)(2)

Defendants contend that certification under Rule 23(b)(2) should be denied because they have not acted on grounds generally applicable to the class. This is so, they claim, because they illegally arrested some people under a void law while they were begging, but

illegally arrested others under the same void law while merely standing on the street.[3] Defs.' Br. at 20. This misses the point. The focus of the Rule 23(b)(2) inquiry is on *defendants' actions*.

Defendants also argue that the putative class representatives lack standing to seek injunctive relief. First, defendants have the hubris to argue that "there is no likelihood that arrests or prosecutions under the Statute can occur again." Defs.' Br. at 20. To state the argument is to refute it. Defendants' stunning record of noncompliance since this case was filed – 51 arrests, 55 prosecutions, 814 summonses, and 174 bench warrants – speaks for itself. Second, defendants argue that the named plaintiffs lack standing because they are unlikely to panhandle in the future. Defs.' Br. at 20. This is false. Plaintiff Rudy currently panhandles every day in Queens, and he testified the he intended to panhandle in Queens the day after his deposition. Ex. F at 213-14. Plaintiff Brown shares these same facts. Ex. G at 24, 43, 60.

Finally, defendants oppose certification of a (b)(2) plaintiff class as unnecessary under *Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973). Defs.' Br. at 21. Under *Galvan*, however, "[t]he most important inquiry is the level of commitment expressed by the defendants." *Daniels*, 198 F.R.D. at 421. Given their woeful record of non-compliance, defendants fail this test. No strangers to irony, defendants forget that they made the same argument sixteen years ago when they opposed class certification in *Loper v. New York City Police Department*, 135 F.R.D. 81, 82-83 (S.D.N.Y. 1991) (granting class certification over NYPD's opposition invoking *Galvan*). The *Galvan* factors are not met in this case. First, defendants have never agreed to provide all of the injunctive relief plaintiffs seek, nor to apply such relief to everyone similarly situated.[4] Second, any agreement would be worthless as defendants continue enforce the Statute

---

[3]Defendants cannot seriously contend that they retain the right to arrest or summons individuals under the Statute, as long as the individuals were *not* begging at the time of the arrest.

[4]As set forth in the proposed Second Amended Complaint, plaintiff seeks significant (continued...)

-7-

unabated in the face of court orders. Third, plaintiffs seek complex, affirmative relief (rather than a simple order to stop enforcement). *See Jane B.*, 117 F.R.D. at 72 (*Galvan* inapplicable where order is sought requiring defendants to affirmatively remedy constitutional violations); *Folsom v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y. 1980); *see also Daniels*, 198 F.R.D. at 422. Certification of a (b)(2) class is also necessary so defendants' compliance can be monitored.

## II.   THE COURT SHOULD CERTIFY BILATERAL NEW YORK STATE B(2) PLAINTIFF AND DEFENDANT CLASSES

Plaintiffs seek a permanent injunction from this Court prohibiting law enforcement officials throughout New York State from enforcing the Statute. Certification of bilateral state-wide plaintiff and defendant classes under Rule 23(b)(2) is the most efficient and feasible vehicle to ensure that law enforcement officials throughout New York State follow the Second Circuit's ruling. The OCA database reveals that the mere declaration by the Second Circuit that the Statute is unconstitutional is insufficient.

Only through certification of a statewide (b)(2) plaintiff class will the thousands of past and future victims of unconstitutional enforcement outside of New York City have any hope of preventing further illegal charges *before* they occur or seeking contempt sanctions thereafter. And absent certification of a parallel defendant class under (b)(2) that will be bound by this Court's injunction there would be no reason to certify a plaintiff (b)(2) class of non-City plaintiffs as beneficiaries of such relief. Each class is dependent on the other. *Marcera v. Chinlund*, 595 F.2d 1231, 1237-38 (2d Cir. 1979), *vacated on other grounds*, 442 U.S. 915 (1979) (certifying state wide plaintiff class "would be an exercise in futility" absent certification of a state wide defendant class).

Predictably, the City and defendant Kelly argue that they would not be good

---

[4](...continued)
additional injunctive relief. *See* "Wherefore" Clause ¶¶ 1-7.

defendant class representatives. They say they are "in a position wholly apart from other defendant class members," Defs.' Br. at 26, because they are bound by judicial orders in *Loper* (and this Court). This difference is not material. Core common issues of law and fact that the City and defendant Kelly share with the proposed defendant class of non-City law enforcement officials include: (1) whether defendants enforced or failed to prevent the enforcement of the Statute after it was declared unconstitutional; and (2) whether defendants' post-*Loper* enforcement of the Statute violated and continues to violate the Constitution. If anything, the fact that the proposed class representatives were operating under injunctions prohibiting enforcement of the Statute – yet continued to routinely enforce it – gives them the greatest incentive to vigorously defend this action. That said, there is really nothing to defend. The Second Circuit's decision in *Loper* is binding on defendants and all entities with the power to enforce the statute throughout the State. There is simply no defense to the state-wide injunction plaintiffs seek.

In the same vein, defendants argue that absent class members have a unique defense: that the federal court's determination in *Loper*, although persuasive, is not binding upon them, and that non-City defendant class members may continue to enforce the Statute. Defs.' Br. at 29. Defendants are confused. All of defendants' citations concern whether a state *court* is bound by a federal court's order or decision. Plaintiffs seek to certify a defendant class of all entities and officials in the State of New York with authority to arrest, charge or prosecute a person under the Statute. While State court judges arguably may remain free to determine whether *Loper* binds their judicial decision-making, State *law enforcement* officers do not. Law enforcement officials throughout the State must comply with *Loper*. There is no unique defense available to them. For the same reason, no conflict exists between the proposed class representatives who were arrested in the City and putative class members who were arrested outside of the City, and those who were not.

Certification of the proposed defendant class would not violate absent class defendants' rights to due process. Courts have repeatedly found that due process is not a bar to certification where members of the proposed defendant class are related by a "juridical link." *DeAllaume v. Perales*, 110 F.R.D. 290, 303 (S.D.N.Y. 1986); *Luyando v. Brown*, 124 F.R.D.52, 58 (S.D.N.Y. 1989). A juridical link is "some independent legal relationship which relates all defendants in a way such that a single resolution of the dispute is preferred to a multiplicity of similar actions." *Id*. (citation omitted); *Monaco v. Stone*, 187 F.R.D. 50, 66 (E.D.N.Y. 1999) (juridical link exists between all criminal court judges bound to enforce same statute); *DeAllaume*, 110 F.RD. at 303 (commissioners promulgated the same policy across the state).

Finally, defendants need a primer on personal jurisdiction. A federal district court has personal jurisdiction throughout the state in which it sits. This includes all persons domiciled in the state, all corporations doing business or transacting business in the state, and all property in the state. This is hornbook law. Defendants argument to the contrary is frivolous.

## III.    THE COURT SHOULD CERTIFY A CONCURRENT (B)(3) CLASS

The core issues in this case are whether defendants maintained an unconstitutional policy of enforcing a void statute that criminalized "loitering for the purpose of begging," even after the Second Circuit struck the law down in 1993, and whether defendants violated the constitutional rights of thousands of people by arresting or summonsing them under this same void statute. These issue pervade everything, and more than satisfy the requirements of Rule 23(b)(3). *See Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 39-40 (D.D.C. 2003). Facing a remarkably similar scenario, the court in *Coco v. Village of Belle Terre*, 233 F.R.D. 109, 114 (E.D.N.Y. 2005) certified a Rule 23(b)(3) class. In *Coco*, the plaintiff alleged that a municipality and individual police officers, "without authority to do so, purported to enforce traffic and other laws and collect purported fines for alleged violations of those laws." The court held that:

questions of law or fact common to the members of the class predominate. For example, the core issue is whether the defendants acted within their authority by authorizing and issuing appearance tickets and collecting fines for violations of the New York State VTL. As stated above, this issue affects the plaintiff and all of the proposed class members. All the plaintiffs will presumably rely on the same proof to establish the existence and legality, or lack of legality, of this practice.

*Id.* at 115-16.

In opposition, defendants identify a handful of immaterial "individual" issues attempting to undermine those that are common and predominant. In fact, a core group of plaintiff's claims require no individualized analysis, are common to the entire class, and predominate, making (b)(3) certification appropriate.

Defendants' argument that several putative class representatives were not begging at the time of their arrest misses the point. In charging and prosecuting the named plaintiffs and putative class members under the Statute, *defendants* accused the plaintiffs of begging (a protected activity), and *defendants* penalized plaintiffs based on this allegation. These arrests and summonses not only chilled the arrestee's future protected speech and expression, but of course communicated to other New Yorkers that peaceful begging was illegal. This First Amendment claim is sufficient for class certification. *Latino Officers Ass'n v. City of New York,* 209 F.R.D. 79, 85-86 (S.D.N.Y. 2002); *see also Port Authority Police Benevolent Assoc. v. Port Authority of New York and New Jersey,* 698 F.2d 150, 153-54 (2d Cir. 1983). Defendants are now apparently claiming that not only did they charge class members with a void statute, but individual police officers also lied when they described the conduct at issue in their arrests. If there are a *de minimis* number of individuals charged with the Statute who were neither cited for, nor engaged in, protected speech activities, these cases can be managed within the class action, for example, as a sub-class.

In arguing that predominance is lacking because plaintiffs' Fourth Amendment claims may be attacked under *Devenpeck*, defendants ignore the leading precedents on predom-

-11-

inance. The fact that separate probable cause inquiries may (or may not) exist for some subset or subclass of plaintiffs does not defeat class certification. While it is true that probable cause is a complete defense to an action for false arrest, the fact that a defense "may arise and affect different class members differently does not compel a finding that individual issues predominate over common ones." *In re Visa*, 280 F.3d at 138. In *Nassau County*, defendants argued that individualized liability issues predominated regarding whether some plaintiffs were strip-searched based upon reasonable suspicion. 461 F.3d at 219, 229. The Second Circuit concluded that "[i]n light of the pervasive character of the common liability issues and the admittedly *de minimis* nature of individualized liability issues," the district court erred in holding that individual liability issues predominated over common ones. *Id.* Here too, the pervasive nature of the common liability issues (First Amendment and Due Process) outweigh any individual inquires that may be necessary to resolve some subset of the Fourth Amendment claims at issue.[5]

Defendants also "seem to conflate probable cause to arrest with probable cause to believe that [plaintiffs] could be successfully prosecuted." *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999). "Only the latter kind of probable cause is at issue with respect to [a] malicious prosecution claim" under the Fourth Amendment. *Id.* This distinction is important because while *Devenpeck* applies to a determination of probable cause to arrest, it does not apply to a determination of probable cause for instituting or pursuing charges. Accordingly – irrespective of *Devenpeck* – *all putative class members* have uniform claims that defendants violated the Fourth Amendment when they decided to pursue charges whether by summons, desk

---

[5]It is notable that amongst the six proposed class representatives, defendants have not asserted that probable cause existed for their arrest or summons based on any uncharged criminal activity, under *Devenpeck*. This is true for the vast majority of the plaintiffs in the putative class.

-12-

appearance ticket or after arraignment.[6]

Notwithstanding defendants' uninformed argument to the contrary, Defs.' Br. at

16, issuance of a summons without probable cause violates the Fourth Amendment.

> [A] defendant incarcerated until trial no doubt suffers greater burdens. That difference, however, should not lead to the conclusion that a defendant released pretrial is not still "seized" in the constitutionally relevant sense. *Such a defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed "seized" for trial, so long as he is bound to appear in court and answer the state's charges.* He is equally bound to appear, and is hence "seized" for trial, when the state employs the less strong-arm means of a summons in lieu of arrest to secure his presence in court.

*Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997) (emphasis in original) (citing *Albright v.*

*Oliver*, 510 U.S. 266, 279 (1994) (Ginsburg J., concurring).

Third, in the unlikely event that any plaintiff lacks either a First or Fourth

Amendment claim, every single member of the plaintiff (b)(3) class has a Due Process claim.

The right to substantive due process is the right to "be free of arbitrary government action *that*

*infringes a protected right*." *O'Connor v. Pierson*, 426 F.3d 187, 201 n.6 (2d Cir. 2005)

(emphasis in original). Here, the right violated was the plaintiff's liberty interest in loitering in

public. *See City of Chicago v. Morales*, 527 U.S. 41, 53 (1999) (plurality opinion by Stevens, J.)

(internal quotations and citations omitted) ("The freedom to loiter for innocent purposes is part of

the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment. We have

expressly identified this right to remove from one place to another according to inclination as an

attribute of personal liberty protected by the Constitution."). Having identified the liberty interest

at stake, plaintiffs can easily establish that the City's action was arbitrary in the constitutional

sense and thus violated plaintiffs' substantive due process rights. Enforcing a void criminal law,

---

[6]Despite defendants' arguments to the contrary, all summonses are, by definition, single instances of illegal enforcement of the Statute. Officers can charge only one offense in each summons. *See* Smyth Reply Decl. at ¶11-28. Thus, single charge cases still predominate here.

-13-

in violation of multiple federal court orders, thousands of times, over a period of fifteen years, shocks the conscience, and represents a "deliberate flouting of the law that trammel significant personal or property rights." *Natale, et al. v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). Thus, all the putative plaintiffs also share this common Due Process claim.

While some class member may not ultimately retain claims under every constitutional provision at issue – *i.e.* the First, Fourth, *and* Fourteenth Amendments – in order to satisfy predominance, it is sufficient that there is a common nucleus of claims challenging the same unconstitutional policy and practice. At a later point in the litigation, it may well become appropriate to certify a sub-class of individuals with Fourth Amendment claims pursuant to Rule 23©)(3) because of the *Devenpeck* issues raised by defendants or those with "pure" instead of "mixed" arrests, who indisputably have extremely strong Fourth Amendment claims. At this juncture however, common issues concerning defendants' unconstitutional enforcement of the void statute predominate.[7]

Defendants wrongly argue that under a theory of delayed accrual under *Pinaud*, there is a fact-sensitive inquiry into when each plaintiff knew or should have known of a pattern and practice of post-*Loper* enforcement of the Statute. Under delayed accrual, a cause of action against a municipality or an individual sued in his or her official capacity does not accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a municipal "policy or custom." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (citing *Monell*); *Clinton v. City of New York*, No. 98 Civ. 3810, 1999 WL 105026, at *1 (S.D.N.Y. March 2, 1999); *Covington v. City of New York*, No. 94

---

[7]To the extent that are individualized issues that will arise in this case as a class action, there are a number of management tools that the Second Circuit has encouraged district courts to use. *In re Visa*, 280 F.3d at 140, 146 (noting that class action management "problems pale in comparison to the burden on the courts that would result from trying the cases individually.").

Civ. 4234, 1998 WL 226183, at *2 (S.D.N.Y. May 4, 1998). This determination can be made on a class-wide basis. The relevant point of knowledge for class members is not whether they know about the *Loper* decision in 1991, but whether they knew or should have known about defendants' policy and custom of post-*Loper* enforcement.

Misconstruing the law of qualified immunity,[8] defendants also argue that qualified immunity is a unique defense, which requires individualized findings of whether an officer's conduct was reasonable under then clearly established, citing *Saucier v. Katz*, 533 U.S. 194 (2001). Insofar as qualified immunity is an issue, it is actually a common issue subject to class-wide – albeit summary – adjudication in plaintiffs' favor. No defendant or absent defendant class member can possibly argue that the law prohibiting enforcement of the Statute was not clearly established after 1992 as this precise issue was decided in *Loper*.

As set forth in plaintiffs initial brief, a class action under Rule 23(b)(3) is vastly superior to any other method of vindicating plaintiffs' rights. Faced with a similar situation, the court in *Coco v. Village of Belle Terre*, held that a class action was superior because "[g]iven the large number of potential plaintiffs and the commonality of their claims, certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would do." 233 F.R.D. at 115-16.

## CONCLUSION

Plaintiffs respectfully request that the Court grant leave to amend the Complaint to add the initial proposed additional plaintiffs, as well as Llewellyn Rudy, and certify two plaintiff classes and one defendant class pursuant to Rules 23(a), (b)(2) and (b)(3).

---

[8]It is more than ironic that defendants claim the *Loper* decision was so well-publicized that a largely homeless class should have know about it, (Defs.' Br. at 10, n.14), when the City defendants, directly on notice of a permanent injunction, argue that they should be entitled to qualified immunity because enforcement of the void Statute was "reasonable." Defs.' Br. at 11.

-15-

Dated: May 7, 2007
     New York, New York

                EMERY CELLI BRINCKERHOFF
                      & ABADY LLP

By: _____
                  Matthew D. Brinckerhoff (3552)
                  Katherine R. Rosenfeld (8525)

                75 Rockefeller Plaza, 20th Floor
                New York, New York 10019
                (212) 763-5000

                THE BRONX DEFENDERS
                      J. McGregor Smyth, Jr. (9995)
                860 Courtlandt Avenue
                Bronx, New York 10451
                (718) 838-7878

                *Attorneys for Plaintiff Michael Brown*
                *and the Putative Class*