UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

MICHAEL BROWN, on Behalf of    :
Himself and Others Similarly Situated,  :

                             :

           Plaintiff,     :

                             :

  - against -    :

                             :

RAYMOND W. KELLY, Commissioner  :
of the New York City Police Department, :
the CITY OF NEW YORK, *et al.*,    :

                             :

          Defendants.    :

------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/31/07

**OPINION & ORDER**

**05 Civ. 5442 (SAS)**

## I.    INTRODUCTION

In 1993, the Second Circuit declared New York Penal Law

§ 240.35(1) unconstitutional on First Amendment grounds.[1]  This statute provides

that a person is guilty of "loitering when he . . . [l]oiters, remains or wanders about

in a public place for the purpose of begging . . . ."[2]  Plaintiff Michael Brown brings

this putative class action against, *inter alia*, New York City Police Commissioner

Raymond W. Kelly and the City of New York, alleging that they have unlawfully

continued to arrest, summons and prosecute individuals such as himself for

violating this statute.  It is undisputed that for more than a decade after the Second

---

[1]    *See Loper v. New York City Police Dep't*, 999 F.2d 699, 701 (2d Cir. 1993).

[2]    N.Y. Penal Law § 240.35(1) (McKinney 2007).

Circuit's ruling, enforcement of section 240.35(1) continued largely unabated.
And notwithstanding an Order of this Court dated June 23, 2005, which directed
defendants once and for all to cease enforcing the statute, enforcement continues to
this day.[3]  Plaintiff now moves for a judgment of civil contempt against defendants
and for the imposition of coercive sanctions for each prospective incident of
enforcement.  For the reasons that follow, plaintiff's motion is denied.

## II.    BACKGROUND

### A.    Continued Enforcement of Section 240.35(1)

In 1992, Judge Robert W. Sweet of this Court issued a permanent
injunction barring the NYPD from enforcing section 240.35(1), which the Second
Circuit affirmed in *Loper v. New York City Police Department*.[4]  Nevertheless, on
multiple occasions from 2002 to June 2005, uniformed police officers wrongfully
arrested former plaintiff Eddie Wise for peacefully begging on the streets of the
Bronx.[5]  Wise was charged with loitering in violation of section 240.35(1) and

---

[3]     By defendants' own admission, from January 2, 2007 through March 14,
2007, members of the New York City Police Department ("NYPD") issued
summonses for section 240.35(1) at an average rate of approximately one every
other day. *See* Memorandum of Law in Opposition to Plaintiff's Motion for
Contempt ("Def. Mem.") at 11.

[4]     999 F.2d at 706.

[5]     *See* First Class Action Complaint ¶ 2.

2

prosecuted for this offense by the Bronx District Attorney's Office.[6]  On June 9,

2005, Wise commenced the instant action by filing an Order to Show Cause and

Temporary Restraining Order seeking relief against municipal and state defendants

for unlawfully enforcing section 240.35(1).[7]  Soon thereafter, the municipal

defendants entered into a stipulation in which they agreed to take steps aimed at

preventing future enforcement of the statute.[8]  This Court "so ordered" that

stipulation on June 23, 2005 (hereafter "June 23, 2005 Order").[9]  Pursuant to that

Order, defendants notified various New York City law enforcement officials and

employees that section 240.35(1) had been declared unconstitutional.  That Order

---

[6]     *See id.*

[7]     On November 22, 2006, Wise accepted defendants' Rule 68 Offer of
Judgment, subsequent to which a judgment was entered dismissing any and all of
his claims.  Prior to the dismissal, Wise received leave to amend his complaint to
add Michael Brown as a plaintiff and class representative. *See* 11/22/06
Stipulation and Order, Docket No. 49.

[8]     In January 2006, plaintiff Wise settled his claims with the State defendants,
including the Office of Court Administration ("OCA").  Pursuant to that
settlement, OCA was subpoenaed to produce information contained in its
electronic data system, which tracks and stores summonses issued pursuant to
section 240.35(1).  Hereafter, I use the term "defendants" to refer to the remaining
municipal defendants.

[9]     *See* June 23, 2005 Order, Docket No. 5.

further stated that the City of New York and its employees "shall cease

enforcement of [section 240.35(1)]."[10]

Notwithstanding the clear command of the June 23, 2005 Order,

defendants continued to arrest, prosecute, issue bench warrants and issue an

alarming number of summonses for violations of section 240.35(1). The following

statistics of section 240.35(1) enforcement are undisputed:[11]

- During the nineteen months preceding the June 23, 2005 Order, from January 2002 to May 2005, NYPD officers issued 821 summonses.

- During the nineteen months following the June 23, 2005 Order, from July 2005 to January 2007, NYPD officers issued 772 summonses.

- At the time plaintiff filed this motion, the most up-to-date available data showed that 4 summonses were issued as recently as February 21, 2007 in Queens and Richmond Counties.[12]

- Since June 23, 2005, NYPD officers have arrested 51 people for violating the statute, and District Attorney's Offices within New York

---

[10]    *Id.* ¶ 1.

[11]    This data comes from OCA reports cited in plaintiff's Memorandum of Law ("Pl. Mem.") and accompanying exhibits. *See* Pl. Mem. at 3-4; Exs. L-Q to Declaration of J. McGregor Smyth, Jr., counsel for plaintiff ("Smyth Decl."). The information concerning summonses was taken from the Summons Automation Management System ("SAMS") database, which is the official New York City database for summons data maintained by OCA. The information concerning arrests comes from the OCA data, as well as from discovery provided by defendants.

[12]    There is approximately a one-month delay between the issuance of a summons and its entry into the SAMS database.

City have brought 55 prosecutions under the statute.[13]  Most recently, an individual was prosecuted under section 240.35(1) in Kings County, arising from an October 23, 2006 arrest.

- 171 of the unlawful summonses issued since the June 23, 2005 Order resulted in the issuance of bench warrants, 88 of which remained outstanding at the time plaintiff filed this motion.  Most recently, a bench warrant associated with a section 240.35(1) summons was issued on March 9, 2007 in Queens County.

Even these revealing statistics do not give a full picture of the number

of unlawful arrests that have occurred because in December 2005, the NYPD

implemented a computer program that removed section 240.35(1) as an option on

the "drop-down" menu from which police officers select the appropriate charge for

arrestees.[14]  Thus, statistics on arrests for violations of section 240.35(1) do not

reflect the number of times citizens have been unlawfully arrested on the street,

taken to the station house and released without ever being charged.[15]  Although

---

[13]     This includes 23 prosecutions brought in New York County, 27 in Kings County, 1 in Richmond County and 4 in Bronx County.  The fact that prosecutions have occurred at all in the Bronx is particularly vexing because the June 23, 2005 Order specifically enjoined the Bronx District Attorney from enforcing section 240.35(1).  See June 23, 2005 Order ¶ 1.

[14]     See Declaration of Rosemary DeBellis, counsel for NYPD ("DeBellis Decl.") ¶ 2.

[15]     Defendants assert that since this computer program was installed on December 9, 2005, there have been no arrests for violations of section 240.35(1) and offer this as evidence that their conduct has not been contumacious.  See Def. Mem. at 9.  While the implementation of this program was indeed a positive step, defendants should have realized that it would nonetheless frustrate plaintiff's ability to track *attempts* to charge section 240.35(1) and thereby monitor

defendants insist they are in the process of developing a computer program that will track *attempts* to charge section 240.35(1), there never has been a mechanism for monitoring the number of times citizens have been detained but never formally charged.

These statistics, of course, cannot convey the emotional or psychological effect that an unlawful summons, arrest, prosecution or bench warrant may have on an individual.  Plaintiff's counsel offers anecdotal accounts of people feeling constrained to stay in their homes because they are afraid, understandably, of being arrested on bench warrants that relate solely to charges brought under section 240.35(1).[16]

### B.    Plaintiff's Motion for Contempt

In June and July 2005, defendants took various steps aimed at ending the unlawful enforcement of section 240.35(1).  These steps included, *inter alia*: sending notices to all NYPD precincts and commands and respective employees that section 240.35(1) is void and unenforceable; reading FINEST messages[17] at

---

defendants' compliance with the June 23, 2005 Order.  That no record exists when individuals are unlawfully arrested for violating section 240.35(1) is disconcerting to the Court.  At best, such an arrest briefly interrupts the day; at worst, someone placed in handcuffs suffers a frightening deprivation of liberty.

[16]    *See* 5/17/07 Oral Argument Transcript ("5/17/07 Tr.") at 23-24.

[17]    A FINEST message is a written department-wide communication that, per standard operating procedures, is required to be read at ten consecutive roll calls.

police officer roll calls; sending notices to the Offices of the District Attorneys; and immediately seeking to vacate all outstanding warrants relating to charges or summonses based on section 240.35(1).[18]  But defendants seem to have done little thereafter.

Defendants failed to take the reins on monitoring their own compliance with the June 23, 2005 Order.  It is for this reason that defendants are able to assert in their defense that it was not until November 2006, when plaintiff confronted them with hard data, that defendants knew of the frequency with which section 240.35(1) continued to be enforced – *i.e.*, that hundreds of summonses and over eighty warrants had been issued *since* the June 23, 2005 Order.  The burden of tracking the continued unlawful enforcement of section 240.35(1) has always been carried by plaintiff.[19]  It has also been defendants' *modus operandi* to cast

---

*See* Declaration of Steven M. Anger, Executive Officer of the NYPD Patrol Services Bureau ("Anger Decl.") ¶ 3.

[18]     *See* June 23, 2005 Order ¶¶ 2-8.

[19]     *See, e.g.*, 11/15/06 Letter from Assistant Corporation Counsel Rachel A. Seligman to the Court ("Defendants are currently analyzing the extensive OCA data that was recently provided to this office by plaintiff's counsel . . . . Defendants, however, remind the Court and plaintiff's counsel that [the relevant databases] are maintained by [OCA] and not by the NYPD. Thus, plaintiff's request to be provided with [data concerning continued enforcement] on a monthly basis is inappropriate and instead, plaintiff should be seeking this information from OCA directly. Likewise, plaintiff's request for [copies of the summonses] should be made directly to OCA, as this information is not maintained by the NYPD . . . .").

suspicion on plaintiff's data demonstrating the pervasiveness of the continuing enforcement.[20]

As a result of defendants' continuing failure to comply with court orders, by letter to the Court dated November 9, 2006, plaintiff requested leave to file a contempt motion against defendants. At a pre-motion conference held on November 29, 2006, defendants promised to undertake a plan of action that would curb the continued enforcement of section 240.35(1). This plan included sending targeted notices to those NYPD officers who had issued unlawful summonses. Defendants also proposed additional training for police officers to be held between November 2006 and March 2007, and for sergeant and lieutenant promotional classes to remind all officers that the statute is unenforceable. Additionally, defendants promised to take steps necessary to vacate all warrants issued as a result of section 240.35(1) summonses.[21] In reliance upon defendants' assurances that plaintiff was going to get the necessary relief, the Court denied plaintiff's request to move for a judgment of contempt.[22] Soon thereafter, the Court entered an order ("December 14, 2006 Order") directing defendants to take the additional remedial

---

[20]     *See id.* (commenting that plaintiff's spreadsheets documenting that over 500 summonses were "allegedly" issued since June 2005 lacked specificity such that defendants "still do not know upon which summonses plaintiff relies").

[21]     *See* 11/29/06 Conference Transcript ("Conf. Tr.") at 29-30.

[22]     *See id.* at 37.

steps they had promised in order to halt the unconstitutional enforcement of section 240.35(1).[23]  These steps included sending letters to offending officers after they improperly issued a summons for a violation of section 240.35(1) and providing members of the NYPD with additional training reiterating that section 240.35(1) was not to be enforced.[24]

By letter dated February 26, 2007, plaintiff informed the Court that notwithstanding defendants' promises and in the face of the December 14, 2006 Order, an additional 23 unlawful bench warrants and 96 unlawful summonses had been issued to New Yorkers between November 1, 2006 and February 21, 2007.[25] In light of this new information, the Court granted plaintiff leave to file this motion.[26]

## III.   APPLICABLE LAW

"Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or

---

[23]     *See* December 14, 2006 Order, Docket No. 54.

[24]     *See id.* ¶¶ 1-6.

[25]     *See* 2/27/07 Letter from Katherine R. Rosenfeld, counsel for plaintiff, to the Court.

[26]     *See* 3/2/07 Conf. Tr. at 15.

9

damage sustained by reason of noncompliance."[27]   A court may hold a party in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."[28]   "It need not be established that the violation was willful."[29]

## VI.   DISCUSSION

### A.   Defendants' Past Contumacious Conduct

Defendants concede that plaintiff satisfies the first two requirements for civil contempt, in that the Court's June 23, 2005 Order clearly and unambiguously directs defendants to cease enforcing section 240.35(1), and the bare statistics concerning summonses, arrests, and warrants constitute clear and convincing proof of defendants' noncompliance.[30]   Defendants' sole defense to contempt is that they are now, and have always been, "reasonably diligent and

---

[27]   *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

[28]   *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). *Accord Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981) (requiring, as to the third prong, that the contemnor failed to be "reasonably diligent and energetic in attempting to accomplish what was ordered").

[29]   *Paramedics*, 369 F.3d at 655 (citation omitted).

[30]   *See* Def. Mem. at 6.

energetic" in complying with the June 23, 2005 Order.[31]  This is a gross

overstatement.  There is no question that for a long period of time, from

approximately July 2005 to December 2006, Defendants *were* in contempt of this

Court's June 23, 2005 Order.  Although defendants went through the motions of

carrying out the specific remedial measures set forth in that Order, the numbers of

arrests, bench warrants and prosecutions predicated on section 240.35(1) declined

only slightly; the decline in summonses was demonstrably negligible.[32]  While, as

a practical matter, one would expect a *de minimis* number of enforcement actions

to persist, the 772 unconstitutional summonses for violations of section 240.35(1)

issued by the NYPD in the nineteen-month period after the Order – only six

percent fewer than the number of summonses issued during the nineteen-month

period *before* the Order – tell "a sorry tale of noncompliance."[33]

      Additionally, plaintiff's contention that defendants failed diligently to

comply with the June 23, 2005 Order and demonstrated a flippant attitude toward

violations of that Order is well supported by the record.[34]  For example, at a

---

[31]    *Id.*

[32]    *See* Pl. Mem at 8.

[33]    3/2/07 Conf. Tr. at 5.

[34]    *See* Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's
Motion ("Pl. Reply Mem.") at 3.

February 17, 2006 conference, defendants resisted aiding plaintiff's efforts to track

ongoing arrests based on section 240.35(1).  In response to plaintiff's suggestion

that the Bronx District Attorney's office run a search on an internal computer

database for arrests, defense counsel complained that "what plaintiff is trying to do

is babysit the City and babysit the Bronx District Attorney's Office."[35]  In response

to the Court's observation that running electronic searches is usually a quick and

painless enterprise, defense counsel resisted further, stating:  "When is it going to

end, your Honor? . . . . There's no reason to believe we haven't stopped at this

point."[36]  In light of data received from OCA, however, it is now clear that had

defendants made the slightest effort to obtain the relevant records, their

noncompliance would have been self-evident.

By letter to plaintiff's counsel dated March 10, 2006, defendants

acknowledged their noncompliance, conceding that since June 23, 2005, fifty-eight

citizens had been unlawfully arrested for peacefully panhandling.[37]  Yet defendants

still did nothing to address the NYPD's ongoing enforcement of section 240.35(1);

nor were defendants spurred to investigate or self-monitor further violations of the

---

[35]     *See* 2/16/06 Conf. Tr. at 18.

[36]     *Id*.

[37]     *See id*. at 10.

Court's June 23, 2005 Order.[38] Rather than take affirmative steps to identify the systemic failures giving rise to this continued enforcement, defendants engaged in months of stonewalling. They shrugged their shoulders at plaintiff's repeated requests for hard copies of the unlawful summonses.[39] More egregiously, defendants dragged their feet in vacating the bench warrants that had been issued solely as a result of section 240.35(1) summonses. According to defendants' own submissions, defendants were aware in November 2006 of outstanding warrants, but initiated no action to vacate them until March 2007. Defendants offer no legitimate excuse for their four months of inactivity.[40] Such passive indifference is suggestive of contempt.

---

[38]    *See id.* (by letters dated June 13, July 20 and July 25, 2006, plaintiff repeatedly requested that defendants implement a system that would track attempts to charge section 240.35(1)).

[39]    *See, e.g.,* 11/15/06 Letter from Assistant Corporation Counsel Seligman to the Court (stating that the NYPD maintains no information concerning summonses issued by its own officers and thus plaintiff should direct its inquiries solely to OCA). According to the NYPD Patrol Guide, however, defendants do in fact maintain file copies of summonses. *See* Pl. Mem. at 11 (citing NYPD Patrol Guide 209-05 Processing Summonses, Ex. H to Smyth Decl., at 1).

[40]    By letter dated March 13, 2007, Assistant Corporation Counsel Seligman informed Administrative Judge Juanita Bing Newton of the New York City Criminal Court that "any summonses and/or warrants issued for violations of [section 240.35(1)] are void" and requested that any such summonses be dismissed and warrants vacated. Def. Mem. at 14; Ex. E to Declaration of Rachel A. Seligman ("Seligman Decl."). On or about March 23, defendants received a response from Judge Bing Newton stating that the criminal court would begin (i) screening for new cases charging section 240.35(1) and dismissing those cases; (ii)

**B.     Defendants' Present Compliance**

Sometime during December 2006, defendants turned their behavior around.  They started taking responsibility for their noncompliance with the June 23, 2005 Order and became proactive in seeking to end the unlawful enforcement of the statute.  As part of the December 14, 2006 Order, defendants agreed to conduct supplemental training to reinforce that section 240.35(1) is unconstitutional.  To facilitate this training, on November 20, 2006, a lesson plan was created for command level training on "Panhandlers," which reiterated section 240.35(1)'s unenforceability.[41]  Since December 2006, this additional training has been given twice for sergeants and twice for lieutenants.[42]  The lesson plan was also disseminated at the Command Level Training Session, a monthly mandatory training session held at the Police Academy, and the training personnel there were instructed to teach the lesson plan to their respective commands by March 1,

---

reviewing all bench warrants charging only section 240.35(1), vacating those warrants and dismissing those cases; and (iii) reviewing court files to identify cases where individuals were convicted solely for violating section 240.35(1) and dismissing those cases. *See* 3/23/07 Letter from the Honorable Bing Newton to Assistant Corporation Counsel Seligman, Ex. F to Seligman Decl.

[41]     Section 240.35(1) is still "on the books" in that it appears in current editions of the New York State Penal Law, to which police officers refer when making charge determinations.  Legislative action is required to formally repeal section 240.35(1). *See* N.Y. Stat. Law. § 1 (McKinney 2007).

[42]     *See* Declaration of NYPD Sergeant Anthony D'Amico ("D'Amico Decl.") ¶ 6.

2007.[43]  Additional training was targeted to officers at the 75th Precinct, which

consistently has had the highest issuance rate of summonses.[44]  Three rounds of

letters have also been sent by the NYPD to offending officers based on the

summons data received from OCA,[45] including letters to recidivist offending

officers informing them that any repeated enforcement of section 240.35(1) will

result in disciplinary action.[46]

      In late March 2007, defendants also followed the Court's suggestion

and included a reminder in every paycheck distributed to a uniformed officer that

section 240.35(1) is unconstitutional.[47]  This reminder also reiterated that any

continued enforcement of section 240.35(1), including the issuance of summonses,

may result in disciplinary action.  Over forty thousand copies of this reminder were

distributed.[48]

---

[43]    *See id.*

[44]    *See id.* ¶10.

[45]    *See* DeBellis Decl. ¶¶ 3-8.

[46]    *See* Recidivist Mailing List; affixed to the Affidavit of NYPD Detective
Sean Healy, Docket No. 96.

[47]    *See* Operations Order #17, "Prohibited Enforcement of New York State
Penal Law Section 240.35(1) 'Loitering for Purposes of Begging,'" Ex. G to Anger
Decl.

[48]    *See* Anger Decl. ¶ 14.

As a backstop against continued enforcement of section 240.35(1), on March 28, 2007, the NYPD Chief of Patrol issued a written directive to the commanding officers of all patrol boroughs containing a list of all uniformed police officers who had issued an unlawful section 240.35(1) summons since June 2005.[49] This directive requires Patrol Borough Commanders to have Precinct/Unit Commanders personally instruct offending officers that the issuance of summonses under section 240.35(1) is forbidden, and also to document and report that this instruction took place.[50] The "NYPD expects to continue this procedure until summons writing has ceased."[51]

The above summary of defendants' recent efforts is not exhaustive,[52] but it paints an accurate picture of defendants' newfound diligence. Granted, this came approximately *seventeen months late*, and the unconstitutional enforcement of section 240.35(1) undoubtedly could have been minimized or avoided altogether had defendants been proactive about their compliance from the start. At this point,

---

[49]   *See* 3/28/07 Letter from NYPD Chief of Patrol Nicholas Estavillo to Patrol Boroughs' Commanding Officers, Ex. H to Anger Decl.

[50]   *See id.*

[51]   Def. Mem. at 15.

[52]   *See, e.g., id.* at 16-17 (discussing another FINEST message announced in December 2006 and promising to implement a computer program that will track attempts to charge section 240.35(1)).

however, with respect to a contempt citation, the issue of whether their apathy would have persisted but for plaintiff's steady pressure and the threat of contempt is moot.  Punitive civil sanctions are not permitted, and in light of defendants' recent efforts to comply with the June 23, 2005 Order, publicly labeling defendants contemnors will serve no purpose.[53]

Even if this Court were inclined to hold defendants in contempt and impose coercive sanctions, there is no reason to believe that doing so would have the desired effect of halting the issuance of further summonses by patrolling officers.  Nowhere does plaintiff suggest any additional step defendants could take – or should be coerced into taking – that would be effective in this respect.  Rather, plaintiff argues for the imposition of a coercive sanction of $10,000 payable to the Court for each prospective violation of the June 23, 2005 Order, with a "purge" provision permitting defendants to avoid contempt and fines if they file and publish an affirmation of their intention to abide by the Order, and then abide by it.[54]  But these sanctions, which ultimately would be paid by taxpayers, appear to be more of a fine than a deterrent.  At this point, it is clear that Commissioner Kelly, the New York City Law Department and the overwhelming majority of

---

[53]    *See Benjamin v. Sielaff*, 752 F. Supp. 140, 149 (S.D.N.Y. 1990) ("[T]he sole and only permissible basis for imposing the sanction is to assure compliance.").

[54]    *See* Pl. Mem. at 20-21.

officers in the NYPD understand and respect that section 240.35(1) is

unenforceable.  The problem is that some individual officers on patrol have yet to

grasp the idea.  It is unlikely that imposing a pecuniary sanction on defendants

would successfully prevent one of these outliers from issuing an unlawful

summons.[55]  Additionally, on May 17, 2007, defendants represented to the Court

that all outstanding warrants predicated on unlawful summonses have been

vacated, and all outstanding summonses have been dismissed.[56]

      Although plaintiff's motion is denied, I note that the issues it raised

were not clear-cut.[57]  The steady rate of unlawful enforcement of section 240.35(1)

that has persisted for almost thirteen years after *Loper* is simply unacceptable.

Defendants' long-standing apathy towards this problem was offensive.

---

[55]    *See Aspira of N.Y., Inc. v. Board of Educ.*, 423 F. Supp. 647, 651 (S.D.N.Y. 1976) ("The court is not empowered to command, any more than it can pretend for itself to achieve, performance approximating perfection.").

[56]    *See* 5/17/07 Tr. at 27-28.  The only remaining outstanding warrants are those predicated on arrests, as opposed to summonses, and the Court has no basis for discrediting defendants' protestations that they are working in conjunction with OCA and Judge Bing Newton, *see supra* note 40, to vacate these warrants as soon as possible.  *See id.* at 28.

[57]    "Better late than never" compliance will not in itself rescue a party from a judgment of civil contempt.  *See Benjamin v. Fraser*, No. 75 Civ. 3073, 2002 WL 31845111, at *7 (S.D.N.Y. Dec. 16, 2002) (correction department's "'eleventh-hour' attempts at compliance" failed to save the department from contempt); *Sielaff*, 752 F. Supp. at 147 (holding defendants in contempt for failing to cure violations even though defendants had achieved compliance since the filing of the contempt motion; defendants efforts were "too little, too late").

Nevertheless, the Court is convinced that defendants have made avoiding contempt

a top priority and are now striving to fully comply with the June 23, 2005 Order.

Certainly, this includes treating the issuance of a single summons under section

240.35(1) as a serious problem deserving urgent attention.  To this end, the Court

is prepared to revisit the issue of defendants' diligence every two months, until

every outstanding bench warrant has been vacated and no more summonses for

violations of an unconstitutional statute are issued.

## C.   Attorneys' Fees

Courts sitting in equity have "'broad discretionary power' . . . to

fashion equitable remedies which are 'a special blend of what is necessary, what is

fair, and what is workable.'"[58]  To this end, even where a court declines to issue a

citation of contempt for violations of the court's orders, attorneys' fees and costs

may be recoverable where the "bringing of the action should have been

unnecessary and was compelled by . . . unreasonable, obdurate obstinacy."[59]  Here,

---

[58]    *Class v. Norton*, 376 F. Supp. 496, 501 (D. Conn.) (quoting *Lemon v.
Kurtzman*, 411 U.S. 192, 200 (1973)), *aff'd in part, rev'd in part*, 505 F.2d 123 (2d
Cir. 1974) (denying contempt citation but granting attorneys' fees to party
prosecuting contempt motion).

[59]    *Class*, 505 F.2d at 127. *Accord Crescent Publ'g Grp. v. Playboy Enters.*,
246 F.3d 142, 147 (2d Cir. 2001) (emphasizing that "the decision to award fees
rests in the court's equitable discretion" and noting that "nonexclusive factors"
courts may consider include "'frivolousness, motivation, objective
unreasonableness . . . and the need in particular circumstances to advance

19

defendants' defiance of the June 23, 2005 Order necessitated the bringing of this

contempt proceeding and warrants the imposition of attorneys' fees and costs. [60]

   Until December 2006, defendants' failure to comply was

unreasonable and harmful; but for plaintiff's persistence in monitoring and

investigating the continued enforcement of section 240.35(1), defendants'

noncompliance would have continued indefinitely.  It is also clear from the record

that but for the specter of contempt – precipitated by plaintiff's repeated request to

file this motion – defendants would not have taken the actions that saved them

from coercive sanctions.  Plaintiff is thus entitled to reasonable costs and attorneys'

fees for its efforts with respect to this motion.

---

considerations of compensation and deterrence'" (quoting *Fogerty v. Fantasy*, 510 U.S. 517, 534 n.19 (1994)).

[60] *See Commodity Futures Trading Comm'n v. Sirras*, Misc. No. M 31, 1984 WL 391, at *1 (S.D.N.Y. Apr. 27, 1984) (finding no need to adjudge party in contempt to assure future compliance with court order, but awarding proponent reasonable attorneys' fees and costs).  *See also Thompson v. Johnson*, 410 F. Supp. 633, 642-44 (E.D. Pa. 1976) (same).

## V.    CONCLUSION

For the reasons stated above, plaintiff's motion for an order adjudging defendants in contempt is denied.  Plaintiff is directed to submit a fee application by June 20, 2007.  The Clerk of Court is directed to close this motion [Docket No. 78].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
        May 31, 2007

21

## - Appearances -

*For Plaintiff:*

Matthew D. Brinckerhoff, Esq.
Katherine R. Rosenfeld, Esq.
Emery Celli Brinckerhoff & Abady, LLP
75 Rockefeller Plaza
New York, New York 10019
(212) 763-5000

J. McGregor Smyth, Jr., Esq.
The Bronx Defenders
860 Courtlandt Avenue
Bronx, New York 10451
(718) 838-7878

*For Defendants:*

Rachel Seligman
Assistant Corporation Counsel
100 Church Street
New York, New York 10007
(212) 788-0784