UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL BROWN, on Behalf of Himself and :
Others Similarly Situated,                          :
                                                    :
                                Plaintiff,          :
                                                    :
                    -'against -                     :
                                                    :
RAYMOND W. KELLY, Commissioner of the :
New York City Police Department (NYPD); :
BARRY M. BUZZETTI, Captain and          :
Commanding Officer, NYPD 48th Precinct; :
JOHN/JANE DOES 1-50 (NYPD Supervisory, :
Training and Policy Personnel); CITY OF :
NEW YORK; Police Officers MICHAEL       :
CURLEY, COREY HARRIS, MIGUEL            :
MUSSE, KEVIN LYNCH, JOHN BRENNAN, :
SHAWN RICKER, JOHN/JANE DOES 51-100 :
(Police Officers); ROBERT JOHNSON,      :
District Attorney of Bronx County; JOHN/ :
JANE DOES 101-125 (Supervisory, Training :
and Policy Personnel within the District :
Attorneys Offices); JOHN/               :
JANE DOES 126-130,                      :
                                                    :
                                Defendants.          :
------------------------------------------------------------X

__OPINION & ORDER__

05 Civ. 5442 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

Michael Brown brings this putative class action against, *inter alia*,

New York City Police Commissioner Raymond W. Kelly and the City of New

York, alleging that they have unlawfully continued to arrest, summons and

prosecute individuals such as himself for violating a statute that was declared

unconstitutional by the Second Circuit in 1993.[1]  This statute, New York Penal

Law § 240.35(1), provides that a person is guilty of "loitering when he . . .

[l]oiters, remains or wanders about in a public place for the purpose of begging . . .

."[2]  It is undisputed that for over a decade, notwithstanding the Second Circuit's

ruling, defendants continued to enforce section 240.35(1) at a largely unabated

rate.[3]  Although to this day, a handful of officers of the New York City Police

Department ("NYPD") persist in issuing unconstitutional summonses for

violations of section 240.35(1), in an Opinion dated May 31, 2007, familiarity with

which is assumed, the Court denied plaintiff's motion for an Order adjudging

municipal defendants in civil contempt.[4]

       Plaintiff now requests leave to amend his First Amended Class Action

Complaint and moves for class certification, pursuant to Federal Rule of Civil

Procedure 23.  By his proposed Second Amended Class Action Complaint

("Complaint"), plaintiff seeks to add the following six individuals as plaintiff class

representatives:  Xavier J. Grant, Bobby Wells, Michael Louis Brown, Edgar

---

[1]    *See Loper v. New York City Police Dep't*, 999 F.2d 699, 701 (2d Cir. 1993).

[2]    N.Y. Penal Law § 240.35(1).

[3]    *See Brown v. Kelly* ("*Brown I*"), No. 05 Civ. 5442, 2007 WL 1573957, at
*1-2 (S.D.N.Y. May 31, 2007) (providing statistics on the unlawful enforcement of
section 240.35(1)).

[4]    *See id.*

Turner, Keith Anderson and Llewellyn Rudy ("named plaintiffs").[5]  Additionally,

the Complaint adds nine individual police officers as defendants,[6] supplements

plaintiff's allegations against the proposed defendant class, adds a cause of action

for violations of the Equal Protection Clause of the United States Constitution, and

updates allegations to reflect data adduced in discovery and remedial relief to

date.[7]

        Plaintiff seeks certification of the following classes:  (1) a plaintiff

class consisting of all persons who have been or will be arrested, charged or

prosecuted for a violation of section 240.35(1) in the State of New York from

October 7, 1992 onward; (2) a plaintiff subclass of all persons arrested, charged or

prosecuted for a violation of section 240.35(1) by employees, agents or

representatives of New York City ("City") from October 7, 1992 onward; and (3) a

defendant class of "all political sub-divisions and all law enforcement/prosecutorial

policy-making officials in the State of New York with authority to arrest, charge or

---

[5]      *See* Memorandum of Law in Support of Plaintiff's Motion to Amend the
Complaint and for Class Certification ("Pl. Mem.") at 2.

[6]      These individuals are James Essig, Ronald Mercandetti, Dwayne
Montgomery, Thomas J. Acito, John Picone, Christopher Lagrasta, Dennis
Palinkas, Gerald McCoy and Karl Harris.  All nine are members of the NYPD who
either wrongfully arrested or summoned plaintiffs, or supervised officers who did.
*See id.*

[7]      *See id.*

prosecute a person with a violation under New York Penal Law."[8]  For the reasons

stated below, plaintiff's motion is granted in its entirety.

## I.     BACKGROUND

### A.     Continued Enforcement of Section 240.35(1)

The background facts of this case are thoroughly set forth in *Brown I*

and therefore I summarize them only briefly.[9]  In 1992, Judge Robert W. Sweet of

this Court issued a permanent injunction barring the NYPD from enforcing section

240.35(1), which the Second Circuit affirmed in *Loper v. New York City Police

Department*.[10]  Nevertheless, on multiple occasions from 2002 to June 2005,

uniformed police officers wrongfully arrested former plaintiff Eddie Wise for

peacefully begging on the streets of the Bronx.[11]  Wise was charged with loitering

in violation of section 240.35(1) and prosecuted for this offense by the Bronx

District Attorney's Office.[12]  On June 9, 2005, Wise commenced the instant action

by filing an Order to Show Cause and Temporary Restraining Order seeking relief

---

[8]      *Id.*

[9]      *See* 2007 WL 1573957, at *1-2.

[10]     999 F.2d at 706.

[11]     *See* First Amended Class Action Complaint ¶ 2.

[12]     *See id.*

against City and state defendants for unlawfully enforcing section 240.35(1).[13]

Soon thereafter, the municipal defendants entered into a stipulation in which they

agreed to take steps aimed at preventing future enforcement of the statute.[14]  This

Court "so ordered" that stipulation on June 23, 2005 (hereafter "June 23, 2005

Order").[15]  Pursuant to that Order, defendants notified various City law

enforcement officials and employees that section 240.35(1) had been declared

unconstitutional.  That Order further stated that the City and its employees "shall

cease enforcement of [section 240.35(1)]."[16]

Notwithstanding the clear command of the June 23, 2005 Order,

defendants continued to arrest, prosecute, issue bench warrants and issue an

alarming number of summonses for violations of section 240.35(1).  Beginning in

---

[13]    On November 22, 2006, Wise accepted defendants' Rule 68 Offer of
Judgment, subsequent to which a judgment was entered dismissing all of his
claims.  Prior to the dismissal, Wise requested and received leave to amend his
complaint to add Michael Brown as a plaintiff and class representative.  *See*
11/22/06 Stipulation and Order, Docket No. 49.

[14]    In January 2006, plaintiff Wise settled his claims with the state defendants,
including the Office of Court Administration ("OCA").  Pursuant to that
settlement, OCA was subpoenaed to produce information contained in its
electronic data system, which tracks and stores summonses issued pursuant to
section 240.35(1).  Hereafter, I use the term "defendants" to refer to the remaining
City defendants.

[15]    *See* June 23, 2005 Order, Docket No. 5.

[16]    *Id.* ¶ 1.

December 2006, however, City law enforcement officials began taking affirmative

steps to quash enforcement, including vacating all outstanding bench warrants

based solely on violations of section 240.35(1) and sending notices to officers

reminding them that the statute is unenforceable.[17]  As a result, prosecutions and

arrests for section 240.35(1) have dwindled, although summonses for violations of

section 240.35(1) were still being issued regularly as recently as March of this

year.[18]

### B.    Proposed Plaintiff Class Representatives[19]

Michael Brown is a forty-six year-old African-American man.  On

June 14, 2003, he was peacefully begging on the streets of the Bronx when he was

arrested and charged with violating section 240.35(1).  The police took Brown to

the precinct, where he was held pending arraignment.  At arraignment, Brown pled

guilty and was sentenced to a term of conditional discharge of one year.

Xavier J. Grant is a twenty-three year-old African-American man.  On

July 17, 2003, he was standing at an intersection in the Bronx, peacefully talking

---

[17]     *See Brown I*, 2007 WL 1573957, at *4-5.

[18]     By defendants' own admission, from January 2, 2007 through March 14,
2007, members of the NYPD issued summonses for section 240.35(1) at an
average rate of approximately one every other day.  *See* Memorandum of Law in
Opposition to Plaintiff's Motion for Contempt (filed April 14, 2007) at 11.

[19]     The following facts are taken from the Complaint.

with his friends, when police officers approached and told him to "move along"
because "you can't be here." The officers then issued Grant a summons charging
him with loitering in violation of section 240.35(1) and directing him to appear in
court on August 25, 2003, to answer to the charge. When Grant failed to appear on
the summons, a bench warrant was issued for his arrest. Grant did not learn of this
until November 2006, when he applied for a job at TOYS 'R' US, which
conducted a background check that revealed the active warrant. Soon thereafter, in
an effort to resolve this outstanding warrant, Grant went to the Bronx Criminal
Court, where the judge sentenced him to an Adjournment in Contemplation of
Dismissal on the still extant charge.

Bobby Wells is a forty-nine year-old African-American man who was
peacefully walking around his neighborhood in the Bronx on April 21, 2004, when
he was stopped by a police officer, arrested and charged with loitering in violation
of section 240.35(1) and disorderly conduct. At arraignment, Wells pleaded guilty
and received conditional discharges of one year for each charge, to be served
concurrently. Thereafter, on or about March 30, 2005, Wells was again arrested
and charged with violating section 240.35(1) and disorderly conduct, to which he
again pleaded guilty.

Michael Louis Brown is a forty-eight year-old African-American
man. On March 1, 2004, Michael Louis Brown was peacefully asking passers-by

7

for money in the Bronx when he was stopped by police officers, arrested and charged with loitering in violation of section 240.35(1) and with disorderly conduct. The officers took Michael Louis Brown to the police station, where he was held pending arraignment. Later that day, Michael Louis Brown pleaded guilty to both 'charges and was sentenced to a term of imprisonment of time served.

Keith Anderson is a forty-two year-old African-American man who was peacefully standing on a street in the Bronx on August 20, 2002, when he was arrested and charged with loitering in violation of section 240.35(1). He was taken to the precinct and held pending arraignment. The Bronx prosecutor charged Anderson with loitering and aggressive solicitation. At arraignment, Anderson pleaded guilty to violating section 240.35(1) and received a sentence of a conditional discharge of one year. On September 8, 2004, Anderson was again arrested and charged with violating section 240.35(1) and with disorderly conduct; he pleaded guilty to those charges and was sentenced to one day in jail, niney-five dollars in fees and surcharges, and civil judgments for these amounts.

Edgar Turner is a forty-eight year-old African-American man. In October 2006, Turner was standing at an intersection in Manhattan, waiting for an office in a nearby building to open, when he was approached by police, questioned and ordered to produce identification. He was then issued a summons charging him with loitering in violation of section 240.35(1). On December 8, 2006, Turner

8

appeared in Manhattan Criminal Court to answer the charge, and the summons was dismissed.

## II.   APPLICABLE LAW

### A.   Leave to Amend a Complaint

Leave to amend a complaint "will be freely given when justice so requires."[20] The liberality in granting leave to amend applies to requests to amend a complaint to add new parties.[21] "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."[22]

### B.   Rule 23 Class Certification Requirements

#### 1.   Rule 23(a)

Rule 23 of the Federal Rules of Civil Procedure governs class certification. To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a). Plaintiffs bear the burden of demonstrating that the class meets these requirements — commonly referred to as numerosity, commonality,

---

[20]   Fed. R. Civ. P. 15(a).

[21]   *See Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 296-97 (2d Cir. 1966).

[22]   *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). *Accord Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (it is "rare" that leave to amend should be denied).

9

typicality, and adequacy.[23]  The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable."[24]  Commonality requires a showing that common issues of fact or law affect all class members.[25]  Typicality exists where the named plaintiffs' claims and the absent class members' claims arise from "the same course of events," and where each class member makes "similar legal arguments" to prove defendant's liability.[26]  The adequacy requirement demands that "the representative parties will fairly and adequately protect the interests of the class."[27]  Finally, although "'Rule 23(a) does not expressly require that a class be definite in order to be certified[,] a requirement that there be an identifiable class has been implied by the courts.'"[28]

### 2.   Rule 23(b)

---

[23]   *See, e.g., Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 573 (2d Cir. 2000).

[24]   Fed. R. Civ. P. 23(a)(1).

[25]   *See* Fed. R. Civ. P. 23(a)(2). *See also Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198 (S.D.N.Y. 1992).

[26]   *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001) (citing *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997)).

[27]   Fed. R. Civ. P. 23(a)(4).

[28]   *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 209 F.R.D. 323, 336 (quoting *Zapka v. Coca-Cola Co.,* No. 99 Civ. 8238, 2000 WL 1644539, at *2 (N.D. Ill. Oct. 27, 2000)). This implied requirement is often referred to as "'ascertainability.'" *Id.* (quoting *Van West v. Midland Nat'l Life Ins. Co.,* 199 F.R.D. 448, 451 (D.R.I. 2001)).

In addition to showing that the proposed class satisfies the four prerequisites of Rule 23(a), plaintiffs must also show that the class is "maintainable" under Rule 23(b). A class satisfies this requirement if it in fits into one of the three alternative categories delineated by Rule 23(b), subdivisions (1), (2) and (3). A class may be certified under more than one category, and in the case at bar plaintiff moves for class certification pursuant to subdivisions (b)(2) and (b)(3).

Under Rule 23(b)(2), class litigation is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."[29] The Advisory Committee Note suggests that in this context, "[d]eclaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief."[30]

Although subdivision (b)(2) was designed with an eye towards equitable relief, certification of a class seeking both equitable and monetary relief may be appropriate "in light of the relative importance of the remedies sought,

---

[29]    Fed. R. Civ. P. 23(b)(2).

[30]    1966 Advisory Committee Note to Rule 23(b)(2).

given all of the facts and circumstances of the case."[31] The Second Circuit has instructed that in assessing whether subdivision (b)(2) applies, a district court's first inquiry is whether "'even in the absence of possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought.'"[32] The court's next inquiry is whether "'the injunctive or declaratory relief would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.'"[33]

Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and the court finds that class litigation "is superior to other available methods for the fair and efficient adjudication of the controversy."[34] Generally, the "'predominance inquiry tests whether proposed

---

[31]     *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 20 (2d Cir. 2003) (quotation marks and citation omitted).

[32]     *Id.* (quoting *Robinson*, 267 F.3d at 164).

[33]     *Id.* (quoting *Robinson*, 267 F.3d at 164).

[34]     Fed. R. Civ. P. 23(b)(3).

classes are sufficiently cohesive to warrant adjudication by representation.'"[35]  The

Second Circuit has observed that this subdivision

> encompasses those cases in which a class action would achieve
> economies of time, effort, and expense, and promote uniformity
> of decision as to persons similarly situated, without sacrificing
> procedural fairness or bringing about other undesirable
> results.[36]

"Regardless of whether [an action] as a whole satisfies Rule 23(b)(3)'s

predominance requirement," courts may employ Rule 23(c)(4)(A) to certify a class

on a particular issue.[37]

In determining whether the class action mechanism is the most "fair

and efficient" method of resolving a case, courts must consider the following four

nonexclusive factors: (1) class members' interest in maintaining individual

actions; (2) "the extent and nature of any litigation concerning the controversy

already commenced by or against members of the class;" (3) "the desirability or

undesirability of concentrating the litigation of the claims in the particular forum;"

---

[35]    *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006)
(quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d
Cir. 2001)).

[36]    *Id.* (quotations and citation omitted).

[37]    *Id.* at 227.  Rule 23(c)(4)(A) provides that "[w]hen appropriate . . . an action
may be brought or maintained as a class action with respect to particular issues . . .
."

and (4) "the difficulties likely to be encountered in the management of a class action."[38]

### 3.    Standard of Proof

Prior to certifying a class, a court must assess "all the relevant evidence admitted at the class certification stage" and find that "each of the Rule 23 requirements has been met."[39]   Furthermore,

> such determinations can be made only if the [court] resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met.[40]

A court's "obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue" – even where the two are "identical."[41]   In making this determination, courts should refrain from considering "aspect[s] of the merits unrelated to a Rule 23 requirement."[42]

## III.   DISCUSSION

---

[38]    *Id.* at 230 (quotation marks omitted) (citing Fed. R. Civ. P. 23(b)(3)).

[39]    *Miles v. Merrill Lynch*, 471 F.3d 24, 41 (2d Cir. 2006).

[40]    *Id.*

[41]    *Id.*

[42]    *Id.*

14

A.    **Leave to Amend**

Defendants have failed to show that plaintiff's request to amend the

First Amended Class Action Complaint should be denied on grounds of prejudice,

bad faith or futility.  Accordingly, leave to amend is granted.

B.    **Proposed Plaintiff Class and Subclass**

1.    **Rule 23(a) Prerequisites**

a.    **Numerosity**

The named plaintiffs seek to represent a (b)(2) injunctive class

"consisting of all persons who have been or will be arrested, charged, or

prosecuted for a violation of [section 240.35(1)] in the State of New York from

Oct. 7, 1992 onward."[43]  They also seek to represent a (b)(3) damages subclass

"consisting of all persons arrested, charged, or prosecuted for a violation of

[section 240.35(1)], by employees, agents, or representatives of the City of New

York" during that same time period.[44]  By conservative assessments of available

---

[43]    Pl. Mem. at 11.

[44]    *Id*. at 21.  As a threshold consideration, I find plaintiff's proposed class
definitions sufficiently definite.  Both OCA and the NYPD maintain databases
which collectively make it "administratively feasible" to identify nearly all
members of the class and subclass.  *Rios v. Marshall*, 100 F.R.D. 395, 403
(S.D.N.Y. 1983).

15

data, both proposed classes consist of thousands of people and therefore easily satisfy the numerosity requirement.[45]

### b.    Commonality and Typicality

Although commonality and typicality are two separate criteria, in this action they "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."[46]  They are also well-suited for joint discussion here because defendants present an umbrella theory addressing both requirements.

The thrust of defendants' opposition is that "the substantive law underlying plaintiff's claims requires individualized, highly fact-specific analysis to establish liability for each individual claim."[47]  Defendants assert that each plaintiff's claims must be analyzed individually in order to determine distinct legal issues such as each defendant's liability and/or unique defenses vis-à-vis each claimant.[48]  These arguments, however, all derive from defendants' erroneous

---

[45]    It is undisputed that thousands of people have been unlawfully charged with violating 240.35(1) by City law enforcement.  Although plaintiff lacks comprehensive information on non-City incidents of enforcement, available data shows that since 1992, over six hundred individuals have been charged with violating section 240.35(1) elsewhere in New York State.  *See* Complaint ¶¶ 125-128.

[46]    *Marisol A.*, 126 F.3d at 373.

[47]    Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification ("Def. Mem.") at 9.

[48]    *See id.* at 10-11.

16

assumption that merely because "all class members were charged with [section 240.35(1)] does not make their claims common or typical."[49]  While it is true that a handful of "individual" issues exist, these issues do not undermine the commonality and typicality of plaintiff's core claims.

Defendants start with the conclusion that their liability (if any) cannot be established solely on the basis that the enforcement of section 240.35(1) is per se unlawful in light of *Loper*.  As a result, defendants insist that the fact that a person is charged with violating section 240.35(1) should not automatically identify him as a class member.[50]  Defendants theorize as to how each claim alleged in the Complaint could turn on the particular facts and circumstances surrounding each arrest, summons, and prosecution predicated on section 240.35(1).[51]  For example, the Complaint includes a class claim under the Fourth and Fourteenth Amendment that defendants' practice of arresting and prosecuting individuals for section 240.35(1) violations – referred to as defendants' "Arrest & Prosecution Policy" – resulted in individuals being falsely arrested, imprisoned, and maliciously prosecuted without probable cause.[52]  Seizing on the term

---

[49]   *Id.* at 9.

[50]   *See id.* at 3.

[51]   *See id.* at 4-6.

[52]   *See* Complaint ¶ 40.

"probable cause," defendants argue that since the existence of probable cause is a fact-specific inquiry,[53] if class certification is granted the fact-finder will be forced to engage in mini-trials in order to determine the extent of defendants' liability as to each putative class member. Defendants contend the same is true of plaintiff's substantive due process claims – burdensome mini-trials will be required in order to determine whether defendants' conduct during each episode of enforcement was so deliberate and unjustifiable so as to "shock the conscience."[54]

Defendants also argue that plaintiff's proposed classes fail to satisfy the commonality and typicality requirements because they improperly amalgamate individuals who received summonses with those who were arrested and prosecuted. In support, defendants point out that a summons cannot be the basis for a malicious prosecution claim,[55] and that in order to prevail on a claim of

---

[53]    *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (concluding that a claim for false arrest turns on whether or not probable cause existed for the arrest, as opposed to the actual charges invoked by the arresting officer).

[54]    *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

[55]    *See* Def. Mem. at 5 (citing *Garrett v. Port Auth. of N.Y. and N.J.*, No. 04 Civ. 7368, 2006 WL 2266298, at *7 (S.D.N.Y. Aug. 8, 2006) ("Absent the initiation of proceedings, a court appearance pursuant to the summons alone cannot give rise to a malicious prosecution claim.")). *See also Katzev v. Newman*, No. 96 Civ. 9138, 2000 WL 23229, at *4 (S.D.N.Y. Jan. 12, 2000) ("[A] charge and a warrantless arrest – concluding with the issuance of the desk appearance ticket – may be a sufficient deprivation of liberty to support a claim for false arrest, but do

18

malicious prosecution, each plaintiff will have to show that the underlying action resulted in a favorable disposition indicative of innocence.[56]

But if such factual distinctions could preclude findings of commonality and typicality under Rule 23(a), they would be the death knell for class actions challenging the systemic enforcement of an unconstitutional statute. This is an unacceptable result. As the Supreme Court has instructed, "class relief is consistent with the need for case-by-case adjudication," especially where "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue."[57] With respect to commonality, Rule 23(a)(2) does not require all questions of law or fact be common to the class.[58]

---

not amount to a prosecution and cannot alone support a claim for malicious prosecution.").

[56]    See Def. Mem. at 5 (citing *Fulton v. Robinson*, 289 F.3d 196 (2d Cir. 2002)).

[57]    *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). *Accord In re NTL Sec. Litig.*, No. 02 Civ. 3013, 2006 WL 33013, at *6 (S.D.N.Y. Feb. 14, 2006) (commonality requirement met if the class shares even one common question of law or fact).

[58]    Injunctive classes governed by Rule 23(b)(2) "have been certified in a legion of civil rights cases where commonality findings were based primarily on the fact that defendant's conduct [was] central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (citation omitted).

19

Although not all prospective class members experienced the same

constitutional violation, their central claim is "'that their injuries derive from a

unitary course of conduct by a single system.'"[59]  Specifically, plaintiff alleges that

defendants' blanket Arrest & Prosecution Policy chilled free speech and facilitated

the unlawful enforcement of an unconstitutional statute.  It follows from this

premise that this class action involves numerous common questions of both law

and fact.[60]

As plaintiff observes, many of the distinctions defendants draw

between putative class members' claims actually *support* certification.  For

instance, defendants argue that because named plaintiffs Rudy and Grant were

issued summonses but never charged at arraignment, they cannot establish Fourth

---

[59]     *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001) (quoting
*Marisol A.*, 126 F.3d at 377).

[60]     *See, e.g.*, *Port Auth. Police Benevolent Assoc., Inc. v. Port Auth. of N.Y. &
N.J.*, 698 F.2d 150, 154 (2d Cir. 1983) (certification improperly denied where
plaintiffs challenged a practice of defendants, as opposed to defendants' conduct
with respect to each individual plaintiff); *Mitchell v. County of Clinton*, No. 06
Civ. 0254, 2007 WL 1988716, at *2 (N.D.N.Y. July 5, 2007) (in civil rights class
action challenging correctional facilities' strip search policy, common issues
included "what strip search policy and practice existed, whether the policy and/or
practice was unconstitutional, and whether some or all of the defendants are
liable"); *Ventura v. New York City Health and Hosps. Corp.*, 125 F.R.D. 595, 600
(S.D.N.Y. 1989) ("Several other courts in this Circuit similarly have held that the
existence of individualized factors or variations does not preclude [a] finding of
[the] existence of common questions where pattern, practice or policy exists.")
(collecting cases).

Amendment violations.[61]  But this is a legal question – whether a summons

charging an unconstitutional statute violates the Fourth Amendment – that is

common to thousands of proposed class members.[62]  Quite clearly, the named

plaintiffs' complained-of injuries arose from the same practice/policy which now

gives rise to the claims of absent class members, and thus proves the existence of

common factual and legal issues.  Common questions of fact include:

> (i) whether defendants enforced or failed to prevent the
> enforcement of [section] 240.35(1), after the statute was
> declared unconstitutional; (ii) the existence of a widespread
> pattern, policy or practice of enforcement . . . (iii) whether
> defendant Kelly had knowledge of the unlawful acts of his
> subordinates;  (iv) whether [the City] failed to train supervise,
> and discipline the personnel in the NYPD and district attorneys'
> offices such that they are liable to members of the subclass for
> damages; . . . and [(v)] what protocols existed in the NYPD
> regarding enforcement of [section 240.35(1)].[63]

Common questions of law include:

> (i)    whether defendants' enforcement of the statute during the
>        class period violated class members' First and Fourteenth
>        Amendment rights;
>
> (ii)   whether liability against the City is appropriate pursuant
>        to controlling precedent on the basis of either (a)

---

61    *See* Def. Mem. at 4.

62    *See* Pl. Mem. at 12-13 (arguing that all putative class members have Fourth
Amendment claims regardless of whether they were summoned, arrested or
prosecuted under 240.35(1)).

63    *Id.* at 16.

defendants' custom, pattern and practice or (b) supervisory policy-maker liability;[64]

(iii) whether individual defendants are entitled to qualified immunity or liable for punitive damages;[65]

(iv) whether the City is collaterally estopped from contesting liability in light of its admissions as to instances of wrongful enforcement of section 240.35(1);

(v) whether defendants' conduct was discriminatory in violation of the Equal Protection Clause; and

(vi) whether plaintiffs are entitled to various forms of equitable relief, such as a disgorgement of fines paid or the expunging of unlawful arrests from the public record.[66]

Whether certain common issues are legal or factual or a mixture of both is irrelevant for present purposes; the critical point is that they are common.

Nor do the legal and factual distinctions drawn by defendants vitiate the typicality of putative class members' claims. Typicality is determined by the

---

[64]  *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 693-95 (1978).

[65]  Curiously, defendants argue that qualified immunity defenses will require mini-trials to determine the reasonableness of each defendant's actions vis-à-vis each plaintiff in light of the "established law at the time." Def. Mem. at 11 (citing *Saucier v. Katz*, 533 U.S. 194, 203-03 (2001)). However, because plaintiff's proposed class definitions concern only post-*Loper* enforcement, and *Loper* clearly established the unconstitutionality of section 240.35(1), to the extent that qualified immunity does become an issue in this case it will likely be amenable to class-wide adjudication.

[66]  *See* Pl. Mem. at 16.

22

nature of the claims brought by the class representatives, not by the particular fact

patterns from which they arose. This is particularly true with respect to plaintiff's

request for (b)(2) certification, for "where plaintiffs request declaratory and

injunctive relief against a defendant engaging in a common course of conduct

toward them . . . [there is] no need for *individualized* determinations of the

propriety of injunctive relief."[67]

The named plaintiffs' claims are typical of those of the absent class

members because they arise from the same course of unconstitutional conduct –

the post-*Loper* enforcement of section 240.35(1) – that affected all class members.

If absent class members were to assert their claims individually, they would

presumably rely on the same legal theories plaintiff espouses here.[68] And if

plaintiff succeeds on his claims, all members of the putative class will benefit.[69]

---

[67]     *Id.*

[68]     *See Robinson*, 267 F.3d at 155 (typicality present where proposed class
representative's claims arise from the same general "course of events" as those of
the absent class members and rely on "similar legal arguments" to prove
defendant' liability); *Mitchell*, 2007 WL 1988716, at *3 (typicality satisfied where
named plaintiff and all putative plaintiffs had strip searched pursuant to
defendants' blanket policy and practice).

[69]     *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) (typicality present
where employer discriminated "in the same general fashion" against proposed
class representatives and putative class). *See also Baby Neal*, 43 F.3d at 58
("[C]ases challenging the same unlawful conduct which affects both the named
plaintiffs and the putative class usually satisfies the typicality requirement.");
*Ouellette v. International Paper Co.*, 86 F.R.D. 476, 480 (D. Vt. 1980) ("Proof of

23

Moreover, the fact that some absent class members may have suffered greater injuries than their proposed representatives or fellow class members (*i.e.*, by virtue of being jailed or prosecuted for violating section 240.35(1), as opposed to merely receiving a summons), and are thus able to bring additional claims or seek greater damages, does not make the proposed representatives' claims atypical. As a result, plaintiff's proposed class and subclass satisfy Rule 23(a)(3)'s typicality requirement.

### c.    Adequacy

Defendants have attacked both the adequacy of class counsel and the proposed class representatives. As to the former, defendants assert that The Bronx Defenders is inadequate because it has a conflict of interest with putative class members who it represented in criminal actions, including prosecutions occurring after 1992 where the class member pled guilty to violating section 240.35(1).[70] Defendants assert that they (as defendants) are entitled to discover whether The Bronx Defenders was on notice of *Loper* at the time it represented these individuals because this information is potentially relevant to the City's defense

---

defendant's liability . . . will benefit all members of the proposed classes." (citation omitted)); *Sanders v. Faraday Labs., Inc.*, 82 F.R.D. 99, 101 (E.D.N.Y. 1979) (the fact that damages could reach a *de minimis* level at some point among the absent class members did not make class representatives' claims atypical).

[70]    *See* Def. Mem. at 18.

24

against plaintiffs' claims of deliberate indifference.  If such relevance is adduced,

defendants may call The Bronx Defenders as a fact witness, who would then be in

violation of ethical rules forbidding lawyers from acting as witnesses.[71]

Additionally, information adduced at discovery may suggest that The Bronx

Defenders are contributorily liable for damages, giving rise to an additional

conflict of interest proscribed by the disciplinary rules.[72]

Defendants' sudden concern for the best interests of the class is as

ironic as it is unconvincing.  *First*, it must be remembered that The Bronx

Defenders are appearing as co-counsel.  The class is also represented by Emery

Celli Brinckerhoff & Abady LLP, a preeminent civil rights firm that defendants do

not challenge.  *Second*, The Bronx Defenders represented forty clients who were

charged with section 240.35(1) at arraignments in forty-nine cases; only seventeen

of these resulted in convictions under the statute.[73]  Out of a putative class

numbering in the thousands, this number is *de minimis*.  And even assuming,

*arguendo*, that the defense attorneys appearing in those seventeen actions were or

should have been on notice of *Loper*, the circumstances surrounding their

---

[71]    *See id*. (citing 22 N.Y. Comp. Codes R. & Regs. § 1200.21(b)).

[72]    *See id*.

[73]    *See* Reply Declaration of J. McGregor Smyth, counsel for plaintiff, in
Support of Plaintiff's Motion for Class Certification ("Smyth Reply Decl.") ¶ 30.

Moreover, the fact that some absent class members may have suffered greater

injuries than their proposed representatives or fellow class members (*i.e.*, by virtue

of being jailed or prosecuted for violating section 240.35(1), as opposed to merely

receiving a summons), and are thus able to bring additional claims or seek greater

damages, does not make the proposed representatives' claims atypical.  As a result,

plaintiff's proposed class and subclass satisfy Rule 23(a)(3)'s typicality

requirement.

> c.    **Adequacy**

Defendants have attacked both the adequacy of class counsel and the

proposed class representatives.  As to the former, defendants assert that The Bronx

Defenders is inadequate because it has a conflict of interest with putative class

members who it represented in criminal actions, including prosecutions occurring

after 1992 where the class member pled guilty to violating section 240.35(1).[70]

Defendants assert that they (as defendants) are entitled to discover whether The

Bronx Defenders was on notice of *Loper* at the time it represented these

individuals because this information is potentially relevant to the City's defense

---

defendant's liability . . . will benefit all members of the proposed classes." (citation
omitted)); *Sanders v. Faraday Labs., Inc.*, 82 F.R.D. 99, 101 (E.D.N.Y. 1979) (the
fact that damages could reach a *de minimis* level at some point among the absent
class members did not make class representatives' claims atypical).

[70]     *See* Def. Mem. at 18.

against plaintiffs' claims of deliberate indifference. If such relevance is adduced, defendants may call The Bronx Defenders as a fact witness, who would then be in violation of ethical rules forbidding lawyers from acting as witnesses.[71] Additionally, information adduced at discovery may suggest that The Bronx Defenders are contributorily liable for damages, giving rise to an additional conflict of interest proscribed by the disciplinary rules.[72]

Defendants' sudden concern for the best interests of the class is as ironic as it is unconvincing. *First*, it must be remembered that The Bronx Defenders are appearing as co-counsel. The class is also represented by Emery Celli Brinckerhoff & Abady LLP, a preeminent civil rights firm that defendants do not challenge. *Second*, The Bronx Defenders represented forty clients who were charged with section 240.35(1) at arraignments in forty-nine cases; only seventeen of these resulted in convictions under the statute.[73] Out of a putative class numbering in the thousands, this number is *de minimis*. And even assuming, *arguendo*, that the defense attorneys appearing in those seventeen actions were or should have been on notice of *Loper*, the circumstances surrounding their

---

[71]    *See id.* (citing 22 N.Y. Comp. Codes R. & Regs. § 1200.21(b)).

[72]    *See id.*

[73]    *See* Reply Declaration of J. McGregor Smyth, counsel for plaintiff, in Support of Plaintiff's Motion for Class Certification ("Smyth Reply Decl.") ¶ 30.

representation have no bearing on the illegality of the summonses and arrests underlying those prosecutions.[74] Furthermore, disqualification on these ethical grounds requires "a high standard of proof" that the court's usurpation of a party's right to choose his counsel freely is necessary in order to maintain the highest standards of the profession.[75] Defendants do not meet this burden.

As to the adequacy of the proposed class representatives, defendants provide a litany of purported reasons why the named plaintiffs are too unreliable or incompetent to represent absent class members. These reasons boil down to two primary concerns – missed court appearances and/or past substance abuse.[76]

---

[74] Defendants also contend that Bronx Defender McGregor Smyth has breached the "advocate-witness" rule by submitting declarations to the Court containing summaries and analyses of OCA's statistical data. *See* Def. Mem. at 19 ("[T]o the extent that Mr. Smyth is acting in the capacity of an expert, the ethical rules prohibit his involvement as both an advocate and witness." (citation omitted)). This argument is frivolous. Defendants' counsel submitted similar declarations summarizing the same data, see, *e.g.*, Declaration of Rachel A. Seligman, Assistant Corporation Counsel, in Opposition to Plaintiff's Motion to Amend the Complaint and for Class Certification ("Seligman Decl.") at ¶¶ 9-10.

[75] *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

[76] Rudy admitted to missing two scheduled court appearances, one arising from an unpaid ticket, the other from an assault charge. *See* 3/27/07 Deposition of Llewelyn Rudy ("Rudy Dep."), Ex. J to Seligman Decl., Ex. F to Smyth Reply Decl., at 150-52. Wells admitted to missing approximately ten court appearances, including those arising out of his April 2004 and March 2005 arrests for violating section 240.35(1). *See* 3/29/07 Deposition of Bobby Wells, Ex. K to Seligman Decl., Ex. H to Smyth Reply Decl., at 268. Two proposed class representatives have been in drug treatment programs. *See* Def. Mem. at 14.

26

Neither of these concerns disqualify any of the named plaintiffs from adequately representing the proposed classes. Indeed, if this Court were to rule out proposed class representatives on these grounds there would likely be nobody left to bring suit on behalf of persons charged with "loitering for the purpose of begging."[77] Such rigidity would undermine "a principal objective of the class action mechanism – to facilitate recovery for those least able to pursue an individual action."[78]

Moreover, in the course of a discovery dispute, defendants had already raised the issue of named plaintiffs' prior use of illegal drugs. At that time, the Court held that "given the makeup of this putative class – primarily homeless people panhandling for subsistence – the fact that individuals have suffered from . . . drug addiction *is not relevant to their adequacy to act as class representatives*."[79] Neither the facts nor law have changed since that explicit and unambiguous ruling.

---

[77]     N.Y. Penal Law § 240.35(1).

[78]     *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 344 (S.D.N.Y. 2004).

[79]     *Brown v. Kelly*, No. 05 Civ. 5442, 2007 WL 1138877, at *2 (S.D.N.Y. April 16, 2007) (collecting cases). This Court has previously expressed its reluctance to deny class certification based on allegations of immorality or improper conduct not "arising out of or touching upon the very prosecution of the lawsuit." *Jane B. ex rel. Martin v. New York City Dep't of Soc. Servs.*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987). For "[i]f the courts prevent persons with questionable moral characters from acting as class representatives, [classes of] prisoners, mental patients, juvenile offenders, or others capable of socially deviant behavior could never . . . be certified. This is an unacceptable result." *Id.*

Defendants further argue, without explanation, that because the named plaintiffs' claims arose in New York City, an impermissible conflict of interest exists between them and absent class members whose claims arose outside of the City.[80] This argument is without merit. The critical purpose of the adequacy inquiry is to determine whether a class representative's interests are *antagonistic* to those of absent class members.[81] That some absent class members were charged with violating section 240.35(1) elsewhere in New York may lead to a geographically dispersed class, but suggests no antagonism whatsoever.[82] To the contrary, it is obvious that the named plaintiffs' motives for pursuing this litigation are commensurate with those of all proposed class members, and satisfy the requirements of Rule 23(a)(4).[83]

---

[80]    *See id.* at 17.

[81]    *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("The adequacy inquiry under Fed. R. Civ. P. 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."). *See also In re Visa Check*, 280 F.3d at 142.

[82]    Adequacy is not defeated by "conclusory assertions [that] raise a hypothetical rather than an actual, conflict." *Burley v. City of New York*, No. 03 Civ. 735, 2005 WL 668789, at *4 (S.D.N.Y. Mar. 23, 2005).

[83]    The Court is also satisfied that the named plaintiffs are sufficiently familiar with this case and their role as class representatives. *See, e.g.*, 3/28/07 Deposition of Michael Brown, Ex. G to Smyth Reply Decl., at 7, 65 ("I'm representing it for those that can't be here today . . . I just really want the police to stop arresting us for panhandling because I don't see it as no crime."); Rudy Dep. at 128 ("I

28

### 2.    Rule 23(b)(2)

Certification of a state-wide plaintiff class falls squarely within the

purview of Rule 23(b)(2), for even in the absence of possible monetary recovery,

reasonable individuals charged with violating an unconstitutional and

unenforceable criminal statute would bring suit to obtain the extensive injunctive

relief plaintiff seeks.[84]  They would seek to have their wrongful criminal

convictions and bench warrants expunged, and to have their fines repaid.[85]  Civic-

minded citizens would also, quite reasonably, seek ongoing monitoring of police

officer training and any continuing enforcement of section 240.35(1).[86]

Plaintiff seeks a declaratory judgment that all post-*Loper* instances of

enforcement of section 240.35(1) violated class members' federal, state and

constitutional rights.[87]  Although it may be true that plaintiff seeks this judgment as

---

understand that I have to be reliable, that it's up to me to see that this does not
happen to anyone else and that the law is properly followed by the NYPD and to
set an example . . . ."); 3/30/07 Deposition of Keith Anderson, Ex. E to Smyth
Reply Decl., at 52, 68 ("[W]hat happened to me I don't want it to happen to
anybody else . . . . [I]t is against the law to lock people up for pan handling, that
was what the whole fight was all about."). *See also* Pl. Mem. at 3 (quoting
additional deposition excerpts).

[84]    *See Parker*, 331 F.3d at 20.

[85]    *See* Pl. Mem. at 21.

[86]    *See id*.

[87]    *See* Complaint at 39, "Wherefore" Clause ¶ 1.

29

a prelude to a request for damages, such declaratory relief is nevertheless

"'reasonably necessary and appropriate were plaintiff to succeed on the merits.'"[88]

This is par for the course in civil rights cases where a plaintiff class seeks

systematic reform through injunctive relief in addition to monetary relief.[89]

Defendants oppose (b)(2) certification on the ground that plaintiff

lacks standing to seek injunctive relief under *Galvan v. Levine*, a seminal case in

which the Second Circuit found class certification unnecessary because the state

defendant, prior to judgment, withdrew the challenged rule and represented that it

had no intention of reinstating it.[90]  The court explained that

---

[88]     *Parker*, 331 F.3d at 20 (quoting *Robinson*, 267 F.3d at 164).  *Accord Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 764 (7th Cir. 2000) (noting that "a declaratory judgment is *normally* a prelude to a request for other relief," as "[nobody] wants an empty declaration").  *Accord Marisol A.*, 27 F.3d at 164 (certification under 23(b)(2) appropriate where a claim seeks both injunctive relief and non-incidental money damages).

[89]     *See Marisol A.*, 126 F.3d at 378 ("'[C]ivil rights cases seeking broad declaratory or injunctive relief for a large and amorphous class . . . fall squarely into the category' of 23(b)(2) actions." (quoting *Jeanine B. ex rel. Blondis v. Thompson*, 877 F. Supp. 1268, 1288 (E.D. Wisc. 1995))); *Latino Officers Ass'n of New York v. City of New York*, 209 F.R.D. 79, 93 (S.D.N.Y. 2002) (certifying a 23(b)(2) class where plaintiffs sought "significant" injunctive relief including training of NYPD officers).  There is indeed a "long line of cases in the Second Circuit allowing class actions that seek to enjoin governmental actions." *Alexander A. v. Novello*, 210 F.R.D. 27, 34 (E.D.N.Y. 2002) (collecting cases).  *See also* Fed. R. Civ. P. 23(b)(2), Advisory Committee Notes to 1966 Amendment (civil-rights actions "illustrative" of those well-suited for (b)(2) certification).

[90]     490 F.2d 1255 (2d Cir. 1973).

insofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for the plaintiffs. As we have recently noted in *Vulcan Society v. Civil Service Comm'n*, 490 F.2d 387, 399 ([2d Cir.] 1973), what is important in such a case for the plaintiffs or, more accurately, for their counsel, is that the judgment run to the benefit not only of the named plaintiffs but of all others similarly situated . . . as the judgment did here. The State has made clear that it understands the judgment to bind it with respect to all claimants; indeed even before entry of the judgment, it withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy.[91]

A number of lower courts have applied *Galvan* in denying class certification.[92] On the other hand, many lower courts have distinguished *Galvan*

---

[91]    *Id*. at 1261 (citations omitted).  The Second Circuit has re-affirmed the *Galvan* doctrine on several occasions. *See, e.g., Berger v. Heckler*, 771 F.2d 1556 (2d Cir. 1985) (class certification unnecessary where defendant agreed to the enforcement of a decree in favor of nonparties); *Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir. 1980) (class certification "largely a formality" where State defendants explicitly indicated a willingness to comply with the court's order); *Davis v. Smith*, 607 F.2d 535, 540 (2d Cir. 1978) ("Where retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court may decline certification.").

[92]    *See, e.g., Daniels*, 198 F.R.D. at 420 (collecting cases). *See also Langer v. New York State Office of Court Admin.*, No. 98 Civ. 413, 1998 WL 799153, at *6 (W.D.N.Y. Nov. 13, 1998) ("The doctrine that class certification is unnecessary in these circumstances arises out of the presumption that the State and its agents will not act to enforce against any person a regulation which has been found and declared to violate the Constitution, whether or not that person participated in the action which resulted in such declaration."); *Green v. Borg-Warner Protective*

and granted class certification.[93]  Judge Charles S. Haight of this Court addressed

this issue in *Blecher v. Department of Housing Preservation and Development of*

*the City of New York*:

> Courts have focused on four factors in determining whether
> class certification is necessary under *Galvan*. First,
> notwithstanding the presumption that government officials will
> abide by a court's decision as to similarly situated individuals,
> an affirmative statement from the government defendant that it
> will apply any relief across the board militates against the need
> for class certification.
> \*\*\*
> Second, withdrawal of the challenged action or non-
> enforcement of the challenged statute militates against the need
> for class certification.
> \*\*\*
> Third, the type of relief sought can affect whether class
> certification is necessary. Courts have found that where the
> relief sought is merely a declaration that a statute or policy is
> unconstitutional, denial of class certification is more
> appropriate than where plaintiffs seek complex, affirmative
> relief.
> \*\*\*
> Fourth, courts also consider whether the claims raised by
> plaintiffs are likely to become moot, making class certification
> necessary to prevent the action from becoming moot.[94]

---

*Servs. Corp.*, No. 95 Civ. 10419, 1998 WL 17719, at \*4 (S.D.N.Y. Jan. 16, 1998)
("The declaratory and injunctive relief sought against the State and Municipal
defendants would make class action designation largely a formality since the relief
sought, if warranted, would confer a benefit on all persons similarly situated
without any class designation."); *Feld v. Berger*, 424 F. Supp. 1356, 1363
(S.D.N.Y. 1986) (finding class certification superfluous because the court
"assumes these public officials, mindful of their responsibilities, will apply the
determination here made equally to all persons similarly situated").

[93]    *See, e.g.*, *Daniels*, 198 F.R.D. at 421 (collecting cases).

Focusing on the third factor, numerous courts have distinguished *Galvan* on the basis of the type of relief sought, namely whether it is prohibitionary or affirmative. Although this distinction is often "somewhat illusory,"[95] it is useful and illuminating as applied here. Defendants argue that in light of their recent efforts to cease the continuing enforcement of section 240.35(1), plaintiff "cannot hope to achieve more [equitable relief] via a (b)(2) class."[96] Yet clearly he does, for the Complaint expressly seeks complex affirmative relief which neither state nor municipal law enforcement has ever agreed to provide – either to him or to all persons similarly situated.[97] The NYPD's recent actions aimed at ceasing enforcement do not moot, for example, plaintiff's prayer for the disgorgement of fines that were levied under section 240.35(1), or for the expungement of wrongful convictions from public records.

---

[94]    No. 92 Civ. 8760, 1994 WL 144376, at *4-5 (S.D.N.Y. April 19, 1994) (citations omitted).

[95]    *Daniels*, 198 F.R.D. at 421.

[96]    Def. Mem. at 22

[97]    *See Jane B.*, 117 F.R.D. at 72 (*Galvan* inapplicable where plaintiffs sought more than merely prohibitory relief declaring a statute or administrative practice unconstitutional).

Another way to frame the *Galvan* test is by looking at "the level of commitment expressed by the defendants."[98]  With respect to the City defendants, the record in this case establishes their patterned unwillingness to voluntarily modify internal procedures in order to ensure compliance with court orders.[99]  In view of this past resistance to redressing constitutional wrongs, I harbor serious doubts that all potential plaintiffs whose claims arose in New York City will automatically benefit (*i.e.*, have their criminal records expunged) absent additional action on their part.[100]

With respect to the proposed absent defendants who are scattered around the State, although they have never been ordered to cease enforcing section 240.35(1), the record suggests that absent a court-issued mandate, they will not take affirmative action to remedy past incidents of illegal enforcement of the

---

[98]     *Daniels*, 198 F.R.D. at 421.

[99]     *See Brown I*, 2007 WL 1573957, at *4-5.

[100]    *See Connecticut State Dep't of Soc. Servs. v. Shalala*, No. 03 Civ. 99, 2000 WL 436616, at *3 (D. Conn. Feb. 28, 2000) (*Galvan* inapplicable where (1) plaintiff sought an order requiring state defendant to take corrective action in addition to ceasing conduct; and (2) state defendant had neither committed to granting class-wide relief nor taken affirmative steps to address plaintiff's concerns); *Brown v. Giuliani*, 158 F.R.D. 251, 269 n.23 (E.D.N.Y. 1994) (class certification necessary where defendants, who had a history of failing to abide by court orders, did not agree that underlying judgment against them would bind them with respect to all putative class members).

statute.[101] According to available OCA data, notwithstanding *Loper*, over six

hundred individuals have been prosecuted for violating section 240.35(1) in

Rockland, Suffolk, Erie and Nassau Counties.[102] Quite simply, the class action

device is the most efficient and appropriate method for vindicating the rights of

individuals throughout New York who were subject to an unlawful section

240.35(1) charge. Additionally, as a consequence of being poor and homeless,

most absent plaintiffs are uninformed, disenfranchised and without the means to

bring individual actions in the hope of having their convictions overturned or their

extant warrants vacated.[103] Bringing non-City parties into this litigation via

bilateral (b)(2) class certification is the only way to achieve uniformity of equitable

relief for past enforcement, and to effectively prevent any future enforcement

across the state.

---

[101] *See Hundreds Busted Under Bogus Law*, N.Y. Daily News, July 3, 2005
(Erie County deputy District Attorney indicating that her office would "go along"
with anyone who sought to overturn a conviction based on section 240.35(1), but
would otherwise "do nothing" with respect to hundreds of unjust convictions).

[102] *See* Declaration of J. McGregor Smyth in Support of Plaintiff's Motion for
Class Certification ("Smyth Decl.") ¶¶ 16-17 (citing OCA data). *See also supra*
Part III.C.2.

[103] *See Cutler v. Perales*, 128 F.R.D. 39, 47 (S.D.N.Y. 1989) (certifying a class
of all New York City Medicaid applicants where defendants "have made no
representation of willingness to change internal procedures" and "most putative
class members [were] either [too] old or infirm" to effectively bring individual
actions).

In sum, certification of a state-wide (b)(2) plaintiff class is appropriate because law enforcement agencies throughout New York State, including New York City, continued charging individuals with violating section 240.35(1) after it was declared unconstitutional. Given the import and necessity of plaintiff's prayers for affirmative injunctive relief, *Galvan* does not preclude certification here.

### 3.    Rule 23(b)(3)

#### a.    Predominance

Certification of a damages subclass consisting of all persons arrested, charged, or prosecuted for a violation of section 240.35(1) by employees, agents or representatives of the City of New York, from October 7, 1992 onward, is appropriate because core common issues predominate over individual issues. Two predominating issues at the heart of this litigation are: (1) whether defendants maintained an unconstitutional policy of enforcing a void statute that criminalized "loitering for the purpose of begging," and (2) whether defendants violated individuals' constitutional rights by arresting, summoning, or prosecuting them under this same statute.[104]  These central questions predominate, require no

---

[104]    *See* Reply Memorandum of Law in Further Support of Plaintiff's Motion for Class Certification ("Pl. Reply Mem.") at 10.

36

individualized analysis, and are common to the entire subclass, making them ideally suited for resolution in a (b)(3) class action.

Defendants oppose (b)(3) certification with the same arguments they employed in attempting to defeat commonality and typicality under (a)(4), to wit, that common issues fail to predominate because each incident of enforcement requires an individualized analysis. As set forth above, this argument is a red herring in light of the core constitutional issues underlying the claims of each putative plaintiff.[105]  That some claimants may prevail on more constitutional claims than others "does nothing to alter the fundamental cohesion of the proposed class, which is the central concern of the predominance requirement."[106]

With respect to predominance, defendants reargue their earlier point that established law requires a case-by-case determination of whether probable cause to arrest existed based on *any* criminal activity regardless of whether or not it was charged. In presenting this argument, defendants ignore leading Circuit law on 23(b)(3) Fourth Amendment class actions. This case is remarkably similar to *In re Nassau County Strip Search Cases*, where the Second Circuit rejected defendants' argument that predominance was defeated by the individualized liability issue of whether each plaintiff had been strip-searched based on

---

[105]    *See supra* Part III.B.1.a.

[106]    *In re Nassau County Strip Search Cases*, 461 F.3d at 228.

37

reasonable suspicion.[107] The court concluded that "[i]n light of the pervasive

character of the common liability issues and the admittedly *de minimis* nature of

individualized liability issues," the district court erred in finding that individual

issues predominated.[108] Defendants are correct that probable cause is a complete

defense to a false arrest claim, but the fact that this defense "may arise and affect

different class members differently does not compel a finding that individual issues

predominate over common ones."[109] Here, the common liability issues (Fourth

Amendment, First Amendment, Due Process) are so pronounced and pervasive

they overwhelmingly outweigh the more narrow inquiries that may be required to

resolve a subset of certain Fourth Amendment claims.[110]

      In arguing that predominance is lacking, defendants also reassert their

earlier contention that plaintiff's First Amendment claims will require mini-

---

[107]  *See id.* at 229.

[108]  *Id.*

[109]  *In re Visa*, 280 F.3d at 138.

[110]  One hotly contested Fourth Amendment issue that is common to hundreds of class members is whether the issuance of a summons without probable cause violates the Fourth Amendment. *Compare* Pl. Reply Mem. at 12-13 (arguing that "all putative class members have uniform claims that defendants violated their Fourth Amendment rights" no matter how they were charged and citing *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997)), *with* Def. Mem. at 17 (concluding that because named plaintiffs Rudy and Grant received summonses but were never arrested, they "cannot establish that [their] Fourth Amendment rights were violated").

38

hearings to determine whether each claimant was actually panhandling at the time

he was charged with violating section 240.35(1). But *regardless* of whether or not

each putative class member was engaging in protected speech or expression at the

time he was charged, by virtue of the charge itself, he was *accused* of engaging in

such activity and *penalized* based on that accusation. Under Rule 23, plaintiff may

allege on behalf of himself and others similarly situated that these charges sent a

message to all New Yorkers that peaceful begging was a criminal offense and

thereby had the effect of chilling future protected speech and expression. This

First Amendment claim is sufficient for class certification.[111]

   In sum, the gravamen of plaintiff's claims attacks the systemic

enforcement of a single unconstitutional statute by police officers and district

attorneys in New York City. All members of the damages subclass "will

presumably rely on the same proof to establish the existence and legality, or lack of

legality of this practice," and thus their claims are ideally suited for (b)(3)

certification.[112]

---

[111] *See Latino Officers Ass'n*, 209 F.R.D. at 86 (granting class certification where only some members of putative plaintiff class were subject to employer retaliation, but complaint alleged that "all class members were chilled in the exercise of their First Amendment rights by the threat of retaliation").

[112] *Coco v. Village of Belle Terre*, 233 F.R.D. 109, 115-16 (E.D.N.Y. 2005) (certifying a plaintiff class alleging that defendants, "without authority to do so, purported to enforce traffic and other laws and collect purported fines for alleged violations of those laws"). *Accord In re Visa Check*, 280 F.3d at 146 (where

### b.   Superior Method of Adjudication

Plaintiff is also correct in his contention that given the demographics of the proposed subclass, the class action device is not just a superior method of adjudication, it is the *only* method of adjudication."[113]  As noted above, most members of the damages subclass lack the resources necessary to bring individual lawsuits and therefore, absent class certification, their rights will go unvindicated.[114]  However, even assuming that some subclass members possess the means and initiative to file individual actions, certification will allow them to enforce their rights in unison, thereby avoiding the expense and burden of duplicative lawsuits.

### C.   Proposed Bilateral 23(b)(2) Defendant Class

Plaintiff's proposed defendant class encompasses "all political sub-divisions and all law enforcement/prosecutorial policy-making officials in the State of New York with authority to arrest, charge or prosecute a person with a violation

---

plaintiffs are "aggrieved by a single policy of the defendants," the action "presents precisely the type of situation for which the class action device is suited").

[113]   Pl. Mem. at 26.

[114]   *See, e.g., D'Alauro v. GC Servs. Ltd. P'ship,* 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (appropriate to consider the "inability of the poor or uninformed").

under New York Penal Law."[115]  This includes all sixty-two counties throughout

New York State as well as an estimated 553 law enforcement agencies.[116]

### 1.   Named Plaintiffs' Standing to Sue Non-City (Absent) Defendants

As a threshold issue, defendants argue that because all named

plaintiffs were charged by the NYPD with violating section 240.35(1), they do not

have a live case or controversy with any non-City agency or official, and thus lack

standing to prosecute class claims against the absent members of the proposed

defendant class.[117]  This is a specious argument.  Although prior to seeking class

certification putative class representatives must first demonstrate individual

---

[115]    Complaint ¶ 46.

[116]    *See* Pl. Mem. at 30 (citing to the New York State Division of State Police
website, at http://www.troopers.state.ny.us/.).

[117]    *See* Def. Mem. at 16.  Most courts certifying bilateral (b)(2) classes never
address the issue of whether the representative plaintiff has standing to prosecute
class claims against each absent member of the defendant class.  Courts that have
addressed this issue have often done so in the context of analyzing whether the
proposed plaintiff class satisfies Rule 23(a), although they variously frame the
issue as being relevant to commonality (a)(2), typicality (a)(3), or adequacy (a)(4).
*See generally Newberg on Class Actions* § 3:19 (4th ed.) (collecting cases).  From
a standing perspective, these criteria certainly overlap.  For ease of discussion, I
raise the standing issue here because it arises only with respect to named plaintiffs'
standing to sue absent members of the proposed (b)(2) defendant class.

standing to sue,[118] it is well-established that traditional standing requirements do

not apply to absent parties when a representative party brings suit on behalf of – or

against – similarly situated absent class members.[119]  "In a class action context,

adequate representation and typicality of claims or defenses, as required by

procedural due process and Rule 23 standards, serve as a substitute for application

of normal standing requirements with respect to the relationship between absent

class members and the party representing or opposing the class."[120]  Because I find

---

[118]    *See Allee v. Medrano*, 416 U.S. 802, 829 (1974) (Burger, J., concurring in
part, dissenting in part) ("Standing cannot be acquired through the back door of a
class action.").

[119]    *Compare Marcera v. Chinlund*, 595 F.2d 1231 (2d Cir.), *vacated on other
grounds*, 442 U.S. 915 (1979) (approving a statewide plaintiff class of pretrial
detainees, to be represented by two inmates of the Monroe County Jail, and a
statewide defendant class of county sheriffs, to be represented by the sheriff of
Monroe County) *with Henson v. East Lincoln Twp.*, 814 F.2d 410 (7th Cir. 1987)
(plaintiff class representative lacked standing to sue absent class defendants with
whom plaintiff had no business contact). *See generally Newberg on Class Actions*
§ 4:53 (citing, *inter alia*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804
(1985)).

[120]    *See Marcera*, 595 F.2d at 1235 (finding that the named defendant sheriff
would adequately represent absent defendant sheriffs scattered across the state and
embracing the bilateral class action as means by which court could finally extend
the "practical impact" of its decrees on inmates' rights beyond "one institution at a
time"). *See generally Newberg on Class Actions* § 4:53 (citing, in support,
Supreme Court rulings on mootness avoidance in situations where the claims of the
representative plaintiff became moot prior to class certification). *See id.*
(characterizing as "questionable" cases that deny class certification on the ground
that absent class members failed traditional standing tests and advising courts to
"not lose sight of the fact that class actions are special types of litigation that

that the proposed defendant class satisfies each Rule 23(a) criterion, the fact that

under a traditional standing analysis no representative plaintiff has suffered

personal injuries with respect to each absent defendant does not preclude bilateral

certification.

### 2.    Rule 23(a)

The requirements of Rule 23 apply "equally to plaintiff and defendant

classes."[121]    The proposed defendant class satisfies the four criteria of Rule 23(a).

Because the proposed defendant class encompasses hundreds of law

enforcement agencies which are scattered throughout New York State, the

numerosity prerequisite is satisfied.[122]    The commonality prong is also easily

satisfied, as the central issues of this litigation – *i.e.*, whether the continued

enforcement of section 240.35(1) violates individuals' constitutional rights – are

common to all class members.  Accordingly, the simple fact that section 240.35(1)

remains on the books and subject to state-wide enforcement provides the requisite

---

represent an exception to normal personal jurisdiction due process safeguards
before a judgment may be entered against an absent party").

[121]    *Consolidated Rail Corp. v. Town of Hyde*, 47 F.3d 473, 483 (2d Cir. 1995)
(affirming certification of a (b)(3) defendant class).

[122]    According to OCA data, between 1992 and May 9, 2006, over six hundred
prosecutions charging violations of section 240.35(1) were brought by prosecutors
*outside* the City.  *See* Smyth Decl. ¶¶ 16-17.

43

commonality.[123] In light of the common legal issues, I need not find that there are also questions of fact common to the class. Nonetheless, I note that because plaintiff seeks to have all members of the proposed defendant class enjoined from enforcing section 240.35(1), to the extent that they ultimately refrain from doing so, their practices and procedures will mirror each other in respects pertinent to plaintiff's claims.[124]

As to Rule 23(a)'s typicality and adequacy requirements, both are satisfied here under the juridical link doctrine.[125] A juridical link is "some independent legal relationship which relates all defendants in such a way that a

---

[123]    *See Gibbs v. Titelman*, 369 F. Supp. 38, 52 (E.D. Pa. 1973) ("The validity of the statutory scheme . . . as it pertains to both classes, comprises the substance of the action . . . . It is the same procedures [authorized by the statute] that form the bond of legal commonality between the plaintiffs and defendants."), *rev'd on other grounds*, 502 F.2d 1107 (3d Cir. 1974).

[124]    *See Luyando v. Bowen*, 124 F.R.D. 52, 58 (S.D.N.Y. 1989) (finding certification a (b)(2) defendant class appropriate where each class member was required by law to enforce the regulations being challenged and holding that minor differences in enforcement did not defeat commonality); *CBS Inc. v. Smith*, 681 F. Supp. 794, 801 (S.D. Fla. 1988) (certifying (b)(1) defendant class of all sixty-seven county supervisors of elections, where one core question of law – whether a statute violated the First Amendment – was common to the class).

[125]    *See La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973) (describing the bond between members of a defendant class who are "juridically related in a manner that suggests a single resolution of the dispute would be expeditious").

single resolution of the dispute is preferred to a multiplicity of similar actions."[126] A particularly strong juridical relationship exists in cases "'[w]here all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional.'"[127] That section 240.35(1) has already been found unconstitutional does not sever this link.

The City defendants assert that they are inadequate class representatives because they are unable to raise a defense that is unique to absent members of the defendant class. Specifically, because the City defendants were parties to *Loper* and are currently enjoined from enforcing section 240.35(1), they are precluded from arguing what non-City defendants could argue, namely that *Loper* is merely persuasive rather than binding authority on state courts.[128] Regardless of the viability of this defense, the fact that an absent defendant

---

[126]     *DeAllume v. Perales*, 120 F.R.D. 299, 303 (S.D.N.Y. 1986) (citation omitted) (juridical link between commissioners who promulgated the same policy state-wide). *Accord Monaco v. Stone*, 187 F.R.D. 50, 66 (E.D.N.Y. 1999) (juridical link between all criminal court judges bound to enforce same statute).

[127]     *Thompson v. Board of Educ. of the Romeo Cmty. Schs.*, 709 F.2d 1200, 1205 (6th Cir. 1983) (quoting *Mudd v. Busse*, 68 F.R.D. 522, 527-28 (N.D. Ind. 1975)).

[128]     *See* Def. Mem. at 28-29 (citing *New York v. Kin Kan*, 78 N.Y.2d 54, 60 (1991), for the proposition that the interpretation of a federal constitutional question by a lower federal court is persuasive but not binding authority on state courts).

possibly could or would raise it does not destroy the City defendants' adequacy as class representatives.[129]  State law enforcement agencies will be put on notice of this litigation, and if any wish to oppose a permanent injunction on the ground that they are not bound by *Loper*, they may do so.

Rule 23(a)(4) "does not require a willing representative but merely an adequate one."[130]  The City defendants, including Commissioner Kelly, will adequately represent the interests of the absent defendants.  The City has been a named party in this lawsuit since the day it was filed, and its thorough familiarity with the factual background and legal issues of this litigation will enable it to effectively represent the defendant class.[131]  It is not surprising that defendants object to representing a class, for "named defendants almost never choose their role as class champion [as] it is a potentially onerous one thrust upon them by their opponents."[132]  But acceding to the wishes of defendants and allowing them to

---

[129]    Defenses need not be identical in order to maintain a defendant class action. *See Oneida Indian Nation of Wis. v. New York*, 85 F.R.D. 701, 705 (N.D.N.Y. 1980).

[130]    *Marcera*, 595 F.2d at 1239.

[131]    *See Marcera v. Chinlund*, 91 F.R.D. 579, 584 (W.D.N.Y. 1981).

[132]    *Marcera*, 595 F.2d at 1239.  *Accord Consolidated Rail Corp.*, 47 F.3d at 474 (the appropriate inquiry is whether, "in defending their own interests, the designated representatives will adequately and fairly protect the interests of the remaining class members").

46

abdicate this responsibility so easily would gut the effectiveness of Rule 23(b)(2) as an instrument for preventing the recurrence of unconstitutional conduct.[133] Because the overwhelming number of incidents of unlawful enforcement of section 240.35(1) were carried out by the NYPD, the City defendants have the greatest stake in this litigation. Quite naturally then, they have the greatest incentive to litigate vigorously, which makes them and their counsel more than adequate representatives of the defendant class.

Defendants also argue, against no Rule 23(a) criterion in particular, that the proposed defendant class is so overly broad it raises due process concerns which caution against certification.[134] While a heightened sensitivity to due process is warranted in the class action context, it does not dictate a denial of certification here. *First*, defendants' assertion that procedural due process is lacking because absent defendants were not on notice of *Loper* is at best a frivolous argument. At worst, this argument pushes the envelope of hypocrisy, for defendants elsewhere argue that absent *plaintiffs* should be deemed on notice of *Loper* as of October 1992 because the story received "significant coverage in the

---

[133]    *See Marcera*, 595 F.2d at 1239.

[134]    *See* Def. Mem. at 33.

47

local New York City newspapers."[135] *Second*, defendants argue that the defined

defendant class is "so over-broad and unfair that it amounts to a deprivation of due

process," but offer no examples or reasoning in support of this conclusion.[136]  If

there are counties in New York State that have never unlawfully enforced section

240.35(1), any remedies imposed on these defendants will do them no harm.

*Third*, what constitutes procedural fairness to absent defendants varies with respect

to different types of defendant class suits.  In a civil rights class action such as this

– where certification of a defendant class will achieve uniform injunctive relief and

avoid enforcement problems;[137] where exposing absent defendants to liability will

not impose upon them a significant out-of-pocket financial risk; and where

adequate representation is ensured – due process is satisfied and the defendant

class can be maintained.

      **3.**      **Rule 23(b)(2)**

---

[135]    *Id*. at 10 n.14.  The idea that a class of mostly homeless individuals knew
and appreciated the ramifications of *Loper*, but that state law enforcement officials
did not, is untenable.

[136]    *See id*. at 33.

[137]    *See Markel v. Blum*, 509 F. Supp. 942, 948 (N.D.N.Y. 1981) (certifying
defendant class of administrators of New York's public assistance program in
order to avoid enforcement problems).

There is currently a split in the circuits as to whether defendant classes are permissible in class actions governed by Rule 23(b)(2).[138] Courts ascribing to a literal reading of the Rule have held that it only permits plaintiff classes to seek injunctive and declaratory relief from individual defendants, as opposed to defendant classes.[139] However, the Second Circuit – the only appellate court that binds this Court – has expressly rejected such a narrow interpretation of the Rule. In *Marcera v. Chinlund*, the court affirmed certification of a defendant class of county sheriffs and stated "it is now settled that 23(b)(2) is an appropriate vehicle for injunctive relief against a class of local public officials."[140] Although it is

---

[138]    The Supreme Court has not spoken on this issue.  In *Zablocki v. Redhail*, 434 U.S. 374, 380 n.6 (1978), the Court noted that the appellant had not appealed the district court's certification of a (b)(2) defendant class, but did not otherwise address this point.

[139]    *See Paxman v. Campbell*, 612 F.2d 848, 854 (4th Cir. 1980) ("As is clear from the language of the Rule, it is applicable to situations in which a class of plaintiffs seeks injunctive relief against a *single* defendant . . . . To proceed under 23(b)(2) against a class of defendants would constitute the plaintiffs as 'the party opposing the class,' and would create the anomalous situation in which the plaintiffs' own actions or inactions could make injunctive relief against the defendants appropriate."). *Accord Tilley v. TJX Cos., Inc.*, 345 F.3d 34, 40 (1st Cir. 2003); *Henson*, 814 F.2d at 415-17; *Thompson*, 709 F.2d at 1204.

[140]    595 F.2d at 1238.  *Accord Southern Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023 (10th Cir. 1993) (affirming certification of a (b)(2) defendant class); *Baker v. Wade*, 743 F.2d 236, 244 (5th Cir. 1984) (certification of a (b)(2) defendant class was proper where the named defendants would adequately represent the class and "the true interest at stake" was "that of the State of Texas in the constitutionality of its duly enacted legislation").  *See also Luyando*, 124 F.R.D. at 58 (certifying a (b)(2) defendant class); *Follette v. Vitanza*, 658 F. Supp.

employed rarely for this purpose, both before and after *Marcera*, Rule 23(b)(2) has

been the cornerstone of bilateral civil rights class actions.

Defendants also balk at the size of plaintiff's proposed defendant

class, but a large class is not an uncommon feature of (b)(2) civil rights classes.[141]

Nor is the size of this defendant class surprising given the particular circumstances

---

492, 506 (N.D.N.Y. 1987) (same); *DeAllume*, 110 F.R.D. at 304 (same). The
Second Circuit's decision in *Marcera* was vacated on grounds completely distinct
from the court's holding with respect to certification of the (b)(2) defendant class.
*See Marcera*, 442 U.S. at 915 (remanding the case for further consideration in light
of recent precedent regarding inmate confinement facilities). Indeed, on remand,
the district court, in applying the new substantive law, again certified a (b)(2)
defendant class, which was not disturbed on appeal. Accordingly, *Marcera* remains
good law in this Circuit and is binding on this Court.

[141]   *See, e.g.*, *Callahan v. Wallace*, 466 F.2d 59 (5th Cir. 1972) (defendant class
of justices of the peace, sheriffs and state troopers); *Monaco*, 187 F.R.D. 50
(defendant class of local criminal court judges); *Ragsdale v. Turnock*, 734 F. Supp.
1457 (N.D. Ill. 1990) (defendant class of all State's Attorneys in Illinois's 102
counties), *aff'd*, 941 F.2d 501 (7th Cir. 1991); *Luyando*, 124 F.R.D. at 58 (voicing
agreement with the Fourth and Sixth Circuits, but nonetheless certifying a
defendant class of all commissioners of social service districts in New York State
on the ground that it is bound by the Second Circuit's interpretation of Rule
23(b)(2)); *Akron Ctr. for Reprod. Health v. Rosen*, 110 F.R.D. 576 (N.D. Ohio
1986) (defendant class of state prosecutors); *Harris v. Graddick*, 593 F. Supp. 128
(M.D. Ala. 1984) (defendant class of state election officials); *Lake v. Speziale*, 580
F. Supp. 1318 (D. Conn. 1984) (defendant class of state court judges); *Doss v.
Long*, 93 F.R.D. 112 (N.D. Ga. 1981) (defendant class of state court judges); *Leist
v. Shawano County*, 91 F.R.D. 64 (E.D. Wis. 1981) (defendant class of
municipalities); *Hobson v. Pow*, 434 F. Supp. 362 (N.D. Ala. 1977) (defendant
class of voting registrars); *Redhail v. Zablocki*, 418 F. Supp. 1061 (E.D. Wis.
1976) (defendant class of county clerks), *aff'd*, 434 U.S. 374 (1978); *Kidd v.
Schmidt*, 399 F. Supp. 301 (E.D. Wis. 1975) (defendant class of state commitment
officials).  *See generally* Note, *Defendant Class Actions and Federal Civil Rights
Litigation*, 33 UCLA L. Rev. 283 (1985).

Nor is the size of this defendant class surprising given the particular circumstances

of this case, namely that the criminal statute at issue was declared unconstitutional

over a decade ago but still remains on the books.[142]  While the City has taken

positive steps toward vacating all outstanding bench warrants issued under section

240.35(1) and by removing it as a chargeable offense from the NYPD's computer

program (thereby precluding any future arrests and prosecutions), as noted above,

this does not vitiate plaintiff's request for further affirmative relief.[143]

Furthermore, certification of a state-wide defendant class is

appropriate because incidents of unlawful enforcement of section 240.35(1) are not

limited to the NYPD.  According to available OCA data, since 1992 there have

been at least 673 criminal prosecutions by District Attorneys' Offices charging

violations of section 240.35(1) in Rockland, Suffolk, Erie and Nassau Counties.[144]

Repealing section 240.35(1) is the province of the New York State Legislature, not

the federal courts.  Nonetheless, this Court may issue a permanent injunction

---

[142]   *Cf. Callahan*, 466 F.2d at 60-61 (upholding a defendant class of all justices
of the peace, sheriffs and state troopers in the State of Alabama where plaintiff
class – comprised of approximately 50,000 persons fined in justice courts for
highway law violations – sought an injunction against all defendants who
continued to engage in a law enforcement practice after the Supreme Court had
declared it unconstitutional).

[143]   *See supra* Part III.B.2.

[144]   This data does not include sealed cases, which are largely those that failed to
result in a conviction. *See* Smyth Decl. ¶¶ 16-17.

barring all state law enforcement officials from enforcing 240.35(1) so as to foster

state-wide uniformity of protection and respect for free expression.  Rule 23(b)(2)

allows plaintiff to seek state-wide injunctive relief that will not only vacate

outstanding warrants, dismiss pending prosecutions and overturn unlawful

convictions, but also prevent further illegal actions before they occur.[145]

---

[145]    *See Akron Ctr. for Reprod. Health*, 110 F.R.D. at 580 (recognizing "the utility of [defendant class] actions to enjoin government officials from enforcing locally-administered state statutes which are defective"); *Redhail*, 418 F. Supp. at 1066 ("Where . . . a statute with statewide application is challenged on the ground of its unconstitutionality, allowing the action to proceed against the class of officials charged with its enforcement is in accordance with the interests of judicial administration and justice which Rule 23 is meant to further.").

## IV.   CONCLUSION

For the reasons stated above, plaintiff's request to amend the complaint is granted.  Plaintiff's motion for certification of bilateral state-wide classes under Rule 23(b)(2) and for certification of a City-wide plaintiff subclass under Rule 23(b)(3) is also granted.  The Clerk of Court is directed to close this motion [Docket No. 63].  A conference in this action is scheduled for July 30, 2007, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
        July 24, 2007

## - Appearances -

*For Plaintiff:*

Matthew D. Brinckerhoff, Esq.
Katherine R. Rosenfeld, Esq.
Emery Celli Brinckerhoff & Abady, LLP
75 Rockefeller Plaza
New York, New York 10019
(212) 763-5000

J. McGregor Smyth, Jr., Esq.
The Bronx Defenders
860 Courtlandt Avenue
Bronx, New York 10451
(718) 838-7878

*For Defendants:*

Rachel Seligman
Assistant Corporation Counsel
100 Church Street
New York, New York 10007
(212) 788-0784