LUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
EDDIE WISE and MICHAEL BROWN, on Behalf :
of Themselves and Others Similarly      :
Situated                                :
                                        :
                        Plaintiffs,     :
                                        : 05 Civ. 5442 (SAS)(THK)
            -against-                   :
                                        :     **REPORT AND**
                                        :     **RECOMMENDATION**
RAYMOND W. KELLY, Commissioner of the   :
New York City Police Department, et al. :
                                        :
                        Defendants.     :
--------------------------------------X
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**
**TO: HON. SHIRA A. SCHEINDLIN, UNITED STATES DISTRICT JUDGE.**

This matter was referred to this Court for Reports and Recommendations on two motions for attorneys' fees filed by Plaintiffs in this case. The first motion, filed on June 21, 2007 (Docket Entry ("DE") 98), stems from the District Court's May 31, 2007 Opinion and Order, see Brown v. Kelly, No. 05 Civ. 5442 (SAS), 2007 WL 1573957 (S.D.N.Y. May 31, 2007), which denied Plaintiff Michael Brown's motion for an order adjudging Defendants to be in contempt, but awarded Plaintiff reasonable costs and fees incurred with respect to the motion. This motion for fees will be referred to herein as the Contempt Motion. The second motion, filed on July 23, 2007 (DE 109), is based on Defendants' November 9, 2006 Offer of Judgment to former Plaintiff Eddie Wise, pursuant to Federal Rule of Civil Procedure 68, which Wise accepted. The Offer of Judgment included a provision agreeing to pay Wise his reasonable

1

attorneys' fees, costs, and expenses up to the date of the Offer. This second motion will be referred to herein as the Rule 68 Motion.

Defendant does not dispute Plaintiffs' entitlement to fees in connection with either motion; the issue in both motions is only the appropriate amount to which Plaintiffs are entitled. The parties have asked the Court to consolidate its ruling on the Contempt Motion and the Rule 68 Motion because, although they are based on different events, many of Defendants' arguments relate to such things as hourly rates and billing practices and are, therefore, directed at both motions. In accordance with the parties' joint request, the Court will address the motions jointly to the extent feasible.

## BACKGROUND[1]

At issue in this case is the continued enforcement of an anti-begging statute, New York Penal Law § 240.35(1), which the Second Circuit declared unconstitutional almost fifteen years ago in <u>Loper v. New York City Police</u>, 999 F.2d 699, 701 (2d Cir. 1993). On June 9, 2005, former Plaintiff Eddie Wise ("Wise"), a homeless man who

---

[1] For purposes of this Report and Recommendation, the Court assumes familiarity with the background of this case and will recite only those facts necessary for resolution of the two motions presently before the Court. The background facts of this case are set forth in detail in the District Court's May 31, 2007 Opinion. <u>See</u> <u>Brown</u>, 2007 WL 1573957. Unless otherwise noted, the background facts set forth herein are drawn from that Opinion. Additional background information can be found at <u>Brown v. Kelly</u>, 244 F.R.D. 222 (2007).

was arrested pursuant to Section 240.35(1) multiple times from 2002 to 2005, initiated the instant action.[2]  (See Memorandum of Law in Support of Plaintiff's [Rule 68] Motion For Attorneys' Fees ("R. 68 Mem."), at 1.)  Wise filed an Order to Show Cause and Temporary Restraining Order against municipal and state defendants to, inter alia, prohibit further enforcement of Section 240.35(1).  Shortly thereafter, the Municipal Defendants entered into a stipulation - which was "So Ordered" by the District Court on June 23, 2005 - in which they agreed to take steps to prevent future enforcement of Section 240.35(1).  Nevertheless, notwithstanding the clear mandates of Loper and the District Court's June 23, 2005 Order, enforcement of the statute continued.

During the course of hotly-contested pretrial discovery, in January 2006, Plaintiff Wise settled his claims against the New York State Defendants.  As part of that settlement agreement, the Office of Court Administration ("OCA") was subpoenaed to provide critical enforcement-related tracking information to Plaintiff. According to Plaintiff, this information was essential to his case because the Municipal Defendants did not maintain records sufficient to show the extent of the continued unlawful enforcement

_____

[2] On November 22, 2006, Wise accepted the Municipal Defendants' Rule 68 Offer and his role as a Plaintiff in this case ended.  Prior to his departure, however, Wise received leave to amend his complaint, which he did, adding the current lead Plaintiff, Michael Brown, to serve as Plaintiff and putative class representative.

of Section 240.35(1). (See Reply Memorandum of Law In Further Support Of Plaintiff Eddie Wise's [Rule 68] Motion For Attorneys' Fees ("R. 68 Reply"), at 2.)[3] After receiving, reviewing, and processing the OCA records, Plaintiff's counsel sent a letter to the District Court in which he stated that the OCA data revealed routine and unabated enforcement of Section 240.35(1). (See Reply Declaration of Matthew D. Brinckerhoff In Further Support Of Plaintiff's [Rule 68] Motion For Attorneys' Fees ("Brinck. R. 68 Reply Decl.") ¶¶ 2-3 & Exhibit ("Ex.") AA.) In the same letter, Plaintiff's counsel indicated that he intended to file two motions: (1) a class-certification motion pursuant to Federal Rule of Civil Procedure 23(c); and (2) a motion seeking immediate relief from the continued enforcement of Section 240.35(1), including but not limited to, an order adjudging the Municipal Defendants to be in contempt. (Id.) Plaintiff stated that he would submit a letter formally requesting a pre-motion conference for these two motions no later than November 9, 2006. (Id.)

Rule 68 Offer

On November 1, 2006, Plaintiff provided the OCA data to Defendant City of New York (the "City"). On November 9, 2006, Plaintiff Wise submitted his pre-motion letter to the District

---

[3] As a result of the dismissal of the action against the State Defendants, the only remaining Defendants are the Municipal Defendants. As used herein, the term "Defendants" will refer to the Municipal Defendants.

4

Court regarding the class certification and contempt motions he sought to file. On that same day, the City extended a Rule 68 Offer to Wise in the amount of $100,001, "plus reasonable attorneys' fees, expenses and costs to the date of this offer." (See Declaration of Matthew D. Brinckerhoff In Support Of Plaintiff's [Rule 68] Motion For Attorneys' Fees ("Brinck. R. 68 Decl.") ¶¶ 27-29 & Exs. K & L.) On November 22, 2006, Plaintiff Wise accepted Defendant City of New York's Rule 68 Offer. (Id., Ex. M.) On November 27, 2006, Plaintiff Wise and newly-added Plaintiff Michael Brown ("Brown"), on behalf of themselves and others similarly situated, filed a First Amended Class Action Complaint. (See DE 50.) On December 5, 2006, the District Court entered Judgment for Wise and against the City, consistent with the Rule 68 Offer, and Wise's participation as a Plaintiff in the case came to an end. (Id., Ex. N.)[4]

Contempt Motion

On February 2, 2007, Plaintiff Brown filed a Motion to Amend the Complaint and for Class Certification.[5] On March 30, 2007,

_____

[4] During the first half of 2007, the parties attempted to agree on an amount due to Plaintiff Wise in connection with the Rule 68 Offer of Judgment he accepted in November, 2006. They were ultimately unable to do so, and Plaintiff Wise filed his Rule 68 Motion for Attorneys' Fees on July 23, 2007.

[5] On July 24, 2007, the District Court certified bilateral state-wide classes under Fed. R. Civ. P. 23(b)(2) and a City-wide Plaintiff subclass under Fed. R. Civ. P. 23(b)(3). See Brown v. Kelly, 244 F.R.D. 222 (S.D.N.Y. 2007). That decision is currently on appeal before the Second Circuit. (See United

Brown filed a Motion for Contempt against the City and New York City Police Department ("NYPD") Commissioner Raymond W. Kelly (hereinafter "Municipal Defendants") for their continued enforcement of Section 240.35(1). Despite unambiguous mandates to cease enforcement from more than one federal court, the District Court ultimately found Defendants' past conduct in enforcing Section 240.35(1) "contumacious," but declined to find Defendants in contempt because at some point in December, 2006, it appeared that Defendants began to make a proactive effort to end enforcement of the statute. See Brown, 2007 WL 1573957 at *4-6. Nevertheless, because the District Court believed that, absent Plaintiff's "persistence in monitoring and investigating the continued enforcement of section 240.35(1), defendants' noncompliance would have continued indefinitely," the court awarded Plaintiff "reasonable costs and attorneys' fees for its efforts with respect to this motion." Id. at *6. The court ordered Plaintiff to submit a fee application, which he did on June 21, 2007.

The District Court referred both of Plaintiffs' motions – the Contempt Motion and the Rule 68 Motion – to this Court for Reports and Recommendations. Again, there is no dispute about whether Plaintiffs are entitled to fees pursuant to the May 31, 2007 Opinion or the Rule 68 Judgment; the only question before the Court

States Court of Appeals Order, dated November 29, 2007; DE 127.)

is the appropriate amount to which Plaintiffs are entitled.[6]

## DISCUSSION

There has been an extensive amount of briefing on these two motions. It would be an understatement to say that Defendants have critically scrutinized every detail of Plaintiffs' counsel's billing records. In fact, Defendants are so critical of Plaintiffs' bills in connection with the Rule 68 Motion, that they ask the Court to award Plaintiff Wise no more than $15,000 of the $366,375.87 in fees and costs he seeks (a figure which does not include fees and costs for time spent in preparing the motion). (See id. at 22.)[7] As set forth below, Defendants do identify a limited number of fee entries that should be reduced or eliminated, but this Court believes that the bulk of Plaintiffs' fee requests are reasonable and appropriate.

---

[6] The Plaintiff bringing the Rule 68 Motion is Wise. The Plaintiff bringing the Contempt Motion is Brown. That distinction is without moment in terms of determining the propriety of the fees sought. Accordingly, references to "Plaintiff" herein encompass Wise and Brown, respectively. The Court will also use "Plaintiffs" to refer to Wise and Brown jointly, where appropriate.

[7] Defendants provide a small qualification to this amount by stating that Plaintiff should receive no more than $15,000 for the work of the three primary attorneys who worked on this case. (See R. 68 Resp., at 4.) Defendants do not provide a calculation for the fees they claim are appropriate above this amount and, in any event, they are sure to be de minimis because the overwhelming majority of the work on this case - well over 90% - was performed by the three lead attorneys: J. McGregor Smyth of the Bronx Defenders, and Matthew Brinckerhoff and Katherine Rosenfeld of Emery Celli Brinckerhoff & Abady.

I. <u>Legal Standard</u>

Traditionally, in order to resolve fee applications, district courts were required to "calculate a lodestar figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." <u>Reiter v. MTA New York City Transit Auth.</u>, 457 F.3d 224, 232 (2d Cir. 2006) (citing <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 94, 109 S. Ct. 939 (1989)). There was then a "strong presumption" that the lodestar figure was the reasonable fee, but it could be adjusted upward or downward in the district court's discretion based on considerations such as the difficulty of the case or the results obtained. <u>See</u> <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 764 (2d Cir. 1998) (citing <u>Hensley v. Eckerhart</u>, 461 U. S. 424, 434, 103 S. Ct. 1933 (1983)); <u>Grant v. Martinez</u>, 973 F.2d 96, 101 (2d Cir. 1992).

Earlier this year, however, the Second Circuit expressed dissatisfaction with the lodestar metaphor and held that the "the better course - and the one most consistent with attorney's fees jurisprudence - is for the district court, in exercising its considerable discretion, to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v.</u>

County of Albany, 493 F.3d 110, 117 (2d Cir. 2007).[8]  In setting

the reasonable hourly rate, the district court should consider,

inter alia, the following factors:

> [T]he complexity and difficulty of the case,
> the available expertise and capacity of the
> client's other counsel (if any), the resources
> required to prosecute the case effectively
> (taking account of the resources being
> marshaled on the other side but not endorsing
> scorched earth tactics), the timing demands of
> the case, whether the attorney had an interest
> (independent of that of his client) in
> achieving the ends of the litigation or
> initiated the representation himself, whether
> the attorney was initially acting pro bono
> (such that a client might be aware that the
> attorney expected low or non-existent
> remuneration), and other returns (such as
> reputation, etc.) the attorney expected from
> the representation.

Id. at 112.  The reasonable hourly rate -- i.e., the "rate a paying

client would be willing to pay" -- produced by this exercise is

then used to calculate "the presumptively reasonable fee."  Id. at

118.   In short, Arbor Hill instructs district courts to analyze

all case-specific variables in arriving at the reasonable hourly

rate, as opposed to performing that analysis after arriving at the

lodestar.  Id. at 117-18.

Arbor Hill did not, however, do away with all of the

traditional factors courts consider in the context of fee

applications.  In arriving  at a reasonable hourly rate, courts

---

[8] The Honorable Sandra Day O'Connor, Associate Justice
(Retired) of the United States Supreme Court, was sitting on the
panel by designation.

continue to consider the prevailing rates in the community for similar services by lawyers with comparable skill, experience, and reputation. <u>See</u> <u>Blum v. Stenson</u>, 465 U.S. 886, 895 & n.11, 104 S. Ct. 1541, 1547 & n.11 (1984); <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 882 (2d Cir. 1998). The community the district court should consider to determine the lodestar is "'the district in which the court sits.'" <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 115 (2d Cir. 1997) (quoting <u>Polk v. New York State Dep't of Corr. Servs.</u>, 722 F.2d 23, 25 (2d Cir. 1983)). In deciding what reasonable rates are in the community, the court may rely upon its own knowledge of private firm hourly rates, <u>see</u> <u>Miele v. New York State Teamsters Conf. Pension & Ret. Fund</u>, 831 F.2d 407, 409 (2d Cir. 1987); <u>Santa Fe Natural Tobacco</u>, 2002 WL 498631, at *3, and may take judicial notice of a law firm's "reputation for high quality work." <u>Kahn v. Gen. Motors Corp.</u>, No. 88 Civ. 2982 (PNL), 1992 WL 208286 (S.D.N.Y. Aug. 14, 1992). Additionally, to determine whether time was reasonably spent, the court must evaluate the tasks and the time documented in counsel's contemporaneous time records in light of its general experience and its experience with the case. <u>See</u> <u>Clarke v. Frank</u>, 960 F.2d 1146, 1153 (2d Cir. 1992); <u>New York State Ass'n for Retarded Children v. Carey</u>, 711 F.2d 1136, 1146-48 (2d Cir. 1983); <u>Santa Fe Natural Tobacco Co. v. Spitzer</u>, Nos. 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631, at *3 (S.D.N.Y. Mar. 29, 2002).

A fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, 711 F.2d at 1148.  If the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent was wasteful or redundant, the court may decrease the award, either by eliminating compensation for unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought.  See Hensley, 461 U.S. at 434, 103 S. Ct. at 1939-40; Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998); New York State Ass'n for Retarded Children, 711 F.2d at 1146.

There are a few other considerations that warrant attention in connection with the specific motions at bar.  First, the reasonable hourly rate analysis for attorneys from non-profit organizations, and attorneys from private law firms doing pro bono work, is the same as it is for other attorneys.  Arbor Hill, 493 F.3d at 112.  For all kinds of attorneys, the goal is simply to arrive at a number that a "reasonable, paying client would expect to pay." Id. Second, there is a strong presumption that the lodestar figure (or functional equivalent thereof after Arbor Hill) represents a reasonable fee in civil rights actions because "if private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with

impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." LeBlanc-Sternberg, 143 F.3d at 764 (quoting Orchano v. Advanced Recovery, Inc. 107 F.3d 94, 99 (2d Cir. 1997)); cf. City of Riverside v. Rivera, 477 U.S. 561, 574, 106 S. Ct 2686, 2694 (1986) ("a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards").

Finally, and perhaps most importantly here, it is well-established that, in reviewing voluminous fee applications, it is unrealistic to expect courts to "evaluate and rule on every entry in an application." New York State Ass'n for Retarded Children, 711 F.2d at 1146; see also Betancourt v. Giuliani, 325 F. Supp. 2d 330, 334 (S.D.N.Y. 2004); S.W. ex rel. N.W. v. Bd. of Educ. of City of New York (Dist. Two), 257 F. Supp. 2d 600, 606 (S.D.N.Y. 2003). Along these same lines, the Supreme Court has cautioned that "a request for attorneys' fees should not turn into a second major litigation." Buckhannon Bd. & Care Home, Inc. v. W. Virgina Dep't Of Health & Human Res., 532 U.S. 598, 609, 121 S. Ct. 1835 (2001) (quoting Hensley, 461 U. S. at 437).

II. Application

Plaintiff Brown seeks a total of $73,644.50 in fees in connection with his Contempt Motion, and Plaintiff Wise seeks a total of $354,647.00 in fees, and $11,728.87 in costs, in

connection with his Rule 68 Motion. Both Plaintiffs are also requesting interest on those amounts, and the fees and costs that their counsel reasonably expended on the motions themselves, which have not yet been submitted to the Court. As stated previously, Defendants make many of the same arguments in their responses to both motions as to why the requested fees are unreasonable. This Court will first address arguments directed at both motions, and then proceed to resolve any remaining issues on the individual motions.

    A. <u>Arguments Directed At Both Motions</u>

       1. <u>Hourly Rates Of The Three Main Attorneys</u>

Defendants' lead argument in their responses to both motions is that the hourly rates sought by Plaintiffs' attorneys and support staff in this case are unreasonable. Plaintiffs in this case have been represented primarily by the following three attorneys: Matthew Brinckerhoff ("Brinckerhoff") from the firm of Emery Celli Brinckerhoff and Abady ("ECBA"); Katherine Rosenfeld ("Rosenfeld") from ECBA; and J. McGregor Smyth ("Smyth") from The Bronx Defenders. To put the amount of work that these three attorneys have done in perspective, they generated close to 94% of the aggregate fees for which Plaintiffs seek compensation (all of the $73,644.50 sought in the Contempt Motion and $327,178.25 of the

$354,647.00 sought in the Rule 68 Motion).[9]

In order to assess whether the hourly rates sought by these attorneys are reasonable, it is first necessary to briefly review their backgrounds and experience. See Blum, 465 U.S. at 895 & n.11; Gierlinger, 160 F.3d at 882. Brinckerhoff graduated from New York University School of Law in 1990. (See Brinck. R. 68 Decl., Ex. P.) A founding partner of ECBA, Bricnkerhoff has a "diverse general, commercial, and civil rights litigation practice," but he focuses on "representing individuals and not-for-profit corporations in First Amendment, police misconduct, discrimination, voting rights, and government contracting cases." (Id.) He has had extensive experience over the course of his career litigating civil rights cases against governmental entities, and obtained a $50 million dollar settlement against the City of New York on behalf of a class of 60,000 people. (Id.) Plaintiffs seek compensation for Brinckerhoff's work in this case at a rate of $450 per hour, a rate that is his "current hourly rate paid by fee-paying clients, including those raising civil rights claims." (Brinck. R. 68 Decl. ¶ 39.) Brinckerhoff avers that, based on his firm's research into legal rates charged by similar types of firms, he believes his rate, along with Rosenfeld's rate, are comparable

---

[9] The remaining 6% of the aggregate fees sought, approximately $27,500, was generated by various attorneys, summer associates, and paralegal assistants at ECBA and The Bronx Defenders. (See Brinck Decl. ¶¶ 50-52.)

to "the general level of hourly rates charged by other small to medium-sized New York City firms for general civil litigation." (Id. ¶ 40.)  And at least three attorneys practicing in this district, with experience in civil rights litigation, also believe that Brinckerhoff's and Rosenfeld's rates are reasonable and appropriate for lawyers with their background and skill.  (See Brinck. R. 68 Decl., Ex. T (Declaration of Robert L. Herbst ("Herbst Decl.")); Ex. U (Declaration of Lee Bantle ("Bantle Decl.")); and Ex. V (Declaration of Nick J. Brustin ("Brustin Decl.")).)

Rosenfeld graduated from Yale Law School in 2001.  (See Brinck. R. 68 Decl., Ex. Q.)  After completing a clerkship in the Central District of California in 2002, Rosenfeld was an associate at a local civil rights firm for two years. (See id.)  She joined ECBA in December, 2004.  (See id.)  Her resumé indicates that she "litigates civil rights cases involving prisoners' rights, police misconduct, employment discrimination, wrongful death, and First Amendment - and commercial cases."  (Id.)  Plaintiffs seek compensation for Rosenfeld's work in this case at a rate of $325 per hour, a rate that is her "current hourly rate paid by fee-paying clients, including those raising civil rights claims." (Brinck. R. 68 Decl. ¶ 39.)

Smyth graduated from Yale Law School in 1999.  (See J. McGregor Smyth, Jr.'s Declaration In Support of Plaintiff's [Rule

68] Motion For Attorney's Fees ("Smyth R. 68 Decl."), ¶ 6.)  Smyth is the founder and Managing Attorney of the Civil Practice at The Bronx Defenders, "a law office with a staff of 40 attorneys, 28 investigators, social workers and support staff," which "specializes in comprehensive litigation to safeguard the civil rights of indigent New Yorkers charged with crimes." (Id. ¶¶ 6-7, 12.)  Even though Smyth is two years Rosenfeld's senior in terms of experience, Plaintiffs seek compensation for Smyth's work at the same rate as Rosenfeld - $325 per hour - because the overhead costs at The Bronx Defenders are less than those at ECBA.  (See Brinck. R. 68 Decl. ¶ 46.)

In their response to the Contempt Motion and, later, the Rule 68 Motion, Defendants argue that these rates must be "significantly reduced" - to $250 per hour for Brinckerhoff and $200 per hour for Rosenfeld and Smyth - in order to "accurately reflect the prevailing rate in the civil rights litigation community who operate in small firms and public defender organizations." (R. 68 Resp., at 11; see also Defendants' Memorandum Of Law In Opposition To Plaintiff's [Contempt] Motion For Attorneys' Fees ("Cont. Resp."), at 2-4.)  Defendants do not submit independent evidence indicating that the rates Plaintiffs request for these three attorneys are unreasonable.  Instead, Defendants rely primarily on two cases for their position, both of which are readily

distinguishable.[10]

The first case Defendants rely on is <u>Saunders v. Salvation Army</u>, No. 06 Civ. 2980 (SAS), 2007 WL 927529 (S.D.N.Y. Mar. 27, 2007). In that case, following a settlement that allowed the plaintiffs to move for recovery of their attorneys' fees and costs, the plaintiffs requested fees for their attorneys - two individuals at the Anti-Discrimination Center of Metro New York (the "Center"). The attorneys had forty-three and twenty-two years of experience, respectively, and requested compensation at the rates of $450/hour and $400/hour. <u>Id.</u> at *2. The court found those rates to be excessive, and reduced them to $300/hour for both attorneys. <u>Id.</u> The basis for the court's reduction is not, however, directly applicable here. The court held that the Center had "employed one or two attorneys at most since its inception" and that it did "not pay rent for its office space which is donated by a large firm." <u>Id.</u> at 3. Consequently, the court reasoned, the "rates charged by its employees cannot approximate those charged by attorneys in large New York City law firms." <u>Id.</u>[11]

-------

[10] These cases relate primarily, although not exclusively, to Defendants' arguments in connection with ECBA's rates. Defendants' specific arguments with respect to The Bronx Defenders' rates will be addressed more fully below.

[11] The court also noted that the case did not involve any novel issues of fact or law. <u>Id.</u> at *3, n. 31. Moreover, the defendants argued that the plaintiffs "proffered no evidence in support of their request" for rates of $450/hour and $400/hour. <u>Id.</u> at *1, n.5.

ECBA is, obviously, quite different than the Center. Among other things, ECBA is a private firm that employs fourteen attorneys and pays for its office space at 75 Rockefeller Center. In addition to civil rights litigation, it also has a commercial practice. This Court may also take judicial notice of ECBA's high reputation, see, e.g., Kahn, 1992 WL 208286 at *3, finding it to be one of the most competent, successful, and reputable civil rights firms practicing in this Court.[12] Moreover, this Court also takes note that the instant case has been considerably more difficult and complex than the average civil rights case. See Santa Fe, 2002 WL 498631 at *4-5. For example, Saunders involved two plaintiffs asserting individual claims under the Fair Housing Act; this case, in contrast, has always been a putative class action – with a Monell claim – challenging city-wide enforcement practices. For these reasons, this Court finds the rate reductions in Saunders to be of limited applicability here.

Similarly distinguishable is the second case Defendants rely on, Tlacoapa v. Carregal, 386 F. Supp. 2d 362 (S.D.N.Y. 2005). There, following entry of judgment in the plaintiff's favor on his straightforward individual claim under the Fair Labor Standards Act ("FLSA"), the plaintiff moved, as the prevailing party, for her attorneys' fees. The plaintiff requested rates of $375 per hour

---

[12] In an earlier decision in this case, see Brown, 244 F.R.D. at 233, the District Court referred to ECBA as "a preeminent civil rights firm."

for an attorney with twenty years of experience, $300 per hour for an attorney with nine years of experience, and $200 per hour for an attorney with three years of experience. <u>Id.</u> at 369. The court found these rates to be excessive and reduced them to $250 per hour, $200 per hour, and $125 per hour, respectively. <u>Id.</u> at 370. The reasoning behind the court's decision, however – that the attorneys were members of a firm with only three full-time attorneys – mirrors the reasoning in <u>Saunders</u>, and is, for the reasons stated above, of limited applicability here.[13]

a. <u>Rates For Brinckerhoff & Rosenfeld</u>

Notwithstanding the foregoing, this Court does believe that Plaintiffs have not met their burden of establishing that the rates of $450 per hour for Brinckerhoff and $325 per hour for Rosenfeld are entirely appropriate and reasonable. The lead case that Plaintiffs rely on to support these rates, <u>Heng Chan v. Sung Yue Tung Corp.</u>, No. 03 Civ. 6048 (GEL), 2007 WL 1373118 (S.D.N.Y. May 8, 2007), is almost as distinguishable as the cases on which Defendants rely. In that case, also under the FLSA, the plaintiffs moved for their attorneys' fees following a trial and damages award in their favor. The plaintiffs were represented in the case, pro

---

[13] The only other case Defendants rely on for their argument that the rates Plaintiff seeks are excessive is <u>Pascutti v. New York Yankees</u>, 108 F. Supp. 2d 258 (S.D.N.Y. 2000). Not only is that case more than seven years old, but, again, the court in that case relied on the fact that the firm at issue was small, and may have only included the two partners seeking fees in the case. <u>See id.</u> at 266-67.

bono, by the firm of Skadden, Arps, Slate, Meagher and Flom LLP ("Skadden"), one of the largest law firms in New York, and, for that matter, the world. In granting the plaintiffs' requested rates of $450/hour for the lead partner with sixteen years of experience, $300/hour for sixth-year associates, and $200/hour for a second-year associate (all of which were "substantially discount[ed]" from their normal billing rates for purposes of the fee application), the court expressly relied on Skadden's size. Id. at *3 (Based on "[t]he institutional resources of a large firm such as Skadden, with the higher overhead and other costs that go with them . . . it is appropriate to award a relatively high hourly rate.").[14]

As different as ECBA is from a one to three-person firm or nonprofit entity, so, too, is it different from a firm like Skadden. Consequently, even though this Court has the highest regard for the abilities of the ECBA attorneys in this case, they simply do not warrant the same hourly rates as attorneys with comparable skills and experience at Skadden.

It is also worth noting that although Brinckherhoff avers that the hourly rates Plaintiffs seek for him and Rosenfeld are "based

---

[14] The court also awarded $400/hour to an attorney at the Urban Justice Center with fifteen years of experience, who initially prepared the case but, after Skadden became involved in the case, served as an advisor. The attorney billed a mere 53.7 hours, however, and the court found that in a case of this size and complexity, it was appropriate to retain someone with the attorneys' qualifications. Id. at *4.

on counsel's current hourly rates paid by fee-paying clients, including those raising civil rights claims," he does not specify what percentage of ECBA's gross revenues are from fee-paying clients in civil rights cases. (See Brinck. R. 68 Decl. ¶ 39.) Brinckerhoff does identify a "sample of the cases where fee-paying clients (plaintiffs) have retained [ECBA] on an hourly basis to conduct civil rights and constitutional litigation," but he does not specify the hourly rates ECBA charged in each of those matters, some of which go back to 1999 and were litigated in other districts. (See id. ¶ 45.)[15]

Nevertheless, Brinckerhoff and Rosenfeld are experienced and very capable members of a prestigious civil rights law firm that maintains expensive office space and are, therefore, more like members of a large New York City law firm than they are like members of a nonprofit organization or a two to three-person obscure law firm. Moreover, the tenacity with which they have litigated this case, and the results they have achieved – which include, but are not limited to, an Order by the District Court instructing Defendants to alter their practices and a $100,001 judgment for Wise – militate in favor of an hourly rate at the top

---

[15] Brinckerhoff does provide evidence that, in 2007, a District Court in Nevada awarded ECBA fees (for work that Brinckerhoff performed in 2004 on a ballot access case) at the hourly rate of $400 per hour. (See Brinck. Reply Declaration In Support Of Contempt Motion ("Brinck. Con. Reply Decl.") ¶ 7; Ex. A.) It is unclear whether the award or Brinckerhoff's rate were contested.

end of the relevant spectrum.

The legal community at issue here is one that covers small to mid-size firms in civil rights, or similar, cases. Many judges in this Court have awarded fees in that exact spectrum. <u>See, e.g.</u>, <u>Garcia v. Yonkers School Dist.</u>, 499 F. Supp. 2d 421, 426 (S.D.N.Y. 2007) (rate of $350 per hour for experienced civil rights litigator); <u>Sheehan v. Metro. Life Ins. Co.</u>, 450 F. Supp.2d 321, 328 (S.D.N.Y. 2006) (rates of $425 for senior partner, $350 for junior partner, and $300 for associates of small firm in ERISA case); <u>Access 4 All, Inc. v. Park Lake Hotel, Inc.</u>, No. 04 Civ. 7174 (SAS) (JCF), 2005 WL 3338555 (S.D.N.Y. Dec. 7, 2005) (rate of $350 per hour appropriate for experienced attorneys in a case under the ADA); <u>Martinez v. Port Auth. Of New York & New Jersey</u>, No. 01 Civ. 721 (PKC), 2005 WL 2143333 at *26 (S.D.N.Y. Sept. 2, 2005) (rates of $400 per hour for partner and $325 per hour for co-counsel in civil rights case); <u>Kuper v. Empire Blue Cross & Blue Shield</u>, No. 99 Civ. 1190 (JSG) (MHD), 2003 WL 23350111, at *9-10 (S.D.N.Y. Dec. 18, 2003) (rate of $425 per hour for lead attorney of small firm in civil rights case); <u>New York State Nat'l Org. For Women v. Pataki</u>, No. 93 Civ. 7146 (RLC), 2003 WL 20006608, at *2 (S.D.N.Y. Apr. 20, 2003) ($430 per hour and $400 per hour to experienced civil rights litigators from small firm); <u>Davis v. New York City Housing Auth.</u>, No. 90 Civ. 628 (RWS), 2002 WL 31748586, at *2-3 (S.D.N.Y. Dec. 6, 2002) ($375 per hour to attorney with

fifteen years of experience); <u>Green v. Torres</u>, No. 98 Civ. 8700 (JSR), 2002 WL 922174, at *1 (S.D.N.Y. May 7, 2002) ($400 per hour for successful civil rights litigator) (vacated on other grounds by <u>Green v. Torres</u>, No. 98 Civ. 8700, 2003 WL 1025241 (2d Cir. May 7, 2003); <u>Baird v. Boies, Schiller & Flexner</u>, 219 F. Supp. 2d 510, 523 (S.D.N.Y. 2002) ($375 per hour to partner at small firm); <u>Gonzalez v. Bratton</u>, 147 F. Supp. 2d 180, 211-12 (S.D.N.Y. 2001) (rates of $390 per hour for senior attorneys from small firm engaged in civil rights case); <u>Marisol v. Giuliani</u>, 111 F. Supp. 2d 381, 387 (S.D.N.Y. 2000)(rates in civil rights case of $350 for attorneys with more than fifteen years of experience, $300 for attorneys with ten to fifteen years of experience, $230-250 for attorneys with seven to nine years of experience); <u>Skold v. Am. Int'l Group, Inc.</u>, No. 96 Civ. 7137 (HB), 1999 WL 405539, at *7 (S.D.N.Y. June 18, 1999) (rate of $400 for lead attorney at civil rights firm held reasonable); <u>cf. Heng Chan</u>, 2007 WL 1373118 at *4 (award of $400 per hour to attorney at the Urban Justice Center with fifteen years of experience).

With the foregoing cases as reference, and accepting the obvious proposition that billing rates continue to increase over time, this Court recommends that Brinckerhoff and Rosenfeld be compensated for their work on this case at rates of $425 per hour and $300 per hour, respectively.

b.  Rate For Smyth

Neither party has submitted declarations from third-parties regarding the reasonableness of the hourly rate sought for Smyth's services, $325/hour.[16]  Nor has Smyth stated, in his declaration or otherwise, that he has a fixed billing rate that approaches $325/hour.  Defendants' main argument in favor of reducing Smyth's rate is a statement in Arbor Hill that, when looking to what a reasonable paying client would be willing to pay, a court should consider whether the attorney was initially acting pro bono and whether there are other returns, such as enhanced reputation, that the attorney could expect from the case.  493 F.3d at 112; cf. Heng Chan, 2007 WL 1373118 at *3 ("Although the fact that an attorney is willing to take a case pro bono is not itself a basis for reducing fees, a discount in fees is appropriate insofar as the market rate for civil rights litigation services is lower than the market rate for services provided to high-profile corporate clients.").

Defendants' reliance on Arbor Hill is misplaced for at least two reasons.  First, Smyth never represented Plaintiff on a pro bono basis.  (See Brinck. Con. Reply Decl. ¶ 11.)  Second, even if Smyth's work is not typically driven by profit-related concerns,

---

[16] Plaintiff submits declarations from Brinckerhoff indicating that, were Smyth interested, ECBA would hire Smyth and charge between $350 and $375 per hour for his services.  (See e.g., Brinck. Decl. In Support Of [Contempt Motion] ¶ 9 ("Brinck. Cont. Decl.")  The Court sees little evidentiary value in this portion of Brinckerhoff's declarations.

Defendants ignore other language in <u>Arbor Hill</u>, which states: "Our decision today in no way suggests that attorneys from non-profit organizations or attorneys from private law firms engaged in *pro bono* work are excluded from the usual approach to determining attorneys' fees." 493 F.3d at 112, n.2; <u>see also</u> <u>Blum v. Stenson</u>, 465 U.S. 886, 892 (1984) (fees should be calculated consistent with prevailing market rates for both private and nonprofit counsel).

Although the Court is not persuaded by Defendants' argument that Smyth's employment with a nonprofit organization militates a significant downward departure for the rate he seeks, the Court also believes that Plaintiffs have not met their burden of establishing that $325 per hour is a reasonable rate for Smyth. Consistent with all of the relevant factors that this Court must consider, including Smyth's experience (eight years out of law school at the time of his work on this case), the complexity and contentiousness of this case, the results he has helped to achieve for Plaintiffs, the size and overhead costs of The Bronx Defenders[17], and the rate that a fee-paying client would pay for Smyth's services, the Court recommends that Smyth be compensated at the same rate as Rosenfeld, $300 per hour. <u>See, e.g.</u>, <u>Marisol</u>, 111

---

[17] According to Smyth, "The Bronx Defenders is a law office with a staff of 40 attorneys and 28 investigators, social workers, and support staff. Its current operating budget is approximately $5.5 million, which covers significant overhead costs, including office space of approximately 20,000 square feet." (<u>See</u> Smyth Declaration In Support Of Plaintiff's [Contempt Motion] ("Smyth Con. Decl.") ¶ 6.)

F. Supp. 2d at 387 (nine years ago, rates of $230 - $375 appropriate for attorneys at Children's Rights, Inc. and Lawyers for Children). This rate accounts for the fact that Smyth is slightly more experienced than Rosenfeld, while also taking into account the fact that The Bronx Defenders has lower overhead costs than ECBA.

      2.   <u>Hourly Rates Of Other Attorneys And Support Staff</u>

As stated above, Plaintiff Brown does not seek fees for anyone other than Brinckerhoff, Rosenfeld and Smyth in connection with the Contempt Motion. Plaintiff Wise does, however, seek approximately $27,500 in fees that were not generated by the three lead attorneys in connection with the Rule 68 Motion. Below is a table that sets forth the amounts Plaintiff Wise requests for other attorneys and support staff:

| <u>Individual</u> | <u>Position</u> | <u>Rate</u> | <u>Hours</u> | <u>Total</u> |
|---|---|---|---|---|
| Jonathan S. Abady | ECBA Partner | $450 | 0.75 | $337.50 |
| Andrew G. Celli | ECBA Partner | $450 | 2.0 | $900.00 |
| Alba Morales | ECBA Associate | $325 | 21.25 | $6,906.25 |
| Li Yu | BD Attorney | $250 | 9.00 | $2,250.00 |
| Thomas Leith | BD (Summer Assoc.) | $150 | 31 | 4,650.00 |
| Samuel Butt | BD (Summer Assoc.) | $150 | 47.50 | $7,125.00 |
| Cindy Uh | ECBA (Summer Assoc.) | $150 | 2.0 | $300.00 |
| Vichal Kumar | BD Paralegal | $100 | 38.0 | $3,800 |

| Jessica Buchanan | ECBA Paralegal | $100 | 11.0 | $1,100 |
| Joshua Rodriguez | ECBA Paralegal | $100 | 1.0 | $100 |

###### a.  Attorneys

Like Brinckerhoff, Jonathan S. Abady ("Abady") and Andrew J. Celli ("Celli") are both 1990 graduates of New York University School of Law ("NYU"), and named partners at ECBA. (See Brinck. R. 68 Decl. ¶ 38; Ex. S.) Abady and Celli also have similar credentials and experience to Brinckerhoff. (See id.) Consequently, for the reasons stated above, this Court believes that both should be compensated at the same rate as Brinckerhoff - $425 per hour. Like Rosenfeld, Alba Morales ("Morales") is a 2001 law school graduate. (See id., Ex. R.) Morales graduated from NYU and spent the bulk of her career, following a clerkship in the Eleventh Circuit, at the Legal Aid Society doing criminal defense work. (See id.) Morales was only at ECBA for thirteen months, (see id.),[18] and only worked on this case while Rosenfeld was on maternity leave. (See R. 68 Reply, at p.4, n.5.) Although Morales received her law degree in the same year as Rosenfeld, she has significantly less civil rights experience than Rosenfeld and Plaintiff is not, therefore, entitled to the same hourly rate for Morales' services. The Court believes that, due to her relative

---

[18] Morales left ECBA, in March 2007, to work for the Innocence Project. (See id., Ex. R.)

lack of civil rights experience, Morales should be compensated at the rate of $250 per hour. See, e.g., Sheehan, 450 F. Supp. 2d at 328 (rate of $300 for associates of small firm in ERISA case; level of experience not indicated); Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 423 (S.D.N.Y. 1999) (nine years ago, rate of $240 per hour reasonable for fifth-year associate at large firm involved in civil rights case).

Li Yu ("Yu") is a 2002 graduate of Columbia University School of Law, and was a Volunteer Attorney at The Bronx Defenders for two months in early 2005. (See Smyth R. 68 Decl., Ex. B.) Plaintiff seeks compensation for Yu's services at the rate of $250 per hour, which the Court deems slightly excessive. Prior to his employment with The Bronx Defenders, Yu's only experience was a fifteen-month stint at a large law firm (where he did participate in a § 1983 trial) and a one-year clerkship in this court. (See id.) This Court believes that Yu should be compensated at a rate of $200 per hour. See, e.g., Nam Yang v. ACBL Corp., No. 04 Civ. 8987, 2006 WL 435720, at *3 (S.D.N.Y. Feb. 22, 2006) (finding $175 a reasonable hourly rate for an attorney with less than two years' experience, but noting that awards of $200 were common); Brenlla v. Lasorsa Buick Pontiac Chevrolet, No. 00 Civ. 5207 (JCF), 2000 WL 1059117 at *13 (S.D.N.Y. May 28, 2002) (over five years ago, rate of $175 per hour appropriate for civil rights associate with two years experience); Skold, 1999 WL 405539, at *7 (nine years ago, rate of

$175 for associate in civil rights case held reasonable).

### b. Summer Associates/Paralegals

Plaintiff Wise also seeks compensation for three summer associates, at a rate of $150 per hour, and three paralegal assistants, at a rate of $100 per hour. Although Defendants claim that these rates are excessive, and request that all six employees be compensated at the rate of $50 per hour, Plaintiff has provided very recent caselaw indicating that these rates are reasonable. See Heng Chan, 2007 WL 1373118 at *5 (awarding between $50 and $150 per hour for paralegals); United States ex rel. ATC Distib. Group, Inc. v. Ready-Built Transmissions, Inc., No. 03 Civ. 2150 (GWG), 2007 WL 2522638 (S.D.N.Y. Sept. 7, 2007) (awarding $185 per hour for summer associate). These are not isolated cases from this district, at least with respect to paralegals. See, e.g., Access 4 All, 2005 WL 3338555 at *5 (rate of $115 reasonable for paralegal assistant); Morris v. Eversley, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004 (rate of $125 reasonable for paralegal assistant in civil rights case). Accordingly, this Court recommends the billing rate of $100 per hour for the paralegals, but believes the billing rate for summer associates should be reduced to $125 per hour.

### 3. Overlapping Hours

In their Response to the Contempt Motion, Defendants argue that Plaintiffs are attempting to collect fees twice – in both the Contempt Motion and the Rule 68 Motion – for the same work. (See

Defendants' Memorandum Of Law In Opposition To Plaintiff's [Contempt] Motion ("Cont. Resp.") at 9.) According to Defendants, this work amounted to 51.3 hours (9.7 hours for Brinckerhoff; 19.1 hours for Rosenfeld; 23.25 hours for Smyth)[19], totaling $17,885 at their requested rates. (See id.) In his Rule 68 Motion, Plaintiff Wise specifically identifies the hours at issue, which actually amount to 50.6, and total $17,619.50 at the requested rates (9.4 hours for Brinckerhoff; 18.7 hours for Rosenfeld; 22.5 hours for Smyth). (See Brinck. R. 68 Decl. ¶ 26.)[20] Plaintiffs concede that they did submit billing records for this time in connection with both motions because, according to Plaintiffs, the work contributed "both to the contempt proceeding and to achieving Mr. Wise's successful result." (See Con. Reply, at 4-5; R. 68 Mem., at 19-20.) But Plaintiffs state that they do not seek to be compensated twice for the same work and, accordingly, ask the Court to allocate payment for these hours to either the Contempt Motion or the Rule 68 Motion. (See id.) This Court will, therefore, recommends that these hours (and the corresponding fee totals in light of the rates

---

[19] These hours add up to 52.05, not 51.3.

[20] Plaintiff submitted this declaration with his Rule 68 Motion on July 23, 2007. In their response to the Rule 68 Motion, which was submitted on September 18, 2007, Defendants do not contest Plaintiff's calculations regarding the hours and fees at issue, which, as set forth above, differ slightly from Defendants' calculations in their Response to the Contempt Motion, which they submitted on July 13, 2007. Accordingly, this Court will rely on Plaintiff's calculations.

set forth above) be allocated to the Rule 68 Motion.

> 4. Reasonableness Of
>    Hours/Propriety Of Billing Practices

In their responses to both the Contempt Motion and the Rule 68 Motion, Defendants offer a litany of arguments as to the unreasonableness of certain hours Plaintiffs' counsel expended on the case, and the impropriety of certain of Plaintiffs' counsel's billing practices. The Court finds the majority of Defendants' arguments to be meritless.

> a. Block Billing

Block-billing is the practice "of aggregating multiple tasks into one billing entry." Molefi v. Oppenheimer Trust, No. 03 Civ. 5631 (FB)(VVP), 2007 WL 538547 at *7 (E.D.N.Y. 2007). Although not prohibited, block-billing makes it "exceedingly difficult" for courts to assess the reasonableness of the hours billed. Id.; see also Aiello v. Town of Brookhaven, 94 Civ. 2622 (FB)(WDW), 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) ("because block billing 'renders it difficult to determine whether, and/or the extent to which, the work done by ... attorneys is duplicative or unnecessary,' courts apply percentage cuts where there is a substantial amount of block billing in a fee request") (citations omitted).

Contempt Motion: Defendants argue that there are two specific areas of improper block-billing relating to the Contempt Motion. The first relates to a November 9, 2006 letter drafted by

31

Plaintiff's counsel and a November 29, 2006 conference before the District Court. According to Defendants, the letter and conference both addressed, in part, Plaintiff's request for permission to file a class certification motion (which is not recoverable here), in addition to permission to file a contempt motion (which is recoverable). Accordingly, Defendants request at least a 50% reduction in the amount of work related to these tasks. (See Declaration of Rachel Seligman, filed July 13, 2007 ("Selig. Con. Decl."), Ex. A (Entries 12-16) and Ex. B (Entries 66, 67, 71).) In his reply, Plaintiff claims that Defendants miscalculated Smyth's time - which was 1.6 hours, not 9.8 - and admits to a coding error that resulted in $843.70 being improperly allotted to contempt-related fees. (See Con. Reply, at 9-10; Brinck. Con. Reply Decl. ¶¶ 39-47.) At the rates set forth above, this coding error amounts to $772.50. The Court recommends that this amount be deducted from the award on the Contempt Motion.

Defendants also argue that Plaintiff's counsel did not apportion their time in relation to a March 2, 2007 conference, which dealt with a protective order issue in addition to the contempt issue. (See Cont. Resp., at 12; Selig. Cont. Decl., Ex. A (Entries 30, 31) and Ex. B (Entries 85, 87).) Defendants request a 20% reduction for these entries. However, this Court does not believe that any reduction is necessary as the entries appear to relate solely to contempt-related issues. Moreover, the transcript

32

from the March 2, 2007 hearing makes plain that the protective order issue was not a lengthy subject of discussion. (See Selig. Cont. Decl., Ex. G.)

Defendants also contend that eight other entries constitute improper block billing (see Selig. Cont. Decl., Ex. A (Entries 15, 25, 40, 45, 52, 55) and Ex. B (Entries 76, 79), and request at least a 35% reduction in time for those entries. After reviewing each of these entries, the Court does not believe that they rise to the level of improper block billing. The entries at issue here either identify a single task (see, e.g., Ex. A (Entry 40) ("Review City's opposition papers to our contempt motion")) or more than one task related to a single general task such as filing or preparation of a brief (see, e.g., id. (Entry 45) ("Draft, revise and edit reply brief and Smythe Declaration on contempt motion; phone calls with M. Smythe re: same).) Although this last entry appears to relate to different tasks, it relates solely to the filing of the reply brief and declaration, that took place that day. Brinckerhoff's calls with Smyth on the day of the filing – to discuss revisions to the reply brief and Smyth's declaration – were likely numerous. Under the circumstances, therefore, it would be unreasonable to expect that these tasks could be broken down into separate time entries. Accordingly, the eight entries at issue here do not entail "aggregating multiple tasks into one billing entry" – a practice that warranted a 15% reduction in the case

cited by Defendants.  See <u>Molefi v. The Oppenheimer Trust</u>, No. 03
Civ. 5631 (FB) (VVP), 2007 WL 538547 at *8 (E.D.N.Y. Feb. 15, 2007)
(The block-billing example cited by the court read: "Review Fagan's
submission, preparation for conference with the court, conference
call with the court, preparation of email to team regarding
conference call, phone call with Dumisa regarding results of
conference call.").

In all events, however, the time spent on these alleged block
entries does not appear to be unreasonable in light of the work
performed.  <u>Id.</u>  Consequently, the Court does not believe that any
reduction is warranted for these eight entries.

<u>Rule 68 Motion</u>: Defendants identify thirty entries that they
claim constitute improper block-billing.  In light of the
authorities above, and because certain of these entries do, in
fact, contain multiple discrete tasks in the same entry, a 20%
reduction of time is warranted for these entries.[21]  (<u>See</u>
Declaration of Rachel A. Seligman, filed Sept. 18, 2007 ("Selig. R.
68 Decl."), Ex. A (Entries 1, 76, 79, 138, 251, 255, 256, 333), Ex.
B (Entries 3, 10, 21, 29, 80, 99, 100, 109, 110, 112, 114, 116,
172); <u>see also</u> Ex. C Table XIV.)  The hours corresponding to these

---

[21] The Court is unwilling to reduce these entries by the
requested 35%, because although the entries do make it very
difficult to assess the reasonableness of the time spent, the
overall time for each entry is rather small and does not appear
to be grossly excessive no matter how the individual tasks are
apportioned.

entries, which should be reduced by 20% consistent with the rates set forth above, are as follows: Brinckerhoff - 21.4; Rosenfeld - 0.8; Smyth - 19.0.

      b.  <u>Vague Billing</u>

A court can also reduce entries which "are too vague to sufficiently document the hours claimed." <u>Kirsch</u>, 148 F.3d at 172 (upholding reduction of 20% for entries such as "letter to court," "staff conference," or "work on motion"); <u>see also</u> <u>Trustees of the Bricklayers & Allied Craftworkers Local 5 New York Retirement, Welfare & Training Funds v. Helmer-Cronin Const., Inc.</u>, No. 03 Civ. 748 (MDF), 2005 WL 3789085 at *5 (S.D.N.Y. Oct. 24, 2005) (twenty percent reduction in the total number of hours billed was warranted based on record replete with vague entries such as, "Study and Review file," "Telephone call with client," "Letter to Silkey," and "Research"). However, "where an attorney's time entries are vague, courts may attempt to decipher them by reference to the 'context in which these entries occur [to determine] what work was involved.'" <u>Bonnie & Company Fashions, Inc. v. Bankers Trust Co.</u>, 970 F. Supp. 333, 342 (S.D.N.Y. 1997) (quoting <u>Lenihan v. City of New York</u>, 640 F.Supp. 822, 826 (S.D.N.Y.1986)).

<u>Contempt Motion</u>: Defendants argue that certain of Plaintiff's entries are too vague to allow an assessment of reasonableness, and request a 35% reduction with respect to those entries. (<u>See</u> Selig. Con. Decl., Ex. A (Entries 2-4, 7, 8, 10, 14, 47); Ex. B (Entries

58, 59, 61, 73, 76, 80, 84, 86, 111.)  Here, the Court agrees with Defendants that some of these entries are impermissibly vague, and will reduce entries that do not provide any kind of independent context for the work performed by 25% (not the requested 35%).  It is impossible for the Court to determine whether time was reasonably spent in connection with entries such as: "Telephone call with K. Rosenfeld," "Meeting with M. Brinckerhoff," or "TC from AAG Monica Connell."  Thus, the following entries should be reduced: (See Selig. Con. Decl., Ex. A (Entries 2,3, and a portion of entries 8, 47) and Ex. B (Entries 86, 111).  The hourly totals that should be reduced by 25% are: Brinckerhoff - 0.2; Rosenfeld - 0.9; Smyth - 0.7.

Rule 68 Motion: Here, again, Defendants identify a series of entries that they claim are impermissibly vague and warrant a reduction of 35%.  Although the Court deems most of the entries sufficiently specific so as to assess reasonableness, the following entries do not provide any context for the tasks listed and should be reduced: (Selig. R. 68 Decl., Ex. A (Entries 242, 243, 252 (half), 253 (half), 258 (half), 261 (half), 313, 315, 317, 319, 323, 328), Ex. B (Entries 11, 13, 14, 19, 20, 111).)[22]  The

---

[22] Similar problems exist with entries 251 and 255 to Exhibit A, but those entries have already been addressed in the block-billing discussion.  In addition, entries 306 and 323 to Exhibit A are also impermissibly vague, but entries from other attorneys on those same days, see entries 307 and 323, provide the necessary context.

corresponding hours for these entries, which should be reduced by 25%, are: Brinckerhoff - 1.0; Rosenfeld - 0.8; Smyth - 5.2; and Morales - 4.8.

c. <u>Internal Conferences</u>

Primarily in their response to the Contempt Motion, and to a lesser extent in their response to the Rule 68 Motion, Defendants argue that Plaintiffs' counsel has spent an excessive amount of time in internal conferences among themselves. (<u>See</u> Con. Resp., at 14; R. 68 Resp., at 16.) The Court disagrees. In light of the complexity of this class action lawsuit and that, for the most part, Plaintiff has utilized a small team of three lawyers to litigate this matter, the Court does not view the hours Plaintiffs' lawyers have spent together in internal conferences as excessive.[23] Moreover, the most recent case Defendants cite for their position that these fees should be reduced is from 1996. At least one case since that time undercuts Defendants' argument in a class action context. <u>See, e.g.</u>, <u>Williams v. New York City Housing Auth.</u>, 975 F. Supp. 317, 325 (S.D.N.Y. 1997) ("courts 'generally grant attorney's fees for inter-firm conferences in class action lawsuits'") (quoting <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 161 F.R.D. 258, 267-68 (S.D.N.Y. 1995)). Accordingly, the Court

_____

[23] Defendants do not provide a specific hours total for these conferences in connection the Rule 68 Motion, but claim that these conferences totaled almost thirty of the 212 hours for which Plaintiff seeks compensation on the Contempt Motion. (<u>See</u> Con. Resp., at 14.)

recommends that hours spent by Plaintiffs' attorneys in internal conferences not be reduced.

   d.   <u>Travel Time</u>

Defendants claim that a total of 11.5 hours of time that Plaintiff's attorneys spent traveling, presumably to and from court, should be reduced by 50%. (<u>See</u> Con. Resp., at 15; R. 68 Resp., at 15.) Defendants provide authority for their position. <u>See</u> <u>Tlacoapa v. Carregal</u>, 386 F. Supp. 2d at 373 ("Courts in this Circuit regularly reduce attorneys' fees by 50% for travel time because time spent by attorneys in transit may be beneficial, but it probably is not as productive as time at the office or in court."); <u>Wilder v. Bernstein</u>, 975 F. Supp. 276, 284 (S.D.N.Y. 1997) ("This Court agrees that time spent by attorneys in transit 'may [be] beneficial, but it probably [is] not as productive as time at the office or in court.'") (quoting <u>Jennette v. City of New York</u>, 800 F. Supp. 1165, 1170 (S.D.N.Y. 1992)). Plaintiff responds by arguing that this time should not be reduced because it "was unquestionably spent preparing for court and discussing the case." (R. 68 Reply, at 6.) Plaintiff, however, provides no legal authority to support his position. Because the Court agrees with the authority cited by Defendants, it recommends that the following travel hours be reduced by 50%: Rosenfeld - 1.5; and Smyth - 10.0.

   e.   <u>Unrelated Matters</u>

During the course of this litigation, Rosenfeld spent three

38

hours at an appearance in criminal court, and preparing a memorandum afterwards, to prevent a warrant from being issued against one of the named Plaintiffs in this case on a begging charge like the ones challenged in this action. Defendants argue that this time was spent on an unrelated matter. (See Con. Resp., at 15.) Plaintiff argues that because the summons issued in the case constituted "hard evidence of defendants' violation of the Court['s June 23, 2005] Order," the time was reasonably expended on the litigation. (See Con. Reply, at 5.) Although Plaintiff's argument is not frivolous, it is the summons that was helpful evidence in this action, and the time spent in a criminal court defending against the charge, however admirable, did not directly relate to prosecuting this action. Accordingly, three hours of Rosenfeld's time should be deducted from the final award on the Contempt Motion.

f.    Failure To Delegate Responsibilities

Defendants argue that Smyth and Rosenfeld performed tasks that were administrative in nature and should have been assigned to support staff or, at most, a paralegal. (See Con. Resp., at 16-17; R. 68 Resp., at 15-16.) The Court has reviewed all of the entries with which Defendants take issue and finds that few, if any, of them relate to tasks that were administrative in nature or unreasonable for Smyth and/or Rosenfeld to perform in the context of this case. See Irish v. City of New York, No. 98 Civ. 713 (BSJ)

(RLE), 2004 WL 444544, at *8 (S.D.N.Y. Mar. 10, 2004) (rejecting assertion that attorney rates were sought for clerical or paralegal tasks because hours were *de minimus,* and the court credited counsel's representation that "the nature of these activities in the context of this case required an attorney's attention"). Moreover, to the extent that any of the tasks could be construed as more appropriate for a paralegal, such as organizing a file or preparing exhibits, the Court agrees with the reasoning in a case cited by Plaintiffs, which provides: "it would be unreasonable to expect attorneys to delegate every ministerial duty they perform because '[t]he time spent delegating the task could well exceed the time spent by the attorney performing the task herself." <u>See</u> <u>Marisol</u>, 111 F. Supp. 2d at 395 (quoting <u>Wilder</u>, 111 F. Supp. at 285 (awarding most of the challenged hours at the attorney rate, but awarding paralegal rate for hours spent sending fax and making a call to reschedule a meeting)). Accordingly, the Court believes that hours spent on these entries should not be reduced.

g. <u>Drafting Documents/Preparing For Arguments</u>

<u>Contempt Motion</u>: Defendants argue that Plaintiff's attorneys spent an excessive amount of time (a) preparing and editing the November 9, 2006 Letter, (b) preparing and editing the motion for contempt and reply memoranda, and (c) attending the November 29, 2006 argument on the motion for contempt. (<u>See</u> Con. Resp., at 17-

19.)[24]  The Court disagrees.  According to Brinckerhoff, "[p]reparation of [the November 9, 2006] letter required review and analysis of thousands of paper and electronic records of defendants' enforcement of the Statute in violation of the Court's Order." (Brinck. Con. Reply Decl. ¶ 52.) Plaintiff's counsel was also involved in "discovery battles to secure proof of defendants' noncompliance, extensive review and analysis of large amounts of paper and electronic discovery from defendants and the Office of Court Administration." (Id. ¶ 12.)  In connection with Plaintiff's motion for contempt, the parties submitted "613 pages of briefing, declarations and exhibits."  (Id. ¶ 13.)  Moreover, the District Court specifically noted that the issues raised by the motion for contempt "were not clear cut," and that "but for plaintiff's persistence in monitoring and investigating the continued enforcement of section 240.35(1), defendants' noncompliance would have continued indefinitely." (May 31 Opinion at 18, 20.)  With these facts as a backdrop, the hours Plaintiff's attorneys spent on

---

[24] Rosenfeld spent 6.7 hours drafting the November 9 letter, 1.5 hours attending the November 29 conference, 23.9 hours drafting the motion and reply, 9.1 hours preparing for the oral argument, and 1.5 hours attending the argument.  Brinckerhoff spent 6.0 hours reviewing and revising the letter, 1.9 hours attending the conference, 16.8 hours editing the motion and reply, 3.1 hours preparing for the argument, and 1.7 hours attending the argument.  Smyth spent 1.6 hours reviewing and revising the letter, 5.5 hours preparing "fact submissions" for the conference (see Brinck. Contempt Reply Decl. ¶ 52), 1.0 hour attending the conference, 3.5 hours preparing for oral argument, and 1.25 hours attending the argument.  (See Con. Resp., at 17-19; specific entry citations contained therein.)

the motion and related activities do not appear excessive. Tellingly, Defendants' offer nothing but self-serving, conclusory statements to the contrary. (See Con. Resp., at 17-19.)

With respect to division of labor issues, and Defendants' argument that the presence of three attorneys at the conferences and arguments was excessive, Brinckerhoff details how the tasks were divided between himself, Smyth, and Rosenfeld, and why all of their appearances at hearings were necessary. (See Brinck. Con. Reply Decl., at 3-4.) Under the circumstances, the Court does not believe that the presence of three attorneys was excessive.[25]

Rule 68 Motion: Defendants also argue that Plaintiff's counsel spent an excessive amount of time (a) drafting the Complaint, Order to Show Cause, and Motion for a Preliminary Injunction, and (b) preparing for and attending court conferences. (See R. 68 Resp., at 14, 18.)[26] Defendants request that the hours

_____

[25] The other cases cited by Defendants are either unhelpful or distinguishable. See, e.g., New York State Ass'n for Retarded Children, 711 F.2d at 1146 ("plaintiff's use of multiple counsel was appropriate in light of the complexity of the litigation"); Patrolmen's Ass'n of City of New York v. City of New York, No. 97 Civ. 2003 (SAS), 2003 WL 21782675, at *4 (S.D.N.Y. July 31, 2003) (court found duplication of effort because two partners and one associate were assigned to the case at all times and some of the functions "could have been delegated to the firm's associates"); ACLU v. Barnes, 168 F.3d 423, 433 (11th Cir. 1999) (no "indication of the distinct contribution each attorney made to the task of drafting the briefs. Nor do any of the attorneys' affidavits clarify the billing records by describing what each attorney contributed).

[26] Plaintiff's attorneys spent 81.4 hours preparing the Complaint, and 43.85 hours related to the Order to Show Cause and

42

spent preparing the documents be reduced by a minimum of 15% per attorney, and that the hours spent attending conferences be reduced by 33%.

Here again, however, Defendants do not explain in any manner why the hours spent by Plaintiff's attorneys were excessive. (See R. 68 Resp., at 14.)[27] And the Court does not view the hours spent preparing a 42-page complaint and related initial pleadings, witness declarations, discovery requests, and briefs, as excessive. Nor does it, for the reasons set forth above, view the hours spent attending the conferences as excessive.

h.  Failure To Maintain
Contemporaneous Time Records

Defendants identify a limited number of entries which Plaintiff's counsel appear to have altered between the time they provided Defendants with the bills in connection with the Rule 68

_____

Motion for a Preliminary Injunction, for a total of 125.25 hours on these documents. (See Resp. To Rule 68 Motion, at 14.) Plaintiff's spent a total of 35.75 hours attending court appearances, usually with three attorneys present. (See id. at 18.)

[27] Defendants cite Nicholson, 2004 WL 4780498, as support for their position, but that case presents a far more egregious situation. There, thirteen different attorneys and law students/interns spent 87.4 hours drafting a complaint that was essentially identical to two other complaints filed by the same attorneys; meetings were at times attended by as many as ten attorneys; the attorneys spent 43.2 hours preparing for four minor depositions – only one of which went forward; and the firm had been warned previously that its billing practices were excessive.

application and the time they filed the Contempt Motion.[28]  (See Con. Resp., at 20-21.)  As set forth in Section II.A.2. above, Plaintiff explains there was a coding error with respect to the entries Defendants identify.  (See also Brinck. Con. Reply Decl. ¶¶ 39-46.)  The Court accepts Plaintiff's counsel's explanation and does not believe that a reduction is warranted for these entries.

i.  Communications With The Media

In their Response to the Rule 68 Motion, Defendants claim that 8.7 hours that Plaintiff's counsel spent on tasks related to the press should not be compensated.  (See R. 68 Resp., at 14.) Plaintiff responds that 6.2 of the hours were spent refuting false statements Defendants made about Plaintiff Wise in the New York Times, and that such time is compensable.  (See R. 68 Reply, at 5; Brinck. R. 68 Reply Decl. ¶¶ 6-7.)  Plaintiff provides legal authority for this position.  See Martin v. Merola, 532 F.2d 191, 196 (2d Cir. 1976) ("To the extent that such expenses may be incurred by a criminal defendant in protecting against what a court determines to have been an infringement of his rights [based on prosecutor's improper comments to the media], we believe they should be recoverable in federal court in a suit under § 1983."); Legal Servs., Inc. v. County of Westchester, No. 85 Civ. 3115

_____

[28] Although Plaintiff filed the Contempt Motion before the Rule 68 Motion, Plaintiff had previously provided to Defendants all of the billing records relating to the Rule 68 application in an effort to reach an agreement with Defendants on the attorneys' fees issue.

(SWK), 1987 WL 6160, at *4 (S.D.N.Y. Jan. 27, 1987)(fees for communications "with the media in response to statements made by defendant" are considered to be reasonable expenses under the circumstances of case).

Plaintiff also argues that Defendants inflate the time at issue, but does not specify why that is so and concedes that there are "approximately 2 hours" of press-related time that do not relate to "correcting the NYPD's misstatements to the press about Mr. Wise." (See Brinck. R. 68 Reply Decl. ¶ 7.) Because Plaintiff does not specify why the time challenged is inflated, and concedes that some of the time spent was not merely in response to Defendants' activities, the Court recommends reducing these hours by 2.5 (8.7 minus 6.2), divided equally between the three lead attorneys.

### j.   On-Line Legal Research

Relying exclusively on a 2001 case from the Southern District of New York, Defendants make the specious argument that Plaintiff's counsel should not be compensated for the costs they expended doing legal research on Westlaw.  (See R. 68 Resp., at 9.)  Not only do more recent cases, including controlling authority from the Second Circuit, see Arbor Hill, 369 F.3d at 98, authorize reimbursement for on-line legal research services, but common sense dictates that if Plaintiff's counsel had performed their research using books, the increase in their fees would have grossly overshadowed the

relatively modest amount they spent on Westlaw. Accordingly, Plaintiffs should be reimbursed for charges they incurred in on-line legal research.

k. <u>Redacted Entries</u>

Due to the fact that this litigation is on-going, and in order to protect information subject to the attorney-client privilege or work product doctrine, ECBA redacted numerous entries - totaling approximately 35 hours and $12,198.75 in fees. (<u>See</u> Brinck. R. 68 Reply Decl. ¶ 11.)[29] Although Defendants' objections to some of these entries are thin - because the redaction is minor and provides very little impediment to assessing the reasonableness of the fees - other redactions do hinder that assessment. For simplicity's sake, however, the Court will set aside all of the hours set forth in redacted entries until the conclusion of this case. At that time, if he is unable to reach agreement with Defendants regarding the amounts requested in these redacted entries, Plaintiff may seek compensation for them by submitting unredacted entries to this Court.

The amounts, at the rates set forth above, that should be reserved for a later time are as follows: Rosenfeld (25.95 hours = $7785.00); Brinckerhoff (6.5 hours = $2600); Celli (1.2 hours =

_____

[29] The Bronx Defenders provided unredacted copies of their bills, (<u>see</u> Smyth Rule 68 Decl., Ex. C), so Defendants' calculation of the amount of hours relating to redacted entries, 54.5, is inflated. (<u>See</u> Rule 68 Resp., at 17-18.)

$480); Uh (2.0 hours = $300).

l.    Photocopying Costs

Defendants also argue that ECBA should not recover any of the $807.00 that it spent on photocopying over the course of the litigation, because the amount of photocopying was excessive, or, to the extent that ECBA is entitled to recovery for these costs, it should be at the rate of 10 cents per page as opposed to 15 cents per page.  (See R. 68 Resp., at 18.)  The Court rejects the first half of this argument because photocopying an average of 300 pages per month over the course of this particular litigation is not unreasonable, but accepts the second half of the argument because 10 cents per page appears to be the going rate for in-house copying.  See Staples, Inc. v. W.J.R. Assoc., No. 04 Civ, 904 (SJ) (KAM), 2007 WL 2572175 at *10 (E.D.N.Y. Sept. 4, 2007) (citing cases).

Accordingly, the costs awarded for Plaintiff's Rule 68 Motion should be reduced from $807.00 to $533.00.

m.    Miscellaneous Costs

Finally, Defendants take issue with an assortment of "other costs" Plaintiffs submit which include costs for (1) courier services (in the amount of $280.39), (2) "document retrieval services" and "legal retrieval" (in the amount of $1712.50), and (3) court reporting fees (in the amount of $5,008.65).  (See R. 68 Resp., at 19.)  Defendants claim that these costs are either

unsubstantiated, in that they are not backed by invoices, are based on inadequate descriptions of the services, or are lacking in itemization. (See id.) Plaintiff responds that the court reporting fees are for the four depositions Plaintiff took in this case, which counsel for the City attended, and for which they subsequently received transcripts,(see Rule 68 Reply, at 9; Brinck. R. 68 Reply Decl., Ex. DD); that it was reasonable for Plaintiff to spend $280.39 on limited courier services over the course of the eighteen-month litigation; and that the bill for the services in the amount of $1712.50 clearly states that it was for "Service/Filing," which reflects the costs of serving fifteen defendants with the complaint. (See R. 68 Reply, at 9.)

These costs are not unreasonable in the context of this litigation, but Plaintiff does not respond to Defendants' argument that costs not supported by invoices are not recoverable. See also Hightower v. Nassau Cty. Sheriff's Dep't, 325 F. Supp. 2d 199, 217 (E.D.N.Y. 1999). Plaintiff has provided invoices for the service-related fees but does not appear to have provided invoices for the court reporting services or the courier services. These costs are recoverable, but the Court will not recommend that Defendants submit payment for them until Plaintiff's counsel provides the Defendants with the relevant invoices. Thus, costs of $5,008.65 (document transcripts) and $1712.50 (document retrieval) should be deducted from the total fee award, on the assumption that once the

relevant invoices are provided to Defendants, they shall reimburse Plaintiff for these expenses.

B.  Arguments Directed Solely At The Rule 68 Motion

Defendants make two arguments that are directed only at the Rule 68 Motion.  Both arguments seek to dramatically reduce the amount of fees to which Plaintiff is entitled in connection with the Rule 68 Offer of Judgment he accepted.

1.  Recovery For Fees On Claims
Where Wise Was Not The Prevailing Party

Defendants argue that Plaintiff is only entitled to fees on claims for which he could be considered the prevailing party.  (See R. 68 Resp., at 5-11.)  According to Defendants, the Rule 68 Judgment resolved all of Plaintiff Wise's monetary and injunctive claims against the Municipal Defendants – "but it did not afford affirmative injunctive relief or resolve putative class claims, claims of any other individual plaintiffs or claims against any non-City Defendants."  (Id. at 5.)  Consequently, Defendants contend, Plaintiff cannot recover fees for time spent on any of these claims because he was not the "prevailing party" in connection with these claims.  See Buckhannon, 532 U.S. at 604.

a.  Injunctive Claims

Defendants' argument that Plaintiff did not prevail on his injunctive claims is misguided.  The District Court did, in fact, enter a Stipulation and Order on June 23, 2005, which granted Plaintiff sweeping injunctive relief.  (See Brinck. R. 68 Decl.,

49

Ex. A.)  Defendants' argument that the "Stipulation did nothing more than reiterate that which the City defendants were already bound to do under <u>Loper v. New York City Police Dep't</u>, 999 F.2d 699 (2d Cir. 1993)[,]" (R. 68 Resp., at 7), ignores the fact that the Municipal Defendants appear to have been less than mindful about their obligations under <u>Loper</u> for the ten years leading up to this case, and it is only because of this action that the City conformed its conduct to the requirements of <u>Loper</u>.  It also glosses over the fact that the June 23, 2005 Stipulation and Order was a significant factor in the contempt proceedings that followed.  In all events, the argument that Plaintiff did not obtain injunctive relief by way of the June 23, 2005 Stipulation and Order simply has no merit.[30]

b.   <u>Claims Against The State Defendants</u>

When this case was initially filed in June, 2005, Plaintiff asserted claims against Chief Judge Judith Kaye, Chief Administrative Judge Jonathan Lipman, and New York State Division of Criminal Justice Services Director Chauncey G. Parker (the "State Defendants").  (<u>See</u> Brinck. R. 68 Decl. ¶ 17.)  After engaging in substantial motion practice, Plaintiff entered into a settlement agreement with the State Defendants in January, 2006.  (<u>See</u> <u>id.</u> ¶¶ 18-19 & Ex. E; R. 68 Resp., at 8.)  The key terms of

---

[30] Defendants also make an argument regarding "class claims" that were pursued while Plaintiff Wise was in the case, and before the class was certified.  (<u>See</u> R. 68 Resp., at 7.)  The Court believes that this argument is more appropriately addressed in Section II.B.2., *infra*.

the settlement agreement were that Plaintiff would dismiss the State Defendants from the action without prejudice, in exchange for the State Defendants' production of critical discovery – namely, data from the OCA which detailed the extent of the unlawful enforcement of Section 240.35(1), and which was otherwise unavailable from the Municipal Defendants. (See Brinck. R. 68 Decl. ¶¶ 19-23.)

Defendants here argue that Plaintiff should not be allowed to recover, pursuant to the Rule 68 Judgment, any of the fees incurred pursuing the State Defendants while they were parties to this action. (See R. 68 Resp., at 8-9.) Plaintiff, on the other hand, contends that the efforts his counsel expended pursuing the State Defendants played a "pivotal role" in the successful resolution of Plaintiff Wise's claims for two related reasons. (See R. 68 Reply, at 3.) First, Plaintiff had been unable to secure this key evidence from the Municipal Defendants, or anyone else for that matter, and he would not have been able to prove the extent of the unlawful enforcement of the statute without the OCA data. (See Brinck. R. 68 Decl. ¶ 23.) Second, Plaintiff argues that the chronology of events – Plaintiff provided the OCA data to the Municipal Defendants only eight days before the City extended the Rule 68 offer – clearly shows that the OCA data had "enormous significance" in resolving Wise's claims. (See id. ¶¶ 2-3.) Nevertheless, Defendants dispute that the OCA data played a key

role in their decision to extend the Rule 68 offer and that, in all events, Plaintiff's supposition as to their intent in making the offer is speculative. (See R. 68 Resp., at 9.)[31]

The Court views the argument regarding what specific influence the OCA data had on the Rule 68 Offer as being slightly off-point. The key fact is that the OCA data, which was secured through the settlement with the State Defendants, was necessary for the successful prosecution of Wise's claims – irrespective of whether it directly spawned the Rule 68 Offer from the City.[32] Thus, the Court believes that many of the hours spent pursuing the State Defendants were necessary to Plaintiff's case against the Municipal Defendants and, as it turned out, fruitful.

But, on the other hand, the Court cannot accept Plaintiff's premise that all of the time Plaintiff spent pursuing the State

---

[31] Defendants argue that they had previously produced information which would have demonstrated the "sheer number of incidents involving charging the statute over the year" and, therefore, the OCA data did not set forth an entirely different landscape that led the City to extend the offer. (See Rule 68 Resp., at 8-9.) Plaintiff, of course, disputes that proposition and claims that the OCA data provided significant additional detail to the information provided by the City, including the number of summonses issued. (See Rule 68 Reply, at 3.)

[32] This Court agrees, however, that the chronology of events certainly raises a fair inference that the information contained in the OCA data did play a role in the Municipal Defendants' decision to extend the Rule 68 Offer to Wise. That being said, this Court is unwilling to entirely discredit Defendants' denial of the OCA data's significance vis-a-vis the Rule 68 Offer, and cannot fully assume that the City would not have made the Rule 68 Offer absent the OCA data.

Defendants was necessary solely for the purpose of securing the OCA data that was used to pursue his claims against the Municipal Defendants. Indeed, when Plaintiff initially filed his Complaint against the State Defendants, which he subsequently defended against a motion to dismiss, he sought wide-ranging injunctive relief against them distinct from the relief sought against the City Defendants(see Brinck. R. 68 Reply Decl., Ex. BB) – none of which he obtained in the settlement agreement (see Brinck. R. 68 Decl., Ex. E). Thus, it cannot fairly be said that "all of the time that Plaintiff spent litigating against the State Defendants was in the service of Mr. Wise's case" against the City (R. 68 Reply, at 2), and even less clear that it was essential to the prosecution of Plaintiff's claims against the Municipal Defendants. Moreover, for this Court to require the Municipal Defendants to pay all of the fees Plaintiff incurred pursuing the State Defendants, it would have to accept the troubling proposition - which, we assume, Plaintiff would not endorse - that Plaintiff filed and pursued his claims against the State Defendants only as leverage for his claims against the Municipal Defendants, an endeavor which would have clearly strained the limits of good faith litigation.

Under these specific circumstances, therefore, the Court believes that to the extent that Defendants have identified fees related solely to the State Defendants, a 35% reduction in those

fees is warranted.[33]  This level of reduction recognizes that, while obtaining the OCA data may have become the driving force behind Plaintiff's efforts to keep the State Defendants in the case, it could never have been the only reason.  Thus, the following hours should be reduced by 35% in the award pursuant to the Rule 68 Motion:  Brinckerhoff - 8.6; Celli - 1.3; Rosenfeld - 68.7; Smyth - 98.5.

## 2.  Across The Board Reduction For All Fees

In their last argument, Defendants request an exorbitant 90% reduction of the aggregate fees Plaintiff seeks in his Rule 68 Motion because Plaintiff's claims "are inextricably intertwined with the class claims which have yet to be resolved."  (R. 68 Resp., at 20.)  Defendants contend that it cannot be determined how much of the work performed would have been necessary if Wise had only filed the individual claims for which he was compensated in the Rule 68 offer, and that awarding Plaintiff the full amount of fees now would amount to a finding of liability against the City for class and injunctive claims that have not been resolved, and for which the City may not ultimately be liable.  (See id. at 21.)

---

[33] Defendants also seek a reduction for fees expended on tasks that relate only in part to the State Defendants, e.g., "Entries Specific To Class Complaint/State Defendants." (See Selig. Rule 68 Decl., Table III).  The Court will not reduce these fees because, based on the current record, it is impossible to isolate time spent only on the State Defendants, and that is the only group for which the Court concludes a modest reduction is warranted.

Plaintiff responds that, because he settled his case with the City months before his counsel briefed and obtained class certification, the bulk of the class-related work arose after Wise's role in the case came to a close. (See R. 68 Reply, at 10.) Thus, Plaintiff argues that his counsel would have performed all of the same work even if he had filed his case as an individual action, not a putative class action - an argument which is corroborated by the fact that Plaintiff had a clam under Monell v. Dep't of Soc. Servs. of City of New York, 435 U.S. 658 (1978), which, as the District Court recognized, necessitated discovery on the overall enforcement of the statute. (Id. at 10; see also Brinck. R. 68 Decl., Ex. I at 29-30.)

Defendants cite two cases for their argument that a hefty across-the-board reduction is warranted. In Matthews v. City of New York, No. 01 Civ. 2739 (CPS), 2003 U.S. Dist. LEXIS 16334 (S.D.N.Y. Aug. 27, 2004), the plaintiff's law firm brought nine separate lawsuits, on behalf of thirty-one different plaintiffs. While all of the cases were pending, plaintiff Matthews accepted the City's Rule 68 offer, and filed a fee application. In awarding plaintiff Matthews only 1/31 of the fees and expenses unrelated to her individual claims, the court held that Matthew's counsel had "manipulated" the number of actions and that "the fact that Ms. Matthews' case involved the same issues merely suggests that her action is being subsidized by her attorneys other clients." Id. at

*14. The court therefore concluded that a pro rata apportionment was appropriate. Here, of course, there is only one action and there has been no allegation whatsoever that Plaintiff's counsel have litigated this matter in a self-serving or manipulative way.

In Nicholson v. Williams, No. 00 Civ. 2229 (JBW), 2004 WL 4780948 (E.D.N.Y. Apr. 5, 2004), the plaintiff brought claims for individual damages and class-wide injunctive relief. Seven months after the court certified the class, six weeks after the court entered a preliminary injunction, and while an appeal was pending on the injunction, the plaintiff accepted a Rule 68 offer on her damages claims. The court rejected the plaintiff's request for all of her fees on the damages claims and the injunctive claim, instead awarding her 25% of the fees expended on both issues. Id. at *78.

This case is obviously quite different than Nicholson, based on the timing of the class certification. Because the class was certified in Nicholson, there could be no question, and the plaintiff appears to have conceded, that much of the work performed involved class matters. But, here, the certification motion was briefed and the class certified after Plaintiff Wise left the case. Consequently, it is not unreasonable to assume, and in fact Plaintiff's counsel represents, that all of the work they performed prior to the settlement with Wise would have been performed even if the case had been brought solely as an individual action, because the "true bulk of the class certification work arose after Mr. Wise

left the litigation, and it is not charged to the City in this bill." (R. 68 Reply, at 10.) Plaintiff cites <u>Nicholson</u> for the proposition that "certain work, including legal research and factual investigation of the City's policies and procedures, would have been conducted even in the absence of a class." (<u>Id.</u>) The <u>Monell</u> claim lends further support to Plaintiff's assertion.

The following facts lead the Court to believe that a minor - 5% - reduction in the overall Rule 68 award is appropriate: (1) between the filing of this case, June 9, 2005, and the date the City extended the Rule 68 offer, November 9, 2006, Plaintiff Wise was the only plaintiff in this case; (2) Plaintiff's <u>Monell</u> claim required extensive discovery into the overall enforcement of Section 240.35(1); (3) the motion for class certification brought by the new plaintiff was not made until close to three months after Wise's involvement in the case came to an end; but (4) it is certainly fair to assume that, over the course of the seventeen months that Wise was the only plaintiff, his counsel was strategizing, researching, and discussing class certification issues, which are still pending and will be resolved at a later date. Based on the foregoing factors, Plaintiff's fee award on the Rule 68 Motion should be reduced by 5%.

IV.  Underline Summary Of Awards

    A.  Contempt Motion

| **Total Fees Requested (Contempt Motion)** | **$73,644.50** |
|---|---|
| At Reduced Rates (See Sec. II.A.1(a)&(b)) | |
| Brinckerhoff: $425 per hour x 35.85 hours | $15,236.25 |
| Rosenfeld: $300 per hour x 83.90 hours | $25,170.00 |
| Smyth: $300 per hour x 93.06 hours | $27,918.00 |
| **Total Using Reduced Rates:** | **$68,324.25** |
| Overlapping hours (See Sec. II.A.3) | -$17,619.50 |
| Coding Error (See Sec. II.A.4(a)) | -$772.50 |
| Vague Billing (See Sec. II.A.4(b)) | -$21.25 (MB) |
| | -$67.50 (KR) |
| | -$52.50 (JMS) |
| Travel (See Sec. II.A.4(d)) | -$150.00 (JMS) |
| Unrelated Matters (See Sec. II.A.4(e)) | -$900.00 (KR) |
| **Total Fee Award (Contempt Motion)** | **$48,741.00** |

    B.  Rule 68 Motion

        1.  Fees

| **Total Fees Requested (Rule 68 Motion)** | $354,647.00 |
|---|---|
| At Reduced Rates (See Secs. II.A.1-2(a)&(b)) | |
| Brinckerhoff: $425 per hour x 129.20 hours | $54,910.00 |
| Rosenfeld: $300 per hour x 364.25 hours | $109,395.00 |
| Smyth: $300 per hour x 463.16 hours | $138,948.00 |
| Morales: $250 per hour x 21.25 hours | $5,312.50 |
| Celli: $425 per hour x 2 hours | $850.00 |
| Abady: $425 per hour x 0.75 hours | $318.75 |

| | |
|---|---|
| Yu: $200 per hour x 9 hours | $1,800.00 |
| Leith: $125 per hour x 31 hours | $3,875.00 |
| Butt: $125 per hour x 47.5 hours | $5,937.00 |
| Uh: $125 per hour x 2 hours | $250.00 |
| Kumar: $100 per hour x 38 hours | $3,800.00 |
| Buchanan: $100 per hour x 11 hours | $1,100.00 |
| Rodriguez: $100 per hour x 1 hour | $100 |
| **Total Using Reduced Rates:** | **$326,596.25** |
| Block Billing (<u>See</u> Sec. II.A.4(a)) | -$1819.00(MB) |
| | -$48.00 (KR) |
| | -$1140.00 (JMS) |
| Vague Billing (<u>See</u> Sec. II.A.4(b)) | -$106.25 (MB) |
| | -$60.00 (KR) |
| | -$390.00(JMS) |
| | -$300.00 (AM) |
| Travel (<u>See</u> Sec. II.A.4(d)) | -$225.00 (KR) |
| | -$1350.00 (JMS) |
| Media (<u>See</u> Sec. II.A.4(i)) | -$854.17 (MB/KR/JMS) |
| Redacted Entries (See Sec. II.A.4(k)) | -$7,785.00 (KR) |
| | -$2,600.00 (MB) |
| | -$480.00 (AC) |
| | -$300.00 (CU) |
| State Defendants (See Sec. II.B.1.(b)) | -$1,279.25 (MB) |
| | -$7,213.50 (KR) |
| | -$10,342.50 (JMS) |
| | -$193.48 (AC) |
| Class Issues (5% Across-The-Board Reduction) | -$14,505.54 |

| | |
|---|---|
| **Total Fee Award (Rule 68 Motion)** | **$275,604.56** |

   2.   Costs

| | |
|---|---|
| **Total Costs Requested** | **$11,728.87** |
| Photocopying (See Sec. II.A.4.(1)) | -$274.00 |
| Court Reporting Fees | -$5,008.65 |
| Document Retrieval | -$1712.50 |
| **Total Costs Award (Rule 68 Motion)**<br><br>**\*To Be Supplemented Upon Invoice Production** | **$4,733.72** |

V.   Fees Expended On The Contempt And Rule 68 Motions

        Plaintiffs are entitled to the reasonable fees and expenses
his counsel expended in preparing these two motions.  After the
District Court has ruled on any objections submitted by the partes
to this Report and Recommendation, Plaintiffs shall provide records
of the fees and costs they expended on these fee applications to
Defendants.  The parties shall attempt to resolve the amounts due
to Plaintiffs without court intervention.  Only if they are unable
to do so, may Plaintiffs return to this Court for resolution of any
disputed amounts.

**CONCLUSION**

     For the reasons set forth above, this Court recommends that
(1) Plaintiff Brown be awarded $48,741.00 in attorneys' fees on the
Contempt Motion, to be paid by the Municipal Defendants, and (2)
Plaintiff Wise be awarded $275,604.56 in attorneys' fees, and

$4,733.72 in costs, on the Rule 68 Motion, to be paid by the Municipal Defendants.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to file written objections. See also Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Shira A. Scheindlin, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Scheindlin. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F. 2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: January 31, 2008
New York, New York

61