UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MICHAEL BROWN, *et al.*,
on behalf of themselves and all others similarly situated,

                            Plaintiffs,                05 Civ. 05442 (SAS)(THK)

                  -against-

RAYMOND W. KELLY, *et al.*,

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: ___2/6/12___         │
└─────────────────────────────────┘
```

                            Defendants.
------------------------------------------------------------------------x
PAUL CASALE and ANTHONY GARCIA,
on behalf of themselves and all others similarly situated,

                            Plaintiffs,                08 Civ. 2173 (SAS)(THK)

                  -against-

RAYMOND W. KELLY, et al.,

                            Defendants.
------------------------------------------------------------------------x

## STIPULATION AND ORDER OF SETTLEMENT

      This Stipulation and Order is made and entered into on this 26th day of January 2012

between the City of New York (hereinafter "the City"), New York City Police Department

Commissioner Raymond Kelly and Bronx District Attorney Robert Johnson, ("collectively

"Defendants"), and Plaintiffs (hereinafter "Plaintiffs") Michael Brown, Keith Anderson, Michael

Louis Brown, Xavier J. Grant, Llewellyn Rudy, Bobby Wells, Paul Casale, and Anthony Garcia,

on behalf of themselves and all others similarly situated (collectively the "Parties"), and is

made and entered into with reference to the following facts.

      WHEREAS, on June 9, 2005, in an action now entitled *Brown v. Kelly*, 05 Civ.

5442 (SAS) ("*Brown*") and pending before the Honorable Shira A. Scheindlin, a plaintiff filed a putative class action lawsuit alleging that the City of New York, operating *inter alia* through the New York City Police Department ("NYPD") and the District Attorneys' Offices ("DAOs"), continued to charge thousands of individuals for violations of N.Y. Penal Law § 240.35(1), although that the statute had been declared unconstitutional on First Amendment grounds in 1992. *See Loper v. New York City Police Dep't*, 999 F.2d 699, 701 (2d Cir. 1993);

WHEREAS, on March 4, 2008, in an action entitled *Casale v. Kelly*, 08 Civ. 2173 (SAS) ("*Casale*"), and pending before the Honorable Shira A. Scheindlin, a group of plaintiffs filed a putative class action lawsuit alleging that the City of New York, operating *inter alia* through the NYPD and DAOs, continued to charge thousands of individuals for violations of N.Y. Penal Law § 240.35(3) and N.Y. Penal Law § 240.35(7), although the statutes were declared unconstitutional in 1983 and 1988, respectively. *See People v. Uplinger*, 460 N.Y.S.2d 514 (1983); *see also People v. Bright*, 526 N.Y.S.2d 66 (1988);

WHEREAS, in *Brown*, a class was certified pursuant to Fed. R. Civ. P. 23(b)(3) consisting of all persons who have been or will be arrested, charged or prosecuted by employees, agents or representatives of New York City for violating N.Y. Penal Law § 240.35(1) from October 7, 1992 onward, and affirmed by Order of the United States Court of Appeals for the Second Circuit (*see Brown v. Kelly*, 609 F.3d 467, 473 (2d Cir. 2010));

WHEREAS, in *Casale*, a class was certified pursuant to Fed. R. Civ. P. 23(b)(2) consisting of all persons who have been or will be arrested, charged, or prosecuted for a violation of N.Y. Penal Law §§ 240.35(3) or 240.35(7) in New York City after these statutes were declared unconstitutional and a class was certified pursuant to Fed. R. Civ. P. 23(b)(3) consisting of all persons who have been arrested, charged, or prosecuted for a violation of

2

either N.Y. Penal Law §§ 240.35(3) or 240.35(7) in New York City within the applicable statute of limitations. Subclasses were certified to address potential defenses applicable only to plaintiffs who were never prosecuted and to those charged with additional criminal offenses at the time they were charged with a violation of N.Y. Penal Law §§240.35(3) or 240.35(7) (*see Casale v. Kelly*, 257 F.R.D. 396 (S.D.N.Y. 2009));

WHEREAS, by Opinion and Order dated April 26, 2010, over the objection of defendants, the District Court adjudged defendant the City of New York to be in contempt of court based on the fact that City of New York law enforcement officers charged individuals with violations of N.Y. Penal Law § 240.35(1), N.Y. Penal Law § 240.35(3), and N.Y. Penal Law § 240.35(7) after the filing of the above-captioned *Brown* and *Casale* actions;

WHEREAS, on or about August 3, 2010, by Order of the United States Court of Appeals for the Second Circuit in the matter of *Brown v. Kelly,* the District Court's certifications pursuant to Fed. R. Civ. P. 23(b)(2) of a state-wide plaintiff class and a defendant class were vacated (see *Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010));

WHEREAS, N.Y. Penal Law §§ 240.35(1), (3), and (7) were repealed by the New York State legislature on July 30, 2010 (2010 N.Y. Laws Ch. 232);

WHEREAS, defendants deny any and all liability and maintain that they have not had at any time and do not have now a policy, practice or custom to enforce N.Y. Penal Law §§ 240.35(1), (3), and/or (7) since the statutes were respectively declared unconstitutional;

WHEREAS, the Parties, seeking to avoid additional protracted, expensive, and unnecessary litigation, agree to the entry of this Stipulation and Order of Settlement (hereinafter "Stipulation") to resolve all issues that were raised in these class actions by the

Plaintiffs individually or as class representatives;

NOW, THEREFORE, with the agreement of all Parties, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

**INTRODUCTION**

A.     The parties enter into this Stipulation for the purpose of avoiding the burdens of further litigation, and mutually to support vigorous, lawful, and nondiscriminatory enforcement of the law.   Settlement of this action under the terms stated in this Stipulation is in the public interest because the Stipulation avoids diversion of private and City resources to further adversarial action by the parties.

B.     Plaintiffs enter into this Stipulation for the purpose of addressing the allegations in the Complaints filed in the *Brown* and *Casale* actions.  Plaintiffs and Class Counsel believe the terms of this Stipulation are in the public interest because they believe they are designed to prevent future unconstitutional enforcement of N.Y. Penal Law §§ 240.35(1), (3) and (7) in the City of New York.

C.     Defendants deny any and all liability and deny that they had or currently have a policy or engaged in or currently engage in a pattern or practice of conduct that deprived persons of rights, privileges, or immunities secured or protected by the Constitution and laws of the United States.

D.     This Stipulation does not and shall not be deemed to constitute any admission by defendants as to the validity or accuracy of any of the allegations, assertions, or claims made by plaintiffs.   No determinations have been issued by the Court concerning the merit or lack of merit of the allegations made by plaintiffs in their pleadings.  This Stipulation does not constitute an admission, adjudication, or finding on the merits of the above-captioned action.

4

E.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391.

**DEFINITIONS**

1.      The "Settlement Class" is defined as all individuals who are listed in the New York State Office of Court Administration's Criminal Records and Information Management System ("CRIMS") or Summons Automation Management System ("SAMS") databases; or in the New York City Police Department's Booking Arraignment Disposition System ("BADS") or in the Criminal Court Summons ("C-Summons") databases; or in a Report derived from New York City Police Department databases identifying Attempts to Charge ("Attempts to Charge Report"); or in summonses produced in discovery or in connection with a Claim Form up to the Bar Date, as having been charged in the City of New York prior to the Bar Date: (1) with a violation of N.Y. Penal Law § 240.35(1) after September 30, 1992; or (2) with a violation of N.Y. Penal Law § 240.35(3) after February 23, 1983; or (3) with a violation of N.Y. Penal Law § 240.35(7) after February 17, 1988.[1]

2.      "Subsection One Group" means all persons in the Settlement Class who were charged with a violation of N.Y. Penal Law § 240.35(1) on or after September 30, 1992 and before the Bar Date.

3.      "Subsection One Recent Group" means all persons in the Subsection One Group who were charged with a violation of N.Y. Penal Law § 240.35(1) on or after June 9, 2002 or whose criminal case arising from such a charge on or before June 8, 2002 was favorably

---

[1] The Settlement Class does not include claims of former plaintiff Eddie Wise extinguished by the judgment entered against the City of New York on December 5, 2006. The Settlement Class does not include individuals who are only listed in the databases with a charge under the Statutes due to a clerical data entry error, as proven by documentary evidence.

terminated within the meaning of N.Y.C.P.L. § 160.50 on or after June 9, 2002 and before the Bar Date.

4.    "Subsection One Older Group" means all persons in the Subsection One Group who were charged with a violation of N.Y. Penal Law § 240.35(1) on or before June 8, 2002 and (i) whose criminal case arising from such a charge was disposed of in any way on or before June 8, 2002; or (ii) whose criminal case was not favorably terminated within the meaning of N.Y.C.P.L. § 160.50 on or after June 9, 2002; or (iii) whose criminal case was favorably terminated within the meaning of N.Y.C.P.L. § 160.50 on or after the Bar Date.

5.    "Subsection Three Group" means all persons in the Settlement Class who were charged with a violation of N.Y. Penal Law § 240.35(3) on or after February 23, 1983 and before the Bar Date.

6.    "Subsection Three Recent Group" means all persons in the Subsection Three Group who were charged with a violation of N.Y. Penal Law § 240.35(3) on or after March 4, 2005 or whose criminal case arising from such a charge on or before March 3, 2005 was favorably terminated within the meaning of N.Y.C.P.L. § 160.50 on or after March 4, 2005 and before the Bar Date.

7.    "Subsection Three Older Group" means all persons in the Subsection Three Group who were charged with a violation of N.Y. Penal Law § 240.35(3) on or before March 3, 2005 and (i) whose criminal case arising from such a charge was disposed of in any way on or before March 3, 2005; or (ii) whose criminal case was not favorably terminated within the meaning of N.Y.C.P.L. § 160.50 on or after March 4, 2005; or (iii) whose criminal case was favorably terminated within the meaning of N.Y.C.P.L. § 160.50 on or after the Bar Date.

8.     "Subsection Seven Group" means all persons in the Settlement Class who were charged with a violation of N.Y. Penal Law § 240.35(7) on or after February 17, 1988 and before the Bar Date.

9.     "Subsection Seven Recent Group" means all persons in the Subsection Seven Group who were charged with a violation of N.Y. Penal Law § 240.35(7) on or after March 4, 2005 or whose criminal case arising from such a charge on or before March 3, 2005 was favorably terminated within the meaning of N.Y.C.P.L. 160.50 on or after March 4, 2005 and before the Bar Date.

10.     "Subsection Seven Older Group" means all persons in the Subsection Seven Group who were charged with a violation of N.Y. Penal Law § 240.35(7) on or before March 3, 2005 and (i) whose criminal case arising from such a charge was disposed of in any way on or before March 3, 2005; or (ii) whose criminal case was not favorably terminated within the meaning of N.Y.C.P.L. § 160.50 on or after March 4, 2005; or (iii) whose criminal case was favorably terminated within the meaning of N.Y.C.P.L. § 160.50 on or after the Bar Date.

11.     "Favorably terminated" means any criminal action or proceeding relating to a Loitering Charge Incident that is terminated as defined in N.Y.C.P.L. § 160.50(3).

12.     "Final Class List" means all of the persons in the Settlement Class, as determined by the Administrator after the Administrator performs an analysis to ensure that persons are not listed twice or incorrectly included.  All individuals on the Final Class List will be given notice of this Stipulation.

13.     "Named Plaintiffs" means Michael Brown, Keith Anderson, Michael Louis Brown, Xavier J. Grant, Llewellyn Rudy, Bobby Wells, Paul Casale, and Anthony Garcia.  These persons

7

represent all or part of the Settlement Class.

14.    "Class Counsel" means Emery Celli Brinckerhoff & Abady LLP and The Bronx Defenders.

15.    A "Settlement Class Member" ("SCM") means any member of the Settlement Class who does not file a valid and timely Request for Exclusion as provided in paragraph 73 of this Stipulation.

16.    An "Opt-Out" is any potential SCM who files a timely Request for Exclusion as specified in paragraph 73.

17.    "Date of Class Notice" is the date when the Administrator first mails out the Claim Packets to the persons on the Final Class List, which must occur within ninety (90) days of Preliminary District Court Approval.

18.    The "Bar Date" is the date established by the Court by which any SCM who wishes to receive payments pursuant to the Stipulation must file his/her Claim Form(s).  The Parties agree that this date should be 120 days from the Date of Class Notice.

19.    The "Claim Form" is a document, in a form approved by the Court, that SCMs must complete and sign in order to be considered for payment pursuant to this Stipulation.

20.    A "Claim Packet" means a "Claim Form," together with a notice in a form approved by the Court.  The Claim Packet will be mailed by the Administrator to all persons on the Final Class List.

21.    "Summary Notices" means a one-page English and a one-page Spanish summary of this Stipulation in a form approved by the Court.

22.    "Administrator" means the person or organization designated by Class Counsel

and appointed by the Court to administer the Class Fund, disseminate the Claim Packets, and review and determine the validity and amount of claims submitted by SCMs, according to the procedures set forth herein.   Defendants shall be permitted to make non-binding suggestions to Class Counsel regarding the selection of the designated Administrator.

23.    "Class Fund" means the amount to be paid by the City for all claims of SCMs, service awards to Named Plaintiffs, administrative costs, and attorneys' fees and costs.  That amount shall be $15 Million Dollars.

24.    "Settlement Costs" means a portion of the Class Fund to be determined prior to a fairness hearing on this Stipulation, which shall be paid directly to Class Counsel.  From this amount, Class Counsel shall pay service awards to Named Plaintiffs, Administrator's costs, and Class Counsel's own past, present and future fees and costs.  This amount does not include the attorneys' fees and costs previously paid to Class Counsel.

25.    The "Remainder" means that majority portion of the Class Fund that shall be sent to the Administrator to pay SCMs' claims.  That amount shall be $15 Million Dollars minus the amount approved by the Court for Settlement Costs and the amount retained by the City of New York for transmittal to the Office of Child Support Enforcement for distribution to the beneficiaries of the Child Support Liens as referenced in paragraph 53(c).

26.    "Class Settlement Fund Account" ("CSFA") means a bank account or accounts to be established by the Administrator for the benefit of the Settlement Class.  The CSFA shall be interest bearing if the costs associated with making it interest bearing (such as tax preparation and bank fees) and secured are less than the likely interest earned.  If the CSFA is an interest bearing account, any amount remaining after the costs described in this paragraph will be subject to the conditions of paragraph 83 herein.

9

27. "Preliminary District Court Approval" means the date, following the submission of this Stipulation, executed, to the District Court by the Parties, but prior to a fairness hearing on this Stipulation, on which the District Court grants preliminary approval of the Stipulation.

28. "Final District Court Approval" means the date, following the submission of this Stipulation, executed, to the District Court by the Parties, and after a fairness hearing on this Stipulation, on which the District Court grants final approval of this Stipulation.

29. The "Effective Date for Payment" (or "Effective Date") is the date when the City's obligation to pay the Class Fund of $15 Million Dollars (minus sums advanced for costs of notice pursuant to paragraph 43) becomes effective. It is one day following entry of the Final District Court Approval of the Stipulation by an Order from the District Court.

30. The "Funding Date" is the date sixty (60) days after the Effective Date for Payment and is the date by which the City agrees to comply with the obligations stated at paragraph 44 herein, provided no appeals are pending.

31. An "Approved Claim" means a claim form received, reviewed and verified by the Administrator.

32. The "Distribution Formula" means the process by which each Approved Claim will be awarded points after review and after such verification as the Administrator deems appropriate of the information provided on the Claim Form.

33. "The Statutes" shall mean N.Y. Penal Law § 240.35(1), N.Y. Penal Law § 240.35(3), and N.Y. Penal Law § 240.35(7).

34. "Arrested" means that an SCM appears in the New York State Office of Court Administration's Criminal Records and Information Management System ("CRIMS") or the

10

New York City Police Department's Booking Arraignment Disposition System ("BADS") or in a New York City Police Department's Attempts to Charge Report, as having been charged under the Statutes.[2]

35.    "Released Parties" means any and all of the Defendants, namely the City, Raymond W. Kelly, and Robert Johnson as well as their past, present, or future affiliates, subsidiaries, parents, successors and predecessors, officers, directors, agents, agencies, employees, attorneys, advisors, insurers and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant, and the legal representatives, heirs, predecessors in interest, successors in interest or assigns of the Defendants.    Released parties shall also include the Offices of the District Attorneys within the City of New York, namely the Counties of Kings, Queens, Richmond, Bronx and New York, (the "DA Offices"),    as well as its past, present, or future affiliates, subsidiaries, parents, successors and predecessors, officers, directors, agents, agencies, employees, attorneys, advisors, insurers and any person, firm, trust, corporation, officer, director or other individual or entity in which any DA Office has a controlling interest or which is related to or affiliated with any DA Office, and the legal representatives, heirs, predecessors in interest, successors in interest or assigns of the DA Offices.[3]

36.    "Settled Class Claims" mean any and all claims, debts, demands, rights, or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest,

---

[2] For purposes of this Stipulation, "charge" or "charged" includes any attempt to charge the Statutes recorded in the New York City Police Department's databases, as reflected in an Attempts to Charge Report.

[3] The Office of the District Attorney for Bronx County is a named party represented by the New York City Law Department, Office of the Corporation Counsel ("Corporation Counsel").    The Corporation Counsel has also represented the District Attorney Offices of the Counties of New York, Kings, Queens and Richmond to the extent that they have participated in this Stipulation of Settlement, that they have agreed to the terms described in the Letter Agreement annexed hereto as Exhibit A and to the extent that they have otherwise participated, whether or not as defendants, in the *Casale* and *Brown* litigations.

attorneys' fees, administration fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature, that arise out of charges in the City of New York prior to the Bar Date: (1) for a violation of N.Y. Penal Law § 240.35(1) after September 30, 1992; (2) for a violation of N.Y. Penal Law § 240.35(3) after February 23, 1983; and/or (3) for a violation of N.Y. Penal Law § 240.35(7) after February 17, 1988.

37.    "Settled Named Plaintiff Claims" mean any and all claims, debts, demands, rights, or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, administration fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature, that have been asserted in this action by the Settlement Class and/or Named Plaintiffs against any of the Released Parties.

38.    "Loitering Charge Incident" means any arrest, summons, prosecution or other charging incident or criminal proceeding charging a person within the five boroughs of New York City at any time up to two years from the Effective Date: (1) with a violation of N.Y. Penal Law § 240.35(1) after September 30, 1992; (2) with a violation of N.Y. Penal Law § 240.35(3) after February 23, 1983; or (3) with a violation of N.Y. Penal Law § 240.35(7) after February 17, 1988.

39.    "Sealed Loitering Charge Incident" means any Loitering Charge Incident

12

terminated in favor of the accused person as defined by N.Y. Crim. Proc. L. § 160.50(3) or in a conviction for a non-criminal offense as defined by N.Y. Crim. Proc. L. § 160.55(1).

**FUNDING AND RESOLUTION OF SETTLEMENT COSTS**

40.     Subject to the terms and conditions of this Stipulation, the City agrees to pay Fifteen Million Dollars ($15,000,000.00) as the Class Fund, which shall be used to pay all claims of SCMs and the Settlement Costs. The Class Fund does not include the $560,800.53 in attorneys' fees and costs previously paid to Class Counsel.

41.     While the parties have agreed to a Class Fund of $15 Million Dollars, the parties have not agreed on the amount to be subtracted from the Class Fund to pay the Settlement Costs. Class Counsel will not seek more than $3.5 Million Dollars to pay the Settlement Costs. Defendants reserve all rights to assess, analyze and object to the amount of Settlement Costs upon defendants' receipt of all information that they deem relevant to the final determination of the Settlement Costs, including billing records that they believe are necessary to assess the reasonableness of Class Counsel's past attorneys' fees. Apart from past attorneys' fees, the parties also have not agreed, as of the signing of this Stipulation, on the amount of Class Counsel's future attorneys' fees, the amount of the Administrator's fee, and on the amount or means of calculating Class Counsel's total fee recovery, but the parties will endeavor to resolve these issues in good faith prior to the fairness hearing.

42.     In the event that the parties do not agree upon the amount of the Settlement Costs to be subtracted from the Class Fund prior to the fairness hearing, the parties agree to submit their dispute to the Court for resolution on or before the fairness hearing.

43.     Within thirty (30) days after Preliminary District Court Approval, the City shall cause to be deposited into a bank account designated by the Administrator an amount equal to

the amount approved by the District Court for payment to the Class Administrator to cover the costs of notice agreed to by the Parties and/or ordered by the Court, and will provide additional funds to the Administrator as approved by the Court, except that the total of said funds shall not exceed Four Hundred Thousand Dollars ($400,000). Any such payment shall be debited against the Settlement Costs. If the Stipulation is not ultimately approved by the Court, then all such funds paid to the Administrator, to the extent they are available after payment of all accrued class administration expenses, shall be returned to the City. The Administrator will submit monthly bills to the Parties and may pay itself from these funds in accordance with its bill if the Parties do not object to the bill within thirty (30) days of receipt of the monthly bill.

44.     Subject to the terms and conditions of this Stipulation and the approval of the Court, on or before the Funding Date, the City shall cause to be deposited into the Class Settlement Fund Account ("CSFA") the Remainder. On or before the Funding Date, the City shall cause to be deposited to the trust account of Class Counsel the Settlement Costs less the amount already advanced under the terms of the immediately preceding paragraph.

    a. Prior to the payment of the Remainder to the Administrator, the City in consultation with the Administrator, shall make its best good faith estimate of the maximum amount that should be deducted due to Child Support Liens, and shall pay the Administrator $15 Million less the Settlement Costs and less the amount retained by the City of New York for transmittal to the Office of Child Support Enforcement for distribution to the beneficiaries of the Child Support Liens as referenced in paragraph 53c;

14

b. If additional money is determined to be owed to the City due to Child

Support Liens due to a change in the Award Amount, acceptance of late

claims, or for any other reason, the Administrator shall return that amount

to the City;

c. If less money is determined to be owed due for Child Support Liens due to

a change in the Award Amount (or for any other reason) the City shall pay

the Administrator that additional money and that amount shall be added to

the Remainder.

45. Should the settlement not be finally approved after exhaustion of all appellate

avenues, the City shall have no claims against the Named Plaintiffs, the Settlement Class, Class

Counsel, or the Administrator for reimbursement of funds advanced to the Administrator for

notice, except that any advanced funds shall be credited towards any subsequent settlement in

this action.

46. The City will join Class Counsel in seeking the Court's approval of the

Stipulation, exclusive of the Settlement Costs as set forth in paragraphs 41 and 42 above.

47. No payment shall be made to eligible SCMs before the Funding Date.  Claims

will be processed to determine eligibility for payment by the Effective Date for Payment.  Upon

the Funding Date, claims determined to be eligible for payment may be paid.

48. No additional payments shall be paid to Class Counsel for fees and costs before

the Funding Date.  After the City causes the Settlement Costs to be deposited, as set forth in

paragraph 44, Class Counsel may immediately withdraw money from the Settlement Costs to

pay its own fees and costs before a final accounting, as long as sufficient money is reserved to

pay the Administrator's costs, and service awards to Named Plaintiffs.  If the Administrator's

15

final bill is less than the amount previously advanced, the Administrator shall refund to Class Counsel the remainder. A copy of the Administrator's final accounting, as well as monthly bills, shall be provided to the City.

## PAYMENTS TO THE SETTLEMENT CLASS

49.     The amount awarded to SCMs who submit Claim Forms shall be calculated as follows. First, the amount paid to the Administrator for costs; to Class Counsel for attorneys' fees and costs; and to Named Plaintiffs for service awards (collectively "Settlement Costs") shall be subtracted from the Class Fund.

50.     In an effort to promote both efficiency and fairness, the Administrator will award each Approved Claim points after review and after such verification as the Administrator deems appropriate of the information provided on the Claim Form ("the Distribution Formula"). The details of the Distribution Formula to be applied are subject to Court approval on recommendation by Class Counsel after Claim Forms are received. The Distribution Formula shall be applied uniformly, will not be discretionary after approval, and may be amended only by Court Order.

51.     The total points awarded to each Approved Claim pursuant to the Distribution Formula will be aggregated and each SCM's share of the total points will be determined. The SCM shall then be allocated a commensurate proportion of the Class Fund minus the Settlement Costs based on the number of points awarded to the SCM. The resulting amount of payment to the SCM for an Approved Claim based on application of the Distribution Formula shall be the "Award Amount."

52.     The Distribution Formula shall be as follows:

16

a. Pool One will be comprised of all SCMs from the Subsection One Recent Group, the Subsection Three Recent Group or the Subsection Seven Recent Group who submit an Approved Claim and who either (1) were arrested and charged with a violation of the Statutes; or (2) were issued a summons (the court records of which include an arrest or bench warrant recorded in CRIMS or SAMS) charging a violation of the Statutes. Every SCM in Pool One will receive 12 points.

b. Pool Two will be comprised of all SCMs from the Subsection One Recent Group, the Subsection Three Recent Group or the Subsection Seven Recent Group who submit an Approved Claim, and who were issued a summons (the court records of which do not include an arrest or bench warrant recorded in CRIMS or SAMS) charging a violation of the Statutes. Every SCM in Pool Two will receive 4 points.

c. Pool Three will be comprised of all SCMs from the Subsection One Older Group, the Subsection Three Older Group or the Subsection Seven Older Group who submit an Approved Claim and who either (1) were arrested and charged with a violation of the Statutes; or (2) were issued a summons (the court records of which include an arrest or bench warrant recorded in CRIMS or SAMS) charging a violation of the Statutes. Every SCM in Pool Three will receive 2 points.

d. Pool Four will be comprised of all SCMs from the Subsection One Older Group, the Subsection Three Older Group or the Subsection Seven Older Group who submit an Approved Claim and who were issued a summons (the court records of which do not include an arrest or bench warrant recorded in CRIMS or SAMS)

charging a violation of the Statutes.  Every SCM in Pool Four will receive 1 point.

53.      SCMs who timely file a completed and signed Claim Form and who are eligible for an award shall be entitled to receive an Award Amount from the Class Fund in compensation for their claims, subject to the following provisions:

    a.    Each SCM shall receive an Award Amount for only one incident of enforcement for which the SCM was charged with a violation of the Statutes, notwithstanding the fact that an SCM may have been charged with a violation of the Statutes on more than one occasion.  For those SCMS who were charged with a violation of the Statutes on more than one occasion, that SCM shall be compensated for the single incident of enforcement of the Statutes against him or her that is eligible to receive the highest number of points under the Distribution Formula.

    b.    In addition to the Award Amount, the Named Plaintiffs in this action shall receive additional service awards as set forth in paragraph 75 below.  The additional amounts referred to in this sub-paragraph shall be paid from the Settlement Costs.

    c.    If an SCM who submitted a Claim Form has a New York City Child Support Lien for arrears (hereinafter "Child Support Lien"), the Award Amount shall be deducted to satisfy the Child Support Lien, pursuant to the provisions in paragraph 69.  The amount paid by the Administrator to these SCMs will be their share of the Class Fund minus the Settlement Costs, minus the amount of any Child Support Lien.  The City of New York shall retain the aggregate amount of the Child Support Liens for transmittal to the Office of Child Support Enforcement for distribution to the beneficiaries of the Child Support Liens.

54.      Based on good faith calculations made by the Parties, the parties believe that as of

January 26, 2012, the Settlement Class contains SCMs who were subjected to approximately 22,800 incidents where the Statutes were charged.

55.     Class Counsel has the discretion to void checks mailed to SCMs and not cashed within 120 days of issuance. Notice of this procedure will be provided at the time the checks are issued. Class Counsel, on written notice to the City and the Court, shall have the discretion to (a) reissue the checks, or (b) add the amount of the voided checks back to the Class Fund to be divided pro rata amongst eligible SCMs, or (c) issue checks to persons who make late claims for good cause shown pursuant to the immediately following paragraph, or (d) seek an award by the Court consistent with *cy pres* principles.

56.     The Administrator shall place $100,000 of the Remainder in reserve to pay late claims filed for "good cause" shown. Persons who submit late claims will be given 30 days from a date to be determined by the Court at the fairness hearing to provide a "good cause" explanation for their late filing. Class Counsel shall determine if the person had "good cause" to file a late claim, and persons shall have the right to appeal any such determination to the Magistrate Judge. All persons with good cause for filing a late claim shall be paid a pro-rata share under the Distribution Formula – up to their Award Amount – of the amount remaining in the Class Fund due to the failure of claimants to timely cash their checks within 120 days of issuance, as well as from the $100,000 held in reserve to pay late claims, except that Class Counsel, upon notice to the Court, may decide to reserve some portion of the remaining funds to pay persons who failed to cash their checks within 120 days for "good cause" shown. All late claims that are approved as showing "good cause" will also be subject to the deduction of any valid Child Support Liens. If money remains in the Remainder (including the $100,000 reserve after the payment of late claims filed for "good cause," and the reissuance of uncashed checks

for "good cause"), the parties shall confer and seek an order from the Court as to how to distribute same consistent with *cy pres* principles.

57.    The Administrator is permitted for good cause shown (including proper documentation and proof of authority) to issue checks in the name of a person other than the SCM.

**ADMINISTRATOR**

58.    The Administrator's duties shall include administering the Class Fund, including but not limited to the following matters: (1) issuing notice, including information about the right to object or opt out of the settlement; (2) locating class members; (3) distributing Claim Packets to and receiving executed original Claim Forms of same from those on the Final Class List; (4) establishing and administering the Class Fund and upon conclusion of the process, closing the Fund; (5) paying all income taxes, if any, owed by the Class Fund; (6) determining eligibility for awards on the basis of information provided by counsel for the Parties and the SCMs, validating the claims, and providing the Parties a list of those persons found preliminarily eligible every 30 days; (7) calculating the amounts of awards; (8) issuing and mailing checks to eligible SCMs, and issuing and filing all required tax forms and statements; (9) developing procedures and responding to inquires from SCMs and Opt-Outs about this Stipulation and the procedures contained herein, including by the use of a toll-free number; (10) creating a database of SCMs who have filed timely and valid Claim Forms; (11) establishing a toll-free number and toll number (for incarcerated SCMs), which will be included in the Claim Packet and on the Summary Notices; (12) creating a database of Opt-Outs; and (13) providing the Parties with monthly bills and a final accounting.

20

59.    The City agrees to facilitate the work of the Administrator by, among other things, obtaining and providing to the Administrator, information, data, documents, and records in the City's possession, which is relevant and appropriate to facilitate the administration of the Class Fund, to the extent such information is disclosable to the Administrator under federal, state and/or local laws.

60.    Within fifteen (15) days of the Preliminary District Court Approval, Class Counsel will provide the City and the Administrator with an Excel spread sheet containing the full names of all the SCMs and any and all identifiers available to Class Counsel, which may include Social Security Number, date of birth, NYSID number, arrest number, arrest date and summons date. Upon receipt, the City shall check certain databases to which it has access, including DOC records of more recent admissions, the New York City Department of Probation records, Human Resource Administration records, and Department of Homeless Services records, for updated address information.  The City shall also check DOC and NYPD databases in order to locate social security numbers of SCMs.  Where necessary and/or appropriate, the Parties shall cooperatively seek appropriate court orders to obtain the addresses of SCMs.  The City's obligation regarding the information listed in this paragraph only extends to the extent SCMs provided accurate and complete information.  Within sixty (60) days of the Preliminary District Court Approval, the City will provide the Administrator and Class Counsel with an Excel spread sheet containing any additional identifying information about the SCMs located through its database search including where available, date of birth, NYSID number, driver's license, social security number (from DOC and NYPD databases only), and last-known address. On behalf of Plaintiffs, Class Counsel reserves the right to seek orders from the Court directing defendants to provide additional identifying information as necessary in order to effectuate

21

notice to the class. In addition, at least sixty (60) days prior to the Bar Date, the City agrees to join Plaintiffs in making a formal written request to OCA to provide the Parties with one final update of all data in OCA's custody relating to the Statutes.

61. To the extent that the Administrator and/or Class Counsel receive inquiries that they cannot resolve, the Administrator and/or Class Counsel shall group such inquires and submit them in writing to a designated person at the Office of Corporation Counsel on a recurring basis, but not more often than a weekly basis. Results of the investigations will be provided in writing.

62. Information provided to Class Counsel and the Administrator by the City of New York pursuant to the preceding two paragraphs shall be confidential, and may not be disclosed to anyone except Class Counsel, Defendants' Counsel, certain City agencies (including DOC, Department of Probation, Department of Homeless Services, Human Resources Administration, and the Comptroller's Office), the Administrator, or the Court under seal. Class Counsel and the Administrator shall not disclose the confidential information to any person not a member of their staff. To the extent Class Counsel or the Administrator seek to disclose this information to any other person or entity, they must first seek Defendants' Counsel's consent in writing. Defendants' Counsel shall not unreasonably withhold consent. In addition, after consent is given, but before disclosing the confidential information to anyone else, including, any agent, contractor, or expert, the Administrator or Class Counsel shall first have such person or organization sign the confidentiality agreement attached hereto as Exhibit B. A signed copy of Exhibit B shall be provided to Defendants' Counsel by expedited transmission immediately but no later than two business days after execution. Class Counsel and the Administrator shall take all reasonable steps to insure that the confidential information concerning all proposed class

22

members and SCMs, remain private and confidential. In addition, the information provided to Class Counsel and the Administrator regarding the proposed class members and SCMs will not be used for any other purpose other than in this litigation and for the administration of this Stipulation. Similarly, the City will not use any information concerning SCMs or proposed class members that is provided by the Administrator or Class Counsel for any other purpose other than in this litigation and for the administration of this Stipulation, and the City shall keep such information confidential.

63. The Administrator will apply for a tax ID number, if necessary, and take all necessary steps for the timely creation of the CSFA prior to the forty-fifth (45th) day from the Final District Court Approval.

64. The Administrator shall provide the City with the Employer Identification Number for the CSFA, and a completed W-9 Form and bank routing information for the trust fund account, within forty-five (45) days from the Final District Court Approval.

65. The Administrator will treat income taxes as the first priority for payment, and therefore, shall, on a quarterly basis, set aside an amount sufficient to pay all income taxes, if any, owed by the CSFA on interest earned to date. The Administrator shall pay all income taxes, if any, on a quarterly basis. The City Comptroller shall have the right to inspect and copy all tax forms (and worksheets), and monthly bank statements of the CSFA. The Administrator will provide to Class Counsel, Defendants' Counsel, and the City Comptroller with a monthly statement of expenses paid. The City will not be responsible for taxes, penalties, or interest incurred on the Class Fund. The Administrator shall issue all required IRS forms.

66. Within thirty (30) days of receiving the additional identifying information about the SCMs from the City as described in paragraph 60 above, the Administrator shall generate the

Final Class List, and the Administrator shall mail a copy of the Claim Packet by first class mail, postage prepaid, to all persons on the Final Class List for whom an address is available.

67.     Subject to approval from the District Court, the Administrator and Class Counsel shall be responsible for determining a plan to ensure that as many SCMs as reasonably possible receive the Claim Packet and see the Summary Notices.  A copy of the plan should be sent to Defendants' Counsel.

68.     The SCM must submit a completed Claim Form to the Administrator by the Bar Date unless such date is extended by order of the Court.  The Administrator shall reject claims that are untimely.  A Claim Form is deemed submitted upon deposit in a postpaid properly addressed wrapper, in a post office or official depository under the exclusive care and custody of the U.S. Post Office, or when submitted for delivery by a commercial express carrier, or when actually received by the Administrator, or if a Claim Form is submitted to the Administrator by electronic means, upon successful transmission of the Claim Form as indicated by an electronic receipt provided by the Administrator, whichever date is earlier.

69.     Every thirty (30) days, after the Preliminary District Court Approval, the Administrator shall provide the Parties a list of those persons who are preliminarily eligible so that the City may on a rolling basis determine whether that person's Award Amount will need to be reduced due to New York City Child Support Liens.  The City will not exercise its right to reduce the payments set forth in this Stipulation by exercising its right to recover any other amounts, including but not limited to amounts due for unpaid City taxes including personal income tax, real estate related taxes, unpaid parking tickets, unpaid Environmental Control Board fines, or any Medicaid costs correctly paid against bills from the New York City Health and Hospitals Corporation.  No benefits currently received by SCMs may be terminated or

24

reduced as a result of Award Amounts unless mandated by federal or state law or regulation. This does not constitute a waiver of any right to separately recoup overpayments or any amounts owed solely to federal or state governments if such is required by federal or state law or regulation. Within thirty (30) days of receiving what the Administrator identifies as the last list of those persons eligible to receive an Award Amount, the City shall provide the Administrator and Class Counsel with a list of those persons who have New York City Child Support Liens and the amount that shall be deducted from each persons' Award Amount to pay, satisfy and/or partially satisfy the Child Support Lien, with subtotals for the amount owed to a governmental entity and the amount to be forwarded to the custodial parent (non-governmental) beneficiary of the Child Support Lien. Prior to providing this list, the City shall send each person owing Child Support Liens, and to Class Counsel, a notice describing that they owe these liens and information on how to file a challenge regarding the deduction of the Child Support Liens from the Award Amount. If the City later determines that the amount of the liens was incorrect, the City shall directly pay that person the over-deduction of the amount that was withheld from that person's Award Amount.

70.     Any SCM who fails to submit a Claim Form by the Bar Date or any court-mandated extension, shall be forever barred from receiving payments pursuant to the Stipulation. Such person shall be bound by all of the terms of the Stipulation, and the Judgment entered herein, including but not limited to the release of all Released Persons of all Settled Class Claims, as defined in paragraph 106.

71.     The Administrator shall mail letters and/or otherwise contact SCMs who by the Bar Date submit partially completed Claim Forms that are deficient to provide them up to forty-five (45) additional days to validate their Claim Forms. The absence of a social security number

or other identifying information shall not be a basis for not issuing an award to a SCM if the Administrator can otherwise confirm the identity of the SCM.

72.    Rights and claims hereunder shall survive the death of SCMs.  If a SCM who is eligible to receive monetary relief under this Stipulation is deceased, the amount payable to such deceased SCM shall be paid to the appropriate representative of his/her estate.    The representative of the estate shall provide proof of death and appropriate documentation to show that she/he is properly a representative of the estate.  If the Administrator determines, after reasonable opportunity has been given, that there is insufficient information or proof regarding the deceased person's estate to permit such payment, the deceased person's share shall be distributed in accordance with the terms set forth in paragraph 55 for the distribution of returned checks.

**EXCLUSION FROM THE SETTLEMENT CLASS**

73.    Any potential SCM who wishes to be excluded from the Settlement Class must by the Bar Date mail a request to be excluded from the Settlement Class ("Request for Exclusion") to the Administrator.  Any Request for Exclusion must be in writing and state the name, date of birth, address, and telephone number (if any) of the person requesting exclusion and contain a clear statement communicating that such person elects to be excluded from the Settlement Class. Originals of all Requests for Exclusion shall be retained by the Administrator until such originals are filed with the Court.  Named Plaintiffs will not request exclusion pursuant to this paragraph. A list of all exclusions, as well as a copy of the written Requests for Exclusions sent to the Administrator, shall be provided to Class Counsel and Defendants' Counsel.

74.    Any SCM who does not timely file a Request for Exclusion shall conclusively be deemed to have become a SCM and to be bound by this Stipulation and by all subsequent

proceedings, orders, and judgments herein.

**SERVICE AWARDS FOR NAMED PLAINTIFFS**

75.    In addition to the Award Amount, each of the Named Plaintiffs will be paid an additional $25,000 each as an award for services provided to the class and for any inconvenience, pain, suffering, and other non-pecuniary loss experienced as a result of having been a Named Plaintiff in this action.  Class Counsel shall pay these service awards from the Settlement Costs.

**ADDITIONAL NOTICE**

76.    To augment the Administrator's efforts to ensure that as many persons as reasonably possible receive notice, the Parties will work cooperatively together to ensure that the Summary Notices are posted in places where SCMs are likely to see them.  The Administrator will provide the Parties with the requested number of copies of the Summary Notices, and will email the Parties a PDF version of the Summary Notices.

77.    The City agrees to ensure that the Summary Notices are posted in the following locations within two weeks of the initial mailing of the Claim Packets and approval of the Summary Notices, whichever date is later:

    a.    *NYC Department of Correction*:  In the intake areas and law libraries of all of its housing facilities, and in the court pens at the state courthouses that are under DOC control.

    b.    *Department of Homeless Services*:  In the entrance areas of all shelter intake areas and in all shelters run by the Department of Homeless Services, in areas where legal notices regularly appear.

    c.    *New York State Department of Correctional Services*:  The City agrees to join

plaintiffs in making a formal written request to NYS DOCS, to be disseminated on official City of New York letterhead, forwarding a copy of the Summary Notices to NYS DOCS and requesting that NYS DOCS post the Summary Notices as extensively as reasonably possible, in locations where individuals incarcerated in their facilities are likely to see them.

d.   *New York City Department of Probation (*"DOP"*)*:  In the waiting areas of the adult supervision office for each borough in New York City in locations where individuals on probation are likely to see them, and as extensively as reasonably possible.

e.   *NYC Human Resources Administration*:  Prominently in one place in each client contact location (this does not include administrative offices), for example, Job Centers, Food Stamp offices, Medicaid offices and HIV/AIDS Services Administration locations.

f.   *NYC Administration for Children's Services*: Prominently in a central public location in each field office location where clients will able to see the notice.

g.   *New York City Housing Authority (NYCHA)*: The City agrees to join Plaintiffs in making a formal written request to NYCHA, to be disseminated on official City of New York letterhead, forwarding a copy of the Summary Notice to NYCHA and requesting that NYCHA post the Summary Notices as extensively as reasonably possible, in locations where residents of their facilities are likely to see them.

h.   *New York City Human Services Contractors*: The City agrees to join Plaintiffs in making a formal written request to a relevant group of the City's human services

contractors appearing in Exhibit C, to be disseminated by plaintiffs on official City of New York letterhead, forwarding copies of the Summary Notices to all of the City's human services contractors and requesting that each post the Summary Notices as extensively as reasonably possible, in locations where participants in their programs are likely to see them.

78.     Within two weeks of the initial mailing of the Claim Packets and approval of the Summary Notices, whichever date is later, Class Counsel will forward copies of the Summary Notices to the New York State Office of Court Administration (including local administrative judges) and the New York State Division of Parole (including regional Parole offices) and request that they post the Summary Notices as extensively as reasonably possible, throughout offices and/or locations where arrestees, detainees or individuals on probation are likely to see them.

79.     Within two weeks of the initial mailing of the Claim Packets and approval of the Summary Notices, whichever date is later, Class Counsel will mail a letter to the following public defender offices requesting that they post the Summary Notices: The Legal Aid Society (in each borough), The Bronx Defenders, New York County Defenders, Queens Law Associates, Brooklyn Defender Services, Neighborhood Defender Services, Appellate Advocates, Center for Appellate Litigation, Office of the Appellate Defender, and the Assigned Counsel Plans for the First and Second Departments.

80.     Within two weeks of the initial mailing of the Claim Packets and approval of the Summary Notices, whichever date is later, Class Counsel will mail a letter to the following non-profits requesting that they post the Summary Notices: Coalition for the Homeless, Partnership for the Homeless, Osborne Association, East Harlem Life Plan, Phoenix House, GreenHope,

Fortune Society, Center for Employment Opportunities, STRIVE, Doe Fund, Odyssey House, Jericho Project, Exodus Transitional Community, Bowery Residents Committee, Fifth Avenue Committee, Legal Action Center, Women's Prison Association, Palladia, GMHC, Empire State Pride Agenda, New York City Anti-Violence Project, LGBT Community Centers, Bronx Community Pride Center, Ali Forney Center, Housing Works, Legal Services-NYC, Part of the Solution (POTS), Seedco, BronxWorks, HELP USA, Lift Communities, Good Shepherd Services, Catholic Charities, CAMBA, Urban Justice Center, MFY Legal Services, Northern Manhattan Improvement Corporation, Lennox Hill Neighborhood House, Goddard Riverside Community Center, Settlement Houses, Neighborhood Association for Intercultural Affairs (NAICA), FEPS providers, Create, Inc., Daytop Village, Project Renewal, Samaritan Village, and Center for Urban Community Services (CUCS).  Summary Notices also may be placed by Class Counsel in locations comparable to those set forth in this section in an effort to give notice to as many SCMs as is reasonably practicable.

81.     Nothing in this section shall limit further appropriate efforts to provide notice.

82.     Within thirty (30) days after Preliminary District Court Approval, Class Counsel shall provide the Claim Form and the Summary Notices to the Court for approval.  At least fifteen (15) days prior to submission to the Court for approval, Class Counsel shall provide Defendants with copies of the proposed Claim Form and Summary Notices for review. Defendants reserve the right to object to the proposed Claim Form and Summary Notices should the parties not agree on the language proposed by Class Counsel.

**EXCESS FUNDS**

83.     Any amount remaining in the Remainder shall be distributed to the Settlement Class.  If funds are not sufficient for distribution, then Class Counsel will petition the Court for

an order consistent with *cy pres* principles.

**EQUITABLE RELIEF**

**Vacatur of Qualifying Dispositions**

84.     Defendants and the DAOs agree to consent to and cooperate in and make best, vigorous, and timely efforts in an omnibus New York state court proceeding initiated by Class Counsel, in a process to be determined in consultation with the New York State Office of Court Administration ("OCA"), to vacate, dismiss, and seal all cases charging the Statutes within the five boroughs of New York City that have "qualifying dispositions" as defined in the parties' and the DAOs' letter agreement dated January 18, 2012.

85.     The parties' and DAOs' letter agreement dated January 18, 2012, is hereby incorporated by reference and attached hereto as Exhibit A.

86.     As part of the District Court's ongoing jurisdiction over the Parties to enforce and administer the terms of this Stipulation, the parties agree that any disputes regarding cooperation in the omnibus New York state court proceeding shall be resolved by the Honorable Theodore S. Katz or by another Magistrate Judge selected by the Court.

87.     The provisions of this section at paragraphs 84-86 shall remain in effect until the omnibus state court proceeding is completed.   Plaintiffs will use best efforts to submit the omnibus motion no later than six months after Final District Court Approval.

**Sealing**

88.     Defendants agree to comply with N.Y. Crim. Proc. L. §§ 160.50 and 160.55 concerning any and all Loitering Charge Incidents either terminated in favor of the accused person as defined by N.Y. Crim. Proc. L. § 160.50(3) or terminated in a conviction for a non-criminal

31

offense as defined by N.Y. Crim. Proc. L. § 160.55(1), including but not limited to Loitering Charge Incidents where (a) following the arrest of such person, the arresting police agency, prior to the filing of an accusatory instrument in a local criminal court, elects not to proceed further; (b) prior to the filing of an accusatory instrument in a local criminal court against such person, the prosecutor elects not to prosecute such person; or (c) a court has issued an order dismissing the action, as follows.

    a. Pursuant to N.Y. Crim. Proc. L. §§ 160.50(1)(a) and 160.55(1)(a), defendants agree to destroy every photograph and photographic plate or proof taken or made in regard to the action or proceeding of a person charged in a Sealed Loitering Charge Incident, and all duplicates and copies thereof.

    b. Pursuant to N.Y. Crim. Proc. L. §§ 160.50(1)(a) and 160.55(1)(a), defendants agree to destroy every palmprint and fingerprint taken or made in regard to the action or proceeding of a person charged in a Sealed Loitering Charge Incident, and all duplicates and copies thereof except digital fingerprint images where authorized by N.Y. Crim. Proc. L. §§ 160.50(1)(e) or 160.55(1)(e).

    c. Pursuant to N.Y. Crim. Proc. L. §§ 160.50(1)(b) and 160.55(1)(b), that for any Sealed Loitering Charge Incidents for which NYPD transmitted or otherwise forwarded to any agency of the United States or of any other state or of any other jurisdiction outside the state of New York copies of any such photographs, photographic plates or proofs, palmprints and fingerprints, NYPD will formally request in writing that all such copies be destroyed or returned to NYPD, and, if returned, NYPD shall destroy them.

d. Pursuant to N.Y. Crim. Proc. L. §§ 160.50(1)(c) and 160.55(1)(c), all official records and papers, (including, for §160.50(1)(c) only, judgments and orders of a court but not including published court decisions or opinions or records and briefs on appeal), relating to the Sealed Loitering Charge Incidents, including all duplicates and copies thereof on file with any police agency or prosecutor's office shall be sealed and will not be made available to any person or public or private agency except as permitted by N.Y. Crim. Proc. L. §§ 160.50(1)(d) or 160.55(1)(d).

The provisions of paragraph 88 shall remain in effect until the deadline for the certification in paragraph 89 expires, or two years from the Effective Date, whichever is later.

89.     Within 30 days after a final granting of the plaintiffs' omnibus state court motion as defined in paragraph 84, plaintiffs will provide defendants with a list, in electronic or digital format, of Loitering Charge Incidents by Arrest Number that should be sealed under state law. Within 180 days of receipt of this list from plaintiffs, defendants, through an appropriate official, will conduct a review and certify in writing as follows:

a.     Pursuant to N.Y. Crim. Proc. L. §§ 160.50(1)(c) and 160.55(1)(c), the City of New York certifies that all official records and papers stored digitally or electronically relating to the arrest Loitering Charge Incidents on the lists provided by plaintiffs on file with any police agency or prosecutor's office have been sealed and will not be made available to any person or public or private agency except as permitted by N.Y. Crim. Proc. L. §§ 160.50(1)(d) or 160.55(1)(d).

b.     Pursuant to N.Y. Crim. Proc. L. §§ 160.50(1)(a) and 160.55(1)(a), the City

33

of New York certifies that it has destroyed every photograph and photographic plate or proof and every palmprint and fingerprint, taken or made in regard to the action or proceeding of a person charged in the arrest Loitering Charge Incidents on the lists provided by plaintiffs, and stored digitally or electronically, and all duplicates and copies thereof, except as authorized by N.Y. Crim. Proc. L. §§ 160.50(1)(e) or 160.55(1)(e).

c.      The City of New York certifies that all official records and papers stored digitally or electronically in NYPD computer databases relating to summons Loitering Charge Incidents are maintained as sealed and will not be made available to any person or public or private agency except as permitted by N.Y. Crim. Proc. L. §§ 160.50(1)(d) or 160.55(1)(d).

90.      Nothing in this Stipulation is intended to create a cause of action under N.Y. Crim. Proc. L. §§ 160.50 or 160.55 or otherwise. Plaintiffs in no way waive their rights to enforce the terms of this Stipulation and Order of Settlement consistent with the procedures set forth herein.

**Notation of Unconstitutionality**

91.      Defendants agree to join Plaintiffs in making a formal written request to OCA and the New York State Division of Criminal Justice Services ("DCJS") to create a permanent notation of unconstitutionality, the language of which shall be jointly agreed upon by the parties subject to OCA and DCJS approval, attached to electronic records of all Loitering Charge Incidents. This permanent notation would accompany any report or record containing or referencing Loitering Charge Incidents, including but not limited to an individual's criminal history, produced by OCA or DCJS to any person or public or private agency.

34

92.     The formal request will include, at a minimum, a joint letter from the parties agreeable to the parties and may include reasonable meetings and reasonable contacts with state agency personnel in support of the request.

93.     Under no circumstances will the provisions in the preceding two paragraphs remain in effect for longer than two years from the Effective Date.

**Joint Request to DCJS to Notify FBI and Request Removal**

94.     Defendants agree to join Plaintiffs in making a formal written request to DCJS to officially notify the Federal Bureau of Investigation ("FBI") regarding the unconstitutionality of the Statutes and to request removal of all records related to Loitering Charge Incidents, including records of arrest, conviction, fingerprints, and photographs, from databases maintained by the FBI and other federal agencies, including but not limited to the National Criminal History Record File, Integrated Automated Fingerprint Identification System (IAFIS), Next Generation Identification (NGI), Interstate Identification Index (III), National Crime Information Center (NCIC), Law Enforcement National Data Exchange (N-DEx), Automated Biometric Identification System (IDENT), and National Instant Criminal Background Check System (NICS).

95.     The formal request to DCJS will include, at a minimum, a joint letter from the parties agreeable to the parties and may include reasonable meetings and reasonable contacts with state agency personnel in support of the request.

96.     Under no circumstances will the provisions in the preceding two paragraphs remain in effect for longer than two years from the Effective Date.

**Prevention Policies**

97.     Defendants agree to continue for two (2) years from the Effective Date to do the following:

a.     Continue to provide automated notifications from the NYPD Chief of Department's office in the event of any new Loitering Charge Incident entered into data systems maintained by Defendants,[4] except with respect to notifications of any attempts to charge the Statutes, in which case, NYPD agrees to provide Attempts to Charge Reports.     Defendants shall provide Class Counsel on a monthly basis with a copy of the reports referenced in this subsection.

b.     The NYPD Internal Affairs Bureau ("IAB") will investigate any Loitering Charge Incident occurring after the date of this Stipulation in a process consistent with and at least equivalent to that described in the Declaration of Rosemary DeBellis In Support of Defendants' Opposition to Plaintiffs' Motion for Contempt, Injunctive Relief and Discovery Sanctions dated February 8, 2010, ¶27 *et seq.*  Defendants shall provide Class Counsel with the complete documentation of IAB's investigation and report of any Loitering Charge Incident within sixty (60) days of completion by IAB.

c.     In a process consistent with the procedures set forth in the preceding sub-paragraph (b), the NYPD Internal Affairs Bureau ("IAB") will investigate any attempt to charge any of the Statutes that appears in an Attempts to Charge Report and occurs after the date of this Stipulation, so long as an arrest report for any other charge is not prepared in connection with the same incident.  For all other attempts to charge any of the Statutes that are recorded in an NYPD Attempts to Charge Report

---

[4] Declaration of Rosemary DeBellis In Support of Defendants' Opposition to Plaintiffs' Motion for Contempt, Injunctive Relief and Discovery Sanctions dated February 8, 2010 at ¶19.

and occur after the date of this Stipulation, the Office of the Deputy Commissioner of Legal Matters of the NYPD will send a letter to the Commanding Officer of any officer who attempts to charge any of the Statutes, requesting that the Commanding Officer or his or her delegate instruct the officer regarding the unconstitutionality of the Statute, review any cheat sheets in the officer's possession to delete the Statutes from that item if found there, and consider any discipline appropriate under Departmental guidelines.  Defendants shall provide Class Counsel with a copy of all letters issued pursuant to this paragraph within sixty (60) days of issuance.

d.          Affix a notation to all new packages of summonses issued to NYPD containing a warning that the Statutes cannot be enforced.

e.          Should a summons issue under any of the Statutes, the NYPD command to which the officer who issued the summons is assigned shall review the "cheat sheets," "Master C-Summons lists," or any other non-NYPD issued compilations of common summonsable offenses in the possession of police officers assigned to the command; delete the Statutes from these items; document the officer to whom the item belonged; and photocopy the relevant page that contained the Statute at issue. Defendants shall provide Class Counsel with a report documenting the results of this "cheat sheet" review within sixty (60) days of its completion.

f.          Conduct training, in a manner determined by Defendants, including annual in-service training at NYPD, informing NYPD police officers that the Statutes are unconstitutional and unenforceable, and that any charge incident under the Statutes may result in disciplinary action.

37

**Prospective Obligations**

98.     Defendants agree that they will maintain a commitment not to enforce the Statutes for a period of two years from the Effective Date.   This commitment will be enforceable pursuant to the terms of this Stipulation for a period of two years from the Effective Date.

99.     Upon Preliminary District Court Approval, this Stipulation and Order resolves all prospective obligations pursuant to the Court's April 26, 2010 Opinion in the *Brown* and *Casale* matters.

**Administration of Agreement and Dispute Resolution**

100.     The District Court shall retain jurisdiction over the Parties to enforce and administer the terms of this Stipulation and Order of Settlement during the period it, or any of its provisions, remain in effect, upon the filing of an appropriate motion by any party.

101.     The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Stipulation and Order of Settlement prior to bringing such matters to the Court for resolution.

102.     Upon the finding of good cause shown, the Court may grant such relief as it deems just and proper.

103.     Equitable Relief:  At any time prior to the expiration of this Stipulation, should Class Counsel have determined that the Defendants have failed to comply with any term of the Stipulation regarding Equitable Relief only, as set forth above in Paragraphs 84-97, Class Counsel shall forward written notification of such non-compliance to the Deputy Commissioner for Legal Matters of the NYPD and to the Office of the Corporation Counsel.

> a.     Should the Defendants agree that they have not complied with the specified term(s), the Defendants shall specifically perform said term(s) within a

reasonable period of time, to be mutually agreed upon through the good faith efforts of the parties and their counsel.

b.      Should the Defendants dispute the Class Counsel's determination of the Defendants' non-compliance, or if the parties cannot agree on a time frame within which the Defendants are to perform an obligation with which they agree they have not complied, or in the event the Defendants fail to perform an obligation they have agreed to perform in accordance with the provisions of paragraph 103(a) above, Class Counsel may apply to the Court for an order directing specific performance of that term or terms.  Such application may not be made fewer than thirty days after the initial notification of non-compliance to the NYPD and Office of the Corporation Counsel.

c.      In no event shall any of the Defendants be adjudged in contempt for proven non-compliance with any of the terms or provisions of this Stipulation, relating to Equitable Relief only as set forth above in paragraphs 84-97, unless and until the Defendants fail to comply with an order from the Court directing specific performance of such terms or provisions, obtained by the Class Representatives and/or class members in compliance with the provisions of this paragraph.

**EXPIRATION OF AGREEMENT**

104.    Unless otherwise noted herein at paragraphs 84-89, this Stipulation shall expire two (2) years from the Effective Date.

**EFFECT OF STIPULATION**

105.    Within five (5) business days of the Funding Date, all claims in the above-referenced action will be dismissed, with prejudice, and without costs, expenses, or fees in excess of the amount authorized by the paragraphs above.

106.    The Stipulation, as of the Effective Date for Payment, resolves in full all claims, with prejudice, against the Released Persons by SCMs, including the Named Plaintiffs, arising out of any charges under the Statutes before the Bar Date.  When the Stipulation is final, as of the Effective Date for Payment, all SCMs, including the Named Plaintiffs, hereby release all such claims, except for claims against the DA Offices.  All SCMs, including the Named Plaintiffs, hereby release all such claims against the DA Offices as of the date that the omnibus state court motion described in Exhibit A is fully submitted to the state court for decision.

107.    This Stipulation contains all the terms and conditions agreed upon by the Parties, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein.

108.    As of the Effective Date for Payment, the SCMs, including the Named Plaintiffs, hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency, or other tribunal, or to file any complaint with regard to acts of commission or omission by the Released Persons respecting Settled Class Claims.

109.    Each SCM shall be deemed to have submitted to the jurisdiction of the Court.

110.    No Opt-Out shall share in any monetary benefits provided by this Stipulation.

111.    The Parties will take all necessary and appropriate steps to obtain approval of the Stipulation and dismissal of the action with prejudice.  If the District Court approves this

Stipulation, and if there is an appeal from such decision by a non-party, Defendants will join Class Counsel in defense of this Stipulation on any such appeal or subsequent proceeding.

112.    The Parties hereby agree that a Final Judgment may be entered against the City of New York in accordance with the terms of this Stipulation within five (5) days after the date of Final District Court Approval.

113.    The Parties hereby agree not to appeal any aspect of this Stipulation, under any condition or circumstance, or to otherwise collaterally attack or challenge this Stipulation.

114.    The District Court shall retain jurisdiction over the Parties to enforce and administer the terms of this Stipulation and Order during the period it, or any of its provisions, remain in effect.

115.   Signatures on an electronically transmitted copy of this Stipulation and Order

shall be deemed to be original signatures.

Dated:  New York, NY
January 26, 2012

EMERY CELLI BRINCKERHOFF &
ABADY LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019

By: _____
Katherine Rosenfeld
Matthew D. Brinckerhoff

THE BRONX DEFENDERS
860 Courtlandt Avenue
Bronx, New York 10451

By: _____
J. McGregor Smyth, Jr.

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Counsel for Defendants*
100 Church Street
New York, New York 10007

By: _____
Rachel Seligman Weiss
Assistant Corporation Counsel

_____
U.S.D.J.

2/6/12

EXHIBIT A

EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
O. ANDREW F. WILSON
KATHERINE ROSENFELD
ELIZABETH S. SAYLOR
DIANE L. HOUK
DEBRA L. GREENBERGER
EISHA JAIN
ADAM R. PULVER
ZOE SALZMAN
SAM SHAPIRO
VASUDHA TALLA

ATTORNEYS AT LAW
75 ROCKEFELLER PLAZA, 20ᵀᴴ FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE
(212) 763-5000
TELECOPIER
(212) 763-5001
WEB ADDRESS
www.ecbalaw.com

January 18, 2012

Rachel Seligman Weiss
Linda Donahue
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007

Re:   *Casale v. Kelly*, 08 Civ. 02173 (SAS) (THK)
       *Brown v. Kelly*, 05 Civ. 05442 (SAS) (THK)

Dear Counsel:

We write to memorialize the agreement between all parties to the above-captioned litigations and the five District Attorneys' Offices of Bronx, Kings, Queens, New York and Richmond Counties ("the five District Attorneys' Offices of the City of New York") to consent and cooperate in an omnibus New York state court proceeding brought pursuant to N.Y. C.P.L. § 440.10 in order to vacate, dismiss, and seal all qualifying dispositions for cases charging loitering pursuant to N.Y. Penal Law § 240.35(1), N.Y. Penal Law § 240.35(3), and N.Y. Penal Law § 240.35(7) ("the Statutes"). This letter agreement sets forth the terms of the agreement. This letter agreement is subject to advice and guidance from the New York State Office of Court Administration ("OCA") regarding the appropriate procedural vehicle and process by which the goals outlined herein shall best be achieved.

I.    **Purpose of Agreement**

N.Y. Penal Law § 240.35(3) and N.Y. Penal Law § 240.35(7) were declared unconstitutional in 1983 and 1988, respectively. *See People v. Uplinger*, 460 N.Y.S.2d 514 (1983); *see also People v. Bright*, 526 N.Y.S.2d 66 (1988). The Second Circuit declared N.Y. Penal Law § 240.35(1) unconstitutional in 1992. *See Loper v. New York City Police Dep't*, 999 F.2d 699, 701 (2d Cir. 1993). After being declared unconstitutional, thousands of people were convicted of violations of the Statutes. Many more received other dispositions that were less than fully favorable or did not qualify for sealing under C.P.L. § 160.50, such as dismissals pursuant to C.P.L. § 730.40. Because these convictions and non-conviction dispositions other

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

### III.    Omnibus State Court Proceeding to Vacate, Seal, and Dismiss

The parties and the five District Attorneys' Offices of the City of New York agree to utilize the following general procedure to address all existing qualifying dispositions for violations of the Statutes.

Plaintiffs will file an omnibus motion in state court requesting vacatur and dismissal of all qualifying convictions and other qualifying non-conviction dispositions as follows:

- For cases involving a qualifying conviction and no convictions for other charges, the court should (1) vacate the judgment of conviction, (2) dismiss the entire accusatory instrument, and (3) order sealing pursuant to C.P.L § 160.50.[1]
- For cases involving a qualifying conviction and another, non-qualifying conviction charge, the court should (1) vacate the judgment of the qualifying conviction, (2) dismiss the unconstitutional loitering charge(s), and (3) expressly order that the non-qualifying convictions remain valid judgments *nunc pro tunc.*
- For cases involving a qualifying non-conviction disposition and no convictions for other charges, the court should (1) vacate the disposition, (2) dismiss the entire accusatory instrument, and (3) order sealing pursuant to C.P.L § 160.50.[2]

Plaintiffs will also request sealing of any and all cases charging the Statutes that have qualifying case dispositions under C.P.L. § 160.50(3) or C.P.L. § 160.55(1) but are not currently sealed due to error or court order.

Plaintiffs' motion will be filed "on consent" of the five District Attorneys' Offices of the City of New York to the requested relief.  Venue will be determined pending further discussions with OCA.

### IV.    Procedure for Identifying Qualifying Dispositions

Plaintiffs will draft a motion for the requested relief.  Attached as an exhibit to the motion will be a comprehensive list by defendant name, docket number, county and category of relief (from Section III, *supra*) of all qualifying dispositions for which vacatur, dismissal, and (where appropriate) sealing is sought ("list of qualifying dispositions by name and docket

---

[1] It is agreed that the signatories to this letter agreement do not intend to re-open any charges in the same accusatory instrument "covered" by a guilty plea to a qualifying conviction, or otherwise disposed with a non-conviction, and that no known mechanism exists for doing so.

[2] With the exception of a case held in abeyance pursuant to C.P.L. § 730.50 involving a felony and within the time prescribed by the statute, it is agreed that the signatories to this letter agreement do not intend to re-open any charges in the same accusatory instrument that were disposed with a non-conviction, and that no known mechanism exists for doing so. Notwithstanding the possibility that a case may be re-opened under C.P.L. § 730.50, the DAOs will dismiss the loitering offense in accordance with the procedures set forth herein.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

number"). Plaintiffs will generate the list of qualifying dispositions by name and docket number with OCA's assistance, based on counsel's review of the OCA and NYPD databases produced in this litigation to date.

Plaintiffs will provide the list of qualifying dispositions by name and docket number to defendants and the five District Attorneys' Offices of the City of New York at least one hundred fifty (150) days prior to the filing of the motion and within 60 days of the Preliminary District Court Approval. Prior to filing, the five District Attorneys' Offices of the City of New York shall first have the opportunity to review the list of qualifying convictions by name and docket number to confirm that the dockets charge the Statutes and are in appropriate categories (as defined by the remedies in Section III, *supra*) and that the docket numbers are correct. On a rolling basis (at least every thirty (30) days after receipt of the list of qualifying dispositions), the five District Attorneys' Offices of the City of New York will provide Plaintiffs with a list of cases that they believe do not fit into the categories of qualifying dispositions and the reasons for that position.[3] The five District Attorneys' Offices of the City of New York shall notify Plaintiffs of all cases that they believe do not fit into the categories of qualifying dispositions by no later than one hundred twenty (120) days after their first receipt from Plaintiffs of the proposed list of qualifying dispositions.

To the extent that Plaintiffs receive updated information from OCA which contains new prosecutions, Plaintiffs will provide a list of only the new qualifying dispositions by name, docket number, county and category of relief ("Updated List") to defendants and the five District Attorneys' Offices of the City of New York. The Updated List must be provided more than 45 days before the filing of the omnibus motion. Within 30 days of receipt of an Updated List from Plaintiffs, the five District Attorneys' Offices of the City of New York will notify Plaintiffs of any cases they do not believe fit into the categories of qualifying dispositions and the reasons for that position. If Plaintiffs seek to add any new cases arising from new prosecutions to the Updated List after the motion is submitted to the court but while it is still pending, the parties shall follow the procedures set forth in this paragraph.

The deadlines set forth in this letter agreement reflect the parties' and the District Attorneys' Offices' best current estimates for how long it will take to complete the tasks described herein. As necessary, plaintiffs will agree to reasonable extensions of time to allow the District Attorneys' Offices to complete the agreed-upon tasks. The signatories will endeavor in good faith to resolve informally any differences regarding the constitution of the final list of qualifying dispositions and of interpretation of and compliance with this letter agreement. As part of the District Court's ongoing jurisdiction over the Parties to enforce and administer the terms of the Stipulation and Order of Settlement, the signatories agree that any disputes regarding cooperation in the omnibus New York state court proceeding shall be resolved by the Honorable Theodore S. Katz, or by another Magistrate Judge selected by the Court.

---

[3] The DAOs also reserve their right to object to a case being included in the omnibus motion if, upon review, it is determined that the procedures set forth herein may present unanticipated or unexpected legal issues which could impact on a valid conviction. Any such objections and the reason(s) for the objection will be made on a rolling basis (at least every 30 days after a receipt of the list of qualifying dispositions).

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 5

Please sign below to indicate your agreement to the process outlined above. Signatures on an electronically transmitted copy of this letter shall be deemed to be original signatures.

We look forward to working you on this important matter and greatly appreciate your assistance and consideration.

Sincerely

Katherine Rosenfeld

Katherine Rosenfeld

Accepted and Agreed to:
EMERY CELLI BRINCKERHOFF & ABADY
Counsel for Plaintiff Classes
By: _Katherine Rosenfeld_
Name: KATHERINE ROSENFELD
Title: Partner
Date: 1/18/12

Accepted and Agreed to:
THE BRONX DEFENDERS
Counsel for Plaintiff Classes
By: _____
Name: J McGregor Smyth Jr.
Title: Managing Attorney
Date: 1/18/12

Accepted and Agreed to:
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Counsel for Defendants
By: _____
Name: Fred Weiler / Richard Weiss
Title: Senior Counsel
Date: 1/25/11

Accepted and Agreed to:
NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

Please sign below to indicate your agreement to the process outlined above.
Signatures on an electronically transmitted copy of this letter shall be deemed to be original
signatures.

We look forward to working you on this important matter and greatly appreciate
your assistance and consideration.

Sincerely,

*Katherine Rosenfeld*

Katherine Rosenfeld

Accepted and Agreed to
EMERY CELLI BRINCKERHOFF & ABADY
*Counsel for Plaintiff Class*
By *Katherine Rosenfeld*
Name: KATHERINE ROSENFELD
Title: Partner
Date: 1/18/12

Accepted and Agreed to
THE BRONX DEFENDERS
*Counsel for Plaintiff Class*
By
Name
Title
Date

Accepted and Agreed to
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Counsel for Defendants*
By
Name
Title
Date

Accepted and Agreed to
NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE
By *Nitin S. Savur*
Nitin S. Savur    1/23/12

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 6

Name: _Nitin S. Savur_____
Title: _Deputy Chief of Trial Division_
Date: _ 1/23/12 _____

Accepted and Agreed to:
BRONX COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____


Accepted and Agreed to:
QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____


Accepted and Agreed to:
KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____


Accepted and Agreed to:
RICHMOND COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 6

Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
BRONX COUNTY DISTRICT ATTORNEY'S OFFICE
By: _Rudolph Alvarez_____
Name: _Charles E. Alonso_____
Title: _CHIEF ASSISTANT DISTRICT ATTORNEY_
Date: _JANUARY 23, 2012_____

Accepted and Agreed to:
QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
RICHMOND COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 6

Name: _____
Title: _____
Date: _____


Accepted and Agreed to:
BRONX COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____


Accepted and Agreed to:
QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _John M. Ryan_
Title: _Chief Assistant District Attorney_
Date: _1/23/12_


Accepted and Agreed to:
KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____


Accepted and Agreed to:
RICHMOND COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 6

Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
BRONX COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
RICHMOND COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 6

Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
BRONX COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
By: _____
Name: _____
Title: _____
Date: _____

Accepted and Agreed to:
RICHMOND COUNTY DISTRICT ATTORNEY'S OFFICE
By: _Christy J Keller_____
Name: _TIMOTHY J. KOLLER_____
Title: _EXECUTIVE ADA._____
Date: _January 23, 2012_____

## EXHIBIT B

The undersigned hereby acknowledges that I have read paragraphs 60-62 of the Stipulation of Settlement, dated January 26, 2012, in *Casale v. City of New York*, 08 Civ. 2173 (S.D.N.Y) and *Brown v. City of New York*, 05 Civ. 5442, and understands that the information provided to me pursuant to this settlement is confidential, and may not be disclosed to any other person or entity except Class Counsel, Defendants' Counsel, the Administrator, or the Court under seal. The undersigned agrees not to use this confidential information for any purpose other than in connection with the administration of this settlement in this lawsuit, and will not disclose any of the confidential information in any form to any other person or entity except Class Counsel, Defendants' Counsel, the Administrator, or the Court under seal.


_____                    _____
Date                                                Signature


_____
Print Name


_____
Occupation

43

**EXHIBIT C**

| Agencies |
|---|
| 12TH STREET PRESCHOOL INC |
| 1332 FULTON AVENUE DAY CARE CENTER, INC. |
| 196 ALBANY AVENUE DAY CARE CENTER, INC. |
| 200 CENTRAL AVENUE DAY CARE CENTER, INC. |
| 2136 Crotona Parkway, HDFC |
| 760-770 East Tremont, HDFC |
| A Very Special Place, Inc. |
| A. Amerimed Physician, P.C. |
| AAFE Community Development Fund, Inc. |
| ABBOTT HOUSE |
| Ability Builders, Inc. |
| Abundant Life Agency, Inc. |
| Accelerated Childhood Education, Inc. |
| Action Center for Education and Community Development, Inc |
| ACTION FOR PROGRESS, INC. |
| ACTION NURSERY, INC. |
| Addicts Rehabilitation Center Foundation, Inc. |
| ADVENT COMMUNITY SERVICES DAY CARE CENTER, INC. |
| Advocate, Intervene, Mentor RFP |
| African Services Committee |
| AFRO-AMERICAN PARENTS DAY CARE CENTER, INC. |
| Agudath Israel of America Community Services, Inc. |
| AGUDATH ISRAEL OF AMERICA/BORO PARK |
| AGUDATH MORIAH LUNCHEON |
| Aguila, Inc. |
| AIA/BAY/EDEN SENIOR CENTER |
| AIDS Center of Queens County, Inc. |
| Alcoholism Council of Greater NY |
| Ali Forney Center, Inc. |
| ALIANZA DOMINICANA, INC |
| ALLEN AME SENIOR TRANSPOR |
| ALLEN AME TRANSPORTATION |
| ALLEN COMMUNITY SENIOR CI |
| Allied Medix Resources |
| ALONZO A. DAUGHTRY MEMORIAL DAY CARE CENTER, INC. |
| ALPHA KAPPA ALPHA SORORITY EPSILON PI OMEGA CHPT DCC, INC. |
| ALPHA PHI ALPHA SENIOR CTR |
| America Works of New York |
| American Italian Coalition of Organizations, Inc. |
| AMERICAN LUNG ASSOCIATION OF NEW YORK |
| Amethyst House, Inc. |
| Amistad Early Childhood Educational Center Inc |
| ANNA LEFKOWITZ DAY CARE CENTER, INC. |
| Appellate Advocates |
| ARAB-AMERICAN FAMILY SUPPORT CENTER 77266, THE |
| Arbor E&L LLC |
| Arbor E&T |
| ARC XVI Ft Washington Senior |
| AREA 145, INC. |
| AS THE TWIG IS BENT CHILDRENS CENTER, INC. |

Exhibit C
Page 1 of 21

| |
|---|
| Asian Americans for Equality |
| Asian Professional Extension, Inc. |
| Asociaciones Dominicanas, Inc |
| Aspira of New York, Inc. |
| Assn. for Neurologically Impaired |
| ASSOC OF BLACK SOC. WRKERS |
| Association for Children with Down Syndrome, Inc. |
| Association for Metroarea Autistic Children, Inc |
| Association for Rehabilitative Case Management |
| Association to Benefit Children, Inc. |
| Astella Development Corp. |
| Astor Home for Children (Services for Children & Families) |
| ASTOR SERVICES FOR CHILDREN & FAMILIES |
| Ateres Mordechai |
| ATLED, INC. |
| AUXILIARY ENTERPRISE BOARD OF NYC TECHNICAL COLLEGE, INC. |
| Bailey House |
| Baltic Street AEH, Inc. |
| Bank Street College of Education |
| Barrier Free Living, Inc |
| Basic Housing, Inc. |
| Battiste, Aronowsky and Suchow |
| Bay Ridge Physical Therapy |
| BEDFORD HARRISON DAY CARE CENTER, INC. |
| Bedford Park Multi-Service Center for Senior Citizens, Inc |
| Bedford Stuyvesant Restoration Corporation |
| Be'er Hagolah Institutes |
| BELLEVUE DAY CARE CENTER, INC. |
| BELMONT COMMUNITY DAY CARE CENTER, INC. |
| Belmont-Arthur Ave LDC |
| BERGEN BASIN COMM DEV/ABE STARK |
| BERGEN BASIN COMM DEV/MIDWOOD |
| BERGEN BASIN COMM DEV/VANDALIA |
| Bergen Basin Community Development Corp. |
| Bergen Beach Youth Organization, Inc. |
| BETANCES EARLY CHILDHOOD DEVELOPMENT CENTER |
| BETH ABRAHAM HEALTH SERVICES |
| BETH EMETH HOMECARE |
| Beth Israel Medical Center |
| BETH JACOB DAY CARE CENTER, INC. |
| BETHANY DAY NURSERY, INC. |
| BETHEL MISSION STATION CHURCH |
| BETHESDA DAY CARE CENTER OF BROOKLYN, INC. |
| BETHLEHEM EVANGELICAL/BAY RIDGE CENTER FOR OLDER |
| BIG FIVE BLOCK ASSOCIATION, INC. |
| Bilinguals, Inc. |
| BILLY MARTIN CHILD DEVELOPMENT DAY CARE CENTER, INC. |
| BIRCH FAMILY SERVICES (HERBERT G. BIRCH SERVICES INC.) |
| Bklyn Hsg and Family Svcs |
| Black Veteran's for Social Justice, Inc. |
| BLANCHE COMMUNITY PROGRESS DAY CARE CENTER, INC. |

Exhibit C
Page 2 of 21

| |
|---|
| BMCC EARLY CHILDHOOD CENTER INC. |
| BNOS ZION OF BOBOV, INC. |
| BORO PARK YM-YWHA SR CTR |
| BOULEVARD NURSERY SCHOOL, INC. |
| Bowery Residents' Committee, Inc. |
| Boys & Girls Harbor, Inc |
| Boys Town New York - Dean (Bk) |
| Boys Town New York -Bergen (BK) |
| BOYS TOWN NEW YORK INC |
| Boys Town New York -Richmond Hill (Qu) |
| Broadway Housing Communities, Inc. |
| Bronx Arts Ensemble |
| Bronx Council On The Arts, Inc. |
| Bronx Defenders |
| BRONX HOUSE - PELHAM PKWY NO LUNCH |
| BRONX JEWISH COMMUNITY COUNCIL |
| Bronx Lebanon Hospital |
| Bronx River Art Center, Inc. |
| BRONXDALE TENANTS LEAGUE DAY CARE CENTER, INC. |
| BRONXWORKS E. ROBERTS MOORE SC |
| BRONXWORKS MORRIS SENIOR CENTER |
| BronxWorks, Inc. |
| BRONXWORKS/EAST CONCOURSE SC |
| Brooklyn AIDS Task Force, Inc. |
| Brooklyn Bureau of Community Services |
| Brooklyn Childrens Museum |
| Brooklyn Chinese American Association |
| Brooklyn Community Housing & Services, Inc |
| Brooklyn Defender Services |
| BROOKLYN DEVELOPMENT CENTER EARLY CHILDHOOD SERVICES, INC. |
| Brooklyn Hospital Cemter |
| Brooklyn Housing and Family Services, Inc. |
| BROOKLYN KINDERGARTEN SOCIETY, INC. |
| Brooklyn Neighborhood Improvement Association |
| BROOKLYN SECTION NATIONAL CNCL |
| BROOKS SENIOR CENTER |
| Brownsville Community Development |
| BUSHWICK COMMUNITY ACTION ASSOCIATION, INC. |
| Bushwick Economic Development Corp. |
| BUSHWICK IMPROVEMENT SOCIETY, INC. |
| BUSHWICK UNITED HOUSING DEVELOPMENT CORP |
| CAMBA, Inc. |
| Camelot of Staten Island, Inc. |
| CANAAN SENIOR SERVICE CEN |
| Canarsie EIP, Inc. |
| CARDINAL MCCLOSKEY SCHOOL AND HOME FOR CHILDREN, INC. |
| Cardinal McCloskey Services |
| Career and Educational Consultants |
| CAREER BRIDGE FDC NETWORK |
| CARING COMMUNITY/OUR LADY |
| CARTER BURDEN LUNCHEON CLUB |

Exhibit C
Page 3 of 21

| |
|---|
| CASC CASE ASSISTANTCE/TRANS |
| CASES CEP |
| CASES Nathaniel ACT |
| CASES/Day Custody Program |
| Casita Maria, Inc. |
| Catholic Charities |
| Catholic Charities (Beacon of Hope) |
| Catholic Charities Comm Svcs Stapleton |
| Catholic Charities Comm Svcs Wbrighton |
| CATHOLIC CHARITIES COMM SVS/CYO |
| Catholic Charities Community Service, Archdiocese of N Y |
| CATHOLIC CHARITIES NEIGHBORHOOD SERVICES, INC. |
| Catholic Charities Neighborhood Svcs. (BFFY) |
| CATHOLIC GUARDIAN SOCIETY AND HOME BUREAU |
| CAYUGA HOME FOR CHILDREN INC |
| CCNS BAYSIDE SENIOR CENTER |
| CCNS GLENWOOD SENIOR CTR |
| CCNS HILLCREST SR CTR |
| CCNS MCGUINESS NOSIDE SR C |
| CCNS NARROWS SENIOR CENTE |
| CCNS ST CHARLES JUBILEE SR C |
| CCNS ST LOUIS SENIOR CENTER 62A |
| CCNS STEINWAY SENIOR CENT |
| CCNS THE BAY SENIOR CENTER |
| CCNS/WOODHAVEN SENIOR CENTER |
| Center for Alternative Sentencing and Employment Services, Inc., |
| Center for Appellate Litigation |
| Center for Community Alternatives(YAP) |
| Center for Community Alternatives/Crossroads |
| Center for Employment Opportunities |
| Center for Family Representation |
| Center for Hearing and Communication |
| CENTER FOR INTEGRATION AND ADVANCEMENT OF NEW AMERICANS I |
| Center for the Elimination of Violence in the Family |
| Center for the Integration & Advancement of New Americans |
| Center for Urban Community Services, Inc. |
| Central Brooklyn Economic Development Corporation |
| CENTRAL HARLEM SENIOR CEN |
| Central Queens YM & YWHA, Inc |
| CENTRO CIVICO Y CULTURAL AGUADILLANO, INC. |
| CHARLES A WALBURG MULTI SERVICE ORG |
| CHARLES JIN MEDICAL SERVICES |
| CHARLES WALBURG/JACKIE ROBINSON SR CTR |
| CHILD DEVELOPMENT CENTER |
| Child Development Ctr of the Mosholu Montefiore Comm Center |
| Children At Play Early Intervention Center, Inc. |
| Childrens Art Carnival |
| Childrens Arts & Science Workshops, Inc. |
| Children's Home Intervention Program, Inc. |
| Children's Place Management, Inc. |
| Chinatown Manpower Project, Inc. |

Exhibit C
Page 4 of 21

| |
|---|
| Chinese American Planning Council Home Attendant Program, Inc. |
| CHINESE-AMERICAN PLANNING COUNCIL INC |
| Christian Herald HDFC |
| Church Avenue Merchants Block Assn. |
| CITIZENS CARE DAY CARE CENTER, INC. |
| CITIZENS CARE SENIOR CENTER |
| City Pro Group, Inc. |
| CLAREMEONT NEIGHBORHOOD CENTER, INC. |
| Clarke School for the Deaf d/b/a Clarke NYC Auditory/Oral Center |
| CLIFFORD GLOVER DAY CARE CENTER, INC. |
| Clinton Housing Development Co. |
| Coalition for Hispanic Family Services |
| COALITION FOR HUMAN HOUSING, INC. |
| Coalition for the Homeless |
| COBO MT CARMEL CENTER 12M |
| COLLEGE COMMUNITY CHILD CARE CENTER |
| COLONY-SOUTH BROOKLYN HOUSES, INC. |
| Columba Services, Inc. |
| COMMITTEE FOR HISPANIC CHILDREN & FAMILIES |
| Common Ground Community |
| Community Access, Inc. |
| COMMUNITY AGENCY FOR SENIOR CIT/NEW LANE |
| COMMUNITY AGENCY FOR SENIOR CITZ |
| COMMUNITY AGENCY/FOREVER YOUNG SENIOR |
| COMMUNITY AND PARENTS FOR CHILD WELFARE, INC. |
| Community Association of Progressive Dominicans, Inc. |
| COMMUNITY COUNSELING AND MEDIATION SERVICES, INC. |
| Community Mediation Services, Inc. |
| COMMUNITY ROUNDTABLE OF BUSHWICK, INC. |
| ComuniLife (HIRE) |
| Concepts of Independence |
| CONCERNED PARENTS OF JAMAICA |
| CONCOURSE DAY CARE CENTER, INC. |
| CONCOURSE HOUSE HDFC, INC. |
| CONEY ISLAND COMMUNITY DAY CARE CENTER, INC. |
| Conscientious Musical Revues |
| CONSELYEA STREET BLOCK ASSOCIATION, INC. |
| CONSELYEA/SWINGING 60S SENIOR CENTER |
| Contemporary Guidance Services |
| CONVENT AVE/HAMILTON GRANGE SENIOR CE |
| Cooper Square Community Development & Business Association |
| Cooperative Home Care Associates |
| CORNERSTONE DAY CARE CENTER, INC. |
| CORONA/FLORENCE SMITH SENIOR SERV |
| COTHOA LUNCHEON CLUB SENI |
| Council of Jewish Organizations of Flatbush, Inc. |
| Council of Neighborhood Organizations, Inc. |
| County of Westchester |
| Covenant House New York/Under 21, Inc. |
| Covenant House/Under 21 |
| CPC QUEENS NAN SHAN SENIOR |

Exhibit C
Page 5 of 21

| |
|---|
| CPC/NY CHINATOWN SENIOR CENTE |
| CRAWFORD COMMUNITY EARLY LEARNING CENTER. |
| Create, Inc. |
| CRF House East |
| Crossroads School for Child Development |
| Crown Heights HDFC |
| Crown Heights Jewish Community Council |
| Crown Heights Preservation |
| CUNY-Research Foundation |
| CYPRESS HILLS CHILD CARE CORPORATION |
| CYPRESS HILLS FULTON STREET |
| Cypress Hills Local Development Corporation |
| Darby Nutrition Dietetics Practice |
| DAWNING VILLAGE, INC. |
| DAY CARE COUNCIL OF NEW YORK INC |
| DB Grant Associates Inc |
| Dennelise Corp |
| Directions For Our Youth, Inc. |
| Discipleship Outreach Ministries, Inc. |
| DOE Fund, Inc. |
| DOMINICAN SISTERS FAMILY HEALTH SERVCES |
| Dominican Women's Development Center |
| DORCHESTER SENIOR CITIZENS |
| DOROT INC |
| DreamYard Project, Inc. |
| Dynamic Center |
| E. Sholom, Inc |
| Early Childhood Associates, LLC |
| Early Sprout, Inc. |
| Early Start, Inc. |
| EAST BROOKLYN DAY CARE CENTER, INC. |
| EAST CALVARY DAY CARE CENTER, INC. |
| EAST ELMHURST DAY CARE CENTER, INC. |
| EAST HARLEM BLOCK NURSERY, INC. |
| East Harlem Council For Community Improvement |
| EAST HARLEM COUNCIL FOR HUMAN SERVICES, INC. |
| East Harlem Employment Services, Inc. |
| East Harlem Tutorial Program, Inc. |
| EAST NEW YORK FAMILY DAY CARE PROCESSING CENTER, INC. |
| East New York Urban Youth Corps |
| East NY Development Corporation |
| EAST RIVER CHILDRENS CENTER COMMITTEE, INC. |
| EAST SIDE COMMUNITY GROUP |
| East Side House, Inc. |
| EAST TREMONT CHILD CARE AND DEVELOPMENT CENTER, INC. |
| Easter Seals New York |
| Ecumenical Community Development Organization |
| Eden II School for Autistic Children, Inc. |
| Edith and Carl Marks Jewish Community House of Bensonhurst |
| EDSI |
| Education and Assistance Corp. |

Exhibit C
Page 6 of 21

| |
|---|
| Educational Alliance, Inc. |
| Edwin Gould Services for Children & Families, Inc. |
| Edwin Gould/Steps |
| EILEEN DUGAN SENIOR CITIZE |
| El Barrio's Operation Fightback, Inc. |
| El Puente De Williamsburg |
| Ellen Cooper Associates, Inc. |
| ELMCOR SENIOR CENTER |
| Emilia's Kids, Inc. |
| EMMANUEL DAY CARE CORPORATION |
| Employment Program for Recovered... |
| Employment Works Initiative |
| ENCORE COMMUNITY SERVICES |
| ENCORE LUNCHEON CLUB |
| EPISCOPAL COMMUNITY SERVICES LONG ISLAND 1927 |
| Episcopal Health Services, Inc. |
| Episcopal Social Services, of New York, Inc. |
| Esperanza NY Inc. |
| FAITH HOPE & CHARITY COMMUNITY SERVICE DAY CARE CTR., INC |
| Faith Mission Alcohol Crisis Center, Inc. |
| FAMILY CARE SERVICES |
| FAMILY CENTER INC, THE |
| Farmers Market Federation of New York |
| FedCap Rehabilitation Service |
| Federation Employment and Guidance Service, Inc. |
| Federation of Italian-American Organizations of Brooklyn |
| Federation of Organizations for the New York State Mentally Disabled, Inc. |
| FEGS |
| Fifth Avenue Committee, Inc. |
| FIND AID/PROJECT FIND CLINTON SENIO |
| FIND AID/PROJECT FIND HAMILTON HOUSE |
| FIND AID/PROJECT FIND WOODSTOCK |
| First Steps |
| FLATBUSH ACTION BOARD OF DIRECTORS |
| Flatbush Action Community Day Care Center, Inc. |
| Flatbush Development Corporation |
| Flemister HDFC |
| Floating Hospital |
| FLUSHING DAY CARE CENTER, INC. |
| Flushing Hospital & Medical Center |
| Food First, Inc . |
| FORDHAM BEDFORD CHILDRENS SERVICES,INC |
| FORESTDALE INC |
| Fort Green Senior Citizen Council, Inc. |
| FORT GREENE COUNCIL, INC. |
| Fortune Society |
| Fountain House, Inc. |
| Fresh Youth Initiatives |
| Friends Housing Dev. |
| FRIENDS OF CROWN HEIGHTS EDUCATIONAL CENTERS, INC. |
| FT GREENE COUNCIL/ALBANY SENIOR CT |

Exhibit C
Page 7 of 21

| |
|---|
| FT GREENE COUNCIL/GRACE AGARD |
| FT GREENE COUNCIL/HAZEL BROOKS SR |
| FT GREENE COUNCIL/MARIA LAWTON |
| FT GREENE COUNCIL/REMSEN CENTER |
| FT GREENE COUNCIL/TERESA MOORE 23Y |
| FT GREENE/CHRISTOPHER C. BLENMAN SE |
| FT GREENE/H. GILROY SENIOR CENTER |
| FT GREENE/WILLOUGHBY SENIOR CENTER |
| Functional Life Achievement |
| Fund for the City of New York/Center for Court Innovation |
| Fund for the City of New York/Center for Court Innovation (Bronx Community Solutions) |
| G & Y Kids Power, Inc. |
| GAN DAY CARE CENTER, INC. |
| Gay Men of African Descent, Inc. |
| Gay Men's Health & Crisis Inc |
| Geel Community Services, Inc. |
| General Development and Orientation Council, Inc. |
| GEORGE C. CONLIFFE CHILD CARE CENTER INC. |
| Girls Educational and Mentoring Services Inc. (GEMS) |
| Global Kids, Inc. |
| GODDARD RIVERSIDE COMMUNITY CENTER |
| Good Shepherd Services |
| Good Shepherd Services - Mandela House (Bx) |
| GOOD SHEPHERD SERVICES - SHARP HOUSE |
| Goodwill Industries of Greater New York and Northern New Jersey, Inc. |
| Gotham Per Diem, Inc. |
| GRACE PRE-SCHOOL DAY CARE CENTER, INC. |
| GRAHAM WINDHAM INC. |
| Grand Street Settlement, Inc. |
| GREATER FLUSHING COMMUNITY COUNCIL, INC. |
| Greater Ridgewood Youth Council, Inc. |
| Greenhope Services For Women , Inc. |
| Greenwich House, Inc. |
| Groundwork Inc. |
| Guardians of the Sick, Inc. |
| GUSTAVUS ADOLPHUS LUTHERAN |
| H.E.L.P. DAY CARE CORPORATION |
| HAITIAN-AMERICAN DAY CARE CENTER, INC. |
| HALLET COVE CHILD DEVELOPMENT CENTER, INC. |
| HAMILTON-MADISON HOUSE, INC. |
| HANAC ANGELO PETROMELIS S |
| HANAC Inc. |
| HANAC RAVENSWOOD SENIOR CENTER |
| Hand In Hand Development, Inc. |
| Happy Dragon of New York |
| Happy Dragon USA |
| HARLEM CHILDREN'S ZONE INC |
| Harlem Commonwealth Council Inc |
| HARLEM DOWLING WESTSIDE CTR FOR CHILDREN & FAMILY SERVICES |
| Harlem RBI(Reviving Baseball in Inner Cities |
| Harlem United |

Exhibit C
Page 8 of 21

| |
|---|
| Harlem United AIDS |
| Harlem United Community AIDS Center |
| HARTLEY HOUSE, INC. |
| HAWTHORNE CORNERS DAY CARE CENTER, INC. |
| Health and Hospitals Corp. / Elmhurst Hospital |
| HEALTH RESEARCH, INCORPORATED |
| Hear Me Speak |
| Heartshare Human Services |
| HEARTSHARE HUMAN SERVICES OF NEW YORK |
| Hebrew Academy for Special Children Inc. |
| Hebrew Educational Society |
| HEBREW INSTITUTE FOR THE DEAF & EXCEPTIONAL CHILDREN, INC. |
| HEBREW KINDERGARTEN & INFANTS HOME, INC. |
| HEIGHTS AND HILLS COMMUNITY CNCL |
| Helen Keller Services for the Blind |
| HELLENIC AMERICAN NEIGHBORHOOD ACTION |
| Hellenic American Neighborhood Action Committee (HANAC) |
| HELP Bronx |
| HELP Social Services Corp. |
| Henkels & McCoy, Inc. |
| HENRY ST/GOOD COMPANIONS NUTRITIO |
| HENRY STREET SETTLEMENT, INC. |
| Herbert G. Birch Family Services, Inc. |
| HHC - Queens Hospital Center |
| HHC - Renaissance Healthcare Network |
| HIGHBRIDGE ADVISORY COUNCIL FAMILY SERVICES, INC. |
| Highbridge Community Life Center (HCLC) |
| Highland Park Community Corporation |
| HILLCREST EDUCATIONAL CENTER, INC. |
| HMH/CITY HALL SENIOR CENTER |
| Home Life/ Starbright |
| Home Services System |
| Homecrest Community Services, Inc |
| HOMES FOR THE HOMELESS, INC. |
| Hope Community, Inc. |
| HOPE OF ISRAEL |
| Hospital Audiences, Inc. |
| Housing Works, Inc. |
| HTA of New York |
| Hudson Guild |
| HUDSON GUILD SENIOR SVCS |
| HUNTS POINT MULTI-SERVICE CENTER, INC. |
| HUNTS PT/DOUGLAS LEON SENIOR CENTER |
| HUNTS PT/MARIA ISABEL SENIOR CTR |
| Icahn House East, LLC |
| ICD International Center for the Disabled (Not in FMS) |
| Imani House, Inc. |
| Imeinu, Inc. |
| Immaculata Hall HDFC |
| Immigrant Social Services, inc. |
| Important Steps, Inc. |

Exhibit C
Page 9 of 21

| |
|---|
| Included Educational Services |
| Indochina Sino American Community Center |
| Institute for Basic Research Development Disabilities |
| Institute for Community Living, Inc. |
| Institute for Mediation and Conflict Resolution, Inc. |
| Institute For Puerto Rican Hispanic Elderly, Inc. |
| INSTITUTE FOR THE PUERTO RICAN HISPANIC ELDERLY /CARVER |
| INSTITUTE FOR THE PUERTO RICAN HISPANIC ELDERLY/ARTHURO |
| INSTITUTE FOR THE PUERTO RICAN HISPANIC ELDERLY/BETANCES |
| Institutes of Applied Human Dynamics |
| Inwood Community Services, Inc. |
| INWOOD HOUSE, INC. |
| IPRHE CORONA SENIOR CENTER |
| IPRHE/BRONX RIVER SENIOR CENTER |
| IPRHE/ELMHURST JACKSON HEIGHTS |
| IPRHE/JAMES MONROE SENIOR CTR |
| IPRHE/LEONARD COVELLO SENIOR CE |
| ISABELLA GERIATRIC CENTER |
| Island Peer Review Organization |
| Italian American Civil Rights League |
| Italian Senior Citizens |
| Jackson Children's Services |
| JACOB A RIIS/QUEENSBRIDGE |
| Jacob A. Riis Neighborhood Settlement, Inc. |
| JAMAICA CHILD CARE CENTER, INC. |
| JAMAICA NAACP DAY CARE CENTER, INC. |
| Jamaica Service Program for Older Adults, Inc. |
| JAMAICA SERVICES PROGRAM FOR OLDER ADULTS/FRIENDSHIP |
| JAMES L. VARICK COMMUNITY CENTER, INC. |
| JAPANESE AMERICAN SOCIAL SVCS |
| JASA BROOKDALE |
| JASA BX SPECL NEEDS UNIT |
| JASA CANARSIE |
| JASA LEGAL SERVICES |
| JASA ROCKAWAY PAR SENIOR CEN |
| JASA ROY REUTHER |
| JASA SENIOR CENTERS |
| JASA SR. ALLIANCE/LUNA PARK |
| JASA THROGS NECK SENIOR CE |
| JASA.CO-OP CITY |
| JASA/VAN CORTLANDT SENIOR CENT |
| JCC OF GCI/HABER HOUSES SENIOR CENTE |
| JCC OF GCI/MARLBORO SENIOR CENTER |
| JCC OF GCI/OCEAN PARKWAY SENIOR CITI |
| JCC OF GCI/SURF SOLOMON SENIOR CENTE |
| JCC OF GREATER CONEY ISLAND |
| JCC OF GREATER CONEY ISLAND SHOREFRONT |
| JCC of Rockaway Peninsula |
| JCC SR KOSHER NUTRITION SE |
| Jericho Project |
| Jericho-Residence IV HDFC |

Exhibit C
Page 10 of 21

| |
|---|
| JEWISH ASSOCIATION FOR SERVICES FOR THE AGED |
| JEWISH ASSOCIATION FOR SERVICES FOR THE AGED /MANHATTAN BEACH |
| JEWISH ASSOCIATION FOR SERVICES FOR THE AGED /SHOREFRONT |
| JEWISH BOARD OF FAMILY AND CHILDREN'S SERVICES INC |
| Jewish Care of Services of Long Island |
| JEWISH CHILD CARE ASSOC. INC. |
| Jewish Child Care Association of New York |
| Jewish Community Center of Staten Island, Inc. |
| JEWISH COMMUNITY COUNCIL OF GCI |
| JEWISH COMMUNITY COUNCIL OF GCI/JAY |
| Jewish Community Council of Greater Coney Island, Inc. |
| Jewish Institute of Queens |
| John A. Coleman School |
| JOHN EDWARD BRUCE DAY CARE CENTER, INC. |
| JSPOA ROCKAWAY BLVD SR CT |
| JSPOA THEODORA JACKSON SR. |
| JSPOA TRANSPORTATION |
| Just Us, Inc. |
| Kennedy Child Study Center |
| Kidcare Associates, Inc. |
| KIDS ETCETERA DAY CARE CENTER, INC. |
| KidsKare, LLC |
| KINGSBRIDGE HEIGHTS COMMUNITY CENTER, THE |
| Kips Bay Boys & Girls Club |
| KIPS BAY CASTLE HILL SR CTR |
| KOREAN COMMUNITY SERVICES OF METROPOLITAN NY |
| La Asociacion Benefica Cultural Father Billini |
| LABOR BATHGATE COMMUNITY CHILD CARE BOARD |
| Lantern Community Services, Inc |
| LAURELTON SPRINGFIELD COMMUNITY DAY CARE, INC. |
| LEAGUE FOR BETTER COMMUNITY LIFE, INC. |
| LEAKE AND WATTS SERVICES, INC. |
| Learning Through An Expanded Arts Program, Inc. |
| Legal Aid Society |
| Legal Outreach, Inc |
| LEGAL SERVICES FOR NEW YORK |
| Legal Services New York City |
| LENOX HILL NEIGHBORHOOD HOUSE, INC. |
| LENOX HILL SR CTR |
| Lesbian & Gay Community Services Center, Inc. |
| LEXINGTON CHILDREN CENTER, INC. |
| Lexington Hearing & Speech Center Inc. |
| Lifespire, Inc. |
| Lighthouse International |
| LINCOLN SQUARE NEIGHBORHOOD CENTER, INC. |
| LITTLE FLOWER CHILDREN'S & FAMILY SERVICES OF NEW YORK |
| Little Meadows Early Childhood Center |
| Little Sisters of the Assumption Family Health Service, Inc. |
| LITTLE SUN PEOPLE, INC. |
| Little Wonders, Inc. |
| Long Island Center for Child Development, Inc. |

Exhibit C
Page 11 of 21

| |
|---|
| Long Island Jewish Medical Center |
| Long Island University |
| Los Ninos Services, Inc. |
| LOWER EAST SIDE FAMILY UNION |
| Lower East Side Service Center |
| Lower West Side Household Services Cop |
| LSA FAMILY HEALTH SERVICE, INC. |
| LSNY-BRONX CORPORATION |
| Lutheran Medical Center |
| LUTHERAN SOCIAL SERVICES OF METROPOLITAN NY |
| Madison Square Boys & Girls Club |
| Make the Road New York |
| MALCOLM X DAY CARE CENTER OF CORONA - EAST ELMHURST, INC. |
| Manhattan Legal Services |
| Manhattan Youth Recreation and Resources, Inc. |
| MAPLETON MIDWOOD GERIAT |
| Marathon Infants & Toddlers, Inc. |
| MARBLE HILL NURSERY SCHOOL, INC. |
| MARC ACADEMY AND FAMILY CENTER, INC. |
| Marion K. Salomon |
| MARY MCLEOD BETHUNE DAY CARE CENTER, INC. |
| Maspeth Town Hall, Inc. |
| MEALS ON WHEELS OF STATEN ISLAND |
| MENTAL HEALTH ASSOCIATION OF NYC INC THE |
| Mental Health Providers of Western Queens |
| MERCYFIRST |
| MERRILL PARK CIVIC ASSOCIATION |
| Metro Children's Services, Inc. |
| Metro Therapy, Inc. |
| Metropolitan NY Coord. Council on Jewish Poverty |
| MFY LEGAL SERVICES INC |
| MID BRONX CCRP EARLY CHILDHOOD CENTER, INC. |
| MID BRONX SENIOR CITIZENS COUNCIL INC |
| Mid Island Therapy Associates, LLC d/b/a All About Kids |
| Midwood Development Corporation |
| Milestone Early Intervention Center |
| Momentum Project |
| MONTEFIORE MEDICAL CENTER |
| MONTESSORI PROGRESSIVE LEARNING CENTER, INC. |
| Morningside Center for Teaching Social Responsibility, Inc. |
| MORNINGSIDE RETIREMENT & HEALTH |
| Morris Heights Health Center, Inc. |
| Morrisania Revitalization Corporation |
| MOSDOTH DAY CARE CENTER, INC. |
| MOSHOLU MONTEFIORE COMMUNITY CENTER, INC. |
| Mount Hope Housing Company |
| Msgr. Robert Fox Memorial Shelter |
| Mt. Sinai Hospital |
| NADAP |
| NASRY MICHELEN DAY CARE CENTER, INC. |
| National Alliance for the Mentally Ill of New York City, Inc. |

Exhibit C
Page 12 of 21

| |
|---|
| National Society for Hebrew Day School |
| NATIONAL SORORITY OF PHI DELTA KAPPA BETA OMICRON CHAPTER |
| Neigh Initiative Dev. Corp. |
| Neighborhood Association for Inter-Cultural Affairs (NAICA) |
| NEIGHBORHOOD DAY NURSERY OF HARLEM, INC. |
| Neighborhood Initiatives Development Corporation |
| Neighborhood Self-Help by Older Persons Projects, Inc. |
| NEIGHBORHOOD SHOPP CASA B |
| NEIGHBORHOOD SHOPP-SNAP |
| NEW ALTERNATIVES FOR CHILDREN INC |
| New Life Child Development Corporation |
| New Settlement Apartments |
| New York Asian Women's Center, Inc. |
| New York Center for Child Development |
| New York Center for Interpersonal Development |
| New York Child Resource Center Inc. |
| New York City Department of Education |
| New York City Gay & Lesbian |
| New York City Housing Authority |
| New York City Mission Society |
| New York County Defender Services |
| NEW YORK FOUNDATION FOR SENIOR CITIZENS |
| NEW YORK FOUNDATION FOR SENIOR/MOTT |
| NEW YORK FOUNDLING HOSPITAL |
| New York Junior Tennis League |
| New York League for Early Learning Inc. |
| New York Presbyterian Hospital |
| NHS of North Bronx, Inc.NYC Inc |
| NHS of Northern Queens |
| NICHOLAS CARDELL DAY CARE CENTER, INC. |
| Non-Profit Assistance Corp |
| Nontraditional Employment for Women |
| NORTH BRONX NCNW CHILD DEVELOPMENT CENTER, INC. |
| North Brooklyn Development Corporation |
| North General |
| NORTHEAST BRONX DAY CARE CENTERS, INC. |
| NORTHEAST BRONX SENIOR CITIZENS |
| Northern Manhattan Improvement Corp |
| NORTHFIELD COMMUNITY LDC OF SI |
| Northside Center for Child Development |
| NORTHSIDE CENTER FOR CHILD DEVELOPMENT INC |
| NUESTROS NINOS DAY CARE CENTER, INC. |
| Number One SRO, HDFC |
| NY Center for Infant & Toddlers |
| NY FDTN HOME SHARING |
| NY Society for the relief of the Ruptured & Crippled dba Hospital for Special Surgery |
| NY Urban League |
| NYC Criminal Justice Agency |
| NYF/DYCKMAN SENIOR CENTER |
| NYF/LA GUARDIA SENIOR CENTER |
| NYSARC, INC. |

Exhibit C
Page 13 of 21

| |
|---|
| NYSARC, Inc. - New York City Chapter (AHRC) |
| Odyssey House HDFC |
| Odyssey House, Inc. |
| Office of the Appellate Defender |
| OHEL CHILDRENS HOME AND FAMILY SERVICES INC |
| OHEL SARAH DAY CARE CENTER, INC. |
| OMEGA PSI PHI FRATERNITY NU-OMICRON CHAPTER ECEC |
| On Our Way Learning Center |
| On Your Mark, Inc. |
| ONE STOP SENIOR SERVICES |
| OPEN DOOR ASSOCIATES, INC. |
| Opportunities for a Better Tomorrow |
| Osborne Treatment Services/El Rio |
| Palladia, Inc. |
| PAMELA C. TORRES DAY CARE CENTER, INC. |
| PARK SLOPE COMMUNITY CENTER, INC. |
| PARK SLOPE NORTH CHILD DEVELOPMENT CENTER, INC. |
| PARK SLOPE SENIOR CITIZENS CTR |
| Partnership for the Homeless/ Prevention |
| Partnership for the Homeless, Inc. |
| Pathways to Housing, Inc. |
| Pediatric Occupational Therapy Associates, P.C. |
| PENN SOUTH SOCIAL SERVICES |
| PEOPLE CARE |
| PEQUENOS SOULS DAY CARE CENTER, INC. |
| Per Scholas Inc |
| Personal Touch Home Care, Inc. |
| Personal Touch, Inc. |
| PETER CARDELLA SENIOR CITZEN CENTER |
| PHILIP H. MICHAELS CHILD CARE CENTER, INC. |
| Phipps Community Development |
| PHS Dental |
| PHS Medical |
| Pibly Residential Programs, Inc. |
| Planned Parenthood of NYC |
| PLEASANT AVENUE DAY CARE CENTER, INC. |
| Police Athletic League, Inc. |
| POLISH & SLAVIC/JOHN PAUL II FRIENDSHIP CLUB |
| POLISH & SLAVIC/KRAKUS LUNCHEON CLUB |
| Polonians Organized to Minister to Our Community |
| POMOC |
| Postgraduate Center for Mental Health |
| Pratt Area Comm. Cncl |
| Premier Home Health |
| Presbyterian Senior Services |
| PRESBYTERIAN SENIOR SERVICES/ANDREW JACKSON |
| PRESBYTERIAN SENIOR SERVICES/CITY ISLAND |
| PRESBYTERIAN SENIOR SERVICES/HIGHBRIDGE |
| PRINCE HALL SERVICE FUND, INC. |
| Project Hospitality, Inc. |
| Project Renewal, Inc. |

Exhibit C
Page 14 of 21

| |
|---|
| PROMESA, INC. |
| Prospect Park YMCA New Americans Welcome Center |
| PSS/PARKSIDE SENIOR CENTER |
| Public Health Solutions |
| PUERTO RICAN COUNCIL DAY CARE CENTER, INC. |
| PUERTO RICAN FAMILY INSTITUTE |
| QSAC, Inc. |
| QUEENS COMMUNITY HOUSE, INC. |
| QUEENS COMMUNITY HOUSE/POMONOK SENIOR CENTER |
| QUEENS COUNTY EDUCATORS FOR TOMORROW, INC. |
| Queens Law Associates |
| Queens Legal Services, Corp. |
| QUEENSBORO COUNCIL FOR SOCIAL WELFARE |
| QUEENSBRIDGE DAY CARE CENTER, INC. |
| QUO VADIS MONTESSORI DAY CARE CENTER, INC. |
| R.A.I.N. BOSTON SECOR SENIOR |
| R.A.I.N. EASTCHESTER SENIOR 12H |
| R.A.I.N. GUNHILL SENIOR CENT |
| RABBI ISRAEL/MIDDLE VILLAGE |
| RAICES CORONA SENIOR CENT |
| RAICES RED HOOK SENIOR CENTER |
| RAICES/WYCKOFF GARDENS SENIOR CE |
| RAIN |
| RAIN COLLEGE AVE SENIOR CENTER |
| RAIN East Tremont |
| RAIN ONE-STOP SERVICES TO T |
| RAIN PARKCHESTER SENIOR CE |
| RAIN/BOSTON EAST |
| RAIN/BOSTON RD |
| RBSCC |
| RBSCC DIANA JONES SENIOR CENTER |
| RBSCC/ATLANTIC SENIOR CENTER |
| RECREATION ROOMS AND SETTLEMENT |
| RED BALLOON DAY CARE CENTER, INC. |
| Red Hook Initiative, Inc. |
| REGIONAL AID FOR INTERIM NEEDS |
| Regional Aid For Interim Needs, Inc. (R.A.I.N.) |
| REGIONAL AID FOR INTERIM NEEDS/INWOOD |
| REGIONAL AID FOR INTERIM NEEDS/MIDDLETOWN |
| REGIONAL AID FOR INTERIM NEEDS/NEREID |
| Rehab Care Professionals, Inc. |
| RENA DAY CARE CENTER, INC. |
| Research Foundation of CUNY |
| Research Foundation of CUNY on Behalf of Bronx Comm. College |
| Research Foundation of CUNY/ CUNY Creative Arts Team, Inc. |
| Research Foundation of CUNY/Brooklyn College |
| Research Foundation of CUNY/Medgar Evers College |
| RESERVE ELDER SERVICE |
| Restaurant Opportunities Center of NY |
| RICHMOND HOME NEED SERVICES |
| Richmond University Medical Center |

Exhibit C
Page 15 of 21

| |
|---|
| Ridgewood Bushwick |
| RIDGEWOOD BUSHWICK HOME |
| RIDGEWOOD BUSHWICK SENIOR CIT/BORINQUEN |
| Ridgewood Bushwick Senior Citizens Council |
| RIDGEWOOD BUSHWICK SENIOR CITIZENS/HOPE |
| RIDGEWOOD BUSHWICK SENIOR CITIZENS/ROUNDTABLE |
| RIDGEWOOD BUSHWICK/CASE MANAGEMENT |
| RIDGEWOOD OLDER ADULT CT |
| Right Start |
| Riverdale Community Center, Inc. |
| RIVERDALE SENIOR CENTER |
| RIVERDALE SENIOR SERVICES |
| RIVERSTONE SENIOR LIFE |
| Riverstone Senior Life Services, Inc. |
| ROCHDALE VILLAGE NURSERY SCHOOL, INC. |
| ROCHDALE VILLAGE SOCIAL SERVICES |
| Rockaway Artist Alliance, Inc. |
| Rockaway Development & Revitalization Corporation |
| Rocking the Boat, Inc. |
| Rockland Child Development Services Inc. |
| ROOSEVELT ISLAND SENIORS ASSOCIATION |
| Rosalia-Regina Pacis Neighborhood Improvement Associatio |
| Ryer Ave |
| SAFE HORIZON, INC. (VICTIM SERVICES) |
| Safe Space NYC, Inc. |
| Saint Dominic's Home |
| SAINT JOHNS DAY CARE CENTER, INC. |
| Sakhi for South Asian Women |
| SALEM COMMUNITY SERVICE COUNCIL, INC. |
| Salvation Army |
| Samaritan Village |
| SAMARITAN/WOODSIDE SENIOR CENTER |
| Samuel Field YM & YWHA, Inc. |
| Samuel Proctor HDFC |
| Sanctuary for Families, Inc. |
| SAUTI YETU CENTER FOR AFRICAN WOMEN INC |
| Sauti Yetu Center for African Women, Inc. |
| SCAN - NY (SUPPORT CHILDRENS ADVOCACY NETWORK) INC. |
| SCAN (SUPPORTIVE CHILDREN'S ADVOCACY NETWORK) NY VOLUNT |
| School Settlement Association |
| SCO FAMILY OF SERVICES - EAST WILLIAMSBURGH |
| SCO Family of Services (St. Christopher-Ottilie) |
| SCO Family of Services, Inc. |
| SEABURY DAY CARE CENTER, INC. |
| Seamen's Society for Children & Families |
| SEBCO Development, Inc. |
| SEBCO SENIOR PROGRAMS |
| Second Henry Street, HDFC |
| SEEDCO Inc |
| Self Help Community Services |
| SELFHELP CONSOLIDATED SENI |

Exhibit C
Page 16 of 21

| |
|---|
| SENIOR ACTION IN A GAY ENVIRONMENT INC |
| SENIORS HELPING SENIORS |
| Sephardic Community Center |
| SEPHARDIC MULTI SERVICE CENTER |
| SEPHARDIC MULTI SERVICE CENTER/HOUSE OF JACOB |
| Services for the Underserved, Inc. |
| SERVICES NOW FOR ADULT PERSONS |
| Sesame Flyers International, Inc. |
| SHARON BAPTIST BOARD OF DIRECTORS, INC. |
| SHELTERING ARMS DAY CARE SERVICES, INC. |
| Shema Kolainu - Hear Our Voices |
| SHIRLEY CHISHOLM DAY CARE CENTER, INC. |
| Shorefront Jewish Community Council |
| Shorefront YM-YWHA |
| SI COMM SVS/NEW DORP FRIENDSHIP CLUB |
| SI COMM SVS/STATEN ISLAND FRIENDSHIP CL |
| Simpson Street Development Association, Inc. |
| Sky Light Center, Inc. |
| South Bronx Action Group |
| South Bronx Overall Economic Development Corp. |
| South Brooklyn Legal Services |
| South Queens Boys & Girls Club |
| South Street Seaport Museum |
| Southeast Bronx Neighborhood Center, Inc. (SEBNC) |
| SOUTHEAST BRONX NEIGHBORHOOD CENTERS, INC. |
| SOUTHEAST QUEENS MULTI SERVICE |
| SOUTHERN QUEENS PARK ASSOC. INC. |
| Southside United Development Fund Corp |
| SOUTHSIDE/LOS SURES SR CTR |
| Sports and Arts In Schools Foundation, Inc. |
| SR CITIZENS LEAGUE OF FLATB |
| ST DOMINIC'S HOME |
| ST GABRIELS EPISCOPAL CHURCH |
| ST JOHN ST MATTHEW/PROSPECT HILL SR SVS |
| ST JOHNS PLACE FAMILY CENTER HOUSING DEVELOPMENT FUND CORP |
| ST JOHNS/FT HAMILTON-ST JOHNS NUTRI |
| ST LUKE'S-ROOSEVELT HOSPITAL CENTER |
| ST VINCENT'S SERVICES INC |
| St. Anthony's Residence HDFC |
| St. Barnabas Hospital |
| St. Cabrini Home |
| ST. CHRISTOPHER'S, INC. |
| St. John's Residence (Qu) |
| St. John's University |
| St. Mary's Community Services, Inc. |
| St. Mary's HDFC |
| St. Mary's Hospital for Children, Inc. |
| St. Nicholas NPC |
| St. Nicks Alliance Corp. |
| St. Raymond Community Outreach |
| St. Rosalia-Regina Pacis Neighborhood Improvement Associatio |

Exhibit C
Page 17 of 21

| |
|---|
| ST. VINCENT'S HOSPITAL/MEDICAL CENTER |
| STANLEY M ISAACS NEIGHBORHOOD CENTER |
| Staten Island Aid for Retarded Children, Inc. dba Community Resources |
| Staten Island Behavioral Network, Inc |
| Staten Island Mental Health Society. Inc |
| Staten Island University Hospital |
| Steinway Child and Family Services, Inc. |
| Step by Step Infant development Center |
| Stepping Stone Day School, Inc. |
| StriVright, Inc. |
| Stryckers Bay Neighborhood Council, Inc. |
| Sunny Days Early Childhood Developmental Services, Inc. |
| Sunnyside Community Service, Inc. |
| SUNNYSIDE HOME CARE |
| Sunset Bay Community Services, Inc |
| SUNSET BAY/SUNSET PARK SENIOR CITIZENS |
| Supportive Childrens Advocacy Network (SCAN) |
| TABERNACLE CHURCH OF GOD, INC. |
| TADA! Theatre and Dance Alliance, Inc |
| The Ansob Center for Refugees |
| The Arab American Family Support Center |
| The Bridge, Inc. |
| The Carter Burden Center |
| The Child Center of NY, Inc. |
| The Children's Aid Society |
| The Children's Center for Early Intervention, Inc. |
| The Children's Village |
| The Coalition of Behavioral Health Agencies, Inc. |
| The Crenulated Company Ltd |
| THE DENNELISSE CORP. |
| The Doe Fund |
| The Door - A Center of Alternatives |
| The East New York Learning Center, Inc |
| THE EDUCATIONAL ALLIANCE, INC. |
| THE EDUCATIONAL ALLIANCE/SIROVICH SENIOR CENTER/SIROVICH |
| The Floating Hospital |
| The Fortune Society, Inc. |
| The Fortune Society/DAMAS |
| The Fortune Society/Flametree |
| The Fortune Society/Freedom |
| The Friends of Crown Heights Educational Center |
| The Gingerbread Learning Center |
| The Korean American Family Services Center |
| The Mental Health Association of New York City, Inc. |
| THE NEW LIFE CHILD DEVELOPMENT CENTER, INC. |
| The New York Eye and Ear Infirmary |
| The Osborne Association, Inc. |
| The Partnership for the Homeless, Inc. |
| The Research Foundation of State University of New York |
| The Salvation Army |
| The Samaritans of New York, Inc. |

Exhibit C
Page 18 of 21

| |
|---|
| The Spanish Speaking Elderly |
| THE SPANISH SPEAKING ELDERLY/TIMES PLAZA |
| The Young Womens Christian Association of Queens |
| TheraCare of New York, Inc. |
| Therapeutic Imprints, Inc. |
| Therapeutic Resources Physical Therapy, LLP |
| Therapy and Learning Center |
| These Our Treasures, Inc. |
| THROGGS NECK CHILD CARE CENTER |
| Thursday's Child, Inc. |
| Toddler-Infant Program for Special Education, Inc. |
| Tolentine-Zeiser Community Life Center, Inc |
| Tourette Syndrome Association, Inc. |
| Transitional Services for New York, Inc. |
| TREMONT COMMUNITY SENIOR |
| Tremont Crotona Day Care Center, Inc |
| TREMONT MONTEREY DAY CARE CENTER INC. |
| TRUSTEES OF COLUMBIA |
| Turning Point |
| Turning Point HDFC |
| TWIN PARKS CHILD CARE CENTER, INC. |
| UBA BEATRICE LEWIS SENIOR |
| UBA/A. PHILIP RANDOLPH SENIOR CE |
| UBA/M MCLEOD |
| UBA/MANHATTANVILLE-RIVERDALE |
| UJC ADULT LUNCHEON CLUB |
| UJO of Williamsburg Inc |
| Under 21 New York City |
| UNION SETTLEMENT ASSOCIATION, INC. |
| UNION/CORSI HOUSE SENIOR CENTER |
| UNITAS THERAPEUTIC COMMUNITY |
| United Activities Unlimited, Inc. |
| UNITED BRONX PARENTS,INC. |
| United Cerebral Palsy of Queens, Inc. |
| United Community Centers |
| United Community Day Care Center, Inc |
| UNITED FEDERATION OF BLACK COMMUNITY ORGANIZATIONS, INC. |
| UNITED HINDU CULTURAL COUNCIL |
| UNITED INTERFAITH ACTION COUNCIL OF BROOKLYN, INC. |
| United Jewish Organization of Williamsburg |
| UNITED LUBAVITCHER YESHIVA |
| UNITED PARENTS COMMUNITY CORPORATION |
| UNITED SENIOR CITIZENS CTR OF SUNSET PARK |
| UNIV SETTLEMENT SOCIETY / NUTRITION |
| UNIVERSITY BEHAVIORAL ASSOCIATES,INC. |
| University Consutation & Treatment |
| University Settlement Society of New York, Inc |
| Up Wee Grow, Inc. |
| UPPER BRONX NEIGHBORHOOD ASSOCIATION FOR P.R. AFFAIRS, INC |
| Urban Justice Center |
| Urban Pathways, Inc. |

Exhibit C
Page 19 of 21

| |
|---|
| Urban Strategies, Inc. |
| Urban Youth Alliance International |
| UTOPIA CHILDRENS CENTER, INC. |
| Vannguard Urban Improvement Association, Inc. |
| Variety Boys & Girls Club of Queens, Inc. |
| Venture House, Inc. |
| Violence Intervention Program |
| VIP Health Care |
| VIP HEALTH CARE / KWIK CARE LTD |
| VIP Health Care Services |
| Vision Urbana, Inc. |
| Visiting Nurse Association Health Care Services, Inc. |
| Visiting Nurse Service of New York Home Care |
| VOCATIONAL INSTRUCTIONAL PROJECT COMMUNITY SERVICES INC |
| Volunteers of America, Inc. |
| WASH HGTS COMMUNITY SVC |
| WASHINGTON HEIGHTS CHILD CARE CENTER, INC. |
| Washington Heights- Inwood Coalition, Inc |
| Wayside Out Reach Development, Inc |
| WAYSIDE/ROSETTA GASTON SENIOR CEN |
| WAYSIDE/TILDEN SENIOR CENTER |
| WAYSIDE/VAN DYKE SR CTR |
| West End Intergenerational |
| West Side Campaign Against Hunger/ Chruch of st. paul |
| WEST SIDE FEDERATION FOR SENIOR & SUPPORTIVE HOUSING INC |
| WEST SIDE FEDERATION FOR SENIOR 32Y |
| WEST SIDE MONTESSORI SCHOOL |
| WESTCHESTER TREMONT DAY CARE CENTER, INC. |
| Weston United Community Renewal, Inc. |
| Westside Federation For Senior & Suportive |
| William F. Ryan Community Health Center |
| WILLIAM HODSON SENIOR CEN |
| WILLIAMSBRIDGE NAACP EARLY CHILDHOOD EDUCATION CENTER, INC |
| Williamsburg Infant & Early Childhood Development Center, Inc. |
| Women In Need, Inc. |
| Women's Housing and Economic Development Corporation (WHEDCO |
| Women's League Community Residences Inc. |
| Women's Prison Association |
| Women's Prison Association (WPA) |
| Woodside On The Move, Inc. |
| Woodstock HDFC |
| Woodycrest Center For Human Development |
| Yeled V'Yalda Early Childhood Center, Inc. |
| YESHIVA KEHILATH YAKOV |
| Yeshiva Kehilath Yakov (Parent Hdqtrs) |
| YESHIVA TIFERETH MOSHE, INC. |
| Yeshiva Univ., Albert Einstein College of Medicine |
| YMCA OF GREATER NEW YORK |
| YMCA of Greater New York - Virtual Y |
| YMCA of Greater New York/Bedford Stuyvesant |
| YMCA of Greater New York/Bronx |

Exhibit C
Page 20 of 21

| |
|---|
| YMCA of Greater New York/Chinatown |
| YMCA of Greater New York/Corporate |
| YMCA of Greater New York/Eastern District |
| YMCA of Greater New York/Flatbush Branch |
| YMCA of Greater New York/Flushing |
| YMCA of Greater New York/Prospect Park |
| YMCA of Greater New York/Vanderbilt |
| YMYWHA OF THE BRONX RIVERDALE/DORA |
| YM-YWHA of Washington Heights Inwood |
| You Participate In Solutions/ New York Center for Interpersonal Development |
| Young Adult Justice Program RFP |
| Young Athletes, Inc. |
| Young Dancers In Repertory, Inc. |
| YOUNG ISRAEL FOREST HILLS S |
| YOUNG ISRAEL OF BEDFORD BAY |
| YOUNG ISRAEL PROGRAMS/MIDWOOD |
| YOUNG ISRAEL PROGRAMS/WAVECREST |
| YOUNG ISRAEL QUEENS VALLEY |
| Youth Development Institute A program of the Tides Center |
| Youth Ministries for Peace and Justice |
| YWCA OF THE CITY OF NEW YORK |
| YWCA of the City of New York (Main Branch) |

Exhibit C
Page 21 of 21